**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------------- x
                                                         :   Chapter 11
In re:                                                   :
                                                         :   Case No. 24-10418 (____)
JOANN INC., et al.,                                      :
                                                         :   (Joint Administration Requested)
            Debtors.¹                                    :
                                                         :
                                                         :
                                                         :
-------------------------------------------------------- x
```

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS TO PAY PREPETITION TRADE CLAIMS IN
THE ORDINARY COURSE OF BUSINESS AND (II) GRANTING RELATED RELIEF**

The debtors in possession in the above-captioned cases (collectively, the "***Debtors***") hereby move (this "***Motion***") and respectfully state as follows:

**RELIEF REQUESTED**

1.     By this Motion, and consistent with the unimpaired treatment of Allowed General Unsecured Claims under the Plan (each as defined herein), filed contemporaneously herewith, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "***Proposed Interim Order***") and **Exhibit B** (the "***Proposed Final Order***," and together with the Proposed Interim Order, the "***Proposed Orders***"), respectively, (a) authorizing them to pay in full in their discretion and in the ordinary course of business, allowed prepetition claims of creditors (the "***Trade Creditors***") that provide goods or services related to the Debtors' operations (collectively, the "***Trade Claims***"), and (b) granting related relief.  The Debtors estimate

---

¹     The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); and Jo-Ann Stores Support Center, Inc. (5027).  The Debtors' mailing address is 5555 Darrow Road, Hudson, OH 44236.

the aggregate amount of the Trade Claims is approximately $220.5 million.  The Debtors further request that this Court confirm administrative priority status of all undisputed obligations of the Debtors owing to vendors and suppliers arising from the postpetition delivery of goods and provision of services ordered before the Petition Date under the Prepetition Purchase Orders (as defined below) and authorize the Debtors to pay such obligations in the ordinary course of business.

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the District of Delaware (the "***Court***") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Under Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and legal predicates for the relief requested herein are sections 105(a), 362(d), 363(b), 503, 507(a), 541, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "***Bankruptcy Code***"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

31441429.1

## BACKGROUND

5.      On the date hereof (the "***Petition Date***"), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code (the "***Chapter 11 Cases***").  The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested and no committee has been appointed in the Chapter 11 Cases.

6.      The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Scott Sekella, Chief Financial Officer and Executive Vice President, in Support of Chapter 11 Petitions and First Day Motions*, filed contemporaneously herewith (the "***First Day Declaration***"), which is fully incorporated herein by reference.[2]

7.      Contemporaneously with the filing of the Motion, the Debtors filed a motion with this Court pursuant to Bankruptcy Rule 1015(b) requesting joint administration of the Chapter 11 Cases for procedural purposes only.

8.      The Chapter 11 Cases are "prepackaged" cases commenced for the purpose of implementing agreed restructuring and recapitalization transactions among the Debtors and their key stakeholders.  Prior to the Petition Date, the Debtors entered into the Transaction Support Agreement, dated as of March 15, 2024 (as may be amended, modified or supplemented, the "***Transaction Support Agreement***") with (a) lenders that collectively hold over 80% of the outstanding principal amount of term loans under the Debtors' Term Loan Facility (the "***Consenting Term Loan Lenders***"), including those certain members of an ad hoc term lender

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

group represented by Gibson, Dunn & Crutcher LLP (the "***Ad Hoc Group***"); (b) holders of over 66% of the existing equity interests in Debtor JOANN Inc. (the "***Consenting Stockholder Parties***,"[3] and collectively with the Consenting Term Loan Lenders, the "***Consenting Stakeholders***"); and (c) certain third-party financing parties that have executed joinders to the Transaction Support Agreement (the "***Additional Financing Parties***").  The holders of the outstanding principal amount of asset-backed loans under the Debtors' ABL Facility (the "***ABL Lenders***") and the holders of the outstanding principal amount of "first in last out" loans under the Debtors' FILO Facility (the "***FILO Lenders***") are not parties to the Transaction Support Agreement; however, all of the ABL Lenders and the FILO Lenders are parties to the ABL/FILO Exit Commitment Letters, pursuant to which, *inter alia*, the ABL Lenders and the FILO Lenders have agreed to provide the Exit ABL Loans and the Exit FILO Loans (respectively) as contemplated in the Plan, and have agreed to vote in favor of an Acceptable ABL/FILO Plan (as defined in the ABL/FILO Exit Commitment Letters), which includes the proposed Plan.  In addition, the ABL Lenders and the FILO Lenders have consented to the Debtors' use of Cash Collateral during the Chapter 11 Cases in accordance with the proposed DIP/Cash Collateral Orders (as defined in the Plan).

9.     A prepackaged chapter 11 plan of reorganization reflecting the terms of the Transaction Support Agreement (as may be amended, modified or supplemented, the "***Plan***") will be filed contemporaneously herewith, along with (a) a corresponding disclosure statement (as may be amended, modified or supplemented, the "***Disclosure Statement***") and (b) a motion seeking, among other things, (i) conditional approval of the Disclosure Statement, (ii) approval of the

---

[3]     The Consenting Stockholder Parties are Green Equity Investors CF, L.P., Green Equity Investors Side CF, L.P., LGP Associates CF, LLC, and certain current or former members of the Parent board of directors.

solicitation and notice procedures, and (iii) to schedule a combined hearing to consider approval of the Disclosure Statement on a final basis and confirmation of the Plan. Prior to the Petition Date, the Debtors commenced solicitation of votes on the Plan from holders of Class 2 ABL Claims, Class 3 FILO Claims, and Class 4 Term Loan Claims (each as defined in the Plan), the only classes entitled to vote under the Plan. Votes with respect to the Plan are due on April 8, 2024. The Plan contemplates that all Allowed General Unsecured Claims (as defined in the Plan) will be paid in full or will otherwise be unimpaired, and brings in at least approximately $132 million of new liquidity for the Debtors. The Debtors seek to obtain confirmation of the Plan as quickly as the Court's schedule and requisite notice periods will permit.

## THE DEBTORS' BUSINESS MODEL AND TRADE CREDITORS

### I.  THE DEBTORS' BUSINESS MODEL

10.    As set forth in detail in the First Day Declaration, the Debtors are the nation's category leader in sewing and fabrics with one of the largest arts and crafts offerings, operating 815 store locations in 49 states. The Trade Creditors, who are located around the world, provide the Debtors with the essential goods and services that facilitate these and other of their operations. The Trade Claims include claims of:

- suppliers of the fabrics, craft and home décor products, and other goods sold in the Debtors' stores;

- service providers who provide the Debtors with certain services that are critical to the Debtors' upkeep of their business infrastructure, such as IT software and consulting, marketing services, store cleaning services, and inventory reconciliation services;

- vendors who provide essential maintenance services with respect to the operational needs of the Debtors;

- common carriers operated by third parties, including ocean freight, trucking services, air transport, and rail carriers;

- third-party warehouse facilities;

31441429.1

- third-party toll processors and manufacturers to whom the Debtors supply (either directly or through third parties) raw materials and, in certain cases, equipment or other property which such vendors use to package, and/or produce and manufacture the Debtors' final products; and

- business services vendors and other general operational providers that are not addressed in other first day motions.

## II. THE DEBTORS' TRADE CLAIMS

11.     The Debtors incur numerous fixed, liquidated, and undisputed payment obligations to the Trade Creditors in the ordinary course of business.  The Trade Claims are comprised of:

- prepetition claims entitled to statutory priority under section 503(b)(9) of the Bankruptcy Code (the "***503(b)(9) Claims****,*" and the claimants asserting 503(b)(9) Claims, the "***503(b)(9) Claimants***") totaling approximately $55,100,000;

- non-priority prepetition claims held by suppliers, service providers, and distributors based outside the United States ("***Foreign Vendors***" and the claims of Foreign Vendors, the "***Foreign Vendor Claims***") totaling approximately $21,500,000;

- prepetition claims held by common carriers, warehousemen, and toll processors in each case that may have or may be capable of asserting liens against the Debtors' property (collectively, the "***Lienholders***," and the claims of Lienholders, the "***Lienholder Claims***")[4] totaling approximately $9,300,000; and

- non-priority prepetition claims held by all other trade claimants (the "***Non-Priority Trade Claims***") totaling approximately $134,600,000.

12.     For the 12 months before the Petition Date, the Debtors' average monthly payment to Trade Creditors was approximately $150,000,000.  The Debtors estimate that, as of the Petition Date, there is approximately $220,500,000 outstanding on account of undisputed Trade Claims. The Debtors estimate that approximately $200,000,000 of that amount is due or will become due and payable within the first thirty days of the case (the "***Interim Period***").  The following table summarizes the types of Trade Claims held by the Trade Creditors, and provides the Debtors'

---

[4]     The Debtors do not concede that any liens described in this motion are valid, and the Debtors expressly reserve the right to contest the extent, validity, and perfection of any and all such liens, and to seek avoidance thereof.

estimate of the total amount of each type of Trade Claim outstanding as of the Petition Date, including estimates for the portion of such total coming due within the Interim period:

| Category | Estimated Total Amount Outstanding as of Petition Date | Estimated Amount Due Within Interim Period |
|---|---|---|
| 503(b)(9) Claims | $55,100,000 | $50,000,000 |
| Foreign Vendor Claims | $21,500,000 | $19,500,000 |
| Lienholder Claims | $9,300,000 | $8,400,000 |
| Non-Priority Trade Claims | $134,600,000 | $122,100,000 |
| **Total Trade Claims:** | **$220,500,000** | **$200,000,000** |

13.     Accordingly, the Debtors are not seeking to pay these amounts immediately or in one lump sum; rather, the Debtors intend to pay these amounts as they become due and payable in the ordinary course of the Debtors' business, subject to any trade agreements with the Trade Creditors.  Concurrently with the filing of this Motion, the Debtors have filed the *Motion of Debtors for Interim and Final Orders Under Bankruptcy Code Sections 105, 361, 362, 363, 364, 503, 506, 507 and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014 (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Use Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying Automatic Stay; and (IV) Granting Related Relief* (the "**DIP Motion**"), which, in addition to the cash generated by the Debtors' business, will provide the necessary additional liquidity for the Debtors to continue operations in the ordinary course of business.  As set forth in the budget (the "**Budget**") annexed to the DIP Motion, the Debtors' proposed expenditures set forth in the Budget include payment of the Trade Claims the Debtors are seeking authority to pay pursuant to this Motion.  The Debtors

believe they will have ample liquidity to pay the Trade Claims in the ordinary course during the administration of these chapter 11 cases.

### Conditions to Payment of Trade Claims in the Ordinary Course

14.     The Debtors request authority to pay all Trade Claims in an aggregate amount not to exceed $200,000,000 in the Interim Period, unless otherwise ordered by this Court on the following terms and conditions:

- The Debtors, in their sole discretion, subject to the limitations set forth below, shall determine which Trade Claims will be paid pursuant to the Proposed Orders.

- The Debtors, in their sole discretion, may require, as a condition to receiving payment on account of Trade Claims, that Trade Creditors agree to continue to provide goods and/or services to the Debtors on terms that are as good as or better than the terms and conditions that existed 120 days prior to the Petition Date (collectively, the "***Customary Trade Terms***") during the pendency of these Chapter 11 Cases.  If, after receiving a payment under the Proposed Orders, a Trade Creditor ceases to provide Customary Trade Terms, then the Debtors may, in their sole discretion, seek an order from the Court to (i) determine that any payment on a prepetition claim received by such Trade Creditor be an unauthorized voidable postpetition transfer under section 549 of the Bankruptcy Code that the Debtors may recover in cash or goods, or (ii) deem such payment to apply instead to any postpetition amount that may be owing to such Trade Creditor.

- Before making a payment to a creditor under the Proposed Orders, the Debtors may, in their discretion, settle all or some of the prepetition claims of such creditor for less than their face amount without further notice or hearing.

### Treatment of Trade Claims Under the Plan

15.     The goal of the Debtors' Chapter 11 Cases is to delever the Debtors' balance sheet with minimal interruption of their business operations.  Disruption to the Debtors' timely receipt of necessary goods and services could negatively impact the Debtors' operations and ability to meet their commitments in the ordinary course, which would harm their businesses, damage their market reputation, and possibly result in a loss of customers and market share in the "Creative Products" industry.  Accordingly, it is imperative that the Debtors maintain positive relationships with the providers of the goods and services essential to their business operations throughout these

31441429.1

cases.  The Debtors negotiated the terms of the Plan with this goal in mind: under the Plan, the legal, equitable, and contractual rights of Trade Creditors must be unimpaired to avoid disruption to the normal operations of the business during the pendency of the Chapter 11 Cases. Accordingly, the relief requested in this Motion furthers the Debtors' overarching restructuring goals to maximize the value of the estates without prejudice to the Debtors' stakeholders, all in accordance with the Plan.

16.    Furthermore, substantially all executory contracts and unexpired leases to which any of the Debtors are parties, and which have not expired by their own terms on or before the effective date of the Plan, will be assumed under (and in accordance with) the terms of the Plan. Any outstanding amounts owed under any executory contract or unexpired lease to be assumed under the Plan will be paid or otherwise "cured" pursuant to section 365(b)(1) of the Bankruptcy Code in accordance with the terms of the Plan.

## **BASIS FOR RELIEF**

### I.    **PAYMENT OF NON-PRIORITY TRADE CLAIMS IS WARRANTED UNDER SECTION 363(b)(1) OF THE BANKRUPTCY CODE AND THE DOCTRINE OF NECESSITY**

17.    A bankruptcy court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code.  11 U.S.C. § 363(b)(1).   Section 363(b) provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions."  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987); *In re Tower Air,*

*Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

18.     In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  11 U.S.C. § 1107(a).  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also In re Marvel Ent. Grp., Inc.*, 140 F.3d 463, 471 (3d. Cir. 1998) ("The debtor-in-possession is a fiduciary of the creditors and, as a result, has an obligation to refrain from acting in a manner which could damage the estate, or hinder a successful reorganization.") (quoting *Petit v. New England Mort. Servs.*, 182 B.R. 64, 69 (D.Me.1995)); *Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

19.     Further, in a long line of well-established cases, courts consistently have permitted payment of prepetition obligations where such payment is necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *Miltenberger v. Logansport, C. & S.W.R. Co., 106 U.S. 286, 312 (1882)* (payment of pre-receivership claim prior to reorganization

31441429.1

permitted to prevent "stoppage of the continuance of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), *cert. denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

20.     This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of Bankruptcy Code provides statutory basis for payment of prepetition claims under the doctrine of necessity particularly when such payment is necessary for the debtor's survival during chapter 11); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is standard for enabling a court to authorize payment of prepetition claims prior to confirmation of a reorganization plan).

21.     It is a sound exercise of the Debtors' business judgment to pay the Trade Claims as they become due in the ordinary course of business because doing so will avoid value-destructive business interruption and will not prejudice the Debtors' other stakeholders.  The Plan[, which the Consenting Stakeholders have agreed to support and vote in favor of by the requisite voting majorities,] provides for the full and uninterrupted payment of such claims.  The goods and

services provided by Trade Creditors are necessary for the continued, uninterrupted operation of the Debtors' businesses. The Debtors anticipate that failure to pay the Trade Claims as they become due is likely to result in many Trade Creditors refusing to provide essential goods and services, conditioning the delivery of such goods and services on compliance with onerous and commercially unreasonable terms, or, in the case of Lienholders, seeking to assert liens on the Debtors' property.

22.    Nonperformance by numerous Trade Creditors could materially disrupt the Debtors' business operations and jeopardize the continued viability of the Debtors' business and these cases to the detriment of all of the Debtors' stakeholders. In addition, because the Trade Creditors are already familiar with the Debtors' needs based on the relationships that the Debtors have built with such vendors over the years, they are in the best position to provide the necessary goods and services to the Debtors, and are the most likely to do so on commercially reasonable terms. And, any refusal by the Trade Creditors to provide goods or services could result in the Debtors falling out of compliance with applicable law and regulations governing their business. If certain of the Trade Creditors refuse to perform on their obligations, the Debtors may find it very difficult (and in some cases impossible) to locate replacement vendors necessary to support their operations, and indeed, may make it difficult to maintain business operations. Therefore, even if it were possible to obtain replacement goods and services, doing so would likely cause substantial delay and significant costs.

23.    Moreover, no party in interest will be prejudiced by the relief requested herein because the Trade Claims are unimpaired and will be paid in full under the Plan. The relief requested herein, therefore, seeks to alter only the timing, not the amount or priority, of such payments. Furthermore, paying the modest amount of Trade Claims—approximately 14.3% of

31441429.1

the total debt to be restructured in these cases—in the ordinary course is prudent when compared

to the amount the Debtors' stakeholders stand to lose if the Debtors' businesses were to be

interrupted.  Accordingly, continued payment of the Trade Claims as provided herein is a sound

exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm

to the Debtors' estates, is in the best interests of the Debtors' and their respective estates and

creditors, and is warranted under the circumstances.

24.    Paying the Trade Creditors in the ordinary course of business further minimizes

disruption to the Debtors' operations by ensuring that Trade Creditors agree to continue supplying

goods and services to the Debtors postpetition under Customary Trade Terms.  Maintaining

Customary Trade Terms allows the Debtors to avoid the inherent operational inefficiencies of

paying cash on demand and managing billing processes for numerous vendors that require cash in

advance or shorten their trade terms.

## II.    ADDITIONAL BASES FOR PAYMENT OF TRADE CLAIMS

### A.    Certain Trade Claims are Administrative Expenses

25.    Certain Trade Claims may be entitled to the statutory priority for goods delivered

to the Debtors in the ordinary course of business within 20 days before the Petition Date.  Section

503(b)(9) of the Bankruptcy Code provides that claims for goods delivered to the Debtors in the

ordinary course of business within 20 days after the Petition Date are administrative expense

claims against the applicable Debtor's estate.  *See* 11 U.S.C. § 503(b)(9).  The Debtors, therefore,

are required to pay such claims in full to confirm a plan of reorganization.  *See id*.; 11 U.S.C.

§ 1129(a)(9)(A) (requiring payment in full of claims entitled to administrative expense priority).

Instead of paying such Trade Claims on the effective date of the Plan, the Debtors seek authority

to pay the Trade Claims during the pendency of the Chapter 11 Cases as they become due.  The

Bankruptcy Code requires, and the Plan provides for, payment in full of administrative expense

31441429.1

claims on the effective date of the Plan, or as soon as practicable thereafter.  Thus, payment of Trade Claims entitled to priority under section 503(b)(9) of the Bankruptcy Code under the Proposed Orders will effect only a change in the timing of such payments, not the amounts or priority thereof.

26.     To the extent the Debtors identify any deliveries that were made within the statutory window, the Debtors request authority to pay the associated claims asserted by such Trade Vendors in the ordinary course.  Finally, authorizing the Debtors to pay Trade Claims pursuant to the terms set forth herein should eliminate the burden on this Court and the Debtors arising from numerous individual motions requesting payment on account of 503(b)(9) claims.

**B.      Payment of Trade Claims is a Valid Exercise of the Debtors' Fiduciary Duties**

27.     Additionally, authority for payment of the Trade Claims may be found in Sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors, operating their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners."  *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value."  *Id*; *see also Unofficial Comm. Of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

28.     The *CoServ* court has noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim."  *Id*.; *see also In re Mirant Corp.*, 296 B.R. 427, 429-30 (Bankr. N.D. Tex. 2003) (allowing debtors to pay claims "reasonably believe[d]" to be authorized under the *CoServ* test or whose payment was

31441429.1

necessary "in the exercise of their business judgment . . . in order for [the] [d]ebtors to continue their respective businesses"). The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," *id*. at 497, and also when the payment was to "sole suppliers of a given product." *Id*. at 498. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim

*Id.*

29.     Payment of the Trade Claims meets each element of the *CoServ* court's standard. First, any further disruptions of the Debtors' operations that result from non-payment of such claims would cost the Debtors' estates substantial amounts in lost revenues. The harm and economic disadvantage that would stem from the Debtors' failure to pay the Trade Claims are grossly disproportionate to the amount of the prepetition claims that would have to be paid. In addition, the Debtors have examined other options short of paying certain Trade Claims, including the Non-Priority Trade Claims, Foreign Vendor Claims, 503(b)(9) Claims and Lienholder Claims and could not discern any practical or legal alternative other than paying such Trade Claims if significant disruption of the Debtors' business operations is to be avoided. And, in any event the 503(b)(9) Claims must be paid in full, in cash, for the Debtors to emerge from chapter 11. Therefore, the Debtors only can fulfill their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code by paying certain of the Trade Creditors.

31441429.1

## III.    CONFIRMATION OF ADMINISTRATIVE EXPENSE STATUS OF PREPETITION PURCHASE ORDERS IS APPROPRIATE AND NECESSARY TO DEBTORS' REORGANIZATION

30.    Furthermore, as of the Petition Date, the Debtors have certain prepetition purchase orders (the "***Prepetition Purchase Orders***") outstanding with various third party vendors and suppliers (the "***Vendors***") for goods or services ordered by the Debtors that have not yet been delivered or provided to the Debtors.  These Vendors may be concerned that, because the Debtors' obligations under the Prepetition Purchase Orders arose before the Petition Date, such obligations will be treated as general unsecured claims in these chapter 11 cases.  Accordingly, and notwithstanding the Plan's treatment of general unsecured claims, certain Vendors may refuse to provide goods or services to the Debtors purchased pursuant to the Prepetition Purchase Orders unless the Debtors issue substitute purchase orders postpetition or obtain an order of the Court (i) confirming that all undisputed obligations of the Debtors arising from the postpetition delivery of goods or services subject to Prepetition Purchase Orders are afforded administrative expense priority status under section 503(b) of the Bankruptcy Code and (ii) authorizing the Debtors to satisfy such obligations in the ordinary course of business.

31.    It is necessary to the uninterrupted operation of the Debtors' business that obligations owed under the Prepetition Purchase Orders for goods or services delivered or provided postpetition be explicitly granted administrative expense status.  Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of necessary goods and services are afforded administrative expense priority status.  *See, e.g.*, *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 956 (2d Cir. 1993) ("[A] claim will be afforded priority 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.'") (quoting *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101

(2d Cir. 1986) (quoting *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976))); *In re Tropicana Entm't, LLC*, No. 08-10856 (KJC), 2015 WL 6112064, at *5 (Bankr. D. Del. Oct. 14, 2015) (internal quotation omitted) ("[Pursuant to] Bankruptcy Code § 503(b)(1)(A), the Court may allow as administrative expenses, the actual, necessary costs and expenses of preserving the estate, including wages, salaries, commissions for services rendered after the commencement of the case."); *In re Blockbuster Inc.*, No. 10-14997 (BRL), 2010 WL 5559538, at *3 (Bankr. S.D.N.Y. Oct. 27, 2010) (final order ruling that "Debtors' undisputed obligations . . . that arise from the postpetition delivery of materials, goods, and services that were ordered in the prepetition period shall have administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code."). Thus, the granting of the relief requested herein will not provide the Vendors with any greater priority than they otherwise would have if the relief were not granted, and will not prejudice any other parties in interest.

## IV.    NO PARTY WILL BE PREJUDICED BY THE RELIEF REQUESTED IN THIS MOTION

32.     No party in interest will be prejudiced by the relief requested by this Motion because the Trade Claims are unimpaired under the Plan and will be paid in full. Thus, the relief requested herein seeks to alter only the timing, not the amount or priority, of such payments. Moreover, authority to pay the Trade Claims in the ordinary course of business is necessary to avoid the risk of key vendors and service providers withholding essential services or refusing to sell goods to the Debtors.

## V.    THE COURT SHOULD AUTHORIZE BANKS TO HONOR AND PAY CHECKS ISSUED AND ELECTRONIC FUNDS TRANSFERRED TO PAY THE TRADE CLAIMS

33.     The Debtors further request that the Court authorize, but not direct, their banking institutions and all other applicable banks and other financial institutions to receive, process,

honor, and pay any and all checks drawn or electronic funds relating to the Trade Claims whether such checks were presented before or after the Petition Date. The Debtors expect to have sufficient liquidity to pay such amounts as they become due in the ordinary course of business, and under the Debtors' existing cash management system, checks or wire transfer requests can be readily identified as relating to an authorized payment of the Trade Claims. As such, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. The Debtors also seek authority to issue new postpetition checks or effect new electronic fund transfers on account of the Trade Claims to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of the Chapter 11 Cases.

## BANKRUPTCY RULE 6003 HAS BEEN SATISFIED AND BANKRUPTCY RULE 6004 SHOULD BE WAIVED

34.    Under Bankruptcy Rule 6003, the Court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the commencement of a chapter 11 case to the extent "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and the success of the Chapter 11 Cases. As discussed in detail above, immediate and irreparable harm would result if the relief herein is not granted. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and therefore respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

35.    Additionally, with respect to any aspect of the relief sought herein that constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the

notice requirements under Bankruptcy Rule 6004(a), to the extent not otherwise satisfied, and of the fourteen-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtors seek in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates. The Debtors thus submit that the requested waiver of the notice requirements of Bankruptcy Rule 6004(a) and of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is appropriate, as the exigent nature of the relief sought herein justifies immediate unstayed relief.

## RESERVATION OF RIGHTS

36. Nothing in this Motion shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a concession by the Debtors that any lien (contractual, common, statutory or otherwise) satisfied pursuant to the Motion is valid (and all rights to contest the extent, validity, or perfection or seek avoidance of all such liens are expressly reserved); (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law. If the Court enters any order granting the relief sought herein, any payment made pursuant to such order

31441429.1

19

is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **NOTICE**

37.     Notice of the Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the DIP Agent; (c) counsel to the Ad Hoc Group; (d) counsel to the Term Loan Agent; (e) counsel to the Prepetition ABL Agent; (f) counsel to the FILO Term Loan Agent; (g) counsel to the Consenting Stockholder Parties; (h) each counsel to the Additional Financing Parties; (i) the creditors listed on the Debtors' consolidated list of thirty (30) creditors holding the largest unsecured claims; (j) the United States Attorney for the District of Delaware; (k) the Internal Revenue Service; (l) the Securities and Exchange Commission; and (m) the state attorneys general for states in which the Debtors conduct business.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). The Debtors submit that, under the circumstances, no other or further notice is required.

38.     A copy of the Motion is available on (a) the Court's website, at www.deb.uscourts.gov, and (b) the website maintained by the Debtors' proposed claims and noticing agent, Kroll Restructuring Administration LLC, at https://cases.ra.kroll.com/JOANN.

*[Remainder of page intentionally left blank.]*

31441429.1

**WHEREFORE** the Debtors respectfully request that the Court enter the Proposed Orders, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: March 18, 2024

/s/ Shane M. Reil

**YOUNG CONAWAY STARGATT**
**& TAYLOR, LLP**
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Shane M. Reil (No. 6195)
Rebecca L. Lamb (No. 7223)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Email: mnestor@ycst.com
      kcoyle@ycst.com
      sreil@ycst.com
      rlamb@ycst.com

**LATHAM & WATKINS LLP**

George A. Davis (*pro hac vice* pending)
Alexandra M. Zablocki (*pro hac vice* pending)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: george.davis@lw.com
      alexandra.zablocki@lw.com

Ted A. Dillman (*pro hac vice* pending)
Nicholas J. Messana (*pro hac vice* pending)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Email: ted.dillman@lw.com
      nicholas.messana@lw.com

Ebba Gebisa (*pro hac vice* pending)
330 North Wabash Avenue, Suite 2800
Chicago, IL 27017
Telephone: (312) 876-7700
Email: ebba.gebisa@lw.com

*Proposed Counsel for Debtors and Debtors-in-Possession*

**EXHIBIT A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------------- x
                                                          :
In re:                                                    :
                                                          :
JOANN INC., et al.,                                       :
                                                          :
            Debtors.¹                                     :
                                                          :
                                                          :
-------------------------------------------------------- x
```

Chapter 11

Case No. 24-10418 (____)

(Jointly Administered)

**Related Dkt. No.: ____**

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS
TO PAY PREPETITION TRADE CLAIMS IN THE ORDINARY COURSE
OF BUSINESS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] of the Debtors for an interim order (this "***Interim Order***")

(a) authorizing the Debtors to pay the prepetition Trade Claims in the ordinary course of business

and (b) granting related relief, all as more fully set forth in the Motion; and the Court having

reviewed the Motion and the First Day Declaration; and the Court having jurisdiction to consider

the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the

Amended Standing Order of Reference from the United States District Court for the District of

Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article

III of the United States Constitution; and the Court having found that venue of this proceeding and

the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that

---

[1]    The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, OH 44236.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

31441429.1

proper and adequate notice of the Motion has been given and that no other or further notice is

necessary, except as set forth in the Motion with respect to entry of this Interim  Order and notice

of the Final Hearing (as defined below); and upon the record herein; and after due deliberation

thereon; and the Court having determined that the relief requested in the Motion is in the best

interests of the Debtors, their estates, their creditors, and other parties in interest, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED on an interim basis, as set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a), 363(b),

363(c), and 503(b)(9) of the Bankruptcy Code, in the reasonable exercise of their business

judgment, to pay, in the ordinary course of business, some or all of the prepetition Trade Claims

of Trade Creditors in full; provided that the Debtors are authorized, but not directed, to pay only

amounts due and payable as of the Petition Date and amounts that are or become due and payable

during the Interim Period, in an aggregate amount not to exceed $200,000,000, unless otherwise

ordered by this Court; and in all cases subject to the following:

(a)     The Debtors, in their sole discretion, as provided in the Budget as approved by the
Court, subject to the limitations set forth below, shall determine which Trade
Claims will be paid pursuant to this Interim Order.

(b)     The Debtors, in their sole discretion, may require, as a condition to receiving
payment on account of Trade Claims, that Trade Creditors agree to continue to
provide goods and/or services to the Debtors on terms that are as good as or better
than the terms and conditions that existed 120 days prior to the Petition Date
(collectively, the "***Customary Trade Terms***") during the pendency of these Chapter
11 Cases.  If, after receiving a payment under the Proposed Orders, a Trade Creditor
ceases to provide Customary Trade Terms, then the Debtors may, in their sole
discretion, seek an order from the Court to (i) determine that any payment on a
prepetition claim received by such Trade Creditor be an unauthorized voidable
postpetition transfer under section 549 of the Bankruptcy Code that the Debtors
may recover in cash or goods, or (ii) deem such payment to apply instead to any
postpetition amount that may be owing to such Trade Creditor.

(c)     Before making a payment to a creditor under this Interim Order, the Debtors may,
in their discretion, settle all or some of the prepetition claims of such creditor for

less than their face amount without further notice or hearing.

3.      The undisputed obligations of the Debtors arising under the Prepetition Purchase Orders shall be afforded administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code.

4.      The Debtors' banks and financial institutions are authorized to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts before the Petition Date for the Trade Claims and Prepetition Purchase Orders that have not been honored and paid as of the Petition Date (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and are authorized to rely on the Debtors' directions or representations as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Interim Order; *provided* that sufficient funds are on deposit in the applicable bank accounts to cover such payments, and any such banks and financial institutions shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Interim Order.

5.      The Debtors are further authorized, but not directed, to issue postpetition checks, or to effect postpetition funds transfer requests, in replacement of any checks or funds transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Interim Order.

6.      Nothing in the Motion, the Interim Order, or this Final Order waives or modifies the requirements of Transaction Support Agreement, including, without limitation, the consent and consultation rights contained therein.

7.      Notwithstanding anything to the contrary contained herein, any payment to be made hereunder, and any authorization contained herein, shall be subject to any interim and final orders,

31441429.1

3

as applicable, approving the use of such cash collateral and/or the Debtors' entry into any postpetition financing facilities or credit agreements, and any budgets in connection therewith governing any such postpetition financing and/or use of cash collateral (each such order, a "***DIP Order***"). To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

8.      The Debtors will ensure that the payments made pursuant to this Interim Order are reflected on their books and records such that they are identifiable as payments made on account of prepetition claims.

9.      Nothing in the Motion or this Interim Order or the relief granted herein (including any actions taken or payments made by the Debtors) is to be construed as: (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a concession by the Debtors that any lien (contractual, common, statutory or otherwise) satisfied pursuant to the Motion is valid (and all rights to contest the extent, validity or perfection or seek avoidance of all such liens are expressly reserved); (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.  Nothing contained in this Interim Order shall be deemed to increase, reclassify,

elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

10.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

11.    The final hearing (the "***Final Hearing***") on the Motion shall be held on [_____, 2024, at\_\_:\_\_ \_.m] (prevailing Eastern Time).  On or before [\_\_:\_\_ \_.m.] (prevailing Eastern Time) on [_____, 2024], any objections or responses to entry of a final order on the Motion shall be filed with the Court and served on:  (a) JOANN Inc., 5555 Darrow Road, Hudson, OH 44236, Attn: Ann Aber (ann.aber@joann.com); (b) proposed counsel to the Debtors, (i) Latham & Watkins LLP, (A) 355 South Grand Avenue, Suite 100, Los Angeles, CA 90071, Attn: Ted Dillman and Nicholas Messana (ted.dillman@lw.com and nicholas.messana@lw.com) and (B) 330 North Wabash Avenue, Suite 2800, Chicago, IL 27017, Attn: Ebba Gebisa (ebba.gebisa@lw.com), and (ii) Young Conaway Stargatt & Taylor LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Kara Hammond Coyle and Shane M. Reil (kcoyle@ycst.com and sreil@ycst.com); (c) counsel to the DIP Agent, ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, NY 10019, Attn: Jeffrey R. Gleit (jeffrey.gleit@afslaw.com); (d) counsel to the Ad Hoc Group, (i) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE 19899-1347, Attn: Robert Dehney, Matthew Harvey, and Brenna Dolphin (rdehney@morrisnichols.com, mharvey@morrisnichols.com, and bdolphin@morrisnichols.com), and (ii) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166, Attn: Scott J. Greenberg, Joshua Brody, and Kevin Liang (sgreenberg@gibsondunn.com, jbrody@gibsondunn.com, and kliang@gibsondunn.com); (e) counsel to the Prepetition ABL Agent, Morgan, Lewis & Bockius

31441429.1

LLP, One Federal Street, Boston, MA 02110, Attn: Marjorie Crider and Christopher L. Carter (marjorie.crider@morganlewis.com and christopher.carter@morganlewis.com); (f) counsel to the FILO Term Loan Agent, Choate, Hall & Stewart LLP, 2 International Place, Boston, MA 02110, Attn: John Ventola and Jonathan Marshall (jventola@choate.com and jmarshall@choate.com); (g) counsel to the Consenting Stockholder Parties, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Mark D. Collins and Michael J. Merchant (collins@rlf.com and merchant@rlf.com); and (h) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Timothy J. Fox, Jr., Esq. and Malcolm M. Bates, Esq. (Timothy.Fox@usdoj.gov and Malcolm.M.Bates@usdoj.gov).  In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

12.    The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

13.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

14.    The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

15.    The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Interim Order.

16.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation or enforcement of this Interim Order.

**EXHIBIT B**

**Proposed Final Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
                                           :    Chapter 11

In re:                                  :

                                   :    Case No. 24-10418 (____)

JOANN INC., *et al.*,[1]             :

                                   :    (Jointly Administrated)

        Debtors.                    :

                                   :    **Related Dkt. No.: ____**

                                   :
------------------------------------------------------------ x

**FINAL ORDER (I) AUTHORIZING THE DEBTORS
TO PAY PREPETITION TRADE CLAIMS IN THE ORDINARY COURSE
OF BUSINESS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] of the Debtors for a final order (this "*Final Order*")

authorizing, but not directing, the Debtors for an order (a) authorizing the Debtors to pay the

prepetition Trade Claims in the ordinary course of business and (b) granting related relief, all as

more fully set forth in the Motion; and the Court having reviewed the Motion, the First Day

Declaration, and the Interim Order entered on [ ● ], 2024; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334

and the Amended Standing Order of Reference from the United States District Court for the

District of Delaware, dated February 29, 2012; and the Court having found that this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent

---

[1] The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, OH 44236.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, it is hereby

### ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED on a final basis, as set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a), 363(b), 363(c), and 503(b)(9) of the Bankruptcy Code, in the reasonable exercise of their business judgment, to pay, in the ordinary course of business, some or all of the prepetition Trade Claims of Trade Creditors in full, subject to the following:

   (a)    The Debtors, in their sole discretion, as provided in the Approved Budget (as defined in the DIP Orders (as defined below)), subject to the limitations set forth below, shall determine which Trade Claims will be paid pursuant to this Final Order.

   (b)    The Debtors, in their sole discretion, may require, as a condition to receiving payment on account of Trade Claims, that Trade Creditors agree to continue to provide goods and/or services to the Debtors on terms that are as good as or better than the terms and conditions that existed 120 days prior to the Petition Date (collectively, the "***Customary Trade Terms***") during the pendency of these Chapter 11 Cases.  If, after receiving a payment under the Proposed Orders, a Trade Creditor ceases to provide Customary Trade Terms, then the Debtors may, in their sole discretion, seek an order from the Court to (i) determine that any payment on a prepetition claim received by such Trade Creditor be an unauthorized voidable postpetition transfer under section 549 of the Bankruptcy Code that the Debtors may recover in cash or goods, or (ii) deem such payment to apply instead to any postpetition amount that may be owing to such Trade Creditor.

   (c)    Before making a payment to a creditor under this Final Order, the Debtors may, in their discretion, settle all or some of the prepetition claims of such creditor for less than their face amount without further notice or hearing.

3.      The undisputed obligations of the Debtors arising under the Prepetition Purchase Orders shall be afforded administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code.

4.      The Debtors are authorized, but not directed, in their sole discretion, as provided in the Budget approved by the Court pursuant to section 363(c)(1) of the Bankruptcy Code, to pay in the ordinary course of their businesses all undisputed obligations arising from the postpetition delivery or shipment of goods or provision of services under the Prepetition Purchase Orders consistent with their customary past practice.

5.      The Debtors will ensure that the payments made pursuant to this Final Order are reflected on their books and records such that they are identifiable as payments made on account of prepetition claims.

6.      The Debtors' banks and financial institutions are authorized to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts before the Petition Date for Trade Claims and Prepetition Purchase Orders that have not been honored and paid as of the Petition Date (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and are authorized to rely on the Debtors' directions or representations as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Final Order; *provided* that sufficient funds are on deposit in the applicable bank accounts to cover such payments, and any such banks and financial institutions shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Final Order.

31441429.1

3

7. The Debtors are further authorized, but not directed, to issue postpetition checks, or to effect postpetition funds transfer requests, in replacement of any checks or funds transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Final Order.

8. Nothing in the Motion, the Interim Order, or this Final Order waives or modifies the requirements of the Transaction Support Agreement, including, without limitation, the consent and consultation rights contained therein.

9. Notwithstanding anything to the contrary contained herein, any payment to be made hereunder, and any authorization contained herein, shall be subject to any interim and final orders, as applicable, approving the use of such cash collateral and/or the Debtors' entry into any postpetition financing facilities or credit agreements, and any budgets in connection therewith governing any such postpetition financing and/or use of cash collateral (each such order, a "***DIP Order***"). To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

10. Nothing in the Motion, the Interim Order, or this Final Order, or the relief granted herein (including any actions taken or payments made by the Debtors), is to be construed as: (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a concession by the Debtors that any lien (contractual, common, statutory or otherwise) satisfied pursuant to the Motion are valid (and all rights to contest the extent, validity or perfection or seek avoidance of all such liens are expressly reserved); (f) a

31441429.1

request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.  Nothing contained in this Final Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

11.     The requirements set forth in Bankruptcy Rule 6004(a), to the extent applicable, are hereby waived.

12.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

13.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Final Order.

14.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation or enforcement of this Final Order.

31441429.1