## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
                                 :

In re:                           :    Chapter 11
                                   :

JOANN INC., *et al.*,          :    Case No. 24-10418 (____)
                                   :

          Debtors.[1]         :    (Joint Administration Requested)
                                   :
---------------------------------------------------------- x

**MOTION OF DEBTORS FOR ENTRY OF ORDER (I) SCHEDULING
COMBINED HEARING TO CONSIDER (A) APPROVAL OF DISCLOSURE
STATEMENT, (B) APPROVAL OF SOLICITATION PROCEDURES
AND FORMS OF BALLOTS, AND (C) CONFIRMATION OF PLAN;
(II) ESTABLISHING AN OBJECTION DEADLINE TO OBJECT TO DISCLOSURE
STATEMENT AND PLAN; (III) APPROVING THE FORM AND MANNER
OF NOTICE OF COMBINED HEARING, OBJECTION DEADLINE, AND
NOTICE OF COMMENCEMENT; (IV) APPROVING NOTICE AND OBJECTION
PROCEDURES FOR THE ASSUMPTION OR REJECTION OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; (V) CONDITIONALLY WAIVING
REQUIREMENT OF FILING SCHEDULES OF ASSETS AND LIABILITIES,
STATEMENTS OF FINANCIAL AFFAIRS, AND 2015.3 REPORTS;
(VI) CONDITIONALLY WAIVING REQUIREMENT TO CONVENE THE SECTION
341 MEETING OF CREDITORS; AND (VII) GRANTING RELATED RELIEF**

The debtors in possession in the above-captioned cases (collectively, the "***Debtors***") hereby move (this "***Motion***") and respectfully state as follows:

### RELIEF REQUESTED

1.      By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "***Proposed Order***"):

        a.      scheduling a combined hearing (the "***Combined Hearing***") for April 25, 2024 (or as soon thereafter as the Court (as defined below) has availability), at which the Court will consider (i) approval of the *Disclosure Statement*

---

[1]    The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, OH 44236.

*for Prepackaged Joint Plan of Reorganization of JOANN Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***") and (ii) confirmation of the *Prepackaged Joint Plan of Reorganization of JOANN Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, the "***Plan***");[2]

b.    establishing a deadline for the filing of objections to the adequacy of the Disclosure Statement and confirmation of the Plan for April 18, 2024 at 4:00 p.m. (prevailing Eastern Time) (the "***Objection Deadline***");

c.    approving the form of (i) notice of the Combined Hearing, the Objection Deadline, and the commencement of the Chapter 11 Cases (as defined below) (the "***Combined Notice***"), the form of which is attached as Exhibit 1 to the Proposed Order, and (ii) a publication version of the Combined Notice (the "***Publication Notice***"), in the form attached as Exhibit 2 to the Proposed Order;

d.    approving the Solicitation Procedures (as defined below) with respect to the Plan, including the forms of Ballots and Voting Instructions (each as defined below) attached as Exhibits 3A, 3B, and 3C to the Proposed Order;

e.    approving the form and manner of non-voting status notice (the "***Non-Voting Status Notice***") attached as Exhibit 4 to the Proposed Order;

f.    approving the form and manner of the release opt-out form for (i) Holders of Unimpaired Claims in the Non-Voting Classes (as defined below) (the "***Unimpaired Holder Opt-Out Form***"), attached as Exhibit 5 to the Proposed Order;

g.    approving the timing and manner of delivery and publication (as applicable) of the Combined Notice, the Publication Notice, and the Non-Voting Status Notice;

h.    approving the notice and objection procedures in connection with the assumption of Executory Contracts and Unexpired Leases pursuant to the Plan;

i.    extending the time for the Debtors to file (i) schedules of assets and liabilities and statements of financial affairs (collectively, the "***Schedules and Statements***") and (ii) initial reports of financial information (the "***2015.3 Reports***") in respect of entities in which their Estates hold a controlling interest as set forth in Bankruptcy Rule 2015.3,

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or, if not defined therein, in the First Day Declaration (as defined below).

in each case, through and including May 25, 2024 (the "**SOAL/SOFA Deadline**"), and conditionally waiving the requirement that the Debtors file the Schedules and Statements and 2015.3 Reports upon confirmation of the Plan;

j.      conditionally waiving the requirement for the United States Trustee for the District of Delaware (the "**U.S. Trustee**") to convene the meeting of creditors under section 341 of the Bankruptcy Code if the Plan becomes effective on or before the SOAL/SOFA Deadline; and

k.      granting related relief.

2.      In connection with the foregoing, the Debtors request that the Court approve (subject to the Court's availability) the following schedule of proposed dates related to relief requested in the Motion (the "**Proposed Confirmation Schedule**"), which dates comply with the milestones contained in the Debtors' Transaction Support Agreement (as defined below):

| Event | Deadline | Notes |
|---|---|---|
| Voting Record Date | February 28, 2024 | N/A |
| Commence Solicitation (the "**Solicitation Date**") | March 16, 2024 | N/A |
| Petition Date | March 18, 2024 | N/A |
| Mail Combined Notice and Non-Voting Status Notice | March 20, 2024 | N/A |
| Publication Deadline | March 27, 2024 | N/A |
| Deadline to Vote on the Plan and Return Unimpaired Holder Opt-Out Form (the "**Voting Deadline**") | April 8, 2024 at 4:00 p.m. (prevailing Eastern Time) | Solicitation Date *plus* twenty-three (23) days |
| Plan Supplement Filing Deadline[3] | April 11, 2024 | Five (5) Business Days before Objection Deadline |

---

[3]    Del. Bankr. L.R. 3016–2 requires that, unless otherwise ordered by the Court, a debtor must file the plan supplement by no later than eight (8) days before the earlier of (a) the deadline to vote on the plan and (b) the deadline to object to the plan. The Proposed Confirmation Schedule sets the plan supplement filing deadline five (5) Business Days before the Objection Deadline and after the deadline to vote on the plan. Under the circumstances of this "straddle" solicitation process, the Debtors submit that filing the plan supplement five (5)

| | | |
|---|---|---|
| Objection Deadline | April 18, 2024 | Seven (7) days before Combined Hearing |
| File Confirmation Materials | April 23, 2024 | Two (2) days before Combined Hearing |
| Combined Hearing | April 25, 2024 | Reflects compliance with twenty-eight (28) day notice requirement under Fed. R. Bankr. P. 3017(a) and thirty-five (35) day notice requirement under Del. Bankr. L.R. 3017-1(a). |
| Section 341(a) Meeting / SOAL/SOFA Deadline (if applicable) | May 25, 2024 | Combined Hearing Date *plus* thirty (30) days |

3.     Below is a list of attachments and exhibits referenced in the Motion:

| Attachment / Exhibit | Exhibit |
|---|---|
| Proposed Order | **Exhibit A** to this Motion |
| Combined Notice | Exhibit 1 to the Proposed Order |
| Publication Notice | Exhibit 2 to the Proposed Order |
| Forms of Ballot for Class 2 (ABL Claims) | Exhibit 3A to the Proposed Order |
| Forms of Ballot for Class 3 (FILO Claims) | Exhibit 3B to the Proposed Order |
| Forms of Ballot for Class 4 (Term Loan Claims) | Exhibit 3C to the Proposed Order |
| Non-Voting Status Notice | Exhibit 4 to the Proposed Order |
| Unimpaired Holder Opt-Out Form | Exhibit 5 to the Proposed Order |

## JURISDICTION AND VENUE

4.     The United States Bankruptcy Court for the District of Delaware (the "*Court*") has

jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and

---

Business Days before the Plan Objection Deadline will provide parties in interest sufficient time to review the documents contained therein and file any objections thereto.

the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Under Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

6.      The statutory and legal predicates for the relief requested herein are sections 105(a), 341, 521(a), 1125, 1126 and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "*Bankruptcy Code*"), Rules 1007, 2002, 3017, and 3018 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and Local Rules 1007-1, 1007-2, 3017-1 and 3018-2.

## BACKGROUND

7.      On the date hereof (the "*Petition Date*"), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code (the "*Chapter 11 Cases*").  The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested and no committee has been appointed in the Chapter 11 Cases.

8.      The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Scott Sekella, Chief Financial Officer and Executive Vice President, in Support of Chapter 11 Petitions and First Day Motions*, filed contemporaneously herewith (the "*First Day Declaration*"), which is fully incorporated herein by reference.

31441485.1

9.      Contemporaneously with the filing of the Motion, the Debtors filed a motion with this Court pursuant to Bankruptcy Rule 1015(b) requesting joint administration of the Chapter 11 Cases for procedural purposes only.

10.     The Chapter 11 Cases are "prepackaged" cases commenced for the purpose of implementing agreed restructuring and recapitalization transactions among the Debtors and their key stakeholders.  Prior to the Petition Date, the Debtors entered into the Transaction Support Agreement, dated as of March 15, 2024 (as may be amended, modified or supplemented, the "***Transaction Support Agreement***") with (a) lenders that collectively hold over 80% of the outstanding principal amount of term loans under the Debtors' Term Loan Facility (the "***Consenting Term Loan Lenders***"), including those certain members of an ad hoc term lender group represented by Gibson, Dunn & Crutcher LLP (the "***Ad Hoc Group***"); (b) holders of over 66% of the existing equity interests in Debtor JOANN Inc. (the "***Consenting Stockholder Parties***,"[4] and collectively with the Consenting Term Loan Lenders, the "***Consenting Stakeholders***"); and (c) certain third-party financing parties that have executed joinders to the Transaction Support Agreement (the "***Additional Financing Parties***").  The holders of the outstanding principal amount of asset-backed loans under the Debtors' ABL Facility (the "***ABL Lenders***") and the holders of the outstanding principal amount of "first in last out" loans under the Debtors' FILO Facility (the "***FILO Lenders***") are not parties to the Transaction Support Agreement; however, all of the ABL Lenders and the FILO Lenders are parties to the ABL/FILO Exit Commitment Letters, pursuant to which, *inter alia*, the ABL Lenders and the FILO Lenders have agreed to provide the Exit ABL Loans and the Exit FILO Loans (respectively) as

---

[4]     The Consenting Stockholder Parties are Green Equity Investors CF, L.P., Green Equity Investors Side CF, L.P., LGP Associates LLC, and certain current or former members of the Debtors' board of directors.

contemplated in the Plan, and have agreed to vote in favor of an Acceptable ABL/FILO Plan (as defined in the ABL/FILO Exit Commitment Letters), which includes the proposed Plan.  In addition, the ABL Lenders and the FILO Lenders have consented to the Debtors' use of Cash Collateral during the Chapter 11 Cases in accordance with the proposed DIP/Cash Collateral Orders (as defined in the Plan).

11.    A prepackaged chapter 11 plan of reorganization reflecting the terms of the Transaction Support Agreement (as may be amended, modified or supplemented, the "***Plan***") will be filed contemporaneously herewith, along with (a) a corresponding disclosure statement (as may be amended, modified or supplemented, the "***Disclosure Statement***") and (b) a motion seeking, among other things, (i) conditional approval of the Disclosure Statement, (ii) approval of the solicitation and notice procedures, and (iii) to schedule a combined hearing to consider approval of the Disclosure Statement on a final basis and confirmation of the Plan.  Prior to the Petition Date, the Debtors commenced solicitation of votes on the Plan from holders of Class 2 ABL Claims, Class 3 FILO Claims, and Class 4 Term Loan Claims (each as defined in the Plan), the only classes entitled to vote under the Plan.  Votes with respect to the Plan are due on April 8, 2024.  The Plan contemplates that all Allowed General Unsecured Claims (as defined in the Plan) will be paid in full or will otherwise be unimpaired, and brings in at least approximately $132 million of new liquidity and related financial accommodations for the Debtors.  The Debtors seek to obtain confirmation of the Plan as quickly as the Court's schedule and requisite notice periods will permit.

## I.    THE PLAN

12.    The Plan contemplates the following key Restructuring Transactions:

- reduction of the Debtors' total funded debt from approximately $1.06 billion to approximately $555.5 million upon emergence pursuant to the terms of the Transaction Support Agreement and the ABL/FILO Exit Commitment Letters,

comprising (a) a new exit term loan facility in an aggregate principal amount of between $132 million and $142 million (plus payable in kind fees on account of the DIP Backstop Fee) (the "*Exit Term Loans*"), (b) the assumption, replacement, or amendment of the Debtors' ABL Facility (the "*Exit ABL Loans*"), and (c) the assumption, replacement, or amendment of the Debtors' FILO Facility (the "*Exit FILO Loans*" and, together with the Exit Term Loans and Exit ABL Loans, the "*Exit Facilities*"). The Exit ABL Loans and Exit FILO Loans will be implemented under a new credit agreement, which may be pursuant to an amendment to the existing ABL Credit Agreement (as defined below) (the "*Exit ABL/FILO Facility Amendment*").

- the Chapter 11 Cases will be financed (i) by a backstopped senior secured debtor-in-possession credit facility (the "*DIP Facility*") in an aggregate amount of up to $142 million, comprising (a) between approximately $107 million and $117 million in "new money" loans (inclusive of an accordion facility of up to $10 million, which, to the extent funded, will become available upon entry of the Final DIP/Cash Collateral Order) and (b) $25 million of outstanding trade payables converted to term loans under the DIP Facility (collectively, the "*DIP Term Loans*") and (ii) through the consensual use of Cash Collateral. Upon emergence, the DIP Term Loans will convert to Exit Term Loans.

- the DIP Facility will be backstopped by certain of the Consenting Term Lenders (the "*DIP Backstop Parties*") who will be entitled to receive a backstop fee equal to a pro rata amount of 20% of the DIP Term Loans in the form of an assumption of an equivalent amount of such DIP Backstop Party's Term Loan Claims, up to the amount thereof, and thereafter paid in kind (the "*DIP Backstop Fee*"). Prior to the Petition Date, the vast majority of Holders of Term Loan Claims (including the over 80% thereof comprising the Consenting Term Lenders) were offered the opportunity to participate in the DIP Facility and earn the DIP Backstop Fee and DIP Participation Fee. Before entry of the Final DIP/Cash Collateral Order, the DIP Term Loans will be fully syndicated such that all Holders of Term Loan Claims will have had the opportunity to fund the DIP Term Loans and receive a participation fee equal to a pro rata amount of 85% of the New Equity Interests, subject to dilution only by the Management Incentive Plan (the "*DIP Participation Fee*").

13. The following chart represents the classification of Claims against and Interests in the Debtors under the Plan:

| Class | Claim/Equity Interest | Status (Unimpaired or Impaired) | Voting Rights | Projected Plan Recovery |
|-------|----------------------|--------------------------------|---------------|------------------------|
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept | 100% |
| 2 | ABL Claims | Impaired | Entitled to Vote | 100% |

| Class | Claim/Equity Interest | Status (Unimpaired or Impaired) | Voting Rights | Projected Plan Recovery |
|---|---|---|---|---|
| 3 | FILO Claims | Impaired | Entitled to Vote | 100% |
| 4 | Term Loan Claims | Impaired | Entitled to Vote | 1.1% |
| 5 | General Unsecured Claims | Unimpaired | Presumed to Accept | 100% |
| 6 | Subordinated Claims | Impaired | Deemed to Reject | 0% |
| 7 | Intercompany Claims | Unimpaired or Impaired | Presumed to Accept or Deemed to Reject | N/A |
| 8 | Intercompany Interests | Unimpaired or Impaired | Presumed to Accept or Deemed to Reject | N/A |
| 9 | Existing Equity Interests | Impaired | Deemed to Reject | 0% |

## II.    THE NOTICE AND SOLICITATION PROCEDURES

### A.    The Notice Procedures

14.    Since executing the Transaction Support Agreement, the Debtors have provided notice of the Plan and the Disclosure Statement (as well as the launch of solicitation) to parties in interest, including parties entitled to vote to accept or reject the Plan in the following ways:

   a.    issuing a press release announcing entry into the Transaction Support Agreement and related restructuring steps;

   b.    filing public disclosures, including pursuant to Form 8-K, with the Securities and Exchange Commission;

   c.    posting the Plan and the Disclosure Statement on the public website of the Debtors' proposed noticing and solicitation agent, Kroll Restructuring Administration LLC (the "**Solicitation Agent**" or "**Kroll**"); and

   d.    communicating with the U.S. Trustee regarding the Plan, the Disclosure Statement and the Solicitation Procedures, as well as the other motions filed by the Debtors contemporaneously herewith seeking first-day relief.

15.    Following entry of the Proposed Order, the Debtors will provide further notice of the Plan and the Disclosure Statement in the following ways:

   a.    serving the Combined Notice on parties in interest;

b.      publishing the Publication Notice in *The Wall Street Journal* and *The Plain Dealer*; and

c.      serving the Non-Voting Status Notice on parties not entitled to vote on the Plan.

**B.      The Solicitation Procedures**

16.      In accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, beginning on March 16, 2024, the Solicitation Agent mailed or delivered (or caused to be mailed or delivered) electronically to each Holder of a Claim in Classes 2, 3, and 4 under the Plan (collectively the "***Voting Classes***") that held such Claim as of February 28, 2024 (the "***Voting Record Date***"), a solicitation package (the "***Solicitation Package***") that included the following materials in flash drive or paper format:

a.      the Disclosure Statement;

b.      the Plan;

c.      the exhibits to the Disclosure Statement, including:

i.      the Transaction Support Agreement;

ii.      the Company's financial projections;

iii.      the Company's liquidation analysis;

iv.      the ABL/FILO Exit Commitment Letters;

d.      the appropriate Ballot and Voting Instructions, substantially in the forms attached to the Proposed Order as Exhibits 3A, 3B, and 3C; and

e.      a pre-addressed, postage pre-paid return envelope (if applicable for any hard copy mailings).

17.      To supplement the email service set forth above, Kroll also served (or caused to be served) the Solicitation Packages to each Holder of a Claim in the Voting Classes as of the Voting Record Date via first class mail or overnight courier in those cases where mailing addresses were provided.

18.     Holders of Claims in the Voting Classes were directed to follow the instructions contained in the applicable Ballot or Voting Instructions (and described in the Disclosure Statement) to cast a vote to accept or reject the Plan.  The Ballots and Voting Instructions also included instructions on how certain Holders of Claims may opt-out of the releases proposed to be given to the Released Parties as set forth in Article IX.C of the Plan (the "***Third-Party Release***"). For the avoidance of doubt, the Debtors will seek approval of the Third-Party Release through confirmation of the Plan and not in connection with this Motion.  The Debtors also request authorization to accept Ballots and Opt-Out Forms via electronic, online transmissions through a customized online portal (the "E-Ballot Portal") on the Debtors' case website.  Instructions for electronic, online transmission of Ballots and Opt-Out Forms are set forth on each form of Ballot and Opt-Out Form, as applicable. The encrypted data and audit trail created by such electronic submission shall become part of the record of any Ballot or Opt-Out Form submitted in this manner, and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

19.     As a cost-saving measure, in instances where the Solicitation Agent conducted hard copy service of the Solicitation Packages, the Solicitation Packages included a flash drive containing electronic copies of the Plan and Disclosure Statement.  The Solicitation Package clearly disclosed the Debtors' expectation and intention to (a) commence the Chapter 11 Cases and (b) request that the Court approve the Solicitation Procedures set forth in the Disclosure Statement, including approval of the dates set forth in paragraph 2 above.

20.     Each of the Ballots and Voting Instructions adequately informed the Voting Classes of the deadline to submit completed Ballots and/or otherwise cast their vote to accept or reject the Plan.  The Voting Classes were directed in the Disclosure Statement and in the applicable Ballot

and Voting Instructions to follow the instructions contained therein to cast a vote to accept or reject the Plan. Each Holder was explicitly informed in the Disclosure Statement and on the applicable Ballot or Voting Instructions that such Holder is required to cast its vote in such a way that the vote is actually received by the Solicitation Agent on or before the Voting Deadline in order to be counted.

21.    The Debtors' procedures and standard assumptions for tabulating Ballots (as defined below) will include:

| Votes Not Counted | • Any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim. |
| --- | --- |
| | • Any Ballot that is not actually received by the Solicitation Agent by the Voting Deadline (unless the Debtors determine otherwise or as permitted by the Court). |
| | • Any Ballot that does not contain a signature; *provided*, that signatures contained in electronic Ballots submitted via the Solicitation Agent's online voting portal will be deemed to be immediately legally effective. |
| | • Any Ballot that partially rejects and partially accepts the Plan. |
| | • Any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan. |
| | • Any Ballot superseded by a later, timely submitted, valid, and properly executed Ballot. |
| | • Any vote cast by a Person or entity that did not hold a Claim in a Voting Class as of the Voting Record Date. |
| No Vote Splitting | • Holders are required to vote all of their Claims within a particular Class either to accept or reject the Plan and are not permitted to split any votes. |
| Retention of Ballots | • The Solicitation Agent is required to retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon the Solicitation Agent is authorized to destroy and otherwise dispose of all paper copies of Ballots, printed solicitation materials including unused copies of the Solicitation Package and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Bankruptcy Court in writing within such one (1)-year period. |
| Voting Amounts | • With respect to ABL Claims, FILO Claims, and Term Loan Claims, the amount of ABL Claims, FILO Claims, and Term Loan Claims, respectively, for voting purposes only will be established based on the |

|  | amounts of the applicable loan positions held by each Holder of such Claim(s) as of the Voting Record Date, as evidenced by the applicable books and records maintained by the applicable Prepetition Agents, which was provided to the Debtors or the Solicitation Agent in electronic Microsoft Excel format promptly following the Voting Record Date. |
|---|---|

## C.    The Combined Notice

22.    In addition, following entry of the Proposed Order, the Debtors (a) will serve the Combined Notice, in the form attached as <u>Exhibit 1</u> to the Proposed Order on the entire creditor matrix, thus providing notice to all known third-party Holders of Claims and Interests in the Non-Voting Classes and (b) published the Publication Notice in each of *The Wall Street Journal* and *The Plain Dealer* so as to provide notice to any third party Holders of Claims and/or Interests that are unknown to, or not reasonably ascertainable by, the Debtors.

23.    The Combined Notice will (a) inform parties in interest of the commencement of the Chapter 11 Cases, (b) identify the date of the Combined Hearing, (c) set forth the Objection Deadline and the procedures for filing objections as to the adequacy of the Disclosure Statement and/or the confirmation of the Plan, (d) set forth the name and telephone number of a person from whom copies of the Plan and Disclosure Statement can be obtained at the Debtors' expense, (e) set forth the manner in which the Disclosure Statement and the Plan can be obtained or viewed electronically, (f) provide a summary of the treatment of Claims and Interests of each Class under the Plan and (g) advise that a 341 Meeting will not be convened until further notice.

## D.    Notice to Non-Voting Classes

24.    Claims in Classes 1 and 5 are Unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to accept the Plan. Claims in Classes 7 and 8 are either Unimpaired or Impaired under the Plan and are conclusively presumed to accept or reject the Plan. Claims in Classes 6 and 9 (collectively with Classes 1, 5, 7, and 8, the "***Non-Voting Classes***") are Impaired under the Plan with no recovery and, pursuant to

section 1126(g) of the Bankruptcy Code, are deemed to reject the Plan. In light of their presumed acceptance or rejection of the Plan, none of the Holders of Claims and Interests in the Non-Voting Classes were solicited to vote on the Plan. Instead, the creditors and Holders of Claims and Interests in the Non-Voting Classes (other than Holders of Intercompany Claims and Intercompany Interests) will receive a Non-Voting Status Notice. Because the Intercompany Claims and Intercompany Interests are all held by the Debtors or affiliates of the Debtors, the Debtors did not provide the Holders in Class 7 (Intercompany Claims) or Class 8 (Intercompany Interests) with a Non-Voting Status Notice (or a Solicitation Package). Further, Holders of Claims or Interests in the Non-Voting Classes can access the Disclosure Statement and the Plan at no cost on the website maintained by the Solicitation Agent at https://cases.ra.kroll.com/JOANN.

25.     The Solicitation Agent will also serve, or caused to be delivered, the Non-Voting Status Notice, attached as <u>Exhibit 5</u> to the Proposed Order, which (a) informs recipients of their status as Holders or potential Holders of Claims or Interests in the Non-Voting Classes; and (b) provides the relevant text of the releases, exculpation, and injunction provisions set forth in the Plan.

## E.     Procedures for Assumption or Rejection of Executory Contracts and Unexpired Leases

26.     As provided in <u>Article V.A</u> of the Plan, on the Effective Date, except as otherwise provided therein, each Executory Contract and Unexpired Lease will be deemed assumed (the "***Assumed Contracts and Leases***") unless it: (a) is identified on the Rejected Executory Contract/Unexpired Lease List (which, if any, will initially be filed with the Court as part of the Plan Supplement on or before April 11, 2024) as an Executory Contract or Unexpired Lease to be rejected, (b) is the subject of a separate motion or notice to reject pending as of the Effective Date, or (c) previously expired or terminated pursuant to its own terms (disregarding any terms the effect

of which is invalidated by the Bankruptcy Code).  The Debtors served the Combined Notice (which, as noted above, advised parties of the Objection Deadline) on all parties to Executory Contracts and Unexpired Leases, reflecting the Debtors' intention to assume the Executory Contracts and Unexpired Leases in connection with the Plan and indicating that the Debtors or the Reorganized Debtors, as applicable, will cure any defaults under the Executory Contracts and Unexpired Leases.

27.     As provided in <u>Article V.B</u> of the Plan, any monetary default under the Assumed Contracts and Leases will be cured by payment in Cash on the Effective Date or as soon as reasonably practicable thereafter.  If there is a dispute with respect to assumption of an Executory Contract or Unexpired Lease under the Plan then the Bankruptcy Court will hear such dispute before assumption becoming effective, subject to the limitations set forth in the Plan.  If a dispute arises regarding the amount of any payment needed to cure outstanding defaults under any Executory Contract or Unexpired Lease, the payment required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order(s) resolving the dispute and approving the assumption and will not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

## **BASIS FOR RELIEF**

## I.     **THE PROPOSED CONFIRMATION SCHEDULE AND THE NOTICE THEREOF ARE REASONABLE AND APPROPRIATE**

### A.     **The Form and Manner of Combined Notice is Appropriate**

28.     Bankruptcy Rule 2002 requires a debtor to provide notice to all creditors and equity holders of a hearing to consider, and the deadline to object to, (a) the approval of a disclosure statement and (b) confirmation of a plan.  Fed. R. Bankr. P. 2002.  A debtor is also required to provide all creditors, equity holders, and other parties in interest with notice of the commencement

of a chapter 11 case.  *Id.*  Here, given that solicitation commenced before the Petition Date, the Debtors propose to serve parties in interest with the Combined Notice, which provides notice of all three events and is more cost-effective than serving three individual notices.

29.     The Combined Notice gave notice to parties that a hearing will be held on a date to be determined by the Court (April 25, 2024 is requested) to consider (a) the adequacy of the information contained in the Disclosure Statement and (b) confirmation of the Plan.   The Combined Notice also set forth (a) the deadline and procedures for filing objections to the adequacy of the Disclosure Statement and confirmation of the Plan (described in further detail herein), and (b) the manner in which the Solicitation Package and other pleadings filed in the Chapter 11 Cases can be obtained or viewed electronically.   In addition, the Combined Notice notified parties in interest of the requested waiver of the meeting of creditors and/or equity holders pursuant to section 341 of the Bankruptcy Code.

30.     The Debtors submit that the form of Combined Notice is appropriate and consistent with similar forms approved in other chapter 11 cases in this District.   Accordingly, the Debtors request approval of the form of the Combined Notice attached as <u>Exhibit 1</u> to the Proposed Order.

**B.     Scheduling a Date for the Combined Hearing**

31.     The Bankruptcy Code authorizes a court to combine the hearing on the adequacy of the disclosure statement with the confirmation hearing.  *See* 11 U.S.C. § 105(d)(2)(B)(vi).  The facts and circumstances of the Chapter 11 Cases warrant a combined hearing.

32.     To begin, the level of consensus reached under and in connection with the Transaction Support Agreement and reflected in the Plan reflects the considerable efforts undertaken by the Debtors and the Consenting Stakeholders, the ABL Lenders, and the FILO Lenders to agree on an appropriate fresh start for the Debtors and the parties' shared belief in the Debtors' prospects as a reorganized enterprise.   In this regard, it is anticipated that the votes

31441485.1

tabulated and received from the Voting Classes will be well above the thresholds needed to confirm the Plan.  Indeed, the votes solely from the Consenting Term Lenders, the ABL Lenders, and the FILO Lenders (*i.e.*, the Holders of Claims in the Voting Classes) will exceed the thresholds needed to confirm the Plan for each of their respective Classes.

33.    Given the "prepackaged" nature of the Chapter 11 Cases and the level of consensus on the Plan, a Combined Hearing on the adequacy of the Disclosure Statement and confirmation of the Plan will promote judicial economy and the efficient reorganization of the Debtors and is, thus, in the best interests of the Debtors and their estates and creditors in that it will enable all parties in interest to proceed with the confirmation process as expeditiously as possible. Additionally, the adverse effects of the chapter 11 filings upon the Debtors' retail business and going concern value will be minimized, and the benefit to all stakeholders maximized, through the non-impairment of general unsecured claims and prompt distributions to holders of Allowed Claims against the Debtors and the reduction of administrative expenses of the estates.  Such benefits are the hallmarks of a plan of reorganization.  As such, the relief sought herein is necessary to the efficient administration of the Chapter 11 Cases and will protect the rights of all of the Debtors' creditors and interest holders.  Therefore, the Debtors request entry of the Proposed Order, pursuant to section 105(d)(2)(B)(vi) of the Bankruptcy Code, setting April 25, 2024 as the date for the Combined Hearing at which the Court will consider the adequacy of the Disclosure Statement and confirmation of the Plan.

34.    Notably, the proposed timing of the foregoing request complies with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  In this regard, Bankruptcy Rules 2002 and 3017(a) require twenty-eight (28) days' notice be given by mail to all creditors of the time fixed (a) for filing objections to and the hearing to consider approval of a

disclosure statement and (b) for filing objections to and the hearing to consider confirmation of a plan of reorganization.  Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan."  Local Rule 3017-1 requires the hearing date on a disclosure statement to be at least thirty-five (35) days following service of the notice thereof. In addition, Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation."  In addition, under Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."

35.     The proposed schedule affords creditors and all other parties in interest ample notice of the Chapter 11 Cases and the Combined Hearing.  Specifically, the proposed schedule provides a period of thirty-six (36) days between service of the Combined Notice and the Combined Hearing, during which time parties may evaluate the Plan before the Combined Hearing thereon.  Consequently, no party in interest will be prejudiced by the requested relief.

36.     The Debtors further request that the Proposed Order provide that the Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates in open court or at the Combined Hearing, and that notice of such adjourned date(s) will be available on the electronic case filing docket.

**C.     Deadline and Procedures for Objections to Adequacy of the Disclosure Statement and Confirmation of the Plan**

37.     Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto."  Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation

of a plan." 11 U.S.C. § 1128(a). Similarly, Bankruptcy Rule 2002(b) provides that notice must be given to "the debtor, the trustee, all creditors and indenture trustees [of] not less than 28 days . . . by mail of the time fixed for filing objections and the hearing to consider approval of a disclosure statement or, under § 1125(f), to make a final determination whether the plan provides adequate information so that a separate disclosure statement is not necessary." Under Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1).

38.     On March 16, 2024, thirty-three (33) days before the Objection Deadline, the Debtors caused the Solicitation Agent to commence service of the Solicitation Packages on the Voting Classes. In addition, the Debtors will serve the Combined Notice via email (where available) and first class mail on all creditors and interested parties. The Combined Notice will set forth the date of the Combined Hearing and Objection Deadline, and also provide instructions on how an interested party may object to the Plan or Disclosure Statement. The Combined Notice will further provide that any objections to the approval of the Disclosure Statement or confirmation of the Plan, if any, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and (e) be filed with the Court (contemporaneously with a proof of service) and served so as to be actually received on or before the Objection Deadline by the following parties (the "**Notice Parties**"):

a.      JOANN Inc., 5555 Darrow Road, Hudson, OH 44236, Attn: Ann Aber;

b.      proposed counsel to the Debtors, (i) Latham & Watkins LLP, (A) 355 South Grand Avenue, Suite 100, Los Angeles, CA 90071, Attn: Ted A. Dillman and Nicholas J. Messana (ted.dillman@lw.com and

nicholas.messana@lw.com), and (B) 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611, Attn: Ebba Gebisa (ebba.gebisa@lw.com); and (ii) Young Conaway Stargatt & Taylor, LLP, One Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Kara Hammond Coyle and Shane M. Reil (kcoyle@ycst.com and sreil@ycst.com);

c.      counsel to the Ad Hoc Group, (i) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166, Attn: Scott J. Greenberg, Joshua Brody, and Kevin Liang (sgreenberg@gibsondunn.com, jbrody@gibsondunn.com, and kliang@gibsondunn.com); and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE 19899-1347, Attn: Robert Dehney, Matthew Harvey, and Brenna Dolphin (rdehney@morrisnichols.com, mharvey@morrisnichols.com, and bdolphin@morrisnichols.com);

d.      counsel to the ABL Facility Agent, Morgan, Lewis & Bockius LLP, One Federal Street, Boston, MA 02110, Attn: Marjorie Crider and Christopher L. Carter (marjorie.crider@morganlewis.com and christopher.carter@morganlewis.com);

e.      counsel to the FILO Term Loan Agent, Choate, Hall, & Stewart LLP, 2 International Place, Boston, MA 02110, Attn: John Ventola and Jonathan Marshall (jventola@choate.com and jmarshall@choate.com);

f.      counsel to the Consenting Stockholder Parties, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Mark D. Collins and Michael J. Merchant (collins@rlf.com and merchant@rlf.com);

g.      the U.S. Trustee, 844 N King St., Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Timothy J. Fox, Jr., Esq. and Malcolm M. Bates, Esq. (timothy.fox@usdoj.gov and malcolm.m.bates@usdoj.gov); and

h.      counsel to any statutory committee, if appointed.

39.     The Proposed Confirmation Schedule is reasonable and appropriate because it complies with the applicable sections of the Bankruptcy Code and the Bankruptcy Rules. *First*, the Objection Deadline of April 18, 2024, is thirty-three (33) days following the Solicitation Date and twenty-nine (29) days following proposed service of the Combined Notice, which is in compliance with the time periods required by the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. *Second*, the Proposed Confirmation Schedule is intended to preserve value for the

Debtors' creditors by reducing the administrative costs of a drawn-out chapter 11 proceeding. Given the consensual nature of the Chapter 11 Cases and the Restructuring Transactions proposed by the Plan, permitting the Combined Hearing to take place, as proposed, on April 25, 2024 is essential to the success of the reorganization. ***Third***, the Debtors commenced solicitation on March 16, 2024 (forty (40) days before the requested date for the Combined Hearing), in accordance with sections 1125(g) and 1126(b) of the Bankruptcy Code. The Disclosure Statement and other solicitation materials were distributed to each Holder of a Claim entitled to vote on the Plan. The Debtors also made the Plan and the Disclosure Statement available on Kroll's case website, at no cost, to all parties who received notice of the Plan solicitation.

40.     In the Chapter 11 Cases, the Debtors have proposed noticing and solicitation procedures that are consistent with precedent in this District, will provide more than sufficient notice of the Chapter 11 Cases and the deadline to file objections to the approval of the Plan and the Disclosure Statement, and will provide Holders of Impaired Claims more than sufficient time to vote on the Plan. Accordingly, the Debtors request that the Court approve April 18, 2024, at 4:00 p.m., prevailing Eastern Time, as the Objection Deadline. The Debtors request that the Court approve the Debtors' proposal to require that objections to the Disclosure Statement or confirmation of the Plan meet the factors set forth above.

## II.     THE SOLICITATION PROCEDURES SHOULD BE APPROVED

41.     The Debtors additionally request that the Court approve the solicitation, balloting, tabulation, and related activities undertaken in connection with the Plan (collectively, the "***Solicitation Procedures***") at the Combined Hearing.

42.     The Debtors distributed the Solicitation Packages and began to solicit votes to accept or reject the Plan before the Petition Date, in accordance with sections 1125 and 1126 of

the Bankruptcy Code.  The solicitation process is ongoing and the Debtors will count such votes

when evaluating whether the Plan satisfies the requirements of the Bankruptcy Code.

### A.      Voting Record Date

43.      Bankruptcy Rule 3017 provides that, for purposes of determining the holders of

claims and interests entitled to receive the plan-related materials specified therein, the record date

of their respective holdings should be "the date the Proposed Order approving the disclosure

statement is entered or another date fixed by the court, for cause, after notice and a hearing[.]"  11

U.S.C. §3017(d).  Bankruptcy Rule 3018(b) permits the Debtors to specify a record date for

purposes of prepetition solicitation.  Specifically, Bankruptcy Rule 3018(b) provides, in relevant

part, that, in a prepetition solicitation, the holders of record of the applicable claims against and

interests in a debtor entitled to receive ballots and related solicitation materials are to be determined

"on the date specified in the solicitation." Fed. R. Bankr. P. 3018(b).  The Debtors, in consultation

with the Solicitation Agent and counsel to the Ad Hoc Group, selected February 28, 2024 as the

Voting Record Date.  The Disclosure Statement and the Ballots complied with Bankruptcy Rule

3018(b) and clearly identified February 28, 2024, the Voting Record Date, as the date for

determining which Holders of Claims in the Voting Classes were entitled to vote to accept or reject

the Plan.  Accordingly, the Debtors request that the Court approve the Debtors' selection of

February 28, 2024 as the Voting Record Date.

### B.      Plan Distribution and Voting Deadline

44.      Bankruptcy Rule 3018(b) provides, in relevant part, that (a) prepetition acceptances

and rejections of a plan for a voting class are valid only if the plan was transmitted to substantially

all holders of claims or interests in such voting class, (b) the time for voting was not unreasonably

short, and (c) the solicitation complied with Bankruptcy Code section 1126(b).  Here, the Debtors

transmitted the Solicitation Package to all Holders of Claims in the Voting Classes beginning on

March 16, 2024. As clearly set forth in the Disclosure Statement and the Ballots, the proposed Voting Deadline is set for April 8, 2024, twenty-three (23) days after distribution of the Plan to Voting Classes. Thus, Holders of Claims in the Voting Classes will have adequate time to consider the Solicitation Package and to submit a Ballot on or before the Voting Deadline.

C.      **Ballots, Voting Instructions, Solicitation Package, Additional Materials, and Transmittal**

45.     Bankruptcy Rule 3017(d) requires the Debtors to transmit a form of ballot, substantially in conformity with Official Form No. 314, to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(c) further provides that "acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c).

46.     The Debtors caused the Solicitation Packages to be mailed twenty-three (23) days before the proposed Voting Deadline. The forms of the Ballots used in the solicitation are attached as Exhibits 3A, 3B, and 3C to the Proposed Order (collectively, the "***Ballots***"). Annexed to each Ballot were certain instructions (the "***Voting Instructions***"), which explained to the Claim Holder how to vote their Claim and the way in which the Ballots would be reviewed and tabulated by the Solicitation Agent.

47.     The form of each Ballot was based on Official Form 314, which the Debtors modified to address the particular circumstances of the Chapter 11 Cases and to include certain information that the Debtors believed to be relevant and appropriate for Holders of Claims in the Voting Classes to consider. Holders of Claims in the Voting Classes were instructed to vote on the  Plan by completing and signing the enclosed Ballot and returning it to the Solicitation Agent on or before the Voting Deadline using email or the enclosed self-addressed, postage pre-paid

return envelope (if applicable for any hard copy mailings), which clearly indicated the appropriate return address or by submitting the ballot electronically through the Solicitation Agent's E-Ballot Portal.

48.     For purposes of serving the solicitation materials, the Debtors seek authorization to rely on the address information (for voting and non-voting parties alike) maintained by the Debtors and provided by the Debtors to the Solicitation Agent as of the Voting Record Date.  To that end, the Debtors seek the waiver of any obligation for the Debtors or the Solicitation Agent to conduct any additional research for updated addresses based on undeliverable Solicitation Packages (including undeliverable Ballots, Non-Voting Status Notices, and Combined Notices) and not be required to resend Solicitation Packages or other materials, including Non-Voting Status Notices and Combined Notices, that are returned as undeliverable unless the Debtors were provided with accurate addresses for such parties before the Voting Record Date.

49.     To assist in the solicitation process, the Debtors request that the Court grant the Solicitation Agent the authority to contact parties who submit a defective Ballot to make a reasonable effort to cure such deficiencies; *provided* that neither the Debtors nor the Solicitation Agent will be required to contact such parties to provide notification of defects or irregularities with respect to completion or delivery of Ballots, nor will any of them incur any liability for failure to provide such notification.  The Debtors request that the Court give authorization to the Debtors and the Solicitation Agent, as applicable, to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Irregular Ballots (as defined below), which determination will be final and binding.

50.     The Debtors will file with the Court a certification of votes (the "***Voting Declaration***") as soon as practicable after the Voting Deadline and in advance of the

Combined Hearing.  The Voting Declaration will, among other things, set forth the voting results, certify to the Court in writing the voting amount and number of Claims of each Class accepting or rejecting the Plan, and delineate every Ballot that is excluded from the final voting results, including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or other necessary information, submitted in a manner not provided for herein, or damaged ("***Irregular Ballots***").  The Voting Declaration will also indicate the Debtors' intentions with regard to each such Irregular Ballot.

51.    The Solicitation Agent will also serve, or caused to be delivered, the Non-Voting Status Notice, attached as <u>Exhibit 4</u> to the Proposed Order, to (a) Holders of Claims and Interests in the Non-Voting Classes who are deemed to accept the Plan and (b) Holders of Claims or Interests in the Non-Voting Classes who are deemed to reject the Plan.  The Non-Voting Status Notice (a) informs recipients of their status as Holders or potential Holders of Claims or Interests in the Non-Voting Classes; and (b) provides the relevant text of the releases, exculpation, and injunction provisions set forth in the Plan that apply to such Holders, notwithstanding their non-voting status.  The Non-Voting Status Notice states that the releases, including the Third-Party Release, apply unless a party timely opts out as provided in the Unimpaired Holder Opt-Out Form; *provided* that, for the avoidance of doubt, Holders of Claims that are deemed to reject the Plan will not be deemed to grant the Third-Party Release and will not receive an opt-out form.

**D.    Waiver of Requirement to Mail Solicitation Packages to or Otherwise Solicit Certain Claims and Interests is Appropriate**

52.    Given the particular facts and circumstances of the Chapter 11 Cases, the Debtors request that the Court waive the requirement that they mail, or cause to be delivered, a copy of the Solicitation Package to Holders of Claims and Interests in the Non-Voting Classes.  *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of a court-approved disclosure statement to, *inter alia*,

classes of unimpaired creditors and equity security holders unless the court orders otherwise).

Distributing the Solicitation Packages to Holders of Claims and Interests in the Non-Voting

Classes would be costly and administratively burdensome with no corresponding benefit to the

Court, the Debtors, or any other party in interest.  The Debtors' resources should not be dissipated

by having to satisfy this mailing requirement, especially given that the Debtors have made the

Solicitation Package available at no cost on the website maintained by the Solicitation Agent at

https://cases.ra.kroll.com/JOANN.

53.     Further, Bankruptcy Rule 3017(d) applies, in relevant part, only "[u]pon approval

of a disclosure statement," which may be deemed not to apply here considering the prepetition

solicitation process employed.  Nevertheless, out of an abundance of caution, and for the reasons

noted above, the Debtors request that the Court waive any requirement to provide Solicitation

Packages to Holders of Claims or Interests in the Non-Voting Classes.

### E.     Solicitation was Conducted After Holders of Impaired Claims in the Voting Classes Received Adequate Information and in Compliance with Applicable Non-Bankruptcy Law

54.     Section 1125(g) of the Bankruptcy Code permits a debtor to solicit an acceptance

or rejection of a plan from a holder of a claim or interest before the commencement of a chapter

11 case if such solicitation otherwise complies with applicable non-bankruptcy law.  11 U.S.C.

§ 1125(g).  Additionally, section 1126(b) of the Bankruptcy Code deems a holder of a claim or

interest that has accepted or rejected the plan before the commencement of a chapter 11 case to

have accepted or rejected the plan, as applicable, without need for a court-approved disclosure

statement, if the solicitation complied with applicable non-bankruptcy law—including generally

applicable federal and state securities laws or regulations—or, if no such laws exist, the solicited

holders received "adequate information" within the meaning of section 1125(a) of the Bankruptcy

Code. 11 U.S.C. § 1126(b).  Here, the Debtors have solicited votes from Class 2 (ABL Claims),

31441485.1

Class 3 (FILO Claims), and Class 4 (Term Loan Claims) in accordance with applicable securities laws.

55.    The Debtors' prepetition solicitation process complied with generally applicable federal and state securities laws and regulations.  Specifically, section 5 of the Securities Act of 1933 (as amended, the "*Securities Act*") requires that the offer or sale of securities such as the New Equity Interests to be issued to Holders of Allowed DIP Claims and Allowed Term Loan Claims either be registered or exempt from registration.  The Debtors' prepetition solicitation is exempt from registration under the Securities Act under one or more of the exemptions from registration provided thereunder, including Regulation D under the Securities Act or otherwise under section 4(a)(2) of the Securities Act, as well as Regulation S promulgated under the Securities Act, and is exempt under state "Blue Sky" laws and/or any similar rules, regulations or statutes.  section 4(a)(2) of the Securities Act is an exemption from the registration requirements under section 5 of the Securities Act for transactions by an issuer not involving a "public offering." 15 U.S.C. § 77d(a)(2).  Regulation D provides that certain offers and sales will be deemed to be transactions not involving any public offering within the meaning of section 4(a)(2) of the Securities Act.  Regulation S is a safe harbor from the registration requirements under section 5 of the Securities Act for offers and sales of securities in offshore transactions outside the United States.  Only "qualified institutional buyers," as that term is defined in Rule 144A under the Securities Act, "accredited investors," as that term is defined in Rule 501 of Regulation D, and persons who are not "U.S. persons," as that term is defined in Rule 902 of Regulation S were entitled to vote on the Plan prepetition.  Moreover, there was no general solicitation in connection with an offer or sale of securities under the Plan.  As such, the prepetition solicitation of qualified institutional buyers and accredited investors in the United States did not constitute a "public

offering" and thus falls within the exemption set out in Regulation D under the Securities Act or otherwise under section 4(a)(2) of the Securities Act, the prepetition solicitation of non-U.S. persons outside of the United States were exempt from the registration requirements of section 5 of the Securities Act pursuant to the Regulation S safe harbor, and such solicitations comply with the requirements of section 1126(b)(1) of the Bankruptcy Code.

56.     In addition, Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and interests for the purpose of soliciting their votes to accept or reject a plan of reorganization (including, among other things, a plan, disclosure statement and notice of the voting deadline).  Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by [Bankruptcy Rule 3017(d)] to beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of the procedures, and enter any orders the court deems appropriate."  Fed. R. Bankr. P. 3017(e).

57.     The Debtors' prepetition solicitation of the Plan complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations. Accordingly, the Debtors request that the Court approve the Solicitation Procedures.

## III.    THE DISCLOSURE STATEMENT SHOULD BE APPROVED AS CONTAINING ADEQUATE INFORMATION

58.     As there is no applicable non-bankruptcy law governing the contents of the materials for soliciting holders of claims before the commencement of chapter 11 cases, such solicitation must be based on a debtor providing such holders with "adequate information."  *See* 11 U.S.C. § 1126(b)(2).  The Debtors request that, at the Combined Hearing, the Court find that the Disclosure Statement contains "adequate information" as defined in Bankruptcy Code section 1125(a).  *See* 11 U.S.C. §§ 1125(a)(1), 1126(b)(2).    What constitutes "adequate

information" is based on the facts and circumstances of each case, but the focus is on whether sufficient information is provided to enable holders of claims and interests entitled to vote on a chapter 11 plan to make an informed decision on whether to accept or reject a plan. *See* 11 U.S.C. § 1125(a)(1); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 ("[T]he information required will necessarily be governed by the circumstances of the case.").

59.     The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision whether to vote for the plan. *See, e.g., Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote"); *In re Phoenix Petroleum, Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan.").

60.     In that regard, in determining whether a disclosure statement contains adequate information, courts generally examine a list of factors, including, but not limited to, whether the disclosure statement contains the following types of information, as applicable:

- the circumstances that gave rise to the filing of the bankruptcy petition;
- an explanation of the available assets and their value;
- the anticipated future of the debtor(s);
- the source of the information provided in the disclosure statement;

- a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;
- the condition and performance of the debtor while in chapter 11;
- information regarding claims against the estate;
- a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;
- the accounting and valuation methods used to produce the financial information in the disclosure statement;
- information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors and/or officers of the debtor;
- a summary of the plan of reorganization or liquidation;
- an estimate of all administrative expenses, including attorneys' fees and accountants' fees;
- any financial information, valuations, or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan; information relevant to the risks being taken by the creditors and interest holders;
- the actual or projected value that can be obtained from avoidable transfers;
- the existence, likelihood, and possible success of non-bankruptcy litigation;
- the tax consequences of the plan; and
- the relationship of the debtor with its affiliates.

*See, e.g.*, *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988); *see also In re Oxford Homes, Inc.*, 204 B.R. 264, 269 n.17 (Bankr. D. Me. 1997) (using a similar list). Such a list is not meant to be comprehensive and a debtor is not required to provide all the information on the list. Rather, the bankruptcy court must decide what is appropriate in each case in light of the particular facts and circumstances present. *See In re Ferretti*, 128 B.R. 16, 18-19 (Bankr. D.N.H. 1991); *see also In re Phoenix Petroleum Co.*, 278 B.R. at 393 (making use of a similar list but cautioning that "no one list of categories will apply in every case").

61.    Here, the Disclosure Statement contains adequate information to permit the Holders of Claims in the Voting Classes to make an informed judgment about the Plan. In addition to a description of the Plan itself, the Disclosure Statement includes disclosures regarding:  (a) the operation of the Debtors' businesses; (b) the Debtors' prepetition restructuring efforts; (c) key

events leading to the commencement of the Chapter 11 Cases; (d) the Debtors' significant prepetition indebtedness; (e) information regarding the Debtors' employees and company; (f) the Transaction Support Agreement and the proposed post-emergence capital structure of the Reorganized Debtors; (g) information regarding the confirmation of the Plan; (h) financial information relevant to creditors' determinations of whether to accept or reject the Plan; (i) a liquidation analysis setting forth the estimated return that Holders of Claims and Interests would receive in a hypothetical chapter 7 liquidation of the Debtors; (j) the solicitation and voting procedures; (k) certain securities law matters, including the applicability of section 1145 of the Bankruptcy Code and the issuances of New Equity Interests under the Plan; (l) risk factors affecting the Plan; and (m) U.S. federal tax law consequences of the Plan.

62.    In addition, as discussed above, the Debtors worked directly with their key stakeholders throughout the prepetition process on all aspects of the restructuring.  To that end, the terms of the Disclosure Statement and Plan were subject to extensive review, comment, and negotiation by parties in interest, including representatives of substantial Holders of Claims in the Voting Classes, during the months preceding the Petition Date.  Accordingly, the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code section 1125(a) and should be approved at the Combined Hearing.

## IV.    CONDITIONAL APPROVAL OF DISCLOSURE STATEMENT

63.    The Debtors commenced prepetition solicitation from Holders of Claims in Classes 2, 3, and 4 by distributing the Disclosure Statement and Ballots before the Petition Date in accordance with sections 1125 and 1126 of the Bankruptcy Code. *See* 11 U.S.C. § 1125(g) ("[A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable non-bankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable non-bankruptcy law.").

Although the Debtors do not believe that the Disclosure Statement must be conditionally approved, the Debtors, out of an abundance of caution, request that the Court conditionally approve the Disclosure Statement if the Court deems it necessary to do so.

## V. CONTINUATION OF THE DEBTORS' PREPETITION SOLICITATION AFTER THE PETITION DATE

64.     Courts in this district have recognized that debtors may "straddle" solicitation by commencing solicitation before the petition date and continuing postpetition.  *See, e.g., In re Mallinckrodt PLC*, No. 20-11258 (JTD) (Bankr. D. Del. Aug. 30, 2023) (D.I. 170) (solicitation commenced before the petition date and continued postpetition); *In re Checkout Holding Corp., et al.*, No. 18-12794 (KG) (Bankr. D. Del. Dec. 12, 2018) (D.I. 13) (same); *In re Se. Grocers, LLC,* No. 18-10700 (MFW) (Bankr. D. Del. Mar. 29, 2018) (D.I. 131) (same); *In re Ascent Res. Marcellus Holdings, LLC,* No. 18-10265(LSS) (Bankr. D. Del. Feb. 9, 2018) (D.I. 43) (same); *In re Tidewater Inc.,* No. 17-11132 (BLS) (Bankr. D. Del. May 17, 2017) (D.I. 378) (same); *In re Homer City Generation, L.P.,* No. 17-10086 (MFW) (Bankr. D. Del. Feb. 15, 2017) (D.I. 157) (same).  Furthermore, it is important that the Chapter 11 Cases proceed as expeditiously as possible.

## VI. EXTENSION AND CONDITIONAL WAIVERS OF THE 341 MEETING AND THE FILING OF SCHEDULES AND STATEMENTS AND 2015.3 REPORTS

65.     The Debtors also request that the Court grant an extension of time to file the Schedules and Statements and the 2015.3 Reports and to waive the requirement to file the Schedules and Statements and the 2015.3 Reports in the event the Plan is confirmed.

66.     As to the Schedules and Statements, section 521 of the Bankruptcy Code requires a debtor to file schedules of assets and liabilities and statements of financial affairs unless the Court orders otherwise.  11 U.S.C. § 521(a)(1)(A)-(B).  These schedules and statements must be filed within fourteen (14) days after the petition date unless the bankruptcy court grants an extension of

time "on motion for cause shown." Fed. R. Bankr. P. 1007(c). As a matter of course, the Debtors are already entitled to an extension to twenty-eight (28) days from the Petition Date because the Debtors' claims agent is maintaining the consolidated creditor matrix as of the Petition Date, and the Debtors have over 200 creditors. *See* Local Rule 1007-1(b). The Court is authorized to grant the Debtors' further extension "for cause" pursuant to Bankruptcy Rule 1007(c) and Local Rule 1007-1(b).

67. As to the 2015.3 Reports, Bankruptcy Rule 2015.3(a) requires a debtor to file periodic financial reports disclosing its financial interests in entities in which it holds a substantial or controlling interest. Fed. R. Bankr. P. 2015.3(a). These 2015.3 Reports must be filed no later than seven (7) days before the first day set for the meeting of creditors under section 341 of the Bankruptcy Code. Fed. R. Bankr. P. 2015.3(b). The Court, however, is authorized to grant a debtor an extension "for cause" pursuant to Bankruptcy Rule 2015.3(c). Fed. R. Bankr. P. 2015(a).

68. Sufficient cause exists here for such further extension of each of the foregoing deadlines through and including the SOAL/SOFA Deadline. The purposes of filing the Schedules and Statements and the 2015.3 Reports are to provide notice to creditors and to disclose information about the debtor to holders of claims. Here, however, the benefits of filing these documents are heavily outweighed by their costs. Requiring the Debtors to complete the Schedules and Statements and file the 2015.3 Reports would be time consuming, distracting to the Debtors' advisers and management, and costly to the Debtors' estates, while providing little benefit to most parties in interest in the Chapter 11 Cases at that point. No party in interest would be prejudiced by the Court granting the Debtors' request for an extension through and including the SOAL/SOFA Deadline because the Debtors have proposed the Plan, under which trade claims and other general unsecured claims will ride through the bankruptcy unimpaired and be enforceable

against the Reorganized Debtors.  Therefore, the Court should extend the deadline for filing the Schedules and Statements and 2015.3 Reports through and including the SOAL/SOFA Deadline, and waive the requirement altogether if the Plan is confirmed in accordance with the timetable proposed by the Debtors.

69.     Section 105(a) of the Bankruptcy Code, which codifies the equitable powers of the bankruptcy court, authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  In light of the facts and circumstances surrounding the prepackaged Chapter 11 Cases, the Court has authority to grant the requested relief.

70.     Accordingly, the Debtors respectfully request that the Court extend the time for filing the Schedules and Statements and 2015.3 Reports to May 25, 2024, and, if confirmation of the Plan is obtained before that date, waive this requirement.

71.     Additionally, the Debtors request that the Court direct the U.S. Trustee not to convene a meeting of the creditors under section 341 of the Bankruptcy Code unless the Plan is not confirmed on or before the SOAL/SOFA Deadline.  Section 341(a) of the Bankruptcy Code requires the U.S. Trustee to convene and preside over a meeting of creditors (a "*Section 341(a) Meeting*"), and section 341(b) of the Bankruptcy Code authorizes the U.S. Trustee to convene a meeting of equity security holders (a "*Section 341(b) Meeting*" and collectively with a Section 341(a) Meeting, a "*Section 341 Meeting*").  However, Bankruptcy Code section 341(e) provides that

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

11 U.S.C. § 341(e).

31441485.1

72.     The purpose of the Section 341 Meeting is to provide parties in interest with a meaningful opportunity to obtain and examine important information about the debtor.  In the Chapter 11 Cases, however, the solicitation of the Plan was commenced before the Petition Date, and the Debtors expect that the Plan will be accepted by all classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.  The Debtors intend to proceed expeditiously to confirm the Plan and emerge from chapter 11 as quickly as possible. Therefore, parties are not likely to receive any benefit from a Section 341 Meeting.

73.     Accordingly, the Debtors respectfully request that the Court direct the U.S. Trustee not to convene a Section 341 Meeting unless the Plan is not confirmed on or before the SOAL/SOFA Deadline.

## VII.    PROCEDURES FOR THE ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

74.     Section 365(a) of the Bankruptcy Code empowers a debtor in possession, "subject to the court's approval, [to] . . . assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  The procedures set forth above and in Article V of the Plan related to the assumption and rejection of Executory Contracts and Unexpired Leases should be approved because they will help facilitate the resolution of any issues concerning Cure Costs and objections regarding the possible assumption of Executory Contracts and Unexpired Leases, while adequately protecting the rights of the counterparties to the Assumed Contracts and Leases.

## VIII.   CONFIRMATION OF PLAN

75.     The Debtors believe that the Plan satisfies all of the requirements for confirmation under the Bankruptcy Code.  The Debtors request that the Court schedule the Combined Hearing at which time the Debtors will seek confirmation of the Plan.

31441485.1

**NOTICE**

76.     Notice of the Motion will be given to:  (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the DIP Agent; (c) counsel to the Ad Hoc Group; (d) counsel to the Term Loan Agent; (e) counsel to the Prepetition ABL Agent; (f) counsel to the FILO Term Loan Agent; (g) counsel to the Consenting Stockholder Parties; (h) each counsel to the Additional Financing Parties; (i) the creditors listed on the Debtors' consolidated list of thirty (30) creditors holding the largest unsecured claims; (j) the United States Attorney for the District of Delaware; (k) the Internal Revenue Service; (l) the Securities and Exchange Commission; and (m) the state attorneys general for states in which the Debtors conduct business.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). The Debtors submit that, under the circumstances, no other or further notice is required.

77.     A copy of the Motion is available on (a) the Court's website, at www.deb.uscourts.gov, and (b) the website maintained by the Debtors' proposed claims and noticing agent, Kroll Restructuring Administration LLC, at https://cases.ra.kroll.com/JOANN.


*[Remainder of page intentionally left blank.]*

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: March 18, 2024

*/s/ Shane M. Reil*

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Shane M. Reil (No. 6195)
Rebecca L. Lamb (No. 7223)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600
Email:  mnestor@ycst.com
        kcoyle@ycst.com
        sreil@ycst.com
        rlamb@ycst.com

**LATHAM & WATKINS LLP**

George A. Davis (*pro hac vice* pending)
Alexandra M. Zablocki (*pro hac vice* pending)
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
        alexandra.zablocki@lw.com

Ted A. Dillman (*pro hac vice* pending)
Nicholas J. Messana (*pro hac vice* pending)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone:  (213) 485-1234
Email:  ted.dillman@lw.com
        nicholas.messana@lw.com

Ebba Gebisa (*pro hac vice* pending)
330 North Wabash Avenue, Suite 2800
Chicago, IL 27017
Telephone:  (312) 876-7700
Email:  ebba.gebisa@lw.com

*Proposed Counsel for Debtors and Debtors-in-Possession*

**Exhibit A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------ x
                                                             :
In re:                                                       :    Chapter 11
                                                             :
JOANN INC., et al.,                                          :    Case No. 24-10418 (____)
                                                             :
                    Debtors. ¹                               :    (Jointly Administered)
                                                             :
                                                             :    Ref. Dkt. No. ___
------------------------------------------------------------ x
```

**ORDER (I) SCHEDULING COMBINED HEARING
TO CONSIDER (A) APPROVAL OF DISCLOSURE
STATEMENT, (B) APPROVAL OF SOLICITATION PROCEDURES
AND FORMS OF BALLOTS, AND (C) CONFIRMATION OF PLAN;
(II) ESTABLISHING AN OBJECTION DEADLINE TO OBJECT TO DISCLOSURE
STATEMENT AND PLAN; (III) APPROVING THE FORM AND MANNER
OF NOTICE OF COMBINED HEARING, OBJECTION DEADLINE, AND
NOTICE OF COMMENCEMENT; (IV) APPROVING NOTICE AND OBJECTION
PROCEDURES FOR THE ASSUMPTION OR REJECTION OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; (V) CONDITIONALLY WAIVING
REQUIREMENT OF FILING SCHEDULES OF ASSETS AND LIABILITIES,
STATEMENTS OF FINANCIAL AFFAIRS, AND 2015.3 REPORTS;
(VI) CONDITIONALLY WAIVING REQUIREMENT TO CONVENE THE SECTION
341 MEETING OF CREDITORS; AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")² of the Debtors for entry of an order (this "***Order***")

(a) scheduling a combined hearing (the "***Combined Hearing***") to consider (i) approval of the

Disclosure Statement, (ii) approval of Solicitation Procedures and forms of Ballots, and

(iii) confirmation of the Plan; (b) establishing an objection deadline to object to the adequacy of

the Disclosure Statement and confirmation of the Plan (the "***Objection Deadline***"); (c)  approving

---

¹    The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are:
     JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC
     (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594);
     JOANN Ditto Holdings Inc. (9652); and Jo-Ann Stores Support Center, Inc. (5027).  The Debtors' mailing address
     is 5555 Darrow Road, Hudson, OH 44236.

²    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms
     in the Motion.

the form and manner of (i) notice of the Combined Hearing, the Objection Deadline, and the commencement of the Chapter 11 Cases (the "***Combined Notice***"), attached hereto as **Exhibit 1** and (ii) the Publication Notice, attached hereto as **Exhibit 2**; (d) approving the Solicitation Procedures with respect to the Plan, including the forms of Ballots and Voting Instructions, attached hereto as **Exhibits 3A**, **3B**, and **3C**; (e) approving the form and manner of (i) non-voting status notice (the "***Non-Voting Status Notice***"), attached hereto as **Exhibit 4** and (ii) Unimpaired Holder Opt-Out Form, attached hereto as **Exhibit 5**; (f) extending the deadline for the Debtors to file schedules of assets and liabilities and statements of financial affairs (collectively, the "***Schedules and Statements***") and initial reports of financial information in respect of entities in which their Estates hold a controlling interest as set forth in in Bankruptcy Rule 2015.3 (the "***2015.3 Reports***") in each case through and including May 25, 2024 (the "***SOAL/SOFA Deadline***"), and conditionally waiving the requirement that the Debtors file the Schedules and Statements and the 2015.3 Reports if the Plan is confirmed; (g) conditionally waiving the requirement to convene the Section 341 Meeting; (h) approving the notice and objection procedures in connection with the assumption or rejection of executory contracts and unexpired leases pursuant to the Plan; and (i) granting related relief, all as more fully set forth in the Motion; and the Court having reviewed the Motion and the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given

and that no other or further notice is necessary, except as set forth in the Motion with respect to

entry of this Order; and upon the record herein; and after due deliberation thereon; and the Court

having determined that the relief requested in the Motion is in the best interests of the Debtors,

their estates, their creditors, and other parties in interest, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is GRANTED as set forth herein.

2. The Combined Hearing, at which this Bankruptcy Court will consider, among other

things, the adequacy of the Disclosure Statement and confirmation of the Plan, shall be held on

**April 25, 2024 at __:__ (prevailing Eastern Time)**.  The Combined Hearing may be adjourned

from time to time without further notice other than an announcement of the adjourned date or dates

in open court or at the Combined Hearing and notice of such adjourned date(s) will be available

on the electronic case filing docket.

3. The Proposed Confirmation Schedule set forth in the Motion (and copied below) is

hereby approved, except as may be modified herein.

| Event | Deadline | Notes |
|---|---|---|
| Voting Record Date | February 28, 2024 | N/A |
| Commence Solicitation | March 16, 2024 | N/A |
| Petition Date | March 18, 2024 | N/A |
| Mail Combined Notice and Non-Voting Status Notice | March 20, 2024 | N/A |
| Publication Deadline | March 27, 2024 | N/A |
| Deadline to Vote on the Plan and Return Unimpaired Holder Opt-Out Form | April 8, 2024 at 4:00 p.m. (prevailing Eastern Time) | Solicitation Date *plus* twenty-three (23) days |

| Event | Deadline | Notes |
|---|---|---|
| Plan Supplement Filing Deadline | April 11, 2024 | Five (5) Business Days before Objection Deadline |
| Objection Deadline | April 18, 2024 | Seven (7) days before Combined Hearing |
| File Confirmation Materials | April 23, 2024 | Two (2) days before Combined Hearing |
| Combined Hearing | April 25, 2024 | Reflects compliance with twenty-eight (28) day notice requirement under Fed. R. Bankr. P. 3017(a) and thirty-five (35) day notice requirement under Del. Bankr. L.R. 3017-1(a). |
| Section 341(a) Meeting / SOAL/SOFA Deadline (if applicable) | May 25, 2024 | Combined Hearing Date *plus* thirty (30) days |

4. Any objections to the adequacy of the Disclosure Statement and/or confirmation of the Plan shall be: (a) in writing; (b) filed with the Clerk of Court together with proof of service thereof; (c) set forth the name of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors, and (d) state the legal and factual basis for such objection; and (e) conform to the applicable Bankruptcy Rules, the Local Rules and any other case management rules and orders of the Bankruptcy Court, by no later than **4:00 p.m. (prevailing Eastern Time) on April 18, 2024**. In addition to being filed with the Clerk of the Court, any such Objections should be served upon the following parties in accordance with the Local Rules:

a.     JOANN Inc., 5555 Darrow Road, Hudson, OH 44236, Attn: Ann Aber;

b.     proposed counsel to the Debtors, (i) Latham & Watkins LLP, (A) 355 South Grand Avenue, Suite 100, Los Angeles, CA 90071, Attn: Ted A. Dillman

and Nicholas J. Messana (ted.dillman@lw.com and nicholas.messana@lw.com), and (B) 330 North Wabash Avenue, Suite 2800, Chicago, IL 27017, Attn:  Ebba Gebisa (ebba.gebisa@lw.com); and (ii) Young Conaway Stargatt & Taylor, LLP, One Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn:  Kara Hammond Coyle and Shane M. Reil (kcoyle@ycst.com and sreil@ycst.com);

c.    counsel to the DIP Agent, Arent Fox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, NY 10019, Attn: Jeffrey R. Gleit (jeffrey.gleit@afslaw.com);

d.    counsel to the Ad Hoc Group, (i) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166, Attn:  Scott J. Greenberg, Joshua Brody, and Kevin Liang (sgreenberg@gibsondunn.com, jbrody@gibsondunn.com, and kliang@gibsondunn.com); and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE 19899-1347, Attn:  Robert Dehney, Matthew Harvey, and Brenna Dolphin (rdehney@morrisnichols.com, mharvey@morrisnichols.com, and bdolphin@morrisnichols.com);

e.    counsel to the ABL Facility Agent, Morgan, Lewis & Bockius LLP, One Federal Street, Boston, MA 02110, Attn:  Marjorie Crider and Christopher L. Carter (marjorie.crider@morganlewis.com and christopher.carter@morganlewis.com);

f.    counsel to the FILO Term Loan Agent, Choate, Hall, & Stewart LLP, 2 International Place, Boston, MA 02110, Attn:  John Ventola and Jonathan Marshall (jventola@choate.com and jmarshall@choate.com);

g.    counsel to the Consenting Stockholder Parties, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn:  Mark D. Collins and Michael J. Merchant (collins@rlf.com and merchant@rlf.com);

h.    the U.S. Trustee, 844 N King St., Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Timothy J. Fox, Jr., Esq. and Malcolm M. Bates, Esq. (Timothy.Fox@usdoj.gov and Malcolm.M.Bates@usdoj.gov); and

i.    counsel to any statutory committee, if appointed.

5.    The Debtors are authorized to file and serve a supplement to the Plan (the "*Plan Supplement*") on or before April 11, 2024, and to further supplement the Plan Supplement as necessary thereafter.  If the Objection Deadline is extended, the Debtors shall be authorized to file the Plan Supplement by five (5) Business Days before such extended Objection Deadline.

6.      Notice of the Combined Hearing and the Publication Notice and service thereof comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and are approved and deemed to be sufficient and appropriate under the circumstances; *provided however*, that if any Holder of a Claim, against or Interest in, a Debtor requests from the Debtors, the Debtors' counsel or Kroll a copy of the Plan or Disclosure Statement, regardless of whether such holder is in the Voting Class, the Debtors' counsel or Kroll shall serve the requested document or documents on the Holder at the Debtors' cost, no later than two (2) Business Days from the date such request is made; *provided, further*, that any provision of Bankruptcy Rule 3017(d) requiring the Debtors to distribute the Disclosure Statement and the Plan to parties not entitled to vote, whether because they are unimpaired or because they are deemed to reject the Plan, or any parties in interest other than as prescribed in this Order, shall be waived; *provided further*, the Debtors shall cause to be posted to their public case website, maintained by Kroll, various chapter 11 related documents (to the extent not already posted), including the following:  (a) the Plan; (b) the Disclosure Statement; (c) the Motion and any orders entered in connection with the Motion; and (d) the Combined Notice.  The Debtors shall also serve a copy of the Combined Notice on all known creditors, interest holders, and interested parties.

7.      The Solicitation Procedures, including the setting of the Voting Record Date, utilized by the Debtors for distribution of the Solicitation Packages as set forth in the Motion in soliciting acceptances and rejections of the Plan satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and are approved.  The Debtors and the Solicitation Agent are authorized to accept Ballots and Opt-Out Forms through the E-Ballot Portal.  The encrypted data and audit trail created by such electronic submission shall become part of the record

of any Ballot or Opt-Out Form submitted in this manner, and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

8.     The authorization of the Solicitation Agent is approved and any obligation for the Debtors or the Solicitation Agent to conduct additional research for updated addresses based on undeliverable Solicitation Packages (including undeliverable Ballots, Non-Voting Status Notices, and Combined Notices) is hereby waived.

9.     To the extent that section 1125(b) of the Bankruptcy Code requires the Debtors' prepetition solicitation of acceptances for the Plan to be pursuant to an approved disclosure statement in order to continue on a postpetition basis, the Court conditionally approves the Disclosure Statement as having adequate information as required by section 1125 of the Bankruptcy Code without prejudice to any party in interest objecting to the Disclosure Statement at the Combined Hearing.

10.     Subject to entry of the Combined Order, the Solicitation Package used to solicit votes to accept or reject the Plan as set forth in the Motion is conditionally approved.

11.     The Combined Notice, substantially in the form attached hereto as **Exhibit 1**, is approved.

12.     Subject to entry of the Combined Order, the Ballots and Voting Instructions, substantially in the forms attached hereto as **Exhibits 3A**, **3B**, and **3C**, and the terms and conditions therein, are conditionally approved.

13.     Subject to entry of the Combined Order, the Non-Voting Status Notice, substantially in the form attached hereto as **Exhibit 4**, is conditionally approved.

14.     Subject to entry of the Combined Order, the Unimpaired Holder Opt-Out Form, substantially in the forms attached hereto as **Exhibit 5**, and the terms and conditions therein, are conditionally approved.

15.     Subject to entry of the Combined Order, the Solicitation Procedures that will be used for tabulations of votes to accept or reject the Plan as set forth in the Motion and as provided by the Ballots, as applicable, are conditionally approved.

16.     The notice and objection procedures set forth in this Order and the Motion constitute good and sufficient notice of the Combined Hearing; commencement of the Chapter 11 Cases; and the deadline and procedures for objection to approval of the Solicitation Procedures, adequacy of the Disclosure Statement, and confirmation of the Plan, and no other or further notice shall be necessary.

17.     The time within which the Debtors shall file the Schedules and Statements and 2015.3 Reports is extended through and including the SOAL/SOFA Deadline without prejudice to the Debtors' right to seek further extensions of the time within which to file the Schedules and Statements and 2015.3 Reports or to seek additional relief from the Court regarding the filing of, or waiver of the requirement to file, the Schedules and Statements and 2015.3 Reports.

18.     The requirement to convene a 341 Meeting shall be deferred, provided confirmation occurs on or before the SOAL/SOFA Deadline, without prejudice to the Debtors' right to request further extensions thereof.

19.     The U.S. Trustee shall not be required (but may after consulting with the Debtors) to schedule a meeting of creditors and equity holders pursuant to section 341(a) and (b) of the Bankruptcy Code, unless the Plan is not confirmed in the Chapter 11 Cases on or before the

SOAL/SOFA Deadline, without prejudice to the Debtors' right to request further extensions thereof.

20.     The notice and objection procedures in connection with the assumption or rejection of Executory Contracts and Unexpired Leases pursuant to the Plan are approved, as set forth in the Combined Notice.

21.     Any objection to the assumption or rejection of Executory Contracts and Unexpired Leases must (a) be in writing; (b) conform to the applicable Bankruptcy Rules and Local Rules, (c) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof; (d) be filed with the Court by the Objection Deadline, together with proof of service, and (e) served upon the Notice Parties.

22.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

23.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

## **Exhibit 1**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
                                                        :
In re:                                                  :   Chapter 11
                                                        :
JOANN INC., et al.,                                     :   Case No. 24-10418 (____)
                                                        :
                  Debtors.¹                             :   (Jointly Administered)
                                                        :
                                                        :
                                                        :
------------------------------------------------------- x
```

### NOTICE OF (I) COMMENCEMENT
### OF CHAPTER 11 CASES, (II) COMBINED HEARING ON
### DISCLOSURE STATEMENT, PREPACKAGED JOINT CHAPTER 11
### PLAN, AND RELATED MATTERS, (III) OBJECTION DEADLINES,
### AND (IV) SUMMARY OF PREPACKAGED JOINT CHAPTER 11 PLAN

**NOTICE IS HEREBY GIVEN** as follows:

JOANN Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the "***Debtors***"), each commenced a case under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***") on March 18, 2024 (the "***Petition Date***").

Before the Petition Date, on March 16, 2024, the Debtors commenced solicitation of the *Prepackaged Joint Plan of Reorganization of JOANN Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, the "***Plan***")[2] attached as <u>Exhibit A</u> to the proposed *Disclosure Statement for Prepackaged Joint Plan of Reorganization of JOANN Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code. Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the solicitation website maintained by the Debtors' solicitation agent, Kroll Restructuring Administration LLC (the "***Solicitation Agent***" or "***Kroll***"), at https://cases.ra.kroll.com/JOANN. Copies of the Plan and Disclosure Statement may also be obtained by calling the Solicitation Agent

---

[1]    The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, OH 44236.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

at (844) 488-7837 (U.S. / Canada, toll-free) or (646) 777-2384 (International, toll), or by emailing the Solicitation Agent at joanninfo@ra.kroll.com.

## Information Regarding Plan

The Debtors commenced solicitation of votes to accept the Plan from Holders of Class 2 (ABL Claims), Class 3 (FILO Claims), and Class 4 (Term Loan Claims) of record as of February 28, 2024. Only Holders of Claims in Class 2, Class 3, and Class 4 are entitled to vote to accept or reject the Plan. All other Classes of Claims were either deemed to accept or reject the Plan and, therefore, are not entitled to vote. **The deadline for the submission of votes to accept or reject the Plan is April 8, 2024 at 4:00 p.m. (prevailing Eastern Time).**

The Debtors are proposing a restructuring that, pursuant to the Plan, will provide substantial benefits to the Debtors and all of their stakeholders. Upon its full implementation, the Plan will reduce the Debtors' total funded debt from approximately $1.06 billion to approximately $555.5 million. **Importantly, the Plan will not impair the Company's non-financial creditors, including general unsecured creditors such as vendors and suppliers—in other words, under the Plan, vendors and suppliers will be paid or otherwise satisfied in full in the ordinary course and on customary terms.** The restructuring will allow the Debtors' management team to focus on operational performance and value creation, execute on growth initiatives, and continue to serve as a leading national retailer of sewing, arts and crafts, and select home décor products.

The Bankruptcy Court has scheduled a combined hearing to consider the adequacy of the Disclosure Statement and any objections thereto and to consider confirmation of the Plan and any objections thereto to be held before the Bankruptcy Court, 824 North Market Street, Wilmington, Delaware, 19801, **on April 25, 2024 at a time and courtroom to be identified on the agenda for such hearing and the Solicitation Agent's website set forth below** (the "***Combined Hearing***"). The time and location of the Combined Hearing may also be obtained by contacting the undersigned proposed counsel to the Debtors. The Combined Hearing may be adjourned from time to time without further notice other than by filing a notice on the Bankruptcy Court's docket indicating such adjournment and/or announcement of the adjournment date or dates at the Combined Hearing. The adjourned dates will be available on the electronic case filing docket and the Solicitation Agent's website: https://cases.ra.kroll.com/JOANN.

The Bankruptcy Court has set the deadline for filing objections to the adequacy of the Disclosure Statement or confirmation of the Plan as **April 18, 2024, at 4:00 p.m. (prevailing Eastern Time)** (the "***Objection Deadline***"). Any objections to the Disclosure Statement or the Plan must be: (a) in writing, (b) filed with the Clerk of the Bankruptcy Court together with proof of service thereof, (c) set forth the name of the objecting party, and the nature and amount of any Claim or Interest asserted by the objecting party against the Debtors' estates or property of the Debtors; (d) state the legal and factual basis for such objection; and (e) conform to the applicable Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***").

In addition to being filed with the Clerk of the Bankruptcy Court, any such objections should be served upon the following parties in accordance with the Local Rules:

| | |
|---|---|
| *Debtors*<br>JOANN Inc.<br>5555 Darrow Road<br>Hudson, Ohio 44236<br>Attn: Ann Aber | *Office of the U.S. Trustee*<br>Office of the United States Trustee for the District of Delaware<br>844 King Street<br>Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801<br><br>Attn: Timothy J. Fox, Jr. and Malcolm M. Bates<br><br>Email:  timothy.fox@usdoj.gov<br>    malcolm.m.bates@usdoj.gov |
| *Proposed Counsel to the Debtors*<br>Latham & Watkins LLP<br>355 South Grand Avenue, Suite 100<br>Los Angeles, California 90071<br>Attn: Ted A. Dillman and Nicholas J. Messana<br><br>Email:  ted.dillman@lw.com<br>    nicholas.messana@lw.com<br><br><br>and<br><br><br>Latham & Watkins LLP<br>330 North Wabash Avenue, Suite 2800<br>Chicago, Illinois 60611<br>Attn: Ebba Gebisa<br><br>Email:  ebba.gebisa@lw.com | *Proposed Co-Counsel to the Debtors*<br>Young Conaway Stargatt & Taylor LLP<br><br>Rodney Square<br><br>1000 North King Street<br><br>Wilmington, Delaware 19801<br><br>Attn: Kara Hammond Coyle, Shane M. Reil, and Rebecca L. Lamb<br><br>Email:  kcoyle@ycst.com<br>    sreil@ycst.com<br>    rlamb@ycst.com |
| *Counsel to the Ad Hoc Group*<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, New York 10166<br>Attn: Scott J. Greenberg, Joshua Brody, and Kevin Liang<br><br>Email:  sgreenberg@gibsondunn.com<br>    jbrody@gibsondunn.com<br>    kliang@gibsondunn.com | *Co-Counsel to the Ad Hoc Group*<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 North Market Street, 16th Floor, P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Attn: Robert Dehney, Matthew Harvey, and Brenna Dolphin<br><br>Email:  rdehney@morrisnichols.com<br>    mharvery@morrisnichols.com<br>    bdolphin@morrisnichols.com |
| *Counsel to the ABL Facility Agent*<br>Morgan, Lewis & Bockius LLP<br>One Federal Street<br>Boston, Massachusetts 02110<br>Attn: Marjorie S. Crider and Christopher L. Carter<br><br>Email:  marjorie.crider@morganlewis.com<br>    christopher.carter@morganlewis.com | *Co-Counsel to the ABL Facility Agent*<br>Reed Smith LLP<br>1201 Market Street, Suite 1500<br>Wilmington, Delaware 19801<br>Attn: Kurt F. Gwynne<br><br>Email:  kgwynne@reedsmith.com |
| *Counsel to the FILO Term Loan Agent*<br>Choate, Hall & Stewart LLP<br>Two International Place<br>Boston, Massachusetts 02110<br>Attn: John F. Ventola, Seth D. Mennillo, and Jonathan Marshall<br><br>Email:  jventola@choate.com | *Co-Counsel to the FILO Term Loan Agent*<br>DLA Piper LLP (US)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801<br>Attn: Stuart M. Brown<br><br>Email:  stuart.brown@dlapiper.com |

| smennillo@choate.com<br>jmarshall@choate.com | |
|---|---|
| ***Counsel to Certain FILO Lenders***<br>Proskauer Rose LLP<br>Eleven Times Square<br>New York, New York 10036<br>Attn:  Andrew Bettwy and Megan Volin<br><br>Email:    abettwy@proskauer.com<br>            mvolin@proskauer.com<br><br>and<br><br>Proskauer Rose LLP<br>One International Place<br>Boston, Massachusetts<br>Attn:  Charles Dale<br><br>Email:    cdale@proskauer.com | ***Counsel to the Consenting Stockholder Parties***<br>Richards, Layton & Finger<br>One Rodney Square<br><br>920 North King Street<br>Wilmington, Delaware 19801<br>Attn:  Mark D. Collins and Michael J. Merchant<br><br>Email:    collins@rlf.com<br>            merchant@rlf.com |

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AT THE COMBINED HEARING.**

## Notice of Assumption of Executory Contracts and
## Unexpired Leases of Debtors and Related Procedures

Please take notice that, in accordance with Article V.A of the Plan and sections 365 and 1123 of the Bankruptcy Code, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease will be deemed assumed (the "***Assumed Contracts and Leases***") unless it:  (a) is identified on the Rejected Executory Contract/Unexpired Lease List (which, if any, will initially be filed with the Court as part of the Plan Supplement on or before April 11, 2024) as an Executory Contract or Unexpired Lease to be rejected, (b) is the subject of a separate motion or notice to reject pending as of the Effective Date, or (c) previously expired or terminated pursuant to its own terms (disregarding any terms the effect of which is invalidated by the Bankruptcy Code).  The Debtors are serving this Combined Notice on all parties to Executory Contracts and Unexpired Leases, reflecting the Debtors' intention to assume the Executory Contracts and Unexpired Leases in connection with the Plan and indicating that the Debtors or the Reorganized Debtors, as applicable, will cure any defaults under the Executory Contracts and Unexpired Leases.

As provided in Article V.B of the Plan, any monetary default under the Assumed Contracts and Leases will be cured by payment in Cash on the Effective Date or as soon as reasonably practicable thereafter.  If there is a dispute with respect to assumption of an Executory Contract or Unexpired Lease under the Plan then the Bankruptcy Court will hear such dispute before assumption becoming effective, subject to the limitations set forth in the Plan.

**If a dispute arises regarding the amount of any payment needed to cure outstanding defaults under any Executory Contract or Unexpired Lease, the payment required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order(s) resolving the dispute and approving the assumption and will not prevent or delay implementation of the Plan or the occurrence of the Effective Date.**

### Summary of the Plan

Solicitation of votes on the Plan commenced before the Petition Date. The following chart summarizes the treatment provided by the Plan to each Class of Claims and Interests:

| Class | Claim / Interest | Status | Voting Rights | Approx. Percentage Recovery[3] |
|---|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept | Estimated Percentage Recovery: 100% |
| *2* | *ABL Claims* | *Impaired* | *Entitled to Vote* | *Estimated Percentage Recovery: 100%* |
| *3* | *FILO Claims* | *Impaired* | *Entitled to Vote* | *Estimated Percentage Recovery: 100%* |
| *4* | *Term Loan Claims* | *Impaired* | *Entitled to Vote* | *Estimated Percentage Recovery: 1.1%* |
| 5 | General Unsecured Claims | Unimpaired | Presumed to Accept | Estimated Percentage Recovery: 100% |
| 6 | Subordinated Claims | Impaired | Deemed to Reject | Estimated Percentage Recovery: 0% |
| 7 | Intercompany Claims | Unimpaired or Impaired | Presumed to Accept or Deemed to Reject | Estimated Percentage Recovery: N/A |
| 8 | Intercompany Interests | Unimpaired or Impaired | Presumed to Accept or Deemed to Reject | Estimated Percentage Recovery: N/A |
| 9 | Existing Equity Interests | Impaired | Deemed to Reject | Estimated Percentage Recovery: 0% |

---

[3]    For purposes of the projected recoveries under the Plan set forth herein, the Debtors and the Ad Hoc Group stipulated to a total enterprise value of $825,000,000. The Debtors investment banker conducted a valuation analysis, and the stipulated total enterprise value is within the valuation range that resulted from such valuation analysis.

**<u>Non-Voting Status of Holders of Certain Claims and Interests</u>**

As set forth above, certain holders of Claims and Interests are **not** entitled to vote on the Plan. As a result, such parties did not receive any ballots and other related solicitation materials to vote on the Plan. Claims in Classes 1 and 5 are Unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to accept the Plan. Claims in Classes 7 and 8 are either Unimpaired or Impaired under the Plan and are conclusively presumed to accept or reject the Plan. Claims and Interests in Classes 6 and 9 (collectively with Classes 1, 5, 7, and 8, the "***Non-Voting Classes***") are Impaired under the Plan with no recovery and, pursuant to section 1126(g) of the Bankruptcy Code, are deemed to reject the Plan. In light of their presumed acceptance or rejection of the Plan, none of the Holders of Claims and Interests in the Non-Voting Classes were solicited to vote on the Plan. Instead, the creditors and Holders of Claims and Interests in the Non-Voting Classes (other than Holders of Intercompany Claims and Intercompany Interests) will receive a Non-Voting Status Notice. Because the Intercompany Claims and Intercompany Interests are all held by the Debtors or affiliates of the Debtors, the Debtors did not provide the Holders in Class 7 (Intercompany Claims) or Class 8 (Intercompany Interests) with a Non-Voting Status Notice (or a Solicitation Package). Further, Holders of Claims or Interests in the Non-Voting Classes can access the Disclosure Statement and the Plan at no cost on the website maintained by the Solicitation Agent at https://cases.ra.kroll.com/JOANN.

*[Remainder of page left intentionally blank]*

**NOTICE REGARDING CERTAIN RELEASE, EXCULPATION
AND INJUNCTION PROVISIONS IN THE PLAN**

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND
CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION,
AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**Article IX.B.** _**Releases by the Debtors**_

**EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE COMBINED ORDER, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, IS AND IS DEEMED TO BE, FOREVER AND UNCONDITIONALLY RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED BY EACH DEBTOR, REORGANIZED DEBTOR, AND THE ESTATES FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (1) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (2) THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (3) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS, (4) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY, (5) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, (6) INTERCOMPANY TRANSACTIONS, (7) THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THE ABL FACILITY DOCUMENTS, THE TERM LOAN DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITIES DOCUMENTS (AND ANY FINANCING PERMITTED THEREUNDER), THE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION, (8) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES**

**PURSUANT TO THE PLAN, (9) THE DISTRIBUTION, INCLUDING ANY DISBURSEMENTS MADE BY A DISTRIBUTION AGENT, OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR (10) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE;** *PROVIDED,* **THAT THE DEBTORS DO NOT RELEASE CLAIMS OR CAUSES OF ACTION ARISING OUT OF, OR RELATED TO, ANY ACT OR OMISSION OF A RELEASED PARTY THAT IS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT (IT BEING AGREED THAT ANY RELEASED PARTIES' CONSIDERATION, APPROVAL, OR RECEIPT OF ANY DISTRIBUTION DID NOT ARISE FROM OR RELATE TO ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT). NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (1) ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN OR (2) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION.**

**ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THE PLAN; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE DEBTORS' ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.**

**Article IX.C.** ___Releases by Holders of Claims and Interests___

**EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE COMBINED ORDER, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS THEREBY CONFIRMED, EACH RELEASING PARTY, IN EACH CASE ON BEHALF OF ITSELF**

**AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, HAS AND IS DEEMED TO HAVE, FOREVER AND UNCONDITIONALLY, RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED EACH DEBTOR, REORGANIZED DEBTOR, AND RELEASED PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (1) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (2) THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (3) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS, (4) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY, (5) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, (6) INTERCOMPANY TRANSACTIONS, (7) THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THE ABL FACILITY DOCUMENTS, THE TERM LOAN DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITIES DOCUMENTS (AND ANY FINANCING PERMITTED THEREUNDER), THE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION, (8) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, (9) THE DISTRIBUTION, INCLUDING ANY DISBURSEMENTS MADE BY A DISTRIBUTION AGENT, OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR (10) ANY OTHER ACT, OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATING TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE; *PROVIDED*, THAT THE RELEASING PARTIES DO NOT RELEASE CLAIMS OR CAUSES OF ACTION ARISING OUT OF, OR RELATED TO, ANY ACT OR OMISSION OF A RELEASED PARTY THAT IS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT (IT BEING AGREED THAT ANY RELEASED PARTIES' CONSIDERATION, APPROVAL, OR RECEIPT OF ANY DISTRIBUTION DID NOT**

**ARISE FROM OR RELATE TO ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT). NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (1) ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN OR (2) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION.**

**ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS: (1) CONSENSUAL; (2) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (3) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THE PLAN; (4) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE; (5) IN THE BEST INTERESTS OF THE DEBTORS AND THE ESTATES; (6) FAIR, EQUITABLE, AND REASONABLE; (7) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (8) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

Article IX.D.  _**Exculpation**_

**EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMITTED BY LAW, THE EXCULPATED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY PERSON OR ENTITY FOR ANY CLAIMS OR CAUSES OF ACTION ARISING BEFORE OR ON THE EFFECTIVE DATE FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO, FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR EFFECTING THE CONFIRMATION OR CONSUMMATION (AS APPLICABLE) OF THE PLAN, THE TRANSACTION SUPPORT AGREEMENT, AND THE DISCLOSURE STATEMENT INCLUDING ANY DISBURSEMENTS MADE BY A DISTRIBUTION AGENT IN CONNECTION WITH THE PLAN, THE DISCLOSURE STATEMENT, THE DEFINITIVE DOCUMENTS, THE PLAN SUPPLEMENT, THE ABL FACILITY DOCUMENTS, THE TERM LOAN DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITIES DOCUMENTS (AND ANY FINANCING PERMITTED THEREUNDER), OR ANY RESTRUCTURING TRANSACTION, CONTRACT,**

INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR OR ANY OTHER POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTORS, THE APPROVAL OF THE DISCLOSURE STATEMENT OR CONFIRMATION OR CONSUMMATION OF THE PLAN; *PROVIDED*, THAT THE FOREGOING PROVISIONS OF THE EXCULPATION SHALL NOT OPERATE TO WAIVE OR RELEASE:  (1) ANY CLAIMS OR CAUSES OF ACTION ARISING FROM WILLFUL MISCONDUCT, ACTUAL FRAUD, OR GROSS NEGLIGENCE OF SUCH APPLICABLE EXCULPATED PARTY AS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION; AND/OR (2) THE RIGHTS OF ANY PERSON OR ENTITY TO ENFORCE THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, INDENTURES, AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN OR ASSUMED PURSUANT TO THE PLAN OR FINAL ORDER OF THE BANKRUPTCY COURT; *PROVIDED*, FURTHER, THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS RESPECTIVE DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE ABOVE REFERENCED DOCUMENTS, ACTIONS, OR INACTIONS.

THE EXCULPATED PARTIES HAVE, AND UPON CONSUMMATION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.

THE FOREGOING EXCULPATION SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT, OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION, OR APPROVAL OF ANY PERSON OR ENTITY.

Article IX.E.  *Permanent Injunction*

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE COMBINED ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (1) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE;

**(4) ASSERTING A RIGHT OF SETOFF OR SUBROGATION OF ANY KIND; OR (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED, OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE COMBINED ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED). ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

[*Remainder of page left intentionally blank*]

## Relevant Definitions Related to Release and Exculpation Provision:

"***Causes of Action***" means any action, Claim, cross-claim, third-party claim, cause of action, controversy, dispute demand, right, lien, indemnity, contribution, interest, guaranty, suit, obligation, liability, lost, debt, fee or expense, damage, judgment, account, defense, offset, power, privilege, proceeding, franchise, remedy, and license of any kind or character whatsoever, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, as applicable, in contract or in tort, in law (whether local, state, or federal U.S. or non-U.S. Law) or in equity, or pursuant to any other theory of local, state, or federal U.S. or non-U.S. Law.  For the avoidance of doubt, "Causes of Action" include:  (a) any right of setoff, counterclaim, or recoupment; (b) any Claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, actual or constructive fraudulent transfer or fraudulent conveyance or voidable transaction or similar Law, violation of local, state, or federal or non-U.S. Law or breach of any duty imposed by Law or in equity, including securities Laws, negligence, and gross negligence; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code or similar local, state, or federal U.S. or non-U.S. Law; (d) any Claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any Avoidance Actions relating to or arising from any state or foreign Law pertaining to any Avoidance Action, including preferential transfer, actual or constructive fraudulent transfer, fraudulent conveyance, or similar Claim; (f) the right to object to or otherwise contest Claims or Interests; and  (g) any "lender liability" or equitable subordination Claims or defenses.

"***Claim***" means any claim, as defined in section 101(5) of the Bankruptcy Code.  Except where otherwise provided in context, "Claim" refers to such a claim against any of the Debtors.

"***Debtor Release***" means the releases set forth in Article IX.B of the Plan.

"***Exculpated Party***" means, each in its capacity as such, (a) each of the Debtors and, (b) solely to the extent they are Estate fiduciaries, the Debtors' Related Parties.

"***Release Opt-Out Form***" means the form to be provided to certain Holders of Claims through which such Holders may elect to affirmatively opt out of the Third-Party Release.

"***Released Party***" means, collectively, each of, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each Non-Debtor Affiliate; (d) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers, and proxyholders; (e) each Consenting Stakeholder; (f) each Prepetition Agent; (g) each ABL Lender; (h) each FILO Lender; (i) the DIP Agent; (j) each DIP Lender; (k) the Exit Facility Agent; (l) each lender under the Exit Facilities; (m) each Additional Financing Party; (n) each Releasing Party; and (o) each Related Party of each Entity in clauses (a) through (m); *provided*, that, in each case, an Entity shall not be a Released Party if it (i) elects to opt out of the Third-Party Release as provided on its respective Release Opt-Out Form or (ii) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the Third-Party Release that is not resolved before Confirmation; *provided, further*, that, for the avoidance of doubt, any opt-out election made by a Consenting Stakeholder or an Additional Financing Party shall be void *ab initio*.

"***Releasing Parties***" means, collectively, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Non-Debtor Affiliate; (d) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers, and proxyholders; (e) each Consenting Stakeholder; (f) each Prepetition Agent; (g) each ABL Lender; (h) each FILO Lender; (i) the DIP Agent; (j) each DIP Lender; (k) the Exit Facility Agent; (l) each lender under the Exit Facilities; (m) each

Additional Financing Party; (n) each Holder of a Claim that is Unimpaired under this Plan that does not elect to opt out of the Releases contained in this Plan; (o) each Holder of a Claim that is entitled to vote on this Plan and either (i) votes to accept this Plan, (ii) abstains from voting on this Plan and does not elect to opt out of the Releases contained in this Plan, or (iii) votes to reject this Plan and does not elect to opt out of the Releases contained in this Plan; and (p) each Related Party of each Entity in clauses (a) through (o); *provided*, that, for the avoidance of doubt, any opt-out election made by a Consenting Stakeholder or an Additional Financing Party shall be void *ab initio*.

"***Third-Party Release***" means the releases given by the Releasing Parties to the Released Parties in Article IX.C of the Plan.

*[Remainder of page left intentionally blank]*

## Section 341(a) Meeting

The Debtors intend to request that the Bankruptcy Court defer a meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "*Section 341(a) Meeting*") and **that the Section 341(a) Meeting not be convened if the Plan is confirmed by May 25, 2024.**  If the Section 341(a) Meeting will be convened, the Debtors will file and serve on the parties on whom they served this notice and any other parties entitled to notice pursuant to the Bankruptcy Rules, and post on the website at https://cases.ra.kroll.com/JOANN not less than twenty-one (21) days before the date scheduled for such meeting, a notice of, among other things, the date, time, and place of the Section 341(a) Meeting.  The meeting may be adjourned or continued from time to time by notice at the meeting, without further notice to creditors.

Dated: _____, 2024

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Michael R. Nestor (DE No. 3526)
Kara Hammond Coyle (DE No. 4410)
Shane M. Reil (DE No. 6195)
Rebecca L. Lamb (No. 7223)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:      (302) 571-6600
Email:          mnestor@ycst.com
                kcoyle@ycst.com
                sreil@ycst.com
                rlamb@ycst.com

**LATHAM & WATKINS LLP**

George A. Davis (admitted *pro hac vice*)
Alexandra M. Zablocki (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone:      (212) 906-1200
Email:          george.davis@lw.com
                alexandra.zablocki@lw.com

Ted A. Dillman (admitted *pro hac vice*)
Nicholas J. Messana (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone:      (213) 485-1234
Email:          ted.dillman@lw.com
                nicholas.messana@lw.com

Ebba Gebisa (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 27017
Telephone:      (312) 876-7700
Email:          ebba.gebisa@lw.com

*Proposed Counsel for Debtors and Debtors-in-Possession*

31441493.1

## Exhibit 2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- x
                                  :

In re:                              :    Chapter 11

                                :

JOANN INC., *et al.*,            :    Case No. 24-10418 (____)

                                :

          Debtors. [1]          :    (Jointly Administered)

                                :

                                :
-------------------------------------------------------- x

## NOTICE OF (I) COMMENCEMENT
## OF CHAPTER 11 CASES, (II) COMBINED HEARING ON
## DISCLOSURE STATEMENT, PREPACKAGED JOINT CHAPTER 11
## PLAN, AND RELATED MATTERS, AND (III) OBJECTION DEADLINES

**PLEASE TAKE NOTICE THAT** JOANN Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the "***Debtors***"), each commenced a case under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***") on March 18, 2024 (the "***Petition Date***").

**PLEASE TAKE FURTHER NOTICE THAT** before the Petition Date, on March 16, 2024, the Debtors commenced solicitation on the *Prepackaged Joint Plan of Reorganization of JOANN Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, the "***Plan***")[2] attached as <u>Exhibit A</u> to the proposed *Disclosure Statement for Prepackaged Joint Plan of Reorganization of JOANN Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.  Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the solicitation website maintained by the Debtors' solicitation agent, Kroll Restructuring Administration LLC (the "***Solicitation Agent***"), at https://cases.ra.kroll.com/JOANN.  Copies of the Plan and Disclosure Statement may also be obtained by calling the Solicitation Agent at (844) 488-7837 (U.S. / Canada, toll-free) or (646) 777-2384 (International, toll), or by emailing the Solicitation Agent at joanninfo@ra.kroll.com.

**PLEASE TAKE FURTHER NOTICE THAT** the Bankruptcy Court has scheduled a combined hearing to consider the adequacy of the Disclosure Statement and any objections thereto

---

[1]    The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); and Jo-Ann Stores Support Center, Inc. (5027).  The Debtors' mailing address is 5555 Darrow Road, Hudson, OH 44236.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

and to consider confirmation of the Plan and any objections thereto to be held before the Bankruptcy Court, 824 North Market Street, Wilmington, Delaware, 19801, **on April 25, 2024 at a time and courtroom to be identified on the agenda for such hearing and the Solicitation Agent's website set forth below** (the "***Combined Hearing***").   The time and location of the Combined Hearing may also be obtained by contacting the undersigned proposed counsel to the Debtors.  The Combined Hearing may be adjourned from time to time without further notice other than by filing a notice on the Bankruptcy Court's docket indicating such adjournment and/or announcement of the adjournment date or dates at the Combined Hearing.  The adjourned dates will be available on the electronic case filing docket and the Solicitation Agent's website: https://cases.ra.kroll.com/JOANN.

## CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN

**PLEASE TAKE FURTHER NOTICE THAT** the Bankruptcy Court has set the deadline for filing objections to the adequacy of the Disclosure Statement or confirmation of the Plan as **April 18, 2024, at 4:00 p.m. (prevailing Eastern Time)** (the "***Objection Deadline***").   Any objections to the Disclosure Statement and/or the Plan must be:  (a) in writing, (b) filed with the Clerk of the Bankruptcy Court together with proof of service thereof, (c) set forth the name of the objecting party, and the nature and amount of any Claim or Interest asserted by the objecting party against the Debtors' estates or property of the Debtors; (d) state the legal and factual basis for such objection; and (e) conform to the applicable Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***").  In addition to being filed with the Clerk of the Bankruptcy Court, any such objections should be served upon the following parties in accordance with the Local Rules:

| *Debtors* | *Office of the U.S. Trustee* |
|---|---|
| JOANN Inc.<br>5555 Darrow Road<br>Hudson, Ohio 44236<br>Attn:  Ann Aber | Office of the United States Trustee for the District of Delaware<br>844 King Street<br>Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801<br>Attn: Timothy J. Fox, Jr. and Malcolm M. Bates<br>Email:   timothy.fox@usdoj.gov<br><br>malcolm.m.bates@usdoj.gov |
| *Proposed Counsel to the Debtors* | *Proposed Co-Counsel to the Debtors* |
| Latham & Watkins LLP<br>355 South Grand Avenue, Suite 100<br>Los Angeles, California 90071<br>Attn:  Ted A. Dillman and Nicholas J. Messana<br>Email:   ted.dillman@lw.com<br><br>nicholas.messana@lw.com<br><br><br>and<br><br><br>Latham & Watkins LLP<br>330 North Wabash Avenue, Suite 2800 | Young Conaway Stargatt & Taylor LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Attn:  Kara Hammond Coyle, Shane M. Reil, and Rebecca L. Lamb<br>Email:   kcoyle@ycst.com<br><br>sreil@ycst.com<br><br>rlamb@ycst.com |

| | |
|---|---|
| Chicago, Illinois 60611<br>Attn: Ebba Gebisa<br>Email: ebba.gebisa@lw.com | |
| ***Counsel to the Ad Hoc Group***<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, New York 10166<br>Attn: Scott J. Greenberg, Joshua Brody, and Kevin Liang<br>Email: sgreenberg@gibsondunn.com<br>jbrody@gibsondunn.com<br>kliang@gibsondunn.com | ***Co-Counsel to the Ad Hoc Group***<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 North Market Street, 16th Floor, P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Attn: Robert Dehney, Matthew Harvey, and Brenna Dolphin<br>Email: rdehney@morrisnichols.com<br>mharvery@morrisnichols.com<br>bdolphin@morrisnichols.com |
| ***Counsel to the ABL Facility Agent***<br>Morgan, Lewis & Bockius LLP<br>One Federal Street<br>Boston, Massachusetts 02110<br>Attn: Marjorie S. Crider and Christopher L. Carter<br>Email: marjorie.crider@morganlewis.com<br>christopher.carter@morganlewis.com | ***Co-Counsel to the ABL Facility Agent***<br>Reed Smith LLP<br>1201 Market Street, Suite 1500<br>Wilmington, Delaware 19801<br>Attn: Kurt F. Gwynne<br>Email: kgwynne@reedsmith.com |
| ***Counsel to the FILO Term Loan Agent***<br>Choate, Hall & Stewart LLP<br>Two International Place<br>Boston, Massachusetts 02110<br>Attn: John F. Ventola, Seth D. Mennillo, and Jonathan Marshall<br>Email: jventola@choate.com<br>smennillo@choate.com<br>jmarshall@choate.com | ***Co-Counsel to the FILO Term Loan Agent***<br>DLA Piper LLP (US)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801<br>Attn: Stuart M. Brown<br>Email: stuart.brown@dlapiper.com |
| ***Counsel to Certain FILO Lenders***<br>Proskauer Rose LLP<br>Eleven Times Square<br>New York, New York 10036<br>Attn: Andrew Bettwy and Megan Volin<br>Email: abettwy@proskauer.com<br>mvolin@proskauer.com<br><br>and<br><br>Proskauer Rose LLP<br>One International Place<br>Boston, Massachusetts<br>Attn: Charles Dale<br>Email: cdale@proskauer.com | ***Counsel to the Consenting Stockholder Parties***<br>Richards, Layton & Finger<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware 19801<br>Attn: Mark D. Collins and Michael J. Merchant<br>Email: collins@rlf.com<br>merchant@rlf.com |

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED IN ACCORDANCE WITH THIS NOTICE IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AT THE COMBINED HEARING.**

**ARTICLE IX OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE IX.C CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

Dated: _____, 2024

<table>
<tr><td>

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Michael R. Nestor (DE No. 3526)
Kara Hammond Coyle (DE No. 4410)
Shane M. Reil (DE No. 6195)
Rebecca L. Lamb (No. 7223)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600
Email:        mnestor@ycst.com
                 kcoyle@ycst.com
                 sreil@ycst.com
                 rlamb@ycst.com

</td><td>

**LATHAM & WATKINS LLP**

George A. Davis (admitted *pro hac vice*)
Alexandra M. Zablocki (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:        george.davis@lw.com
                 alexandra.zablocki@lw.com

Ted A. Dillman (admitted *pro hac vice*)
Nicholas J. Messana (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone:  (213) 485-1234
Email:        ted.dillman@lw.com
                 nicholas.messana@lw.com

Ebba Gebisa (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 27017
Telephone:  (312) 876-7700
Email:        ebba.gebisa@lw.com

</td></tr>
</table>

*Proposed Counsel for Debtors and Debtors-in-Possession*

## Exhibit 3A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------- x
                           :

In re:                       :    Chapter 11
                           :

JOANN INC., *et al.*,       :    IMPORTANT:  No chapter 11 case has been
                           :    commenced as of the date of distribution of this ballot.
        Debtors.[1]        :    This ballot is a prepetition solicitation of your vote on
                           :    a prepackaged plan of reorganization.
                           :
                           :    If chapter 11 cases are commenced, the Debtors will
-------------------------------------------------------- x  request joint administration of such cases.

**BALLOT FOR HOLDERS IN**

**CLASS 2 (ABL CLAIMS)**

**FOR VOTING TO ACCEPT OR REJECT THE JOINT**
**PREPACKAGED PLAN OF REORGANIZATION OF JOANN INC. AND**
**ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS**
> **APRIL 8, 2024 AT 4:00 P.M. (PREVAILING EASTERN TIME)**

      JOANN Inc. and each of the debtors and debtors-in-possession in the above-captioned cases (collectively, the "***Debtors***") are sending this ballot (the "***Ballot***") in order to solicit your vote to accept or reject the *Prepackaged Joint Plan of Reorganization of JOANN Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code*, dated March 16, 2024 (as may be amended, modified, or supplemented from time to time, the "***Plan***").[2]  The Plan is attached as Exhibit A to the proposed *Disclosure Statement for Prepackaged Joint Plan of Reorganization of JOANN Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which accompanies this Ballot and has also been posted on the Debtors' case information website (located at https://cases.ra.kroll.com/JOANN).  The Disclosure Statement provides information to assist you in deciding how to vote on the Plan.  The Debtors' case information website allows Holders to electronically submit a vote on the Plan.  On the date on which the Chapter 11 Cases (as defined below) are commenced (the "***Petition Date***"), the case information website will be

---

[1]    The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); and Jo-Ann Stores Support Center, Inc. (5027).  The Debtors' mailing address is 5555 Darrow Road, Hudson, OH 44236.

[2]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Plan.

updated to include important information, hearing dates, and other key deadlines, as well as the docket for the Chapter 11 Cases (which will be available for review and download, free of charge).

The Disclosure Statement provides information to assist Holders of Claims in the Voting Classes in deciding whether to accept or reject the Plan.  If you have not received or wish to obtain additional copies of the Disclosure Statement, please contact the Debtors' solicitation agent, Kroll Restructuring Administration LLC (the "***Solicitation Agent***"), via email at joanninfo@ra.kroll.com.

This Ballot is being submitted to Holders, as of February 28, 2024 (the "***Voting Record Date***"), of any ABL Claims.  "***ABL Claims***" include any and all Claims arising under, derived from, or based upon the ABL Facility (as defined below) including, without limitation, all Revolving Obligations (as defined in the ABL Credit Agreement) and all Prepetition Revolving Obligations (as defined in the DIP/Cash Collateral Orders).  If you hold Claims in more than one Class, you will receive a separate Ballot for each Class in which you are entitled to vote. In order for your vote in Class 2 to count, you must either (a) complete and submit your vote through the Solicitation Agent's E-Ballot platform or (b) complete and return this paper Ballot in accordance with the instructions set forth herein.

The Debtors have not yet filed for relief under chapter 11 of the Bankruptcy Code and no court has approved the Disclosure Statement or the Plan.  As described in the Disclosure Statement, the Debtors intend to commence cases (the "***Chapter 11 Cases***") under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") following the commencement of this solicitation. If the Debtors commence the Chapter 11 Cases, the Plan may be confirmed by the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***") if:  (a) it is accepted by at least two-thirds (2/3) of the aggregate principal amount and more than one-half (1/2) in number of the Holders of ABL Claims voting in Class 2, FILO Claims voting in Class 3, and/or Term Loan Claims voting in Class 4; and (b) the Plan otherwise satisfies the applicable requirements of section 1129 of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, the Plan will be binding on all Holders of ABL Claims whether or not a Holder of an ABL Claim returns a Ballot or votes to reject the Plan.

This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than (a) to cast a vote to accept or reject the Plan and/or (b) to opt out of the Third-Party Releases (as defined below).

If you have any questions regarding the Ballot or how to properly complete this Ballot, please contact the Solicitation Agent via email at joannballots@ra.kroll.com.

*[Remainder of page left intentionally blank]*

31441488.1

**IMPORTANT NOTICE REGARDING TREATMENT
FOR HOLDERS OF CLASS 2 ABL CLAIMS**

As described in more detail in the Disclosure Statement and Plan, if the Chapter 11 Cases are commenced, the Plan is confirmed, and the Effective Date occurs, then (except to the extent that a Holder of an Allowed ABL Claim agrees to less favorable treatment) on the Effective Date, either (a) in the event the Debtors elect to refinance the ABL Claims (which election may be made only if the Debtors are also refinancing the FILO Claims and with the consent of the Required DIP Lenders), each Holder of an Allowed ABL Claim shall receive payment in full in Cash on the Effective Date in the Allowed amount of such ABL Claim (including the replacement or cash collateralization of all issued and undrawn letters of credit in accordance with and in the amounts specified under the ABL Credit Agreement) or (b) in the event clause (a) is not applicable, (i) each Holder of an Allowed ABL Claim shall receive its Pro Rata Share of refinanced loans under the Exit ABL/FILO Facility Amendment in an amount equal to the principal amount of the Allowed ABL Claims held by such Holder as of the Effective Date, (ii) each Holder of an Allowed ABL Claim shall receive Cash in an amount equal to the accrued but unpaid interest payable to such Holder under the ABL Credit Agreement as of the Effective Date, (iii) Allowed ABL Claims consisting of letters of credit shall be deemed to be letters of credit issued under the Exit ABL/FILO Facility Amendment, (iv) other Allowed ABL Claims shall be deemed to be obligations of the same type under the Exit ABL Loans and Exit FILO Loans, and (v) all Allowed ABL Claims shall continue to constitute obligations of the Debtors on the Effective Date; *provided* that the treatment pursuant to this clause (b) shall apply only upon the Debtors' satisfaction of the exit conditions enumerated in the ABL/FILO Exit Commitment Letters.

ABL Claims shall be deemed Allowed in the aggregate principal amount of $286,392,067.52, plus (a) any accrued but unpaid fees and interest in respect thereof through and including the Effective Date, (b) outstanding letters of credit, (c) amounts drawn under letters of credit, (d) the amount of all other "Revolving Obligations" (as defined in the ABL Credit Agreement), and (e) fees and other expenses arising under or in connection with the ABL Facility (including with respect to any fees, expenses or other amounts owed on account of the ABL Facility pursuant to the DIP/Cash Collateral Orders).

*[Remainder of page left intentionally blank]*

## SCHEDULE OF CERTAIN RELEVANT DEFINED TERMS

"***ABL Claims***" means any and all Claims arising under, derived from, or based upon the ABL Facility including, without limitation, all Revolving Obligations (as defined in the ABL Credit Agreement) and all Prepetition Revolving Obligations (as defined in the DIP/Cash Collateral Orders).

"***ABL Credit Agreement***" means that certain Amended and Restated Credit Agreement, dated as of October 21, 2016, as amended by that certain First Amendment on November 25, 2020, that certain Second Amendment on December 22, 2021, and that certain Third Amendment, dated as of March 10, 2023, as amended, restated, amended and restated, modified, or supplemented from time to time in accordance with the terms thereof.

"***ABL Facility***" means the senior secured asset based revolving credit facility under the ABL Credit Agreement.

"***ABL Facility Agent***" means Bank of America, N.A., in its capacity as administrative agent and collateral agent under the ABL Facility and any replacement or successor agent thereto.

"***ABL Facility Documents***" means the ABL Credit Agreement together with all other related documents, instruments, and agreements in respect of the ABL Facility, in each case, as amended, restated, amended and restated, modified, or supplemented from time to time in accordance with the terms thereof.

"***ABL Lenders***" means Holders of, or nominees, investment managers, investment advisors, or subadvisors to funds and/or accounts that hold, or trustees of trusts that hold, the outstanding ABL Claims.

"***ABL/FILO Exit Commitment Letters***" means those certain commitment letters executed (a) by and between the Debtors, the ABL Facility Agent, and the ABL Lenders, and (b) by and between the Debtors, the FILO Term Loan Agent, and the FILO Lenders, in each case, in form and substance acceptable to the ABL Facility Agent, the FILO Term Loan Agent, the ABL Lenders, and the FILO Lenders, and reasonably acceptable to the Required DIP Lenders.

"***Acceptable ABL/FILO Plan***" means the Plan, which is attached to the ABL/FILO Exit Commitment Letters as Exhibit B, as it may be altered, amended, modified, or supplemented from time to time in accordance with the ABL/FILO Exit Commitment Letters, and without material modification except as approved in writing by the Required DIP Lenders (such approval shall not be unreasonably withheld, conditioned, or delayed).

"***Cash***" means the legal tender of the United States of America or the equivalent thereof.

"***DIP/Cash Collateral Motion***" means the motion(s) seeking approval of the Debtors' use of Cash Collateral and requesting approval to obtain debtor in possession financing on terms substantially the same as those set forth in the Transaction Term Sheet and the DIP Credit Agreement.

"*DIP/Cash Collateral Orders*" means, together, the Interim DIP/Cash Collateral Order and Final DIP/Cash Collateral Order.

"*Effective Date*" means the date on which all conditions specified in Article VIII.A of the Plan have been (a) satisfied or (b) waived pursuant to Article VIII.B of the Plan.

"*Exit ABL Loans*" means loans under the senior secured asset based revolving credit facility under the Exit ABL/FILO Facility Amendment.

"*Exit ABL/FILO Facility Amendment*" means that certain ABL Facility agreement to be effective as of the Effective Date relating to the Exit ABL Loans and the Exit FILO Loans, which may be the existing ABL Credit Agreement, as amended, restated, amended and restated, modified, or supplemented from time to time in accordance with the terms thereof, and shall be in accordance with the ABL/FILO Exit Commitment Letters and reasonably acceptable to the Required DIP Lenders.

"*Exit FILO Loans*" means loans under the senior secured last-out term loan facility under the Exit ABL/FILO Facility Amendment.

"*FILO Claims*" means Claims arising under or related to the FILO Term Loans.

"*FILO Facility*" means the senior secured last-out term loan facility under the ABL Credit Agreement.

"*FILO Lenders*" means Holders of, or nominees, investment managers, investment advisors, or subadvisors to funds and/or accounts that hold, or trustees of trusts that hold, the outstanding FILO Term Loans.

"*FILO Term Loan Agent*" means, collectively, (a) Bank of America, N.A., in its capacity as administrative agent and collateral agent under the FILO Term Loans and any replacement or successor agent thereto, and (b) 1903P LOAN AGENT, LLC, in its capacity as FILO Documentation Agent under the FILO Term Loans and any replacement or successor agent thereto.

"*FILO Term Loans*" means the first-in last-out term loans under the FILO Facility.

"*Final DIP/Cash Collateral Order*" means any order (and all exhibit and schedules thereto, including any budget) entered by the Bankruptcy Court on a final basis:  (a) approving the DIP Facility, the DIP Facility Documents, and the DIP/Cash Collateral Motion; (b) authorizing the Debtors' use of Cash Collateral; and (c) providing for adequate protection of secured creditors.

"*Interim DIP/Cash Collateral Order*" means any order (and all exhibit and schedules thereto, including any budget) entered by the Bankruptcy Court on an interim basis:  (a) approving the DIP Facility, the DIP Facility Documents, and the DIP/Cash Collateral Motion; (b) authorizing the Debtors' use of Cash Collateral; and (c) providing for adequate protection of secured creditors.

"***Pro Rata Share***" means, with respect to any distribution on account of an Allowed Claim, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

"***Required DIP Lenders***" means, as of any time, DIP Lenders holding at least fifty and one hundredth percent (50.01%) of the aggregate outstanding principal amount and commitments of the DIP Facility at such time.

"***Transaction Support Agreement***" means that certain Transaction Support Agreement entered into on March 15, 2024, among the Debtors and certain of the Consenting Stakeholders and any exhibits, schedules, attachments, or appendices thereto (in each case, as such may be amended, modified, or supplemented in accordance with its terms).

"***Transaction Term Sheet***" means the term sheet attached as Exhibit B to the Transaction Support Agreement, together with the exhibits and appendices annexed thereto.

*[Remainder of page left intentionally blank]*

**NOTICE REGARDING CERTAIN RELEASE, EXCULPATION
AND INJUNCTION PROVISIONS IN THE PLAN**

**Please be advised that if the Plan is consummated, Holders of Class 2 ABL Claims
that do not opt out of the releases will be deemed to have granted the releases and
consented to the injunction and exculpation provisions contained in Article IX of the Plan.**

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW
AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION,
AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**Article IX.B.** *Releases by the Debtors*

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE
COMBINED ORDER, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY
CODE, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE
CONSIDERATION, THE ADEQUACY OF WHICH IS THEREBY CONFIRMED, EACH
RELEASED PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE
SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER
ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION,
DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE
FOREGOING ENTITIES, IS AND IS DEEMED TO BE, FOREVER AND
UNCONDITIONALLY RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED
BY EACH DEBTOR, REORGANIZED DEBTOR, AND THE ESTATES FROM ANY AND
ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN,
INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF
OF THE DEBTORS, THE ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH
ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN
RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE
HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER
ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN
WHOLE OR IN PART, (1) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF
THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (2) THE PURCHASE, SALE, OR
RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR
AFFILIATES, (3) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS,
CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR
INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS,
INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE
RESTRUCTURING TRANSACTIONS, (4) THE BUSINESS OR CONTRACTUAL
ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND
ANY OTHER ENTITY, (5) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR
OUT-OF-COURT RESTRUCTURING EFFORTS, (6) INTERCOMPANY
TRANSACTIONS, (7) THE TRANSACTION SUPPORT AGREEMENT, THE
DEFINITIVE DOCUMENTS, THE ABL FACILITY DOCUMENTS, THE TERM LOAN
DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITIES
DOCUMENTS (AND ANY FINANCING PERMITTED THEREUNDER), THE CHAPTER
11 CASES, OR ANY RESTRUCTURING TRANSACTION, (8) ANY CONTRACT,

**INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, (9) THE DISTRIBUTION, INCLUDING ANY DISBURSEMENTS MADE BY A DISTRIBUTION AGENT, OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR (10) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE; *PROVIDED*, THAT THE DEBTORS DO NOT RELEASE CLAIMS OR CAUSES OF ACTION ARISING OUT OF, OR RELATED TO, ANY ACT OR OMISSION OF A RELEASED PARTY THAT IS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT (IT BEING AGREED THAT ANY RELEASED PARTIES' CONSIDERATION, APPROVAL, OR RECEIPT OF ANY DISTRIBUTION DID NOT ARISE FROM OR RELATE TO ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT). NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (1) ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN OR (2) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION.**

**ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS:  (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THE PLAN; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE DEBTORS' ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.**

**Article IX.C.** *Releases by Holders of Claims and Interests*

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE COMBINED ORDER, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS THEREBY CONFIRMED, EACH RELEASING PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, HAS AND IS DEEMED TO HAVE, FOREVER AND UNCONDITIONALLY, RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED EACH DEBTOR, REORGANIZED DEBTOR, AND RELEASED PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (1) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (2) THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (3) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS, (4) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY, (5) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, (6) INTERCOMPANY TRANSACTIONS, (7) THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THE ABL FACILITY DOCUMENTS, THE TERM LOAN DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITIES DOCUMENTS (AND ANY FINANCING PERMITTED THEREUNDER), THE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION, (8) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, (9) THE DISTRIBUTION, INCLUDING ANY DISBURSEMENTS MADE BY A DISTRIBUTION AGENT, OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR (10) ANY OTHER ACT, OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATING TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE; *PROVIDED*, THAT THE RELEASING PARTIES DO NOT RELEASE CLAIMS OR CAUSES OF ACTION ARISING OUT OF, OR RELATED TO, ANY ACT OR OMISSION

OF A RELEASED PARTY THAT IS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT (IT BEING AGREED THAT ANY RELEASED PARTIES' CONSIDERATION, APPROVAL, OR RECEIPT OF ANY DISTRIBUTION DID NOT ARISE FROM OR RELATE TO ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT). NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (1) ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN OR (2) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION.

ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS: (1) CONSENSUAL; (2) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (3) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THE PLAN; (4) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE; (5) IN THE BEST INTERESTS OF THE DEBTORS AND THE ESTATES; (6) FAIR, EQUITABLE, AND REASONABLE; (7) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (8) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

**Article IX.D.** *Exculpation*

EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMITTED BY LAW, THE EXCULPATED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY PERSON OR ENTITY FOR ANY CLAIMS OR CAUSES OF ACTION ARISING BEFORE OR ON THE EFFECTIVE DATE FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO, FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR EFFECTING THE CONFIRMATION OR CONSUMMATION (AS APPLICABLE) OF THE PLAN, THE TRANSACTION SUPPORT AGREEMENT, AND THE DISCLOSURE STATEMENT INCLUDING ANY DISBURSEMENTS MADE BY A DISTRIBUTION AGENT IN

CONNECTION WITH THE PLAN, THE DISCLOSURE STATEMENT, THE DEFINITIVE DOCUMENTS, THE PLAN SUPPLEMENT, THE ABL FACILITY DOCUMENTS, THE TERM LOAN DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITIES DOCUMENTS (AND ANY FINANCING PERMITTED THEREUNDER), OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR ANY OTHER POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTORS, THE APPROVAL OF THE DISCLOSURE STATEMENT OR CONFIRMATION OR CONSUMMATION OF THE PLAN; *PROVIDED*, THAT THE FOREGOING PROVISIONS OF THE EXCULPATION SHALL NOT OPERATE TO WAIVE OR RELEASE:  (1) ANY CLAIMS OR CAUSES OF ACTION ARISING FROM WILLFUL MISCONDUCT, ACTUAL FRAUD, OR GROSS NEGLIGENCE OF SUCH APPLICABLE EXCULPATED PARTY AS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION; AND/OR (2) THE RIGHTS OF ANY PERSON OR ENTITY TO ENFORCE THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, INDENTURES, AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN OR ASSUMED PURSUANT TO THE PLAN OR FINAL ORDER OF THE BANKRUPTCY COURT; *PROVIDED*, FURTHER, THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS RESPECTIVE DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE ABOVE REFERENCED DOCUMENTS, ACTIONS, OR INACTIONS.

THE EXCULPATED PARTIES HAVE, AND UPON CONSUMMATION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.

THE FOREGOING EXCULPATION SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT, OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION, OR APPROVAL OF ANY PERSON OR ENTITY.

Article IX.E.  *Permanent Injunction*

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE COMBINED ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE,

**PERMANENTLY ENJOINED FROM (1) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (4) ASSERTING A RIGHT OF SETOFF OR SUBROGATION OF ANY KIND; OR (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED, OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE COMBINED ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED).  ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

[*Remainder of page left intentionally blank*]

### Relevant Definitions Related to Release and Exculpation Provision

"*Causes of Action*" means any action, Claim, cross-claim, third-party claim, cause of action, controversy, dispute demand, right, lien, indemnity, contribution, interest, guaranty, suit, obligation, liability, lost, debt, fee or expense, damage, judgment, account, defense, offset, power, privilege, proceeding, franchise, remedy, and license of any kind or character whatsoever, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, as applicable, in contract or in tort, in law (whether local, state, or federal U.S. or non-U.S. Law) or in equity, or pursuant to any other theory of local, state, or federal U.S. or non-U.S. Law.  For the avoidance of doubt, "Causes of Action" include:  (a) any right of setoff, counterclaim, or recoupment; (b) any Claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, actual or constructive fraudulent transfer or fraudulent conveyance or voidable transaction or similar Law, violation of local, state, or federal or non-U.S. Law or breach of any duty imposed by Law or in equity, including securities Laws, negligence, and gross negligence; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code or similar local, state, or federal U.S. or non-U.S. Law; (d) any Claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any Avoidance Actions relating to or arising from any state or foreign Law pertaining to any Avoidance Action, including preferential transfer, actual or constructive fraudulent transfer, fraudulent conveyance, or similar Claim; (f) the right to object to or otherwise contest Claims or Interests; and  (g) any "lender liability" or equitable subordination Claims or defenses.

"*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code.  Except where otherwise provided in context, "Claim" refers to such a claim against any of the Debtors.

"*Debtor Release*" means the releases set forth in Article IX.B of the Plan.

"*Exculpated Party*" means, each in its capacity as such, (a) each of the Debtors and, (b) solely to the extent they are Estate fiduciaries, the Debtors' Related Parties.

"*Release Opt-Out Form*" means the form to be provided to certain Holders of Claims through which such Holders may elect to affirmatively opt out of the Third-Party Release.

"*Released Party*" means, collectively, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Non-Debtor Affiliate; (d) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers, and proxyholders; (e) each Consenting Stakeholder; (f) each Prepetition Agent; (g) each ABL Lender; (h) each FILO Lender; (i) the DIP Agent; (j) each DIP Lender; (k) the Exit Facility Agent; (l) each lender under the Exit Facilities; (m) each Additional Financing Party; (n) each Releasing Party; and (o) each Related Party of each Entity in clauses (a) through (m); *provided*, that, in each case, an Entity shall not be a Released Party if it (i) elects to opt out of the Third-Party Release as provided on its respective Release Opt-Out Form or (ii) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the Third-Party Release that is not resolved

before Confirmation; *provided, further*, that, for the avoidance of doubt, any opt-out election made by a Consenting Stakeholder or an Additional Financing Party shall be void *ab initio*.

"***Releasing Parties***" means, collectively, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Non-Debtor Affiliate; (d) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers, and proxyholders; (e) each Consenting Stakeholder; (f) each Prepetition Agent; (g) each ABL Lender; (h) each FILO Lender; (i) the DIP Agent; (j) each DIP Lender; (k) the Exit Facility Agent; (l) each lender under the Exit Facilities; (m) each Additional Financing Party; (n) each Holder of a Claim that is Unimpaired under this Plan that does not elect to opt out of the Releases contained in this Plan; (o) each Holder of a Claim that is entitled to vote on this Plan and either (i) votes to accept this Plan, (ii) abstains from voting on this Plan and does not elect to opt out of the Releases contained in this Plan, or (iii) votes to reject this Plan and does not elect to opt out of the Releases contained in this Plan; and (p) each Related Party of each Entity in clauses (a) through (o); *provided*, that, for the avoidance of doubt, any opt-out election made by a Consenting Stakeholder or an Additional Financing Party shall be void *ab initio*.

"***Third-Party Release***" means the releases given by the Releasing Parties to the Released Parties in Article IX.C of the Plan.

*[Remainder of page left intentionally blank]*

**<u>IMPORTANT</u>**

**YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU VOTE.  YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIMS UNDER THE PLAN.**

**THE SOLICITATION AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.**

**VOTING DEADLINE:  4:00 P.M. PREVAILING EASTERN TIME ON APRIL 8, 2024**

**VOTING RECORD DATE:  FEBRUARY 28, 2024**

**YOU ARE STRONGLY ENCOURAGED TO USE THE SOLICITATION AGENT'S E-BALLOT PLATFORM TO SUBMIT YOUR VOTE AND YOUR OPT-OUT ELECTION.  IF YOU SUBMIT YOUR VOTE AND OPT-OUT ELECTION THROUGH THE E-BALLOT PLATFORM, YOU SHOULD <u>NOT</u> RETURN A PAPER BALLOT.**

**IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY RECEIVE</u> YOUR BALLOT BY THE VOTING DEADLINE (WHETHER CAST THROUGH THE E-BALLOT PLATFORM OR IN HARD COPY), YOUR VOTE WILL NOT BE COUNTED, UNLESS SUCH DEADLINE IS EXTENDED BY THE DEBTORS, AND ANY ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASES WILL NOT BE VALID.**

**YOU SHOULD NOT SEND YOUR BALLOT TO ANY OF THE DEBTORS, THE DEBTORS' AGENTS (OTHER THAN THE SOLICITATION AGENT), OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.  IF SO SENT, THE BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN.**

**IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING UPON YOU WHETHER OR NOT YOU VOTE.**

*[Remainder of page left intentionally blank]*

31441488.1

### INSTRUCTIONS FOR VOTING ONLINE THROUGH
### THE SOLICITATION AGENT'S E-BALLOT PLATFORM

You may return your Ballot by electronic, online transmission <u>solely</u> by clicking on the "Submit E-Ballot" section on the Debtors' solicitation website (https://cases.ra.kroll.com/JOANNBallots) and following the directions set forth on the website regarding submitting your E-Ballot as described more fully below.  Please choose only ONE method of return for your Ballot.

1.  Please visit the Debtors' solicitation website at https://cases.ra.kroll.com/JOANNBallots.

2.  Click on the "Submit E-Ballot" section of the Debtors' case website.

3.  Follow the directions to submit your E-Ballot. If you choose to submit your Ballot via the Solicitation Agent's E-Ballot system, you should **not** return a hard copy of your Ballot.

**IMPORTANT NOTE: YOU WILL NEED THE FOLLOWING INFORMATION TO RETRIEVE AND SUBMIT YOUR CUSTOMIZED E-BALLOT:**

**UNIQUE E-BALLOT ID#** _____

"E-BALLOTING" IS THE SOLE MANNER IN WHICH BALLOTS MAY BE DELIVERED VIA ELECTRONIC TRANSMISSION.

**BALLOTS SUBMITTED BY FACSIMILE OR EMAIL WILL NOT BE COUNTED.**

**HOLDERS OF CLASS 2 ABL CLAIMS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM.**

[*Remainder of page left intentionally blank*]

31441488.1

## **INSTRUCTIONS FOR VOTING BY MAIL**

1. Complete Items 1 and 2.

2. If you wish to opt out of the Third-Party Releases, complete Item 3.

3. Review the certification contained in Item 4.

4. **Sign and date the Ballot and fill out the other required information.**

5. You must vote the full amount of all of your Class 2 ABL Claim *either* to accept *or* reject the Plan.  You may not split your vote.

6. The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder, (b) any Ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (c) any unsigned Ballot, (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan, and (e) any Ballot that attempts to partially accept and partially reject the Plan.

7. If the Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors.  Ballots may be delivered by first class mail, overnight courier, or personal delivery.  The method of delivery of the Ballot to the Solicitation Agent is at your election and risk.

8. Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots will be determined by the Solicitation Agent and/or the Debtors, which determination will be final and binding.  The Debtors reserve the right to reject any and all Ballots submitted by any of their respective creditors not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful.  The Debtors further reserve their respective rights to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any of their creditors.  The interpretation (including the Ballot and the respective instructions thereto) by the applicable Debtor, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties.  Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Bankruptcy Court) determines.  Neither the Debtors nor any other Person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification.  Unless otherwise directed by the Bankruptcy Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

9. The Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

31441488.1

10. This Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you in the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Combined Order is not entered or consummation of the Plan does not occur.

11. There may be changes made to the Plan that do not have material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan

12. If multiple Ballots are received from the same Holder of a Claim with respect to the same Claim before the Voting Deadline, the last, timely received, and valid Ballot, regardless of the manner of submission, will supersede and revoke any earlier-received Ballot.

13. The method of delivery of a Ballot to the Solicitation Agent is at the election and risk of each Holder of a Claim. Except as otherwise provided herein, such delivery will be deemed made, regardless of the manner of delivery, only when the Solicitation Agent **actually receives** the properly completed Ballot. In all cases, Holders should allow sufficient time to assure timely delivery of their Ballots.

14. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

**YOUR COMPLETED BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BY THE VOTING DEADLINE VIA THE E-BALLOT PLATFORM, AS DIRECTED ABOVE, OR IN HARD COPY AT THE FOLLOWING ADDRESS:**

**JOANN, Inc. Ballot Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 Third Avenue, Suite 412**
**New York, NY 11232**

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL JOANNBALLOTS@RA.KROLL.COM (WITH "JOANN SOLICITATION BALLOT DELIVERY" IN THE SUBJECT LINE) AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS BEFORE YOUR ARRIVAL AT THE ADDRESS ABOVE.**

**THE VOTING DEADLINE IS APRIL 8, 2024 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

31441488.1

**Item 1. Amount of Claim**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder of the following Class 2 ABL Claim inserted into the box below, which includes the aggregate outstanding <u>principal</u> amount without regard to any accrued but unpaid interest:

$ _____

**Item 2. Vote on Plan**

**IF YOU VOTE TO ACCEPT THE PLAN, YOUR VOTE CONSTITUTES AN ACCEPTANCE OF AND CONSENT TO THE CLASSIFICATION AND TREATMENT OF YOUR CLAIM UNDER THE PLAN.**

Regardless of whether you vote to accept or reject the Plan or if you do not cast a vote to accept or reject the Plan, please see Item 3 below and refer to Article IX of the Plan for information about the Third-Party Releases.

Any Ballot that is executed by the holder of a Class 2 ABL Claim that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan will not be counted.

**The Plan, though proposed jointly, constitutes separate plans proposed by each of the Debtor entities. Your vote will count as votes for or against, as applicable, each plan proposed by each Debtor entity.**

The holder of the Class 2 ABL Claim identified in Item 1 votes as follows (check one box only – if you do not check a box or you check both boxes, your vote will not be counted):

☐ **ACCEPT** (vote FOR) the Plan.        ☐ **REJECT** (vote AGAINST) the Plan.

**Item 3. Election to Opt Out of Third-Party Releases**

Regardless of whether you voted to accept or reject the Plan in Item 2 above or abstained from voting to accept or reject the Plan, you may check the box below to opt out of the Third-Party Releases**.  IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES BY CHECKING THE BOX BELOW, YOU WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE RELEASED PARTIES AS PROVIDED IN THE PLAN.  IF YOU WOULD OTHERWISE BE ENTITLED TO A RELEASE UNDER ARTICLE IX.B OR IX.C OF THE PLAN BUT YOU DO NOT GRANT THE THIRD-PARTY RELEASES BECAUSE YOU OPTED OUT, YOU WILL NOT RECEIVE THE BENEFIT OF THE RELEASES SET FORTH IN ARTICLE IX.B OR IX.C OF THE PLAN.**

☐ **Opt Out** of the Third-Party Releases

**Item 4. Certification.**

By returning this Ballot, the holder of the Class 2 ABL Claim identified in Item 1 certifies that (a) this Ballot is the only Ballot submitted for the Class 2 ABL Claim identified in Item 1; (b) it was the holder of the Class 2 ABL Claim identified in Item 1 as of the Voting Record Date and/or it has full power and authority to vote to accept or reject the Plan for the Class 2 ABL Claim identified in Item 1; (c) it is one of the following: (i) a "qualified institutional buyer" (as such term is defined in Rule 144A of the Securities Act[3]), (ii) an "accredited investor" (as such term is defined in Rule 501 of Regulation D of the Securities Act), or (iii) for holders located outside the United States, a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S of the Securities Act) and not participating on behalf of or on account of a U.S. person; and (d) it has received a copy of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all of the terms and conditions set forth in the Disclosure Statement and Plan.

YOUR RECEIPT OF THIS BALLOT DOES NOT SIGNIFY THAT YOUR CLAIM HAS BEEN OR WILL BE ALLOWED.

_____
Name of Holder of Class 2 ABL Claim

_____
Social Security or Federal Tax I.D. No. (optional)

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____

[3] The "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa (as amended).

31441488.1

_____

Email Address

_____

Date Completed

This Ballot will not constitute or be deemed a proof of claim or equity interest, an assertion of a claim or equity interest, or the allowance of a claim or equity interest.

**YOUR VOTE MUST BE ACTUALLY RECEIVED BY 4:00 P.M. (PREVAILING EASTERN TIME) ON APRIL 8, 2024, OR YOUR VOTE WILL NOT BE COUNTED. IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT VIA EMAIL AT JOANNBALLOTS@RA.KROLL.COM.**

[*Remainder of page left intentionally blank*]

## Exhibit 3B

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------- x
: 
In re:                                                      :     Chapter 11
:
JOANN INC., *et al.*,                                      :     IMPORTANT:   No chapter 11 case has been
:     commenced as of the date of distribution of this ballot.
Debtors.[1]                                 :     This ballot is a prepetition solicitation of your vote on
:     a prepackaged plan of reorganization.
:
:     If chapter 11 cases are commenced, the Debtors will
-------------------------------------------------------- x     request joint administration of such cases.

**BALLOT FOR HOLDERS IN**

**CLASS 3 (FILO CLAIMS)**

**FOR VOTING TO ACCEPT OR REJECT THE JOINT
PREPACKAGED PLAN OF REORGANIZATION OF JOANN INC. AND
ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS
> APRIL 8, 2024 AT 4:00 P.M. (PREVAILING EASTERN TIME)**

JOANN Inc. and each of the debtors and debtors-in-possession in the above-captioned cases (collectively, the "***Debtors***") are sending this ballot (the "***Ballot***") in order to solicit your vote to accept or reject the *Prepackaged Joint Plan of Reorganization of JOANN Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code*, dated March 16, 2024 (as may be amended, modified, or supplemented from time to time, the "***Plan***").[2]  The Plan is attached as Exhibit A to the proposed *Disclosure Statement for Prepackaged Joint Plan of Reorganization of JOANN Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which accompanies this Ballot and has also been posted on the Debtors' case information website (located at https://cases.ra.kroll.com/JOANN).  The Disclosure Statement provides information to assist you in deciding how to vote on the Plan.  The Debtors' case information website allows Holders to electronically submit a vote on the Plan.  On the date on which the Chapter 11 Cases (as defined below) are commenced (the "***Petition Date***"), the case information website will be

---

[1]    The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); and Jo-Ann Stores Support Center, Inc. (5027).  The Debtors' mailing address is 5555 Darrow Road, Hudson, OH 44236.

[2]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Plan.

31441495.1

updated to include important information, hearing dates, and other key deadlines, as well as the docket for the Chapter 11 Cases (which will be available for review and download, free of charge).

The Disclosure Statement provides information to assist Holders of Claims in the Voting Classes in deciding whether to accept or reject the Plan. If you have not received or wish to obtain additional copies of the Disclosure Statement, please contact the Debtors' solicitation agent, Kroll Restructuring Administration LLC (the "**Solicitation Agent**"), via email at joanninfo@ra.kroll.com.

This Ballot is being submitted to Holders, as of February 28, 2024 (the "**Voting Record Date**"), of any FILO Claims. "**FILO Claims**" include any Claim under or related to the FILO Term Loans (as defined below). If you hold Claims in more than one Class, you will receive a separate Ballot for each Class in which you are entitled to vote. In order for your vote in Class 3 to count, you must either (a) complete and submit your vote through the Solicitation Agent's E-Ballot platform or (b) complete and return this paper Ballot in accordance with the instructions set forth herein.

The Debtors have not yet filed for relief under chapter 11 of the Bankruptcy Code and no court has approved the Disclosure Statement or the Plan. As described in the Disclosure Statement, the Debtors intend to commence cases (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") following the commencement of this solicitation. If the Debtors commence the Chapter 11 Cases, the Plan may be confirmed by the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") if: (a) it is accepted by at least two-thirds (2/3) of the aggregate principal amount and more than one-half (1/2) in number of the Holders of ABL Claims voting in Class 2, FILO Claims voting in Class 3, and/or Term Loan Claims voting in Class 4; and (b) the Plan otherwise satisfies the applicable requirements of section 1129 of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, the Plan will be binding on all Holders of FILO Claims whether or not a Holder of a FILO Claim returns a Ballot or votes to reject the Plan.

This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than (a) to cast a vote to accept or reject the Plan and/or (b) to opt out of the Third-Party Releases (as defined below).

If you have any questions regarding the Ballot or how to properly complete this Ballot, please contact the Solicitation Agent via email at joannballots@ra.kroll.com.

*[Remainder of page left intentionally blank]*

**IMPORTANT NOTICE REGARDING TREATMENT
FOR HOLDERS OF CLASS 3 FILO CLAIMS**

As described in more detail in the Disclosure Statement and Plan, if the Chapter 11 Cases are commenced, the Plan is confirmed, and the Effective Date occurs, then (except to the extent that a Holder of an Allowed ABL Claim agrees to less favorable treatment) on the Effective Date, either (a) in the event the Debtors elect to refinance the FILO Claims (which election may be made only if the Debtors are also refinancing the ABL Claims and with the consent of the Required DIP Lenders), each Holder of an Allowed FILO Claim shall receive payment in full in Cash on the Effective Date in the Allowed amount of such FILO Claim or (b) in the event clause (a) is not applicable, (i) each Holder of an Allowed FILO Claim shall receive its Pro Rata Share of refinanced loans under the Exit ABL/FILO Facility Amendment in an amount equal to the principal amount of the Allowed FILO Claims held by such Holder as of the Effective Date, and (ii) each Holder of an Allowed FILO Claim shall receive Cash in an amount equal to the accrued but unpaid interest payable to such Holder under the ABL Credit Agreement as of the Effective Date; *provided* that the treatment pursuant to this clause (ii) shall apply only upon the Debtors' satisfaction of the exit conditions enumerated in the ABL/FILO Exit Commitment Letters.  The unpaid portion of the Collateral Monitoring Fee (as defined in the FILO Fee Letter) that was earned as of the Petition Date for the second year of the FILO Facility and the FILO Prepayment Premium shall be included in the amount of FILO Claims outstanding as of the Petition Date; *provided* that, on the Effective Date of an Acceptable ABL/FILO Plan pursuant to which the Debtors enter into the Exit ABL/FILO Facility Amendment, (x) the amount of the FILO Claims constituting the FILO Prepayment Premium (as defined in the FILO Fee Letter), shall be waived and (y) such unpaid portion of the Collateral Monitoring Fee shall be deemed not to have been capitalized to principal, and shall instead be due and payable on a monthly basis in accordance with the FILO Fee Letter (as replaced or amended in connection with the Exit ABL/FILO Facility Amendment), it being understood that any monthly installment of such unpaid portion that would have been payable before the Effective Date of such Acceptable ABL/FILO Plan shall be paid in Cash to the FILO Term Loan Agent on such Effective Date.

FILO Claims shall be deemed Allowed in the aggregate principal amount of $115,749,863, inclusive of the FILO Prepayment Premium and the unpaid portion of the Collateral Monitoring Fee that was earned as of the Petition Date for the second year of the FILO Facility, pursuant to the terms of the ABL Facility Documents, plus any accrued but unpaid interest in respect thereof through and including the Effective Date and fees and other expenses arising under or in connection with the FILO Term Loans (including with respect to any fees, expenses or other amounts owed on account of the FILO Term Loans pursuant to the DIP/Cash Collateral Orders).

*[Remainder of page left intentionally blank]*

## SCHEDULE OF CERTAIN RELEVANT DEFINED TERMS

"**ABL Claims**" means any and all Claims arising under, derived from, or based upon the ABL Facility including, without limitation, all Revolving Obligations (as defined in the ABL Credit Agreement) and all Prepetition Revolving Obligations (as defined in the DIP/Cash Collateral Orders).

"**ABL Credit Agreement**" means that certain Amended and Restated Credit Agreement, dated as of October 21, 2016, as amended by that certain First Amendment on November 25, 2020, that certain Second Amendment on December 22, 2021, and that certain Third Amendment, dated as of March 10, 2023, as amended, restated, amended and restated, modified, or supplemented from time to time in accordance with the terms thereof.

"**ABL Facility**" means the senior secured asset based revolving credit facility under the ABL Credit Agreement.

"**ABL Facility Agent**" means Bank of America, N.A., in its capacity as administrative agent and collateral agent under the ABL Facility and any replacement or successor agent thereto.

"**ABL Facility Documents**" means the ABL Credit Agreement together with all other related documents, instruments, and agreements in respect of the ABL Facility, in each case, as amended, restated, amended and restated, modified, or supplemented from time to time in accordance with the terms thereof.

"**ABL Lenders**" means Holders of, or nominees, investment managers, investment advisors, or subadvisors to funds and/or accounts that hold, or trustees of trusts that hold, the outstanding ABL Claims.

"**ABL/FILO Exit Commitment Letters**" means those certain commitment letters executed (a) by and between the Debtors, the ABL Facility Agent, and the ABL Lenders, and (b) by and between the Debtors, the FILO Term Loan Agent, and the FILO Lenders, in each case, in form and substance acceptable to the ABL Facility Agent, the FILO Term Loan Agent, the ABL Lenders, and the FILO Lenders, and reasonably acceptable to the Required DIP Lenders.

"**Acceptable ABL/FILO Plan**" means the Plan, which is attached to the ABL/FILO Exit Commitment Letters as Exhibit B, as it may be altered, amended, modified, or supplemented from time to time in accordance with the ABL/FILO Exit Commitment Letters, and without material modification except as approved in writing by the Required DIP Lenders (such approval shall not be unreasonably withheld, conditioned, or delayed).

"**Cash**" means the legal tender of the United States of America or the equivalent thereof.

"**DIP/Cash Collateral Motion**" means the motion(s) seeking approval of the Debtors' use of Cash Collateral and requesting approval to obtain debtor in possession financing on terms substantially the same as those set forth in the Transaction Term Sheet and the DIP Credit Agreement.

31441495.1

4

"***DIP/Cash Collateral Orders***" means, together, the Interim DIP/Cash Collateral Order and Final DIP/Cash Collateral Order.

"***Effective Date***" means the date on which all conditions specified in Article VIII.A of the Plan have been (a) satisfied or (b) waived pursuant to Article VIII.B of the Plan.

"***Exit ABL Loans***" means loans under the senior secured asset based revolving credit facility under the Exit ABL/FILO Facility Amendment.

"***Exit ABL/FILO Facility Amendment***" means that certain ABL Facility agreement to be effective as of the Effective Date relating to the Exit ABL Loans and the Exit FILO Loans, which may be the existing ABL Credit Agreement, as amended, restated, amended and restated, modified, or supplemented from time to time in accordance with the terms thereof, and shall be in accordance with the ABL/FILO Exit Commitment Letters and reasonably acceptable to the Required DIP Lenders.

"***Exit FILO Loans***" means loans under the senior secured last-out term loan facility under the Exit ABL/FILO Facility Amendment.

"***FILO Claims***" means Claims arising under or related to the FILO Term Loans.

"***FILO Facility***" means the senior secured last-out term loan facility under the ABL Credit Agreement.

"***FILO Fee Letter***" means that certain FILO Fee Letter, dated as of March 10, 2023, as amended, restated, amended and restated, modified, or supplemented from time to time in accordance with the terms thereof.

"***FILO Lenders***" means Holders of, or nominees, investment managers, investment advisors, or subadvisors to funds and/or accounts that hold, or trustees of trusts that hold, the outstanding FILO Term Loans.

"***FILO Prepayment Premium***" has the meaning set forth in the FILO Fee Letter (including, for the avoidance of doubt, the "Make Whole Amount" (as defined in the FILO Fee Letter)).

"***FILO Term Loan Agent***" means, collectively, (a) Bank of America, N.A., in its capacity as administrative agent and collateral agent under the FILO Term Loans and any replacement or successor agent thereto, and (b) 1903P LOAN AGENT, LLC, in its capacity as FILO Documentation Agent under the FILO Term Loans and any replacement or successor agent thereto.

"***FILO Term Loans***" means the first-in last-out term loans under the FILO Facility.

"***Final DIP/Cash Collateral Order***" means any order (and all exhibit and schedules thereto, including any budget) entered by the Bankruptcy Court on a final basis:  (a) approving the DIP Facility, the DIP Facility Documents, and the DIP/Cash Collateral Motion; (b) authorizing the Debtors' use of Cash Collateral; and (c) providing for adequate protection of secured creditors.

"***Interim DIP/Cash Collateral Order***" means any order (and all exhibit and schedules thereto, including any budget) entered by the Bankruptcy Court on an interim basis: (a) approving the DIP Facility, the DIP Facility Documents, and the DIP/Cash Collateral Motion; (b) authorizing the Debtors' use of Cash Collateral; and (c) providing for adequate protection of secured creditors.

"***Pro Rata Share***" means, with respect to any distribution on account of an Allowed Claim, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

"***Required DIP Lenders***" means, as of any time, DIP Lenders holding at least fifty and one hundredth percent (50.01%) of the aggregate outstanding principal amount and commitments of the DIP Facility at such time.

"***Transaction Support Agreement***" means that certain Transaction Support Agreement entered into on March 15, 2024, among the Debtors and certain of the Consenting Stakeholders and any exhibits, schedules, attachments, or appendices thereto (in each case, as such may be amended, modified, or supplemented in accordance with its terms).

"***Transaction Term Sheet***" means the term sheet attached as Exhibit B to the Transaction Support Agreement, together with the exhibits and appendices annexed thereto.

*[Remainder of page left intentionally blank]*

**NOTICE REGARDING CERTAIN RELEASE, EXCULPATION
AND INJUNCTION PROVISIONS IN THE PLAN**

**Please be advised that if the Plan is consummated, Holders of Class 3 FILO Claims
that do not opt out of the releases will be deemed to have granted the releases and
consented to the injunction and exculpation provisions contained in Article IX of the Plan.**

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW
AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION,
AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**Article IX.B.** *Releases by the Debtors*

**EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE
COMBINED ORDER, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY
CODE, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE
CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH
RELEASED PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE
SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER
ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION,
DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE
FOREGOING ENTITIES, IS AND IS DEEMED TO BE, FOREVER AND
UNCONDITIONALLY RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED
BY EACH DEBTOR, REORGANIZED DEBTOR, AND THE ESTATES FROM ANY AND
ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN,
INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF
OF THE DEBTORS, THE ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH
ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN
RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE
HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER
ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN
WHOLE OR IN PART, (1) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF
THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (2) THE PURCHASE, SALE, OR
RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR
AFFILIATES, (3) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS,
CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR
INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS,
INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE
RESTRUCTURING TRANSACTIONS, (4) THE BUSINESS OR CONTRACTUAL
ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND
ANY OTHER ENTITY, (5) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR
OUT-OF-COURT RESTRUCTURING EFFORTS, (6) INTERCOMPANY
TRANSACTIONS, (7) THE TRANSACTION SUPPORT AGREEMENT, THE
DEFINITIVE DOCUMENTS, THE ABL FACILITY DOCUMENTS, THE TERM LOAN
DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITIES
DOCUMENTS (AND ANY FINANCING PERMITTED THEREUNDER), THE CHAPTER
11 CASES, OR ANY RESTRUCTURING TRANSACTION, (8) ANY CONTRACT,**

31441495.1

**INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, (9) THE DISTRIBUTION, INCLUDING ANY DISBURSEMENTS MADE BY A DISTRIBUTION AGENT, OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR (10) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE; *PROVIDED*, THAT THE DEBTORS DO NOT RELEASE CLAIMS OR CAUSES OF ACTION ARISING OUT OF, OR RELATED TO, ANY ACT OR OMISSION OF A RELEASED PARTY THAT IS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT (IT BEING AGREED THAT ANY RELEASED PARTIES' CONSIDERATION, APPROVAL, OR RECEIPT OF ANY DISTRIBUTION DID NOT ARISE FROM OR RELATE TO ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT). NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (1) ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN OR (2) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION.**

**ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THE PLAN; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE DEBTORS' ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.**

**Article IX.C.** *Releases by Holders of Claims and Interests*

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE COMBINED ORDER, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS THEREBY CONFIRMED, EACH RELEASING PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, HAS AND IS DEEMED TO HAVE, FOREVER AND UNCONDITIONALLY, RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED EACH DEBTOR, REORGANIZED DEBTOR, AND RELEASED PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (1) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (2) THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (3) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS, (4) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY, (5) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, (6) INTERCOMPANY TRANSACTIONS, (7) THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THE ABL FACILITY DOCUMENTS, THE TERM LOAN DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITIES DOCUMENTS (AND ANY FINANCING PERMITTED THEREUNDER), THE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION, (8) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, (9) THE DISTRIBUTION, INCLUDING ANY DISBURSEMENTS MADE BY A DISTRIBUTION AGENT, OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR (10) ANY OTHER ACT, OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATING TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE; *PROVIDED*, THAT THE RELEASING PARTIES DO NOT RELEASE CLAIMS OR CAUSES OF ACTION ARISING OUT OF, OR RELATED TO, ANY ACT OR OMISSION

OF A RELEASED PARTY THAT IS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT (IT BEING AGREED THAT ANY RELEASED PARTIES' CONSIDERATION, APPROVAL, OR RECEIPT OF ANY DISTRIBUTION DID NOT ARISE FROM OR RELATE TO ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT). NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (1) ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN OR (2) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION.

ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS: (1) CONSENSUAL; (2) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (3) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THE PLAN; (4) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE; (5) IN THE BEST INTERESTS OF THE DEBTORS AND THE ESTATES; (6) FAIR, EQUITABLE, AND REASONABLE; (7) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (8) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

**Article IX.D.**  *Exculpation*

EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMITTED BY LAW, THE EXCULPATED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY PERSON OR ENTITY FOR ANY CLAIMS OR CAUSES OF ACTION ARISING BEFORE OR ON THE EFFECTIVE DATE FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO, FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR EFFECTING THE CONFIRMATION OR CONSUMMATION (AS APPLICABLE) OF THE PLAN, THE TRANSACTION SUPPORT AGREEMENT, AND THE DISCLOSURE STATEMENT INCLUDING ANY DISBURSEMENTS MADE BY A DISTRIBUTION AGENT IN

CONNECTION WITH THE PLAN, THE DISCLOSURE STATEMENT, THE DEFINITIVE DOCUMENTS, THE PLAN SUPPLEMENT, THE ABL FACILITY DOCUMENTS, THE TERM LOAN DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITIES DOCUMENTS (AND ANY FINANCING PERMITTED THEREUNDER), OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR ANY OTHER POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTORS, THE APPROVAL OF THE DISCLOSURE STATEMENT OR CONFIRMATION OR CONSUMMATION OF THE PLAN; *PROVIDED*, THAT THE FOREGOING PROVISIONS OF THE EXCULPATION SHALL NOT OPERATE TO WAIVE OR RELEASE: (1) ANY CLAIMS OR CAUSES OF ACTION ARISING FROM WILLFUL MISCONDUCT, ACTUAL FRAUD, OR GROSS NEGLIGENCE OF SUCH APPLICABLE EXCULPATED PARTY AS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION; AND/OR (2) THE RIGHTS OF ANY PERSON OR ENTITY TO ENFORCE THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, INDENTURES, AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN OR ASSUMED PURSUANT TO THE PLAN OR FINAL ORDER OF THE BANKRUPTCY COURT; *PROVIDED*, FURTHER, THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS RESPECTIVE DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE ABOVE REFERENCED DOCUMENTS, ACTIONS, OR INACTIONS.

THE EXCULPATED PARTIES HAVE, AND UPON CONSUMMATION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.

THE FOREGOING EXCULPATION SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT, OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION, OR APPROVAL OF ANY PERSON OR ENTITY.

### Article IX.E. *Permanent Injunction*

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE COMBINED ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE,

31441495.1

**PERMANENTLY ENJOINED FROM (1) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (4) ASSERTING A RIGHT OF SETOFF OR SUBROGATION OF ANY KIND; OR (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED, OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE COMBINED ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED).  ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

[*Remainder of page left intentionally blank*]

## **Relevant Definitions Related to Release and Exculpation Provision**

"***Causes of Action***" means any action, Claim, cross-claim, third-party claim, cause of action, controversy, dispute demand, right, lien, indemnity, contribution, interest, guaranty, suit, obligation, liability, lost, debt, fee or expense, damage, judgment, account, defense, offset, power, privilege, proceeding, franchise, remedy, and license of any kind or character whatsoever, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, as applicable, in contract or in tort, in law (whether local, state, or federal U.S. or non-U.S. Law) or in equity, or pursuant to any other theory of local, state, or federal U.S. or non-U.S. Law.  For the avoidance of doubt, "Causes of Action" include:  (a) any right of setoff, counterclaim, or recoupment; (b) any Claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, actual or constructive fraudulent transfer or fraudulent conveyance or voidable transaction or similar Law, violation of local, state, or federal or non-U.S. Law or breach of any duty imposed by Law or in equity, including securities Laws, negligence, and gross negligence; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code or similar local, state, or federal U.S. or non-U.S. Law; (d) any Claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any Avoidance Actions relating to or arising from any state or foreign Law pertaining to any Avoidance Action, including preferential transfer, actual or constructive fraudulent transfer, fraudulent conveyance, or similar Claim; (f) the right to object to or otherwise contest Claims or Interests; and  (g) any "lender liability" or equitable subordination Claims or defenses.

"***Claim***" means any claim, as defined in section 101(5) of the Bankruptcy Code.  Except where otherwise provided in context, "Claim" refers to such a claim against any of the Debtors.

"***Debtor Release***" means the releases set forth in Article IX.B of the Plan.

"***Exculpated Party***" means, each in its capacity as such, (a) each of the Debtors and, (b) solely to the extent they are Estate fiduciaries, the Debtors' Related Parties.

"***Release Opt-Out Form***" means the form to be provided to certain Holders of Claims through which such Holders may elect to affirmatively opt out of the Third-Party Release.

"***Released Party***" means, collectively, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Non-Debtor Affiliate; (d) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers, and proxyholders; (e) each Consenting Stakeholder; (f) each Prepetition Agent; (g) each ABL Lender; (h) each FILO Lender; (i) the DIP Agent; (j) each DIP Lender; (k) the Exit Facility Agent; (l) each lender under the Exit Facilities; (m) each Additional Financing Party; (n) each Releasing Party; and (o) each Related Party of each Entity in clauses (a) through (m); *provided*, that, in each case, an Entity shall not be a Released Party if it (i) elects to opt out of the Third-Party Release as provided on its respective Release Opt-Out Form or (ii) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the Third-Party Release that is not resolved

before Confirmation; *provided, further*, that, for the avoidance of doubt, any opt-out election made by a Consenting Stakeholder or an Additional Financing Party shall be void *ab initio*.

"***Releasing Parties***" means, collectively, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Non-Debtor Affiliate; (d) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers, and proxyholders; (e) each Consenting Stakeholder; (f) each Prepetition Agent; (g) each ABL Lender; (h) each FILO Lender; (i) the DIP Agent; (j) each DIP Lender; (k) the Exit Facility Agent; (l) each lender under the Exit Facilities; (m) each Additional Financing Party; (n) each Holder of a Claim that is Unimpaired under this Plan that does not elect to opt out of the Releases contained in this Plan; (o) each Holder of a Claim that is entitled to vote on this Plan and either (i) votes to accept this Plan, (ii) abstains from voting on this Plan and does not elect to opt out of the Releases contained in this Plan, or (iii) votes to reject this Plan and does not elect to opt out of the Releases contained in this Plan; and (p) each Related Party of each Entity in clauses (a) through (o); *provided*, that, for the avoidance of doubt, any opt-out election made by a Consenting Stakeholder or an Additional Financing Party shall be void *ab initio*.

"***Third-Party Release***" means the releases given by the Releasing Parties to the Released Parties in Article IX.C of the Plan.

[*Remainder of page left intentionally blank*]

<u>**IMPORTANT**</u>

**YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU VOTE. YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIMS UNDER THE PLAN.**

**THE SOLICITATION AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.**

**VOTING DEADLINE: 4:00 P.M. PREVAILING EASTERN TIME ON APRIL 8, 2024**

**VOTING RECORD DATE: FEBRUARY 28, 2024**

**YOU ARE STRONGLY ENCOURAGED TO USE THE SOLICITATION AGENT'S E-BALLOT PLATFORM TO SUBMIT YOUR VOTE AND YOUR OPT-OUT ELECTIONS. IF YOU SUBMIT YOUR VOTE AND OPT-OUT ELECTIONS THROUGH THE E-BALLOT PLATFORM, YOU SHOULD <u>NOT</u> RETURN A PAPER BALLOT.**

---

**IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY RECEIVE</u> YOUR BALLOT BY THE VOTING DEADLINE (WHETHER CAST THROUGH THE E-BALLOT PLATFORM OR IN HARD COPY), YOUR VOTE WILL NOT BE COUNTED, UNLESS SUCH DEADLINE IS EXTENDED BY THE DEBTORS, AND ANY ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASES WILL NOT BE VALID.**

**YOU SHOULD NOT SEND YOUR BALLOT TO ANY OF THE DEBTORS, THE DEBTORS' AGENTS (OTHER THAN THE SOLICITATION AGENT), OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS. IF SO SENT, THE BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN.**

**IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING UPON YOU WHETHER OR NOT YOU VOTE.**

*[Remainder of page left intentionally blank]*

31441495.1

### INSTRUCTIONS FOR VOTING ONLINE THROUGH
### THE SOLICITATION AGENT'S E-BALLOT PLATFORM

You may return your Ballot by electronic, online transmission <u>solely</u> by clicking on the "Submit E-Ballot" section on the Debtors' solicitation website (https://cases.ra.kroll.com/JOANNBallots) and following the directions set forth on the website regarding submitting your E-Ballot as described more fully below.  Please choose only ONE method of return for your Ballot.

1. Please visit the Debtors' solicitation website at https://cases.ra.kroll.com/JOANNBallots.

2. Click on the "Submit E-Ballot" section of the Debtors' case website.

3. Follow the directions to submit your E-Ballot. If you choose to submit your Ballot via the Solicitation Agent's E-Ballot system, you should **not** return a hard copy of your Ballot.

**IMPORTANT NOTE: YOU WILL NEED THE FOLLOWING INFORMATION TO RETRIEVE AND SUBMIT YOUR CUSTOMIZED E-BALLOT:**

**UNIQUE E-BALLOT ID#** _____

"E-BALLOTING" IS THE SOLE MANNER IN WHICH BALLOTS MAY BE DELIVERED VIA ELECTRONIC TRANSMISSION.

**BALLOTS SUBMITTED BY FACSIMILE OR EMAIL WILL NOT BE COUNTED.**

**HOLDERS OF CLASS 3 FILO CLAIMS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM.**

[*Remainder of page left intentionally blank*]

31441495.1

## **INSTRUCTIONS FOR VOTING BY MAIL**

1. Complete Items 1 and 2.

2. If you wish to opt out of the Third-Party Releases, complete Item 3.

3. Review the certification contained in Item 4.

4. **Sign and date the Ballot and fill out the other required information.**

5. You must vote the full amount of all of your Class 3 FILO Claim *either* to accept *or* reject the Plan.  You may not split your vote.

6. The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder, (b) any Ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (c) any unsigned Ballot, (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan, and (e) any Ballot that attempts to partially accept and partially reject the Plan.

7. If the Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors.  Ballots may be delivered by first class mail, overnight courier, or personal delivery.  The method of delivery of the Ballot to the Solicitation Agent is at your election and risk.

8. Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots will be determined by the Solicitation Agent and/or the Debtors, which determination will be final and binding.  The Debtors reserve the right to reject any and all Ballots submitted by any of their respective creditors not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful.  The Debtors further reserve their respective rights to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any of their creditors.  The interpretation (including the Ballot and the respective instructions thereto) by the applicable Debtor, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties.  Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Bankruptcy Court) determines.  Neither the Debtors nor any other Person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification.  Unless otherwise directed by the Bankruptcy Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

9. The Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

31441495.1

10. This Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you in the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Combined Order is not entered or consummation of the Plan does not occur.

11. There may be changes made to the Plan that do not have material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan

12. If multiple Ballots are received from the same Holder of a Claim with respect to the same Claim before the Voting Deadline, the last, timely received, and valid Ballot, regardless of the manner of submission, will supersede and revoke any earlier-received Ballot.

13. The method of delivery of a Ballot to the Solicitation Agent is at the election and risk of each Holder of a Claim. Except as otherwise provided herein, such delivery will be deemed made, regardless of the manner of delivery, only when the Solicitation Agent **actually receives** the properly completed Ballot. In all cases, Holders should allow sufficient time to assure timely delivery of their Ballots.

14. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

**YOUR COMPLETED BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BY THE VOTING DEADLINE VIA THE E-BALLOT PLATFORM, AS DIRECTED ABOVE, OR IN HARD COPY AT THE FOLLOWING ADDRESS:**

**JOANN, Inc. Ballot Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 Third Avenue, Suite 412**
**New York, NY 11232**

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL JOANNBALLOTS@RA.KROLL.COM (WITH "JOANN SOLICITATION BALLOT DELIVERY" IN THE SUBJECT LINE) AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS BEFORE YOUR ARRIVAL AT THE ADDRESS ABOVE.**

**THE VOTING DEADLINE IS APRIL 8, 2024 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

31441495.1

**Item 1. Amount of Claim**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder of the following Class 3 FILO Claim inserted into the box below, which includes the aggregate outstanding <u>principal</u> amount without regard to any accrued but unpaid interest:

> $ _____

**Item 2. Vote on Plan**

**IF YOU VOTE TO ACCEPT THE PLAN, YOUR VOTE CONSTITUTES AN ACCEPTANCE OF AND CONSENT TO THE CLASSIFICATION AND TREATMENT OF YOUR CLAIM UNDER THE PLAN.**

Regardless of whether you vote to accept or reject the Plan or if you do not cast a vote to accept or reject the Plan, please see Item 3 below and refer to Article IX of the Plan for information about the Third-Party Releases.

Any Ballot that is executed by the holder of a Class 3 FILO Claim that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan will not be counted.

**The Plan, though proposed jointly, constitutes separate plans proposed by each of the Debtor entities. Your vote will count as votes for or against, as applicable, each plan proposed by each Debtor entity.**

The holder of the Class 3 FILO Claim identified in Item 1 votes as follows (check one box only – if you do not check a box or you check both boxes, your vote will not be counted):

> ☐ **ACCEPT** (vote FOR) the Plan.    ☐ **REJECT** (vote AGAINST) the Plan.

**Item 3. Election to Opt-Out of Third-Party Releases**

Regardless of whether you voted to accept or reject the Plan in Item 2 above or abstained from voting to accept or reject the Plan, you may check the box below to opt out of the Third-Party Releases**. IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES BY CHECKING THE BOX BELOW, YOU WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE RELEASED PARTIES AS PROVIDED IN THE PLAN.  IF YOU WOULD OTHERWISE BE ENTITLED TO A RELEASE UNDER ARTICLE IX.B OR IX.C OF THE PLAN BUT YOU DO NOT GRANT THE THIRD-PARTY RELEASES BECAUSE YOU OPTED OUT, YOU WILL NOT RECEIVE THE BENEFIT OF THE RELEASES SET FORTH IN ARTICLE IX.B OR IX.C OF THE PLAN.**

☐ **Opt Out** of the Third-Party Releases

**Item 4. Certification.**

By returning this Ballot, the holder of the Class 3 FILO Claim identified in Item 1 certifies that (a) this Ballot is the only Ballot submitted for the Class 3 FILO Claim identified in Item 1; (b) it was the holder of the Class 3 FILO Claim identified in Item 1 as of the Voting Record Date and/or it has full power and authority to vote to accept or reject the Plan for the Class 3 FILO Claim identified in Item 1; (c) it is one of the following: (i) a "qualified institutional buyer" (as such term is defined in Rule 144A of the Securities Act[3]), (ii) an "accredited investor" (as such term is defined in Rule 501 of Regulation D of the Securities Act), or (iii) for holders located outside the United States, a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S of the Securities Act) and not participating on behalf of or on account of a U.S. person; and (d) it has received a copy of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all of the terms and conditions set forth in the Disclosure Statement and Plan.

YOUR RECEIPT OF THIS BALLOT DOES NOT SIGNIFY THAT YOUR CLAIM HAS BEEN OR WILL BE ALLOWED.

_____
Name of Holder of Class 3 FILO Claim

_____
Social Security or Federal Tax I.D. No. (optional)

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____

---

[3]    The "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa (as amended).

_____

Email Address

_____

Date Completed

This Ballot will not constitute or be deemed a proof of claim or equity interest, an assertion of a claim or equity interest, or the allowance of a claim or equity interest.

**YOUR VOTE MUST BE ACTUALLY RECEIVED BY 4:00 P.M. (PREVAILING EASTERN TIME) ON APRIL 8, 2024, OR YOUR VOTE WILL NOT BE COUNTED.  IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT VIA EMAIL AT JOANNBALLOTS@RA.KROLL.COM.**

[*Remainder of page left intentionally blank*]

31441495.1

## Exhibit 3C

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

In re:                 :    Chapter 11

JOANN INC., *et al.*,      :    IMPORTANT: No chapter 11 case has been commenced as of the date of distribution of this ballot. This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization.

        Debtors. [1]      :

                        :    If chapter 11 cases are commenced, the Debtors will request joint administration of such cases.

------------------------------------------------------------ x

## BALLOT FOR HOLDERS IN

## CLASS 4 (TERM LOAN CLAIMS)

## FOR VOTING TO ACCEPT OR REJECT THE JOINT
## PREPACKAGED PLAN OF REORGANIZATION OF JOANN INC. AND
## ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

| THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS APRIL 8, 2024 AT 4:00 P.M. (PREVAILING EASTERN TIME) |
| --- |

JOANN Inc. and each of the debtors and debtors-in-possession in the above-captioned cases (collectively, the "***Debtors***") are sending this ballot (the "***Ballot***") in order to solicit your vote to accept or reject the *Prepackaged Joint Plan of Reorganization of JOANN Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code*, dated March 16, 2024 (as may be amended, modified, or supplemented from time to time, the "***Plan***").[2] The Plan is attached as Exhibit A to the proposed *Disclosure Statement for Prepackaged Joint Plan of Reorganization of JOANN Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which accompanies this Ballot and has also been posted on the Debtors' case information website (located at https://cases.ra.kroll.com/JOANN). The Disclosure Statement provides information to assist you in deciding how to vote on the Plan. The Debtors' case information website allows Holders to electronically submit a vote on the Plan. On the date on which the Chapter 11 Cases (as defined below) are commenced (the "***Petition Date***"), the case information website will be

---

[1]    The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, OH 44236.

[2]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Plan.

31441494.1

updated to include important information, hearing dates, and other key deadlines, as well as the docket for the Chapter 11 Cases (which will be available for review and download, free of charge).

The Disclosure Statement provides information to assist Holders of Claims in the Voting Classes in deciding whether to accept or reject the Plan.  If you have not received or wish to obtain additional copies of the Disclosure Statement, please contact the Debtors' solicitation agent, Kroll Restructuring Administration LLC (the "**Solicitation Agent**"), via email at joanninfo@ra.kroll.com.

This Ballot is being submitted to Holders, as of February 28, 2024 (the "**Voting Record Date**"), of any Term Loan Claims.  "**Term Loan Claims**" include any Claim arising under or related to the Term Loan Credit Agreement (as defined below).  If you hold Claims in more than one Class, you will receive a separate Ballot for each Class in which you are entitled to vote.  In order for your vote in Class 4 to count, you must either (a) complete and submit your vote through the Solicitation Agent's E-Ballot platform or (b) complete and return this paper Ballot in accordance with the instructions set forth herein.

The Debtors have not yet filed for relief under chapter 11 of the Bankruptcy Code and no court has approved the Disclosure Statement or the Plan.  As described in the Disclosure Statement, the Debtors intend to commence cases (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") following the commencement of this solicitation.  If the Debtors commence the Chapter 11 Cases, the Plan may be confirmed by the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") if:  (a) it is accepted by at least two-thirds (2/3) of the aggregate principal amount and more than one-half (1/2) in number of the Holders of ABL Claims voting in Class 2, FILO Claims voting in Class 3, and/or Term Loan Claims voting in Class 4; and (b) the Plan otherwise satisfies the applicable requirements of section 1129 of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, the Plan will be binding on all Holders of Term Loan Claims whether or not a Holder of a Term Loan Claim returns a Ballot or votes to reject the Plan.

This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than (a) to cast a vote to accept or reject the Plan and/or (b) to opt out of the Third-Party Releases (as defined below).

If you have any questions regarding the Ballot or how to properly complete this Ballot, please contact the Solicitation Agent via email at joannballots@ra.kroll.com.

*[Remainder of page left intentionally blank]*

**IMPORTANT NOTICE REGARDING TREATMENT
FOR HOLDERS OF CLASS 4 TERM LOAN CLAIMS**

As described in more detail in the Disclosure Statement and Plan, if the Chapter 11 Cases are commenced, the Plan is confirmed, and the Effective Date occurs, then on the Effective Date, each Holder of an Allowed Term Loan Claim shall receive, in full and final satisfaction, settlement, release, and discharge and in exchange for each Allowed Term Loan Claim, its Pro Rata Share of the New Equity Interests, subject to dilution by the Management Incentive Plan, the DIP Participation Fee, and the New Equity Interests issued to certain Additional Financing Parties.

The Term Loan Claims will be deemed Allowed in the aggregate principal amount of $658,125,000.

*[Remainder of page left intentionally blank]*

## SCHEDULE OF CERTAIN RELEVANT DEFINED TERMS

"*Accordion Facility*" means the accordion facility under the DIP Credit Agreement.

"*Accordion Lender*" means the lenders under the Accordion Facility.

"*Additional Financing Parties*" means, collectively, each Accordion Lender, Project Swift LLC, and the Supporting Trade Creditors.

"*Consenting Stakeholders*" means, collectively, the Consenting Term Lenders and Consenting Stockholder Parties.

"*Consenting Stockholder Parties*" means Green Equity Investors CF, L.P., Green Equity Investors Side CF, L.P., LGP Associates CF, LLC, and certain current or former members of the Parent board of directors.

"*Consenting Term Lenders*" means Holders of, or nominees, investment managers, investment advisors, or subadvisors to funds and/or accounts that hold, or trustees of trusts that hold, the outstanding Term Loan Claims that have executed and delivered counterpart signature pages to the Transaction Support Agreement, or signature pages to a Joinder or Transfer Agreement (as applicable), to counsel to the Debtors.

"*DIP Backstop Allocation Schedule*" means the backstop allocation schedule in respect of the DIP Facility attached as Exhibit 1 to the Transaction Term Sheet.

"*DIP Backstop Fee*" means, in exchange for the DIP Backstop Parties' agreement to backstop the entire amount of the DIP Facility, each DIP Backstop Party, as well as Project Swift LLC, shall receive its Pro Rata Share of a backstop fee equal to twenty percent (20%) of the DIP Term Loans in the form of an assumption of an equivalent amount of such DIP Backstop Party's Term Loan Claims, up to the amount thereof, and thereafter paid in kind; *provided* that any interest on additional DIP Term Loans payable as part of such backstop fee shall be payable in kind; *provided further* that, to the extent a DIP Backstop Party does not hold Term Loan Claims sufficient to pay such backstop fee, such amount of the backstop fee shall be paid in an equivalent amount of DIP Term Loans.  The DIP Backstop Fee shall be earned on the date of execution of the Transaction Support Agreement, but subject to the entry of the Interim DIP/Cash Collateral Order, and thereafter constitute DIP Claims.  Any third party that funds the Accordion Facility shall be entitled to, with the consent of the Required DIP Lenders, a fee no worse for the Company than being paid to the DIP Backstop Parties.

"*DIP Backstop Parties*" means the Consenting Term Lenders set forth on the DIP Backstop Allocation Schedule that have agreed to backstop and fund the full amount of the DIP Facility.

"*DIP Credit Agreement*" means that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement in respect of the DIP Facility, as amended, restated, amended and restated, modified, or supplemented from time to time in accordance with the terms thereof.

31441494.1

4

"*DIP Facility*" means the senior secured debtor-in-possession credit facility provided by the DIP Lenders under the DIP Credit Agreement.

"*DIP Facility Documents*" means the DIP/Cash Collateral Orders and the DIP Credit Agreement, together with all other related documents, instruments, and agreements in respect of the DIP Facility, in each case, as amended, restated, amended and restated, modified, or supplemented from time to time in accordance with the terms thereof.

"*DIP Lenders*" means the lenders holding the New Money DIP Term Loans.

"*DIP Participation Fee*" means, in exchange for the DIP Lenders' agreement to fund the DIP Facility, each applicable DIP Lender shall receive its Pro Rata Share of a participation fee equal to eighty-five (85%) of the New Equity Interests (subject to dilution only by the Management Incentive Plan); *provided* that, for the avoidance of doubt, Project Swift LLC, as the only Additional Financing Party providing "new money" DIP Term Loans, shall be the only Additional Financing Party entitled to receive a share of the Participation Fee as set forth on its Joinder. The DIP Participation Fee shall be earned on the date of entry of the Final DIP/Cash Collateral Order and thereafter constitute DIP Claims.

"*DIP Term Loan Claims*" means Claims arising under or related to the DIP Term Loans.

"*DIP Term Loans*" means loans made under the DIP Facility in an original aggregate principal amount of approximately $132,000,000 plus up to $10,000,000 of additional loans under the Accordion Facility plus additional loans paid as part of the DIP Backstop Fee.

"*DIP/Cash Collateral Motion*" means the motion(s) seeking approval of the Debtors' use of Cash Collateral and requesting approval to obtain debtor in possession financing on terms substantially the same as those set forth in the Transaction Term Sheet and the DIP Facility Documents.

"*Effective Date*" means the date on which all conditions specified in Article VIII.A of the Plan have been (a) satisfied or (b) waived pursuant to Article VIII.B of the Plan.

"*Final DIP/Cash Collateral Order*" means any order (and all exhibit and schedules thereto, including any budget) entered by the Bankruptcy Court on a final basis: (a) approving the DIP Facility, the DIP Facility Documents, and the DIP/Cash Collateral Motion; (b) authorizing the Debtors' use of Cash Collateral; and (c) providing for adequate protection of secured creditors.

"*Interim DIP/Cash Collateral Order*" means any order (and all exhibit and schedules thereto, including any budget) entered by the Bankruptcy Court on an interim basis: (a) approving the DIP Facility, the DIP Facility Documents, and the DIP/Cash Collateral Motion; (b) authorizing the Debtors' use of Cash Collateral; and (c) providing for adequate protection of secured creditors.

"*Joinder*" means a joinder to the Transaction Support Agreement, substantially in the form attached as Exhibits C, D, E, F, or G thereto, providing, among other things, that such Person

signatory thereto is bound by the terms of the Transaction Support Agreement to the extent provided therein.

"***Management Incentive Plan***" means the management incentive plan to be adopted by the Reorganized Board on or around the Effective Date, which shall provide for the issuance to management, key employees, and/or directors of the Reorganized Debtors of the fully diluted New Equity Interests.

"***New Equity Interests***" means the outstanding equity interests in Reorganized Parent to be authorized, issued, or reserved on the Effective Date, which interests may be membership interests of a limited liability company or common equity interests of a corporation.

"***Parent***" means JOANN Inc., a Delaware corporation with a mailing address of 5555 Darrow Road, Hudson, OH 44236.

"***Person***" means a person as defined in section 101(41) of the Bankruptcy Code.

"***Pro Rata Share***" means, with respect to any distribution on account of an Allowed Claim, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

"***Reorganized Board***" means the initial board of directors or similar governing body of the Reorganized Parent.

"***Reorganized Debtors***" means, on or after the Effective Date, the Debtors, as reorganized pursuant to and under the Plan, or any successor thereto.

"***Reorganized Parent***" means, on or after the Effective Date, Parent as reorganized pursuant to and under the Plan.

"***Supporting Trade Creditors***" means, collectively, the Holders of General Unsecured Claims that have executed Joinders.

"***Term Loan Claims***" means Claims arising under or related to the Term Loan Credit Agreement.

"***Term Loan Credit Agreement***" means that certain Credit Agreement, dated as of October 21, 2016, as amended by that certain Incremental Amendment No. 1 on July 21, 2017 and that certain Amendment No. 2 on July 7, 2021, as amended, restated, amended and restated, modified, or supplemented from time to time in accordance with the terms thereof.

"***Term Loan Documents***" means the Term Loan Credit Agreement together with all other related documents, instruments, and agreements in respect of the Term Loans, in each case, as amended, restated, amended and restated, modified, or supplemented from time to time in accordance with the terms thereof.

"***Term Loans***" means the senior secured first-lien term loans issued pursuant to the Term Loan Credit Agreement.

"***Transaction Support Agreement***" means that certain Transaction Support Agreement entered into on March 15, 2024, among the Debtors and certain of the Consenting Stakeholders and any exhibits, schedules, attachments, or appendices thereto (in each case, as such may be amended, modified, or supplemented in accordance with its terms).

"***Transaction Term Sheet***" means the term sheet attached as Exhibit B to the Transaction Support Agreement, together with the exhibits and appendices annexed thereto.

[*Remainder of page left intentionally blank*]

**NOTICE REGARDING CERTAIN RELEASE, EXCULPATION
AND INJUNCTION PROVISIONS IN THE PLAN**

**Please be advised that if the Plan is consummated, Holders of Class 4 Term Loan Claims
that do not opt out of the releases will be deemed to have granted the releases and
consented to the injunction and exculpation provisions contained in Article IX of the Plan.**

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW
AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION,
AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**Article IX.B.** *Releases by the Debtors*

> EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE COMBINED ORDER, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, IS AND IS DEEMED TO BE, FOREVER AND UNCONDITIONALLY RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED BY EACH DEBTOR, REORGANIZED DEBTOR, AND THE ESTATES FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (1) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (2) THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (3) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS, (4) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY, (5) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, (6) INTERCOMPANY TRANSACTIONS, (7) THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THE ABL FACILITY DOCUMENTS, THE TERM LOAN DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITIES DOCUMENTS (AND ANY FINANCING PERMITTED THEREUNDER), THE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION, (8) ANY CONTRACT,

INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, (9) THE DISTRIBUTION, INCLUDING ANY DISBURSEMENTS MADE BY A DISTRIBUTION AGENT, OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR (10) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE; *PROVIDED*, THAT THE DEBTORS DO NOT RELEASE CLAIMS OR CAUSES OF ACTION ARISING OUT OF, OR RELATED TO, ANY ACT OR OMISSION OF A RELEASED PARTY THAT IS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT (IT BEING AGREED THAT ANY RELEASED PARTIES' CONSIDERATION, APPROVAL, OR RECEIPT OF ANY DISTRIBUTION DID NOT ARISE FROM OR RELATE TO ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT).  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (1) ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN OR (2) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION.

ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS:  (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THE PLAN; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE DEBTORS' ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

**Article IX.C.**  *Releases by Holders of Claims and Interests*

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE COMBINED ORDER, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS THEREBY CONFIRMED, EACH RELEASING PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, HAS AND IS DEEMED TO HAVE, FOREVER AND UNCONDITIONALLY, RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED EACH DEBTOR, REORGANIZED DEBTOR, AND RELEASED PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (1) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (2) THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (3) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS, (4) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY, (5) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, (6) INTERCOMPANY TRANSACTIONS, (7) THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THE ABL FACILITY DOCUMENTS, THE TERM LOAN DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITIES DOCUMENTS (AND ANY FINANCING PERMITTED THEREUNDER), THE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION, (8) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, (9) THE DISTRIBUTION, INCLUDING ANY DISBURSEMENTS MADE BY A DISTRIBUTION AGENT, OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR (10) ANY OTHER ACT, OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATING TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE; *PROVIDED*, THAT THE RELEASING PARTIES DO NOT RELEASE CLAIMS OR CAUSES OF ACTION ARISING OUT OF, OR RELATED TO, ANY ACT OR OMISSION

OF A RELEASED PARTY THAT IS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT (IT BEING AGREED THAT ANY RELEASED PARTIES' CONSIDERATION, APPROVAL, OR RECEIPT OF ANY DISTRIBUTION DID NOT ARISE FROM OR RELATE TO ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT). NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (1) ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN OR (2) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION.

ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS: (1) CONSENSUAL; (2) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (3) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THE PLAN; (4) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE; (5) IN THE BEST INTERESTS OF THE DEBTORS AND THE ESTATES; (6) FAIR, EQUITABLE, AND REASONABLE; (7) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (8) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

**Article IX.D.**  *Exculpation*

EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMITTED BY LAW, THE EXCULPATED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY PERSON OR ENTITY FOR ANY CLAIMS OR CAUSES OF ACTION ARISING BEFORE OR ON THE EFFECTIVE DATE FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO, FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR EFFECTING THE CONFIRMATION OR CONSUMMATION (AS APPLICABLE) OF THE PLAN, THE TRANSACTION SUPPORT AGREEMENT, AND THE DISCLOSURE STATEMENT INCLUDING ANY DISBURSEMENTS MADE BY A DISTRIBUTION AGENT IN

CONNECTION WITH THE PLAN, THE DISCLOSURE STATEMENT, THE DEFINITIVE DOCUMENTS, THE PLAN SUPPLEMENT, THE ABL FACILITY DOCUMENTS, THE TERM LOAN DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITIES DOCUMENTS (AND ANY FINANCING PERMITTED THEREUNDER), OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR ANY OTHER POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTORS, THE APPROVAL OF THE DISCLOSURE STATEMENT OR CONFIRMATION OR CONSUMMATION OF THE PLAN; *PROVIDED*, THAT THE FOREGOING PROVISIONS OF THE EXCULPATION SHALL NOT OPERATE TO WAIVE OR RELEASE: (1) ANY CLAIMS OR CAUSES OF ACTION ARISING FROM WILLFUL MISCONDUCT, ACTUAL FRAUD, OR GROSS NEGLIGENCE OF SUCH APPLICABLE EXCULPATED PARTY AS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION; AND/OR (2) THE RIGHTS OF ANY PERSON OR ENTITY TO ENFORCE THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, INDENTURES, AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN OR ASSUMED PURSUANT TO THE PLAN OR FINAL ORDER OF THE BANKRUPTCY COURT; *PROVIDED*, FURTHER, THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS RESPECTIVE DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE ABOVE REFERENCED DOCUMENTS, ACTIONS, OR INACTIONS.

THE EXCULPATED PARTIES HAVE, AND UPON CONSUMMATION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.

THE FOREGOING EXCULPATION SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT, OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION, OR APPROVAL OF ANY PERSON OR ENTITY.

Article IX.E.  *Permanent Injunction*

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE COMBINED ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE,

**PERMANENTLY ENJOINED FROM (1) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (4) ASSERTING A RIGHT OF SETOFF OR SUBROGATION OF ANY KIND; OR (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED, OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE COMBINED ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED). ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

[*Remainder of page left intentionally blank*]

31441494.1

## Relevant Definitions Related to Release and Exculpation Provision

"***Causes of Action***" means any action, Claim, cross-claim, third-party claim, cause of action, controversy, dispute demand, right, lien, indemnity, contribution, interest, guaranty, suit, obligation, liability, lost, debt, fee or expense, damage, judgment, account, defense, offset, power, privilege, proceeding, franchise, remedy, and license of any kind or character whatsoever, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, as applicable, in contract or in tort, in law (whether local, state, or federal U.S. or non-U.S. Law) or in equity, or pursuant to any other theory of local, state, or federal U.S. or non-U.S. Law.  For the avoidance of doubt, "Causes of Action" include:  (a) any right of setoff, counterclaim, or recoupment; (b) any Claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, actual or constructive fraudulent transfer or fraudulent conveyance or voidable transaction or similar Law, violation of local, state, or federal or non-U.S. Law or breach of any duty imposed by Law or in equity, including securities Laws, negligence, and gross negligence; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code or similar local, state, or federal U.S. or non-U.S. Law; (d) any Claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any Avoidance Actions relating to or arising from any state or foreign Law pertaining to any Avoidance Action, including preferential transfer, actual or constructive fraudulent transfer, fraudulent conveyance, or similar Claim; (f) the right to object to or otherwise contest Claims or Interests; and  (g) any "lender liability" or equitable subordination Claims or defenses.

"***Claim***" means any claim, as defined in section 101(5) of the Bankruptcy Code.  Except where otherwise provided in context, "Claim" refers to such a claim against any of the Debtors.

"***Debtor Release***" means the releases set forth in Article IX.B of the Plan.

"***Exculpated Party***" means, each in its capacity as such, (a) each of the Debtors and, (b) solely to the extent they are Estate fiduciaries, the Debtors' Related Parties.

"***Release Opt-Out Form***" means the form to be provided to certain Holders of Claims through which such Holders may elect to affirmatively opt out of the Third-Party Release.

"***Released Party***" means, collectively, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Non-Debtor Affiliate; (d) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers, and proxyholders; (e) each Consenting Stakeholder; (f) each Prepetition Agent; (g) each ABL Lender; (h) each FILO Lender; (i) the DIP Agent; (j) each DIP Lender; (k) the Exit Facility Agent; (l) each lender under the Exit Facilities; (m) each Additional Financing Party; (n) each Releasing Party; and (o) each Related Party of each Entity in clauses (a) through (m); *provided*, that, in each case, an Entity shall not be a Released Party if it (i) elects to opt out of the Third-Party Release as provided on its respective Release Opt-Out Form or (ii) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the Third-Party Release that is not resolved

before Confirmation; *provided*, *further*, that, for the avoidance of doubt, any opt-out election made by a Consenting Stakeholder or an Additional Financing Party shall be void *ab initio*.

"***Releasing Parties***" means, collectively, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Non-Debtor Affiliate; (d) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers, and proxyholders; (e) each Consenting Stakeholder; (f) each Prepetition Agent; (g) each ABL Lender; (h) each FILO Lender; (i) the DIP Agent; (j) each DIP Lender; (k) the Exit Facility Agent; (l) each lender under the Exit Facilities; (m) each Additional Financing Party; (n) each Holder of a Claim that is Unimpaired under this Plan that does not elect to opt out of the Releases contained in this Plan; (o) each Holder of a Claim that is entitled to vote on this Plan and either (i) votes to accept this Plan, (ii) abstains from voting on this Plan and does not elect to opt out of the Releases contained in this Plan, or (iii) votes to reject this Plan and does not elect to opt out of the Releases contained in this Plan; and (p) each Related Party of each Entity in clauses (a) through (o); *provided*, that, for the avoidance of doubt, any opt-out election made by a Consenting Stakeholder or an Additional Financing Party shall be void *ab initio*.

"***Third-Party Release***" means the releases given by the Releasing Parties to the Released Parties in Article IX.C of the Plan.

*[Remainder of page left intentionally blank]*

**IMPORTANT**

**YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU VOTE.  YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIMS UNDER THE PLAN.**

**THE SOLICITATION AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.**

**VOTING DEADLINE:  4:00 P.M. PREVAILING EASTERN TIME ON APRIL 8, 2024**

**VOTING RECORD DATE:  FEBRUARY 28, 2024**

**YOU ARE STRONGLY ENCOURAGED TO USE THE SOLICITATION AGENT'S E-BALLOT PLATFORM TO SUBMIT YOUR VOTE AND YOUR OPT-OUT ELECTIONS.  IF YOU SUBMIT YOUR VOTE AND OPT-OUT ELECTIONS THROUGH THE E-BALLOT PLATFORM, YOU SHOULD <u>NOT</u> RETURN A PAPER BALLOT.**

---

**IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY RECEIVE</u> YOUR BALLOT BY THE VOTING DEADLINE (WHETHER CAST THROUGH THE E-BALLOT PLATFORM OR IN HARD COPY), YOUR VOTE WILL NOT BE COUNTED, UNLESS SUCH DEADLINE IS EXTENDED BY THE DEBTORS, AND ANY ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASES WILL NOT BE VALID.**

**YOU SHOULD NOT SEND YOUR BALLOT TO ANY OF THE DEBTORS, THE DEBTORS' AGENTS (OTHER THAN THE SOLICITATION AGENT), OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.  IF SO SENT, THE BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN.**

**IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING UPON YOU WHETHER OR NOT YOU VOTE.**

*[Remainder of page left intentionally blank]*

### INSTRUCTIONS FOR VOTING ONLINE THROUGH
### THE SOLICITATION AGENT'S E-BALLOT PLATFORM

You may return your Ballot by electronic, online transmission <u>solely</u> by clicking on the "Submit E-Ballot" section on the Debtors' solicitation website (https://cases.ra.kroll.com/JOANNBallots) and following the directions set forth on the website regarding submitting your E-Ballot as described more fully below.  Please choose only ONE method of return for your Ballot.

1.  Please visit the Debtors' solicitation website at https://cases.ra.kroll.com/JOANNBallots.

2.  Click on the "Submit E-Ballot" section of the Debtors' case website.

3.  Follow the directions to submit your E-Ballot. If you choose to submit your Ballot via the Solicitation Agent's E-Ballot system, you should **not** return a hard copy of your Ballot.

**IMPORTANT NOTE: YOU WILL NEED THE FOLLOWING INFORMATION TO RETRIEVE AND SUBMIT YOUR CUSTOMIZED E-BALLOT:**

**UNIQUE E-BALLOT ID#** _____

"E-BALLOTING" IS THE SOLE MANNER IN WHICH BALLOTS MAY BE DELIVERED VIA ELECTRONIC TRANSMISSION.

**BALLOTS SUBMITTED BY FACSIMILE OR EMAIL WILL NOT BE COUNTED.**

**HOLDERS OF CLASS 4 TERM LOAN CLAIMS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM.**

[*Remainder of page left intentionally blank*]

31441494.1

17

### **INSTRUCTIONS FOR VOTING BY MAIL**

1. Complete Items 1 and 2.

2. If you wish to opt out of the Third-Party Releases, complete Item 3.

3. Review the certification contained in Item 4.

4. **Sign and date the Ballot and fill out the other required information.**

5. You must vote the full amount of all of your Class 4 Term Loan Claim *either* to accept *or* reject the Plan.  You may not split your vote.

6. The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder, (b) any Ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (c) any unsigned Ballot, (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan, and (e) any Ballot that attempts to partially accept and partially reject the Plan.

7. If the Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors.  Ballots may be delivered by first class mail, overnight courier, or personal delivery.  The method of delivery of the Ballot to the Solicitation Agent is at your election and risk.

8. Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots will be determined by the Solicitation Agent and/or the Debtors, which determination will be final and binding.  The Debtors reserve the right to reject any and all Ballots submitted by any of their respective creditors not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful.  The Debtors further reserve their respective rights to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any of their creditors.  The interpretation (including the Ballot and the respective instructions thereto) by the applicable Debtor, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties.  Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Bankruptcy Court) determines.  Neither the Debtors nor any other Person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification.  Unless otherwise directed by the Bankruptcy Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

9. The Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

31441494.1

18

10. This Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you in the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Combined Order is not entered or consummation of the Plan does not occur.

11. There may be changes made to the Plan that do not have material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan

12. If multiple Ballots are received from the same Holder of a Claim with respect to the same Claim before the Voting Deadline, the last, timely received, and valid Ballot, regardless of the manner of submission, will supersede and revoke any earlier-received Ballot.

13. The method of delivery of a Ballot to the Solicitation Agent is at the election and risk of each Holder of a Claim.  Except as otherwise provided herein, such delivery will be deemed made, regardless of the manner of delivery, only when the Solicitation Agent **actually receives** the properly completed Ballot.  In all cases, Holders should allow sufficient time to assure timely delivery of their Ballots.

14. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

**YOUR COMPLETED BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BY THE VOTING DEADLINE VIA THE E-BALLOT PLATFORM, AS DIRECTED ABOVE, OR IN HARD COPY AT THE FOLLOWING ADDRESS:**

**JOANN, Inc. Ballot Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 Third Avenue, Suite 412**
**New York, NY 11232**

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL JOANNBALLOTS@RA.KRUPLL.COM (WITH "JOANN SOLICITATION BALLOT DELIVERY" IN THE SUBJECT LINE) AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS BEFORE YOUR ARRIVAL AT THE ADDRESS ABOVE.**

**THE VOTING DEADLINE IS APRIL 8, 2024 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

**Item 1. Amount of Claim**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder of the following Class 4 Term Loan Claim inserted into the box below, which includes the aggregate outstanding <u>principal</u> amount without regard to any accrued but unpaid interest:

> $ _____

**Item 2. Vote on Plan**

**IF YOU VOTE TO ACCEPT THE PLAN, YOUR VOTE CONSTITUTES AN ACCEPTANCE OF AND CONSENT TO THE CLASSIFICATION AND TREATMENT OF YOUR CLAIM UNDER THE PLAN.**

Regardless of whether you vote to accept or reject the Plan or if you do not cast a vote to accept or reject the Plan, please see Item 3 below and refer to Article IX of the Plan for information about the Third-Party Releases.

Any Ballot that is executed by the holder of a Class 4 Term Loan Claim that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan will not be counted.

**The Plan, though proposed jointly, constitutes separate plans proposed by each of the Debtor entities.  Your vote will count as votes for or against, as applicable, each plan proposed by each Debtor entity.**

The holder of the Class 4 Term Loan Claim identified in Item 1 votes as follows (check one box only – if you do not check a box or you check both boxes, your vote will not be counted):

> ☐ **ACCEPT** (vote FOR) the Plan.          ☐ **REJECT** (vote AGAINST) the Plan.

**Item 3. Election to Opt-Out of Third-Party Releases**

Regardless of whether you voted to accept or reject the Plan in Item 2 above or abstained from voting to accept or reject the Plan, you may check the box below to opt out of the Third-Party Releases**.  IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES BY CHECKING THE BOX BELOW, YOU WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE RELEASED PARTIES AS PROVIDED IN THE PLAN.  IF YOU WOULD OTHERWISE BE ENTITLED TO A RELEASE UNDER ARTICLE IX.B OR IX.C OF THE PLAN BUT YOU DO NOT GRANT THE THIRD-PARTY RELEASES BECAUSE YOU OPTED OUT, YOU WILL NOT RECEIVE THE BENEFIT OF THE RELEASES SET FORTH IN ARTICLE IX.B OR IX.C OF THE PLAN.**

31441494.1

☐ **Opt Out** of the Third-Party Releases

**Item 4. Certification.**

By returning this Ballot, the holder of the Class 4 Term Loan Claim identified in Item 1 certifies that (a) this Ballot is the only Ballot submitted for the Class 4 Term Loan Claim identified in Item 1; (b) it was the holder of the Class 4 Term Loan Claim identified in Item 1 as of the Voting Record Date and/or it has full power and authority to vote to accept or reject the Plan for the Class 4 Term Loan Claim identified in Item 1; (c) it is one of the following: (i) a "qualified institutional buyer" (as such term is defined in Rule 144A of the Securities Act[3]), (ii) an "accredited investor" (as such term is defined in Rule 501 of Regulation D of the Securities Act), or (iii) for holders located outside the United States, a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S of the Securities Act) and not participating on behalf of or on account of a U.S. person; and (d) it has received a copy of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all of the terms and conditions set forth in the Disclosure Statement and Plan.

YOUR RECEIPT OF THIS BALLOT DOES NOT SIGNIFY THAT YOUR CLAIM HAS BEEN OR WILL BE ALLOWED.

_____

Name of Holder of Class 4 Term Loan Claim

_____

Social Security or Federal Tax I.D. No. (optional)

_____

Signature

_____

If by Authorized Agent, Name and Title

_____

Name of Institution

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

---

[3]   The "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa (as amended).

_____

Email Address

_____

Date Completed

This Ballot will not constitute or be deemed a proof of claim or equity interest, an assertion of a claim or equity interest, or the allowance of a claim or equity interest.

**YOUR VOTE MUST BE ACTUALLY RECEIVED BY 4:00 P.M. (PREVAILING EASTERN TIME) ON APRIL 8, 2024, OR YOUR VOTE WILL NOT BE COUNTED. IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT VIA EMAIL AT JOANNBALLOTS@RA.KROLL.COM.**

[*Remainder of page left intentionally blank*]

## Exhibit 4

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------ x
                                                            :
In re:                                                      :    Chapter 11
                                                            :
JOANN INC., et al.,                                         :    Case No. 24-10418 (____)
                                                            :
                  Debtors. ¹                                :    (Jointly Administered)
                                                            :
                                                            :
------------------------------------------------------------ x
```

## NON-VOTING STATUS NOTICE

     **PLEASE TAKE NOTICE THAT** JOANN Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the "***Debtors***"), have commenced chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***") and have commenced the solicitation of votes, in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***"), to accept or reject the *Prepackaged Joint Plan of Reorganization of JOANN Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code*, dated March 16, 2024 (as may be amended, modified, or supplemented from time to time, the "***Plan***"),² attached as Exhibit A to the *Disclosure Statement for Prepackaged Joint Plan of Reorganization of JOANN, Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code*, dated March 16, 2024 (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***") from Holders of Claims in Classes 2, 3, and 4 thereunder.

     **PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice as a Holder or potential Holder of a Claim against or Interest in one or more of the Debtors that, due to the nature and treatment of such Claim or Interest under the Plan, ***is not entitled to vote on the Plan***. Specifically, under the terms of the Plan, Claims in Classes 1 and 5 are Unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to accept the Plan.   Claims in Classes 7 and 8 are either Unimpaired or Impaired under the Plan and are conclusively presumed to accept or reject the Plan.  Claims in Classes 6 and 9 (collectively with Classes 1, 5, 7, and 8, the "***Non-Voting Classes***") are Impaired under the Plan with no recovery and, pursuant to section 1126(g) of the Bankruptcy Code, are deemed to reject the Plan.

     **PLEASE TAKE FURTHER NOTICE THAT** the Plan, Disclosure Statement, and related documents are accessible, free of charge, on the following website maintained by the Debtors' claims, balloting, and noticing agent, Kroll Restructuring Administration LLC (the

---

¹    The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); and Jo-Ann Stores Support Center, Inc. (5027).  The Debtors' mailing address is 5555 Darrow Road, Hudson, OH 44236.

²    Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Plan.

                            1

"***Solicitation Agent***"): https://cases.ra.kroll.com/JOANN. Copies of the Plan, Disclosure Statement, and related documents may also be obtained free of charge:  (a) by contacting the Solicitation Agent by phone at (844) 488-7837 (U.S. / Canada, toll-free) or (646) 777-2384 (International, toll); or (b) by email at joanninfo@ra.kroll.com.  The Plan, Disclosure Statement, and related documents are also available for a fee through the Bankruptcy Court's electronic case filing system at https://ecf.deb.uscourts.gov/ using a PACER password (to obtain a PACER password, go to the PACER website at http://pacer.psc.uscourts.gov).

If you have questions regarding this notice you should contact the Solicitation Agent as set forth above.

*[Remainder of page left intentionally blank]*

**NOTICE REGARDING CERTAIN RELEASE, EXCULPATION
AND INJUNCTION PROVISIONS IN THE PLAN**


**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND
CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION,
AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**Article IX.B.** *__Releases by the Debtors__*

      **EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE COMBINED ORDER, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS THEREBY CONFIRMED, EACH RELEASED PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, IS AND IS DEEMED TO BE, FOREVER AND UNCONDITIONALLY RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED BY EACH DEBTOR, REORGANIZED DEBTOR, AND THE ESTATES FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (1) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (2) THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (3) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS, (4) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY, (5) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, (6) INTERCOMPANY TRANSACTIONS, (7) THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THE ABL FACILITY DOCUMENTS, THE TERM LOAN DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITIES DOCUMENTS (AND ANY FINANCING PERMITTED THEREUNDER), THE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION, (8) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES**

PURSUANT TO THE PLAN, (9) THE DISTRIBUTION, INCLUDING ANY DISBURSEMENTS MADE BY A DISTRIBUTION AGENT, OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR (10) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE; *PROVIDED*, THAT THE DEBTORS DO NOT RELEASE CLAIMS OR CAUSES OF ACTION ARISING OUT OF, OR RELATED TO, ANY ACT OR OMISSION OF A RELEASED PARTY THAT IS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT (IT BEING AGREED THAT ANY RELEASED PARTIES' CONSIDERATION, APPROVAL, OR RECEIPT OF ANY DISTRIBUTION DID NOT ARISE FROM OR RELATE TO ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT). NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (1) ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN OR (2) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION.

ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THE PLAN; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE DEBTORS' ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

Article IX.C.  *Releases by Holders of Claims and Interests*

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE COMBINED ORDER, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS THEREBY CONFIRMED, EACH RELEASING PARTY, IN EACH CASE ON BEHALF OF ITSELF

31441489.1

**AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, HAS AND IS DEEMED TO HAVE, FOREVER AND UNCONDITIONALLY, RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED EACH DEBTOR, REORGANIZED DEBTOR, AND RELEASED PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (1) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (2) THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (3) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS, (4) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY, (5) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, (6) INTERCOMPANY TRANSACTIONS, (7) THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THE ABL FACILITY DOCUMENTS, THE TERM LOAN DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITIES DOCUMENTS (AND ANY FINANCING PERMITTED THEREUNDER), THE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION, (8) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, (9) THE DISTRIBUTION, INCLUDING ANY DISBURSEMENTS MADE BY A DISTRIBUTION AGENT, OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR (10) ANY OTHER ACT, OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATING TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE; *PROVIDED*, THAT THE RELEASING PARTIES DO NOT RELEASE CLAIMS OR CAUSES OF ACTION ARISING OUT OF, OR RELATED TO, ANY ACT OR OMISSION OF A RELEASED PARTY THAT IS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT (IT BEING AGREED THAT ANY RELEASED PARTIES' CONSIDERATION, APPROVAL, OR RECEIPT OF ANY DISTRIBUTION DID NOT**

31441489.1

**ARISE FROM OR RELATE TO ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT). NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (1) ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN OR (2) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION.**

**ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS: (1) CONSENSUAL; (2) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (3) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THE PLAN; (4) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE; (5) IN THE BEST INTERESTS OF THE DEBTORS AND THE ESTATES; (6) FAIR, EQUITABLE, AND REASONABLE; (7) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (8) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

**Article IX.D.** *Exculpation*

**EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMITTED BY LAW, THE EXCULPATED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY PERSON OR ENTITY FOR ANY CLAIMS OR CAUSES OF ACTION ARISING BEFORE OR ON THE EFFECTIVE DATE FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO, FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR EFFECTING THE CONFIRMATION OR CONSUMMATION (AS APPLICABLE) OF THE PLAN, THE TRANSACTION SUPPORT AGREEMENT, AND THE DISCLOSURE STATEMENT INCLUDING ANY DISBURSEMENTS MADE BY A DISTRIBUTION AGENT IN CONNECTION WITH THE PLAN, THE DISCLOSURE STATEMENT, THE DEFINITIVE DOCUMENTS, THE PLAN SUPPLEMENT, THE ABL FACILITY DOCUMENTS, THE TERM LOAN DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITIES DOCUMENTS (AND ANY FINANCING PERMITTED THEREUNDER), OR ANY RESTRUCTURING TRANSACTION, CONTRACT,**

31441489.1

INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR OR ANY OTHER POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTORS, THE APPROVAL OF THE DISCLOSURE STATEMENT OR CONFIRMATION OR CONSUMMATION OF THE PLAN; *PROVIDED*, THAT THE FOREGOING PROVISIONS OF THE EXCULPATION SHALL NOT OPERATE TO WAIVE OR RELEASE:  (1) ANY CLAIMS OR CAUSES OF ACTION ARISING FROM WILLFUL MISCONDUCT, ACTUAL FRAUD, OR GROSS NEGLIGENCE OF SUCH APPLICABLE EXCULPATED PARTY AS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION; AND/OR (2) THE RIGHTS OF ANY PERSON OR ENTITY TO ENFORCE THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, INDENTURES, AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN OR ASSUMED PURSUANT TO THE PLAN OR FINAL ORDER OF THE BANKRUPTCY COURT; *PROVIDED*, FURTHER, THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS RESPECTIVE DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE ABOVE REFERENCED DOCUMENTS, ACTIONS, OR INACTIONS.

THE EXCULPATED PARTIES HAVE, AND UPON CONSUMMATION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.

THE FOREGOING EXCULPATION SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT, OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION, OR APPROVAL OF ANY PERSON OR ENTITY.

**Article IX.E.  *Permanent Injunction***

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE COMBINED ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (1) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE;

31441489.1

**(4) ASSERTING A RIGHT OF SETOFF OR SUBROGATION OF ANY KIND; OR (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED, OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE COMBINED ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED). ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

*[Remainder of page left intentionally blank]*

**Relevant Definitions Related to Release and Exculpation Provision:**

"***Causes of Action***" means any action, Claim, cross-claim, third-party claim, cause of action, controversy, dispute demand, right, lien, indemnity, contribution, interest, guaranty, suit, obligation, liability, lost, debt, fee or expense, damage, judgment, account, defense, offset, power, privilege, proceeding, franchise, remedy, and license of any kind or character whatsoever, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, as applicable, in contract or in tort, in law (whether local, state, or federal U.S. or non-U.S. Law) or in equity, or pursuant to any other theory of local, state, or federal U.S. or non-U.S. Law.  For the avoidance of doubt, "Causes of Action" include:  (a) any right of setoff, counterclaim, or recoupment; (b) any Claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, actual or constructive fraudulent transfer or fraudulent conveyance or voidable transaction or similar Law, violation of local, state, or federal or non-U.S. Law or breach of any duty imposed by Law or in equity, including securities Laws, negligence, and gross negligence; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code or similar local, state, or federal U.S. or non-U.S. Law; (d) any Claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any Avoidance Actions relating to or arising from any state or foreign Law pertaining to any Avoidance Action, including preferential transfer, actual or constructive fraudulent transfer, fraudulent conveyance, or similar Claim; (f) the right to object to or otherwise contest Claims or Interests; and  (g) any "lender liability" or equitable subordination Claims or defenses.

"***Claim***" means any claim, as defined in section 101(5) of the Bankruptcy Code.  Except where otherwise provided in context, "Claim" refers to such a claim against any of the Debtors.

"***Debtor Release***" means the releases set forth in Article IX.B of the Plan.

"***Exculpated Party***" means, each in its capacity as such, (a) each of the Debtors and, (b) solely to the extent they are Estate fiduciaries, the Debtors' Related Parties.

"***Release Opt-Out Form***" means the form to be provided to certain Holders of Claims through which such Holders may elect to affirmatively opt out of the Third-Party Release.

"***Released Party***" means, collectively, each of, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each Non-Debtor Affiliate; (d) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers, and proxyholders; (e) each Consenting Stakeholder; (f) each Prepetition Agent; (g) each ABL Lender; (h) each FILO Lender; (i) the DIP Agent; (j) each DIP Lender; (k) the Exit Facility Agent; (l) each lender under the Exit Facilities; (m) each Additional Financing Party; (n) each Releasing Party; and (o) each Related Party of each Entity in clauses (a) through (m); *provided*, that, in each case, an Entity shall not be a Released Party if it (i) elects to opt out of the Third-Party Release as provided on its respective Release Opt-Out Form or (ii) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the Third-Party Release that is not resolved before Confirmation; *provided*, *further*, that, for the avoidance of doubt, any opt-out election made by a Consenting Stakeholder or an Additional Financing Party shall be void *ab initio*.

"***Releasing Parties***" means, collectively, each of, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each Non-Debtor Affiliate; (d) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers, and proxyholders; (e) each Consenting Stakeholder; (f) each Prepetition Agent; (g) each ABL Lender; (h) each FILO Lender; (i) the DIP Agent; (j) each DIP Lender; (k) the Exit Facility Agent; (l) each lender under the Exit Facilities; (m) each

Additional Financing Party; (n) each Holder of a Claim that is Unimpaired under this Plan that does not elect to opt out of the Releases contained in this Plan; (o) each Holder of a Claim that is entitled to vote on this Plan and either (i) votes to accept this Plan, (ii) abstains from voting on this Plan and does not elect to opt out of the Releases contained in this Plan, or (iii) votes to reject this Plan and does not elect to opt out of the Releases contained in this Plan; and (p) each Related Party of each Entity in clauses (a) through (o); *provided*, that, for the avoidance of doubt, any opt-out election made by a Consenting Stakeholder or an Additional Financing Party shall be void *ab initio*.

"***Third-Party Release***" means the releases given by the Releasing Parties to the Released Parties in Article IX.C of the Plan.

*[Remainder of page left intentionally blank]*

Dated: _____, 2024

| | |
|---|---|
| **YOUNG CONAWAY STARGATT & TAYLOR, LLP** | **LATHAM & WATKINS LLP** |

| | |
|---|---|
| Michael R. Nestor (DE No. 3526) | George A. Davis (admitted *pro hac vice*) |
| Kara Hammond Coyle (DE No. 4410) | Alexandra M. Zablocki (admitted *pro hac vice*) |
| Shane M. Reil (DE No. 6195) | 1271 Avenue of the Americas |
| Rebecca L. Lamb (No. 7223) | New York, NY 10020 |
| Rodney Square | Telephone:    (212) 906-1200 |
| 1000 North King Street | Email:         george.davis@lw.com |
| Wilmington, DE 19801 |                    alexandra.zablocki@lw.com |
| Telephone:    (302) 571-6600 | |
| Email:         mnestor@ycst.com | Ted A. Dillman (admitted *pro hac vice*) |
|                    kcoyle@ycst.com | Nicholas J. Messana (admitted *pro hac vice*) |
|                    sreil@ycst.com | 355 South Grand Avenue, Suite 100 |
|                    rlamb@ycst.com | Los Angeles, CA 90071 |
| | Telephone:    (213) 485-1234 |
| | Email:         ted.dillman@lw.com |
| |                    nicholas.messana@lw.com |
| | Ebba Gebisa (admitted *pro hac vice*) |
| | 330 North Wabash Avenue, Suite 2800 |
| | Chicago, IL 27017 |
| | Telephone:    (312) 876-7700 |
| | Email:         ebba.gebisa@lw.com |

*Proposed Counsel for Debtors and Debtors-in-Possession*

31441489.1

## Exhibit 5

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------- x
                                  :

In re:                              :     Chapter 11
                                    :

JOANN INC., *et al.*,                 :     Case No. 24-10418 (____)
                                    :

            Debtors. [1]       :     (Jointly Administered)
                                    :
                                    :
------------------------------------------------------------- x

**RELEASE OPT-OUT FORM**

**FOR**

**HOLDERS OF UNIMPAIRED CLAIMS**

---

**THE DEADLINE TO COMPLETE AND RETURN THIS RELEASE OPT-OUT
FORM IS APRIL 8, 2024 AT 4:00 P.M. (PREVAILING EASTERN TIME)**

---

*General Information Concerning this Release Opt-Out Form*

       JOANN Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the "***Debtors***"), have filed the *Prepackaged Joint Plan of Reorganization of JOANN Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified, or supplemented from time to time, the "***Plan***"), which is described in the *Disclosure Statement for Prepackaged Joint Plan of Reorganization of JOANN Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as it may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), and have filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***") to implement the Plan (the "***Chapter 11 Cases***") in the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***").[2]

       You are receiving this release opt-out form (this "***Release Opt-Out Form***") because, according to the Debtors' books and records, you may be a Holder of a Claim in Class 1 (Other Secured Claims) or Class 5 (General Unsecured Claims) under the Plan. Claims in Classes 1 and 5 are Unimpaired under the Plan and their Holders are conclusively presumed to have accepted the

---

[1]    The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, OH 44236.

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Plan.

Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Claims in Classes 1 and 5 are not entitled to vote to accept or reject the Plan.

As described in more detail below, Article IX.C of the Plan contains certain **_voluntary third-party_** releases.  This Release Opt-Out Form provides you with the opportunity to elect to opt out of the voluntary releases in Article IX.C of the Plan.

_Making an Alternative Election Under this Release Opt-Out Form_

Holders of Claims who take no action with respect to this Release Opt-Out Form will automatically be deemed to grant the releases contained in Article IX.C of the Plan.

You should review the Disclosure Statement and the Plan before you make any elections on this Release Opt-Out Form.  You may wish to seek legal advice concerning the elections available under this Release Opt-Out Form.  Copies of the Disclosure Statement and the Plan may be found on the Debtors' restructuring website at https://cases.ra.kroll.com/JOANN.

**Questions may be directed to Kroll Restructuring Administration, LLC (the "_Solicitation Agent_") at (844) 488-7837 (U.S. / Canada, toll-free) or (646) 777-2384 (International, toll), or by emailing the Solicitation Agent at joanninfo@ra.kroll.com.**

*[Remainder of page intentionally left blank.]*

31441487.1

**Release Opt-Out Election**

**This election allows you to:**

- **OPT OUT OF THE VOLUNTARY RELEASES IN THE PLAN, WHICH WILL DISQUALIFY YOU FROM BEING SUBJECT TO AND BENEFITING FROM THE RELEASES IN ARTICLE IX OF THE PLAN.**

     **Complete and return this Form if you wish to elect to opt out of granting the voluntary releases contained in Article IX.C of the Plan.**

*Summary of Election*

     Article IX.C of the Plan contains a voluntary third-party release that binds releasing parties, which is described in greater detail below.  Releasing parties include Holders of Unimpaired Claims that do not opt out of the releases provided for in Article IX.C of the Plan by properly completing and making an election under this Release Opt-Out Form.

**IMPORTANT INFORMATION REGARDING THE RELEASE**

     **YOU WILL BE DEEMED TO HAVE GRANTED THE RELEASES CONTAINED IN ARTICLE IX.C OF THE PLAN UNLESS YOU COMPLETE AND RETURN THIS RELEASE OPT-OUT FORM BY APRIL 8, 2024 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

     **Article IX.C of the Plan contains the following provision:**

**Article IX.C.** *Releases by Holders of Claims and Interests*

     **EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE COMBINED ORDER, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS THEREBY CONFIRMED, EACH RELEASING PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, HAS AND IS DEEMED TO HAVE, FOREVER AND UNCONDITIONALLY, RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED EACH DEBTOR, REORGANIZED DEBTOR, AND RELEASED PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (1) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (2) THE PURCHASE, SALE, OR**

**RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES, (3) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS, (4) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY, (5) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, (6) INTERCOMPANY TRANSACTIONS, (7) THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THE ABL FACILITY DOCUMENTS, THE TERM LOAN DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITIES DOCUMENTS (AND ANY FINANCING PERMITTED THEREUNDER), THE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION, (8) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE TRANSACTION SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, (9) THE DISTRIBUTION, INCLUDING ANY DISBURSEMENTS MADE BY A DISTRIBUTION AGENT, OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR (10) ANY OTHER ACT, OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATING TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE; *PROVIDED*, THAT THE RELEASING PARTIES DO NOT RELEASE CLAIMS OR CAUSES OF ACTION ARISING OUT OF, OR RELATED TO, ANY ACT OR OMISSION OF A RELEASED PARTY THAT IS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT (IT BEING AGREED THAT ANY RELEASED PARTIES' CONSIDERATION, APPROVAL, OR RECEIPT OF ANY DISTRIBUTION DID NOT ARISE FROM OR RELATE TO ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT). NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (1) ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN OR (2) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION.**

**ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF**

**THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS: (1) CONSENSUAL; (2) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (3) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THE PLAN; (4) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE; (5) IN THE BEST INTERESTS OF THE DEBTORS AND THE ESTATES; (6) FAIR, EQUITABLE, AND REASONABLE; (7) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (8) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

*Instructions for Making a Release Opt-Out Election*

If you wish to make the election and opt out of granting the releases contained in Article IX.C of the Plan, check the box under "Your Election" below.  If your election contained in this Release Opt-Out Form is not received by the Solicitation Agent by April 8, 2024 at 4:00 p.m. (prevailing Eastern Time), your election will not count, your Release Opt-Out Form will not be effective, and you will be deemed to have consented to the releases provided for in Article IX.C of the Plan.  If your election is received and the opt-out box below is not checked, you will be deemed to have consented to the releases provided for in Article IX.C of the Plan.  Any opt-out election that is illegible or does not provide sufficient information to identify the Claim Holder will not be valid.

All questions as to the validity, form, eligibility (including time of receipt), and acceptance and revocation of an opt-out election will be resolved by the Debtors or Reorganized Debtors (as applicable), in their sole discretion, which resolution will be final and binding.

If you have any questions on how to properly complete this Release Opt-Out Form, you may contact the Solicitation Agent at (844) 488-7837 (U.S. / Canada, toll-free) or (646) 777-2384 (International, toll), or by emailing the Solicitation Agent at joanninfo@ra.kroll.com.

*[Remainder of page intentionally left blank.]*

**IF YOU WISH TO MAKE THE OPT-OUT ELECTION, PLEASE COMPLETE, SIGN, AND DATE THIS RELEASE OUT-OUT FORM AND RETURN IT (WITH A SIGNATURE) PROMPTLY IN THE ENVELOPE PROVIDED (IF APPLICABLE) OR VIA FIRST-CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:**

**JOANN Ballot Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

**To arrange hand delivery of your Release Opt-Out Form, please email the Claims and Solicitation Agent at <u>JOANNBallots@ra.kroll.com</u> (with "JOANN Solicitation Opt-Out Form Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the anticipated date and time of delivery.**

**In the alternative, to properly submit the customized electronic version of your Opt-Out Form via the Claims and Solicitation Agent's online Opt-Out Portal, please visit <u>https://cases.ra.kroll.com/Joann</u> click on the "Submit E-Ballot" section of the website, and follow the instructions to submit your customized electronic Opt-Out Form. IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Opt-Out Form:**

**Unique E-Opt-Out Form ID#:**_____

Each Unique E-Opt-Out Form ID# is to be used solely in relation to those Claims held against one or more of the Debtors.  Please complete and submit an Opt-Out Form for each Unique E-Opt-Out Form ID# you receive, as applicable.

**If you choose to submit your Opt-Out Form using the Opt-Out Portal, you should NOT also submit a paper Opt-Out Form.**

**The Claims and Solicitation Agent's Opt-Out Portal is the only acceptable means of submission of Opt-Out Forms via electronic or online transmission.  Opt-Out Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

[*Remainder of page left intentionally blank*]

31441487.1

*Opt-Out Election*

The undersigned, a Holder of an Other Secured Claim or General Unsecured Claim:

☐ ELECTS TO **OPT OUT** OF THE RELEASES IN ARTICLE IX.C OF THE PLAN AND, AS A RESULT, NOT BE SUBJECT TO OR BENEFIT FROM THE RELEASES UNDER ARTICLE IX OF THE PLAN.

**IF YOU HAVE MADE THE ELECTION ABOVE, YOU MUST SIGN
THE ELECTION FORM CONTAINED ON THE FOLLOWING PAGE.**

**<u>PLEASE GO TO THE FOLLOWING PAGE</u>.**

*[Remainder of page intentionally left blank.]*

## Certification and Signature for Opt-Out Election

**Certification.**  By signing this Release Opt-Out Form, the electing Claim Holder certifies to the Bankruptcy Court and the Debtors:

a.    that the Holder acknowledges that the election provided for in this Release Opt-Out Form is being made pursuant to the terms and conditions set forth in the Plan;

b.    that the Holder has the full power and authority to make the election provided for in this Release Opt-Out Form with respect to its Class 1 or Class 5 Claim.

Name of Holder (Please Print)    _____

Authorized Signature    _____

Name of Signatory    _____

Title, if by Authorized Agent[3]    _____

Street Address    _____

City, State, Zip Code    _____

Telephone Number    _____

Date Completed    _____

*[Remainder of page left intentionally blank]*

---

[3]    If you are completing this Release Opt-Out Form on behalf of another person or entity, indicate your relationship with such person or entity and the capacity in which you are signing.