**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------- x
                                                        :
In re:                                                  :   Chapter 11
                                                        :
JOANN INC., et al.,                                     :   Case No. 24-10418 (CTG)
                                                        :
                 Debtors.¹                              :   (Jointly Administered)
                                                        :
------------------------------------------------------- x
```

---

**MEMORANDUM OF LAW IN SUPPORT OF
(I) APPROVAL OF DEBTORS' DISCLOSURE STATEMENT AND
(II) CONFIRMATION OF FIRST AMENDED PREPACKAGED JOINT PLAN OF
REORGANIZATION OF JOANN INC. AND ITS DEBTOR AFFILIATES
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

---

[1] The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); and Jo-Ann Stores Support Center, Inc. (5027).  The Debtors' mailing address is 5555 Darrow Road, Hudson, OH 44236.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................3

BACKGROUND ...................................................................................................6

I.     THE TRANSACTION SUPPORT AGREEMENT AND ABL/FILO EXIT
COMMITMENT LETTERS.................................................................................6

II.    The Solicitation Process.................................................................................9

III.   The Chapter 11 Cases ..................................................................................13

     A.    Commencement of the Chapter 11 Cases, Filing of the Disclosure
         Statement and the Plan, and Entry of the Solicitation Procedures Order .............13

     B.    The Plan and Plan Supplement .................................................................14

     C.    Voting Results.......................................................................................15

OBJECTIONS.....................................................................................................15

ARGUMENT ......................................................................................................16

I.     APPROVAL OF THE DISCLOSURE STATEMENT IS WARRANTED ...................16

     A.    The Disclosure Statement Contains Adequate Information...................................17

     B.    The Debtors' Solicitation of Votes on the Plan Complies with the
         Bankruptcy Code and the Bankruptcy Rules .........................................................19

         1.    The Debtors Complied with the Notice Requirements Set Forth in
             the Solicitation Procedures Order and Bankruptcy Rules 2002(b)
             and 3017(a) ...............................................................................19

         2.    The Ballots Used to Solicit Holders of Claims Entitled to Vote on
             the Plan Complied with the Applicable Bankruptcy Rules ......................21

         3.    The Debtors' Solicitation Period Complied with Bankruptcy Rule
             3018(b)...................................................................................22

         4.    The Debtors' Vote Tabulation Was Appropriate.......................................23

         5.    Waiver of Certain Solicitation Package Mailing Requirements Is
             Reasonable and Appropriate ........................................................23

         6.    Solicitation of the Plan Complied with the Bankruptcy Code and
             Was Conducted in Good Faith .....................................................24

II.     THE PLAN SATISFIES THE REQUIREMENTS FOR CONFIRMATION AND
        SHOULD BE CONFIRMED....................................................................................25

        A.      Section 1129(a)(1):  The Plan Complies with All Applicable Provisions of
                the Bankruptcy Code.................................................................................25

        B.      Section 1122:  The Plan Satisfies the Confirmation Requirements......................26

        C.      Section 1123(a):  The Plan Satisfies the Seven Requirements for Contents
                of a Plan ..................................................................................................28

                1.      Section 1123(a)(1):  Designation of Classes of Claims and Interests........28

                2.      Section 1123(a)(2):  Specification of Unimpaired Classes of
                        Claims and Interests.....................................................................28

                3.      Section 1123(a)(3):  Treatment of Impaired Classes of Claims and
                        Interests ....................................................................................29

                4.      Section 1123(a)(4):  Equal Treatment Within Each Class of Claims
                        or Interests.................................................................................29

                5.      Section 1123(a)(5):  Adequate Means for Implementation of the
                        Plan ..........................................................................................30

                6.      Section 1123(a)(6):  Issuance of Non-Voting Securities .........................32

                7.      Section 1123(a)(7):  Provisions Regarding Directors and Officers...........33

        D.      Section 1123(b):  The Plan Incorporates Certain Permissive Provisions .............33

                1.      Section 1123(b)(1):  Impairment/Unimpairment of Claims and
                        Interests ....................................................................................34

                2.      Section 1123(b)(2):  Assumption or Rejection of Executory
                        Contracts and Unexpired Leases.................................................34

                3.      Section 1123(b)(3):  Retention of Causes of Action by the Debtors ........35

                4.      Section 1123(b)(5):  Modification of Rights of Holders .........................36

                5.      Section 1123(b)(6):  Other Plan Provisions Not Inconsistent with
                        the Bankruptcy Code...................................................................36

                        (a)     Article IV.I of the Plan – Exemption from Registration
                                Requirements .................................................................37

                        (b)     The Debtor Release Is Appropriate, Complies with
                                Applicable Law, and Should Be Approved ....................38

(c)    The Third-Party Release Is Appropriate, Complies with Applicable Law, and Should Be Approved ...................................43

(d)    The Exculpation Clause Is Appropriate, Complies with Applicable Law, and Should Be Approved ...................................48

(e)    The Injunction Clause Is Necessary and Narrowly Tailored, Complies with Applicable Law, and Should Be Approved ...........49

E.    Section 1123(d): Curing of Defaults....................................................49

F.    Section 1129(a)(2): The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code .......................................................50

1.    Section 1125: The Debtors Have Provided Stakeholders with Adequate Information ....................................................50

2.    Section 1126: The Voting Classes Have Accepted the Plan....................51

G.    Section 1129(a)(3): The Debtors Have Proposed the Plan in Good Faith and Not by Any Means Forbidden by Law............................................52

H.    Section 1129(a)(4): The Plan Provides for the Payment of Certain Administrative Costs and Expenses.........................................................54

I.    Section 1129(a)(5): The Debtors Have Disclosed Necessary Information Regarding Directors and Officers of the Debtors ...................................55

J.    Section 1129(a)(6): Inapplicable..........................................................56

K.    Section 1129(a)(7): The Plan Satisfies the Best Interests Test ............................56

L.    Section 1129(a)(8): Acceptance of Impaired Voting Class ..................................58

M.    Section 1129(a)(9): The Plan Provides for Payment in Full of Allowed Administrative and Priority Claims .......................................................59

N.    Section 1129(a)(10): At Least One Impaired Class of Claims or Interests Has Accepted the Plan ........................................................................61

O.    Section 1129(a)(11): The Plan Is Feasible............................................62

P.    Section 1129(a)(12): The Plan Provides for Full Payment of Statutory Fees ...............................................................................................64

Q.    Sections 1129(a)(13) Through 1129(a)(16): Inapplicable ...................................64

R.    Section 1129(b): The Plan Satisfies the "Cramdown" Requirements .................65

         1.        The Plan Does Not Discriminate Unfairly ...................................................67

         2.        The Plan Is Fair and Equitable ....................................................................69

    S.     Section 1129(c):  The Plan Is the Only Plan Currently on File ............................70

    T.     Section 1129(d):  The Purpose of the Plan Is Not the Avoidance of Taxes or the Avoidance of Securities Laws ....................................................................70

    U.    Section 1129(e):  Inapplicable ...............................................................................71

    V.    The Modifications to the Plan Do Not Require Resolicitation and Should Be Approved ............................................................................................................71

III.    GOOD CAUSE EXISTS TO WAIVE THE STAY OF THE PROPOSED COMBINED ORDER............................................................................................................72

CONCLUSION...........................................................................................................................73

US-DOCS\149446656

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re 11,111, Inc.*,
  117 B.R. 471 (Bankr. D. Minn. 1990) ......................................................................67

*In re 203 N. LaSalle St. Ltd. P'ship.*,
  190 B.R. 567 (Bankr. N.D. Ill. 1995), *rev'd on other grounds sub nom. Bank of Am.
  Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999)............................67

*In re 710 Long Ridge Rd. Operating Co., II, LLC*,
  No. 13-13653 (DHS), 2014 WL 886433 (Bankr. D.N.J. Mar. 5, 2014) ..................................40

*In re Abeinsa Holding, Inc.*,
  562 B.R. 265 (Bankr. D. Del. 2016) ...............................................................38, 40

*In re Adelphia Commc'ns Corp.*,
  368 B.R. 140 (Bankr. S.D.N.Y. 2007)...............................................................41, 57

*In re Akorn, Inc.*,
  Case No. 20-11177 (KBO) (Bankr. D. Del. Sept. 4, 2020) .....................................44

*In re Aleris Int'l, Inc.*,
  No. 09-10478 (BLS), 2010 WL 3492664 (Bankr. D. Del. May 13, 2010)............................38

*In re Am. Solar King Corp.*,
  90 B.R. 808 (Bankr. W.D. Tex. 1988).......................................................................71

*In re Ambanc La Mesa Ltd. P'ship*,
  115 F.3d 650 (9th Cir. 1997) ......................................................................................67

*In re APC Auto. Techs. Intermediate Holdings, LLC*,
  No. 20-11466 (CSS) (Bankr. D. Del. July 10, 2020)........................................................73

*In re Applegate Prop., Ltd.*,
  133 B.R. 827 (W.D. Tex. 1991)..................................................................................51

*In re Armstrong World Indus., Inc.*,
  348 B.R. 111 (D. Del. 2006)........................................................................................25

*In re Aztec Co.*,
  107 B.R. 585 (Bankr. M.D. Tenn. 1989) .................................................................67

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
  526 U.S. 434 (1999).............................................................................................57, 70

-vi-

*In re Bergman*,
   585 F.2d 1171 (2d Cir. 1978)......................................................................................62

*In re Bluestem Brands Inc.*,
   Case No. 20-10566 (MFW) (Bankr. D. Del. Aug. 21, 2020) ...................................46

*In re Bowles*,
   48 B.R. 502 (Bankr. E.D. Va. 1985) .........................................................................67

*In re Buttonwood Partners, Ltd.*,
   111 B.R. 57 (Bankr. S.D.N.Y. 1990) .........................................................................67

*In re Carestream Health, Inc.*,
   No. 22-10778 (JKS) (Bankr. D. Del. Sept. 30, 2022)...............................................73

*In re Century Glove, Inc.*,
   No. 90-400 (SLR), No. 90-401 (SLR), 1993 WL 239489 (D. Del. Feb. 10, 1993)................53

*In re Clarkson*,
   767 F.2d 417 (8th Cir. 1985) .....................................................................................62

*In re Clover Techs. Grp., LLC*,
   No. 19-12680 (KBO) (Bankr. D. Del. Jan. 22, 2020)...............................................73

*In re Coastal Broad. Sys., Inc.*,
   570 F. App'x 188 (3d Cir. 2014) ...............................................................................26

*In re Coram Healthcare Corp.*,
   315 B.R. 321 (Bankr. D. Del. 2004) ....................................................................44, 47

*In re Drexel Burnham Lambert Grp., Inc.*,
   138 B.R. 723 (Bankr. S.D.N.Y. 1992)..................................................................26, 55

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992)......................................................................................49

*In re Elec. Components Int'l, Inc.*,
   No. 10-11054 (KJC), 2010 WL 3350305 (Bankr. D. Del. May 11, 2010)...........................63

*In re Emerge Energy Servs. LP*,
   No. 19-11563 (KBO) (Bankr. D. Del. Dec. 18, 2019)..............................................45

*In re EV Energy Partners, L.P.*,
   No. 18-10814 (CSS) (Bankr. D. Del. May 17, 2018) ...............................................45

*In re EveryWare Glob., Inc.*,
   No. 15-10743 (LSS) (Bankr. D. Del. May 22, 2015) ...............................................44

US-DOCS\149446656

*In re Exide Techs.*,
    303 B.R. 48 (Bankr. D. Del. 2003) .......................................................................70

*In re Freedom Rings, L.L.C.*,
    No. 05-14268 (CSS) (Bankr. D. Del. May 9, 2006) ...............................................48

*In re Freymiller Trucking, Inc.*,
    190 B.R. 913 (Bankr. W.D. Okla. 1996) ...............................................................67

*In re Gen. Wireless Operations Inc.*,
    No. 17-10506 (BLS), 2017 WL 5461361 (Bankr. D. Del. Oct. 26, 2017) .............71

*In re Genesis Health Ventures, Inc.*,
    266 B.R. 591 (Bankr. D. Del. 2001) ......................................................................69

*In re Gibson Brands, Inc.*,
    Case No. 18-11025 (CSS) (Bankr. D. Del. Oct. 2, 2018) ......................................45

*Gillman v. Cont'l Airlines (In re Cont'l Airlines)*,
    203 F.3d 203 (3d Cir. 2000).................................................................................47

*In re Granite Broad. Corp.*,
    369 B.R. 120 (Bankr. S.D.N.Y. 2007)...................................................................70

*In re Great Bay Hotel & Casino, Inc.*,
    251 B.R. 213 (Bankr. D.N.J. 2000) .......................................................................25

*Grogan* v. *Garner*,
    498 U.S. 279 (1991)...............................................................................................25

*In re Hercules Offshore, Inc.*,
    565 B.R. 732 (Bankr. D. Del. 2016) ......................................................................39

*In re HighPoint Res. Corp.*,
    No. 21-10565 (CSS) (Bankr. D. Del. Mar. 18, 2021)............................................73

*In re Idearc Inc.*,
    423 B.R. 138 (Bankr. N.D. Tex. 2009)...................................................................26

*In re Mallinckrodt plc*,
    No. 20-12522 (JTD) (Bankr. D. Del. Feb. 8, 2022)...............................................44

*In re Mallinckrodt plc*,
    No. 23-11258 (JTD) (Bankr. D. Del. Oct. 10, 2023)........................................44, 45

*In re Indianapolis Downs, LLC*,
    486 B.R. 286 (Bankr. D. Del. 2013) ............................................................. *passim*

*In re Insys Therapeutics, Inc.*,
  Case No. 19-11292 (JTD) (Bankr. D. Del. Jan. 17, 2020)......................................45

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
  987 F.2d 154 (3d Cir. 1993)........................................................................27, 66

*In re Johns-Manville Corp.*,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986).......................................................................67

*In re JRV Grp. USA L.P.*,
  Case No. 19-11095 (CSS) (Bankr. D. Del. June 19, 2020) .....................................45

*In re Kaplan*,
  104 F.3d 589 (3d Cir. 1997)...................................................................................62

*Key3Media Grp., Inc. v. Pulver.Com, Inc. (In re Key3Media Grp., Inc.)*,
  336 B.R. 87 (Bankr. D. Del. 2005), *aff'd*, No. 03-10323 (MFW), 2006 WL 2842462
  (D. Del. Oct. 2, 2006) ...........................................................................................42

*In re Lapworth*,
  No. 97-34529 (DWS), 1998 WL 767456 (Bankr. E.D. Pa. Nov. 2, 1998)...............50

*In re Lisanti Foods, Inc.*,
  329 B.R. 491 (D.N.J. 2005) ...................................................................................55

*In re Longview Power, LLC*,
  No. 20-10951 (BLS) (Bankr. D. Del. May. 22, 2020)............................................73

*Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*,
  150 F.3d 503 (5th Cir. 1998) .................................................................................17

*In re Madison Hotel Assocs.*,
  749 F.2d 410 (7th Cir. 1984) .................................................................................53

*Marvel Ent. Grp., Inv. v. MAFCO Holdings, Inc. (In re Marvel Ent. Grp., Inc.)*,
  273 B.R. 58 (D. Del. 2002)....................................................................................39

*In re Master Mortg. Inv. Fund, Inc.*,
  168 B.R. 930 (Bankr. W.D. Mo. 1994)..........................................................39, 41, 42

*In re Motors Liquidation Co.*,
  447 B.R. 198 (Bankr. S.D.N.Y. 2011)....................................................................39

*In re Nat'l Truck Funding LLC*,
  588 B.R. 175 (Bankr. S.D. Miss. 2018)..................................................................71

*In re Nuverra Env't. Sols., Inc.*,
  590 B.R. 75 (D. Del. 2018)....................................................................................69

*In re Nuverra Env't Sols., Inc.*,
    No. 17-10949 (KJC) (Bankr. D. Del. July 24, 2017) ...........................................69

*In re PWS Holding Corp.*,
    228 F.3d 224 (3d Cir. 2000) ..........................................................................48

*In re Quiksilver Inc.*,
    No. 15-11880 (Bankr. D. Del. Jan. 29, 2016) ..........................................44

*In re River Vill. Assocs.*,
    161 B.R. 127 (Bankr. E.D. Pa. 1993), *aff'd*, 181 B.R. 795 (E.D. Pa. 1995) ..........................53

*In re Rivera Echevarria*,
    129 B.R. 11 (Bankr. D.P.R. 1991) ..........................................................67

*In re Seventy Seven Fin. Inc.*,
    No. 16-11409 (LSS) (Bankr. D. Del. July 14, 2016) ..........................................44

*In re Spansion, Inc.*,
    426 B.R. 114 (Bankr. D. Del. 2010) ..........................................................44

*In re Sun Country Dev., Inc.*,
    764 F.2d 406 (5th Cir. 1985) ..........................................................53

*In re T-H New Orleans L.P.*,
    116 F.3d 790 (5th Cir. 1997) ..........................................................52

*U.S. v. Energy Res. Co., Inc.*,
    495 U.S. 545 (1990) ..........................................................62

*In re VER Techs. Holdco LLC*,
    No. 18-10834 (CSS) (Bankr. D. Del. July 26, 2018) ..........................................45

*In re Verso Corp.*,
    No. 16-10163 (KG) (Bankr. D. Del. June 23, 2016) ..........................................45

*In re Worldcom, Inc.*,
    No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ..................50, 55

*In re Zenith Elecs. Corp.*,
    241 B.R. 92 (Bankr. D. Del. 1999) ..........................................................40, 44, 52

**STATUTES**

11 U.S.C.
    § 101(31) ..........................................................................55
    § 105(a) ..........................................................................1
    § 144(a)(1) ..........................................................................37

§ 341................................................................................................................1, 14, 21
§ 365..............................................................................................................34, 35, 50
§ 365(f)......................................................................................................................73
§ 503(b)....................................................................................................................60
§ 507.........................................................................................................................64
§ 507(a)(1).........................................................................................................60, 64
§ 507(a)(2)................................................................................................................60
§ 507(a)(8)................................................................................................................60
§ 509(c)....................................................................................................................68
§ 510(b)....................................................................................................................68
§ 510(c)....................................................................................................................68
§ 521(a)......................................................................................................................1
§ 1114.................................................................................................................64, 65
§ 1114(e)(2)..............................................................................................................65
§ 1122.................................................................................................................*passim*
§ 1122(a)..................................................................................................................26
§ 1122(b)..................................................................................................................26
§ 1123.............................................................................................................25, 35, 71
§ 1123(a)..................................................................................................................27
§ 1123(a)(1).............................................................................................................28
§ 1123(a)(2).............................................................................................................28
§ 1123(a)(3).......................................................................................................28, 29
§ 1123(a)(4).............................................................................................................29
§ 1123(a)(5).......................................................................................................30, 32
§ 1123(a)(6).............................................................................................................32
§ 1123(a)(7).......................................................................................................32, 33
§ 1123(b)..................................................................................................................33
§ 1123(b)(1).............................................................................................................34
§ 1123(b)(1)-(3).......................................................................................................34
§ 1123(b)(2).......................................................................................................34, 35
§ 1123(b)(3).............................................................................................................36
§ 1123(b)(3)(A).............................................................................................35, 38, 43
§ 1123(b)(3)(B).........................................................................................................35
§ 1123(b)(5).............................................................................................................36
§ 1123(b)(6).......................................................................................................34, 36
§ 1123(d)...........................................................................................................49, 50
§ 1125.................................................................................................................*passim*
§ 1125(a).............................................................................................................16, 19
§ 1125(a)(1).............................................................................................................17
§ 1125(a)(2)(C)........................................................................................................17
§ 1125(e)..................................................................................................................24
§ 1125(g).............................................................................................................16, 17
§ 1126.............................................................................................................1, 50, 51
§ 1126(a)..................................................................................................................51
§ 1126(a)(8).............................................................................................................58
§ 1126(b).............................................................................................6, 16, 17, 19

§ 1126(c) .................................................................................................23, 52, 59
§ 1126(f) .......................................................................................12, 23, 51, 59
§ 1126(g) .............................................................................................12, 23, 51
§ 1127 ................................................................................................................72
§ 1127(a) ...........................................................................................................71
§ 1128 ..................................................................................................................1
§ 1129 ....................................................................................................... 3, 6, 25
§ 1129(a) .....................................................................................................50, 66
§ 1129(a)(1) .....................................................................................................25
§ 1129(a)(2) ...............................................................................................50, 52
§ 1129(a)(3) ...............................................................................................52, 53, 54
§ 1129(a)(4) ...............................................................................................54, 55
§ 1129(a)(5) .....................................................................................................56
§ 1129(a)(5)(A)(i) .........................................................................................55
§ 1129(a)(5)(A)(ii) ........................................................................................56
§ 1129(a)(5)(B) ..............................................................................................55
§ 1129(a)(6) .....................................................................................................56
§ 1129(a)(7) ...............................................................................................56, 57, 58
§ 1129(a)(8) ...............................................................................................58, 59, 62, 66
§ 1129(a)(9) ...............................................................................................59, 60, 61
§ 1129(a)(9)(A) ..............................................................................................60
§ 1129(a)(9)(B) .........................................................................................60, 61
§ 1129(a)(9)(C) .........................................................................................60, 61
§ 1129(a)(10) ............................................................................................61, 62
§ 1129(a)(11) ............................................................................................62, 64
§ 1129(a)(12) ...................................................................................................64
§ 1129(a)(13) ............................................................................................64, 65
§ 1129(a)(14) ...................................................................................................65
§ 1129(a)(15) ...................................................................................................65
§ 1129(a)(16) ............................................................................................64, 65
§ 1129(b) ................................................................................................... passim
§ 1129(b)(1) ............................................................................................66, 67
§ 1129(b)(2)(B)(ii) ..........................................................................................69
§ 1129(b)(2)(C)(ii) ..........................................................................................69
§ 1129(c) ...........................................................................................................70
§ 1129(d) ...........................................................................................................70
§ 1129(e) ...........................................................................................................71
§ 1145 .........................................................................................................18, 37
§ 1145(a) ...........................................................................................................38
§ 1145(a)(1) .....................................................................................................37
§ 1145(a)(1)(A) ...............................................................................................38
§ 1145(b)(1) .....................................................................................................37

15 U.S.C.
§ 4(a)(1) .............................................................................................................37
§ 5.............................................................................................................37, 70

US-DOCS\149446656

28 U.S.C. § 1930 ....................................................................................................................64

# RULES

Fed. R. Bankr. P.
    1007....................................................................................................................................1
    2002.............................................................................................................................1, 16
    2002(b).............................................................................................................19, 20, 21
    2015.3.............................................................................................................................14
    3017.........................................................................................................................1, 6, 19
    3017(a)....................................................................................................................20, 21
    3017(d)............................................................................................................16, 21, 22
    3017(e)..........................................................................................................................16
    3018.......................................................................................................................1, 6, 11
    3018(b)...................................................................................................................16, 22
    3018(c)...................................................................................................................16, 22
    3019.......................................................................................................................71, 72
    3020.............................................................................................................................73
    3020(e)........................................................................................................................72
    6004.............................................................................................................................73
    6004(h)...................................................................................................................72, 73
    6006.............................................................................................................................73
    6006(d)...................................................................................................................72, 73

Local Rule
    3017-1..........................................................................................................................21
    3017-1(a)...............................................................................................................19, 20

# OTHER AUTHORITIES

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977) .......................................25, 50

US-DOCS\149446656

1.      The debtors and debtors in possession (collectively, the "***Debtors***") in the above-captioned cases (the "***Chapter 11 Cases***") hereby submit this memorandum of law and omnibus reply (this "***Memorandum***") in support of their request for entry of an order (a) approving the *Disclosure Statement for Prepackaged Joint Plan of Reorganization of JOANN Inc. and Its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* [Docket No. 16] (as further amended, modified, or supplemented from time to time, the "***Disclosure Statement***") and (b) confirming the *First Amended Prepackaged Joint Plan of Reorganization of JOANN Inc. and Its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* [Docket No. 288] (as further amended, modified, or supplemented from time to time, the "***Plan***"),[2] including the agreements and other documents attached to (or otherwise filed in connection with) the *Notice of Filing of Redacted Plan Supplement* [Docket Nos. 214, 290] (as may be further amended, modified, or supplemented from time to time, the "***Plan Supplement***").[3]

2.      In support of the foregoing, the Debtors respectfully refer the Court to:

- the Plan;

- the Disclosure Statement;

- the *Declaration of Alex Orchowski of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Prepackaged Joint Plan of Reorganization of JOANN Inc. and Its*

---

[2]    Capitalized terms used but not defined herein shall have the same meanings ascribed to such terms in, as applicable, the Plan, the Disclosure Statement, or the *Motion of Debtors for Order (I) Scheduling Combined Hearing to Consider (A) Approval of Disclosure Statement, (B) Approval of Solicitation Procedures and Forms of Ballots, and (C) Confirmation of Plan; (II) Establishing an Objection Deadline to Object to Disclosure Statement and Plan; (III) Approving the Form and Manner of Notice of Combined Hearing, Objection Deadline, and Notice of Commencement; (IV) Conditionally Waiving Requirement of Filing Statement of Financial Affairs Schedules of Assets and Liabilities and 2015.3 Reports; (V) Approving Notice and Objection Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; (VI) Conditionally Waiving Requirement to Convene the Section 341 Meeting of Creditors; (VII) Approving the Form and Manner of Notice by Which Eligible Holders of First Lien Claims Can Elect to Receive Alternative Forms of New Takeback Debt at Emergence; and (VII) Granting Related Relief Pursuant to Sections 105(a), 341, 521(a), 1125, 1126, and 1128 of the Bankruptcy Code and Bankruptcy Rules 1007, 2002, 3017, and 3018* [Docket No. 15] (the "***Solicitation Procedures Motion***").

[3]    Sealed versions of the Plan Supplement may be found at Docket Nos. 213 and 289.

*Debtor Affiliates under Chapter 11 of the Bankruptcy Code* [Docket No. 254] (the "***Voting Certification***");

- the *Declaration of Scott Sekella, Chief Financial Officer and Executive Vice President, in Support of Confirmation of the First Amended Prepackaged Joint Plan of Reorganization of JOANN Inc. and Its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* [Docket No. 291] (the "***Sekella Declaration***");

- the *Declaration of Jonathan Goulding in Support of Confirmation of the First Amended Prepackaged Joint Plan of Reorganization of JOANN Inc. and Its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* [Docket No. 293] (the "***Goulding Declaration***");

- the *Affidavit of Service of Solicitation Materials* [Docket No. 182], regarding the service of the Solicitation Package, filed on April 5, 2024 (the "***Solicitation Affidavit of Service***");

- the *Affidavit of Service of Solicitation Materials* [Docket No. 285], regarding the distribution of the Notice of Non-Voting Status, the Unimpaired Holder Opt-Out Form, and the Combined Notice, filed on April 22, 2024 (the "***Non-Voting Materials Affidavit of Service***");

- the *Certificate of Publication* [Docket No. 171] filed on March 29, 2024;

- the *Declaration of Scott Sekella, Chief Financial Officer and Executive Vice President, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 2] (the "***First Day Declaration***"), for an overview of the Debtors' businesses; and

- the record of the Chapter 11 Cases for other relevant facts that may bear on approval of the Disclosure Statement and confirmation of the Plan.

3.      The Confirmation Declarations and any testimony and other declarations that may be adduced or submitted at or in connection with the Combined Hearing are herein incorporated in full.

4.      This Memorandum is divided into four sections.  In the first section, the Debtors provide background regarding these Chapter 11 Cases and the solicitation process.  In the second section, the Debtors address objections received to the Plan.  In the third section, the Debtors present their case in chief that the Disclosure Statement and the solicitation procedures satisfy all

-2-

applicable requirements under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. In the final section, the Debtors present their case in chief that the Plan satisfies section 1129 of the Bankruptcy Code.

## PRELIMINARY STATEMENT[4]

5.      Leading up to the commencement of these Chapter 11 Cases, the Debtors were at a major inflection point, with limited liquidity available as they approached their most liquidity-intensive inventory-building season.   However, as a result of the extensively negotiated Transaction Support Agreement and certain related agreements, the Debtors were able to rally support both for a creative and unique proposed debtor-in-possession financing facility that relied on both existing prepetition lenders and certain of the Debtors' major trade creditors to fund the Chapter 11 Cases, and for expeditious confirmation of a prepackaged plan of reorganization that would pay all of the Debtors' prepetition unsecured creditors in full, keep all of the Debtors' 815 brick-and-mortar stores open following assumption of the related leases, and thus save over 18,000 jobs.

6.      As was evident at the first day hearing a mere five weeks ago, the Transaction Support Agreement—which had been extensively negotiated, in good faith and at arm's length, by the Debtors, the Ad Hoc Group, the other Consenting Stakeholders, the Prepetition ABL Lenders, the Prepetition FILO Lenders (each as defined below), and certain additional third-party financing parties, and signed on March 15, 2024—and, following from the Transaction Support Agreement, these Chapter 11 Cases and the proposed Plan enjoyed broad-based support from the Debtors' stakeholders, including (a) lenders that collectively hold over 80% of the outstanding principal

---

[4]    Capitalized terms used but not defined in the Preliminary Statement shall have the meanings ascribed to such terms elsewhere in this Memorandum, the Plan, or the Disclosure Statement, as applicable.

amount of term loans under the Debtors' Term Loan Facility (which now comprise Class 4 Term Loan Claims); (b) holders of over 66% of Class 9 Existing Equity Interests (*i.e.*, the Consenting Stockholder Parties); and (c) certain third-party financing parties that executed joinders to the Transaction Support Agreement (*i.e.*, the Additional Financing Parties).  In addition, as further described below, the holders of all of the outstanding principal amount of both the asset-backed loans under the Debtors' ABL Facility and the "first in last out" loans under the Debtors' FILO Facility (who now hold Class 2 ABL Claims and Class 3 FILO Claims, respectively, in connection with such loans) agreed to support the Plan pursuant to the ABL/FILO Exit Commitment Letters, under which, *inter alia*, such holders agreed (x) to provide the Exit ABL Loans and the Exit FILO Loans, subject to the terms and conditions of the ABL/FILO Exit Commitment Letters, and (y) to vote in favor of the Plan.

7.      In the ensuing weeks, the overwhelming support for the Restructuring Transactions, as contemplated under the Transaction Support Agreement and the Plan, has continued unabated. Indeed—in a critical show of support—*all* voting creditors indicated their support for the Plan. Specifically:  (a) 100% in number and 100% in amount of Holders of Class 2 ABL Claims that submitted Ballots voted in favor of the Plan; (b) 100% in number and 100% in amount of Holders of Class 3 FILO Claims that submitted Ballots voted in favor of the Plan; and (c) 100% in number and 100% in amount of Holders of Class 4 Term Loan Claims that submitted Ballots voted in favor of the Plan.[5]  These voting creditors include, in addition to the lenders party to the Transaction Support Agreement, an additional nine (9) Prepetition Term Loan Lenders, representing an additional $49,261,902.73 of amounts outstanding under the Debtors' Term Loan Facility, thereby

---

[5]    *See* Voting Certification, Ex. A.

-4-

bringing total support of the Plan by Prepetition Term Loan Lenders to 87.9% in amount owing under the Term Loan Facility.

8.      This overwhelming support is a tremendous accomplishment and a testament to the hard work of the Debtors and many of their primary stakeholders.  At a high level, the Plan and related transactions will, upon the Effective Date of the Plan, reduce the Debtors' total funded debt by approximately $504.7 million, from approximately $1.06 billion to approximately $555.5 million.  Importantly, the Plan will not impair the Company's non-financial creditors, including general unsecured creditors such as vendors and suppliers—*to wit—under the Plan, vendors and suppliers will be paid or otherwise satisfied in full in the ordinary course.* Ultimately, the Plan will enable the Debtors to emerge from the Chapter 11 Cases as a stronger company, less burdened by debt, and better positioned to focus on operating as the nation's category leader in fabric and sewing.

9.      Given the wealth of benefits under the Plan, it is not surprising that the Debtors received overwhelming support from those creditors entitled to vote on the Plan, as set forth above, and are now seeking to confirm the Plan on a consensual basis.  Moreover, the Debtors received only five (5) filed objections (all of which related to cure issues pertaining to certain executory contracts and unexpired leases) (collectively, the "*Objections*") as shown in the response chart attached hereto as **Exhibit A**.  Moreover, all of the filed objections were resolved prior to a hearing, and no objections to the Plan remain outstanding. Additionally, no parties have objected to the approval of the Disclosure Statement.  These facts speak volumes regarding the fairness of the Plan and the good-faith efforts by which it was crafted, as well as the adequacy of the Disclosure Statement and the solicitation process.

10.     For the reasons set forth herein and in the Confirmation Declarations, (a) the Disclosure Statement satisfies the requirements of sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018, and (b) the Plan satisfies the confirmation requirements set forth in section 1129 of the Bankruptcy Code.

11.     Accordingly, the Debtors respectfully request the Court enter an order substantially in the form of the proposed order that was filed concurrently herewith [Docket No. 292] (as may be further amended or modified, the "***Proposed Combined Order***") approving the Disclosure Statement, confirming the Plan, and approving on a final basis, among other items, the Solicitation Procedures and certain related forms and relief that were conditionally approved under the Solicitation Procedures Order.

## **BACKGROUND**

## I.     THE TRANSACTION SUPPORT AGREEMENT AND ABL/FILO EXIT COMMITMENT LETTERS

12.     The Transaction Support Agreement and the ABL/FILO Exit Commitment Letters, which together form the basis for the Plan, were the culmination of months of hard work and arm's-length negotiations among the Company and its key stakeholders.  After the Debtors were made aware that a previously contemplated restructuring transaction could not proceed due to an under-committed backstop, the Debtors, their professionals, and their various stakeholders engaged in urgent, iterative negotiations to retool the previously agreed transaction structure to afford the Company with the opportunity to successfully restructure and continue to operate on a go-forward basis.  The revised agreed transaction structure ensures adequate funding commitments to ensure a successful chapter 11 process that would allow the Debtors to right size their balance sheet and emerge with adequate capital.  The Debtors and their advisors simultaneously engaged with certain potential third-party financing sources that they believed might be able to engage in a transaction

on the required timeline as well as certain of the Debtors' large trade partners, while also pursuing with renewed energy their ongoing evaluation of possible means of reducing costs in order to decrease the overall financing need.

13.     Ultimately, the Company, the Ad Hoc Group, the Prepetition ABL Lenders, and the Prepetition FILO Lenders agreed on the terms of a DIP Facility and Exit Facilities, which paved the way to consensus on a comprehensive restructuring transaction, the terms of which are reflected in the Transaction Support Agreement and the proposed Plan.  The Transaction Support Agreement was signed by holders of (a) over 80% of the outstanding principal amount of term loans under the Debtors' Term Loan Facility (as defined below) (the "***Consenting Term Loan Lenders***"), including the members of the Ad Hoc Group; (b) over 66% of the existing equity interests in Debtor JOANN Inc. (the "***Consenting Stockholder Parties***," and collectively with the Consenting Term Loan Lenders, the "***Consenting Stakeholders***"); and (c) certain third-party financing parties that executed joinders to the Transaction Support Agreement (the "***Additional Financing Parties***").

14.     In addition, the holders of the outstanding loans under the Debtors' ABL Facility (the "***Prepetition ABL Lenders***") and the holders of the "first in last out" loans under the Debtors' FILO Term Loan Facility (the "***Prepetition FILO Lenders***"), though not parties to the Transaction Support Agreement, agreed to support the restructuring contemplated by the Transaction Support Agreement and proposed Plan.  To that end, ***all*** of the Prepetition ABL Lenders are party to that certain ABL Exit Commitment Letter, dated as of March 15, 2024 (as may be amended, modified or supplemented, the "***ABL Exit Commitment Letter***"), and all of the Prepetition FILO Lenders are party to that certain FILO Exit Commitment Letter, dated as of March 15, 2024 (as may be amended, modified, or supplemented, the "***FILO Exit Commitment Letter***", and together with the

-7-

ABL Exit Commitment Letter, the "***ABL/FILO Exit Commitment Letters***"). Pursuant to the ABL/FILO Exit Commitment Letters, the Prepetition ABL Lenders and the Prepetition FILO Lenders agreed, *inter alia*, to (a) provide the Exit ABL Loans and the Exit FILO Loans, respectively, as contemplated in the Plan, subject to the terms and conditions of the ABL/FILO Exit Commitment Letters, and (b) vote in favor of an Acceptable ABL/FILO Plan (as defined in the ABL/FILO Exit Commitment Letters), which includes the Plan. The Transaction Support Agreement and the ABL/FILO Exit Commitment Letters formed the basis of the Plan, as well as the Exit Facilities Documents, New Organizational Documents, and Governance Term Sheet, forms of which were filed as part of the Plan Supplement on April 11, 2024 [Docket No. 214].

15. During these negotiations, as it became apparent that the Debtors would likely be required to restructure through a chapter 11 proceeding, the Debtors, through their counsel Young Conaway Stargatt & Taylor, LLP ("***Young Conaway***"), conducted a review of possible Causes of Action against parties that would potentially be released in connection with a chapter 11 plan, including, among others, the Prepetition ABL Lenders, the Prepetition FILO Lenders, the Prepetition Term Loan Lenders, and the Consenting Stockholder Parties, as well as the Debtors' current and former directors and officers. This investigation was ultimately overseen by an independent director and included a review of the Debtors' books and records, board presentations, and other corporate governance documents, as well as interviews with the Debtors' senior management and current and former members of the Debtors' board of directors. The investigation did not identify any colorable claims contemplated to be released. In addition to being customary and appropriate, the releases are: integral to the restructuring contemplated by the Transaction Support Agreement, ABL/FILO Exit Commitment Letters, and proposed Plan; were negotiated and agreed by all parties to such agreements (including the Consenting Stockholder Parties, which

hold approximately two-thirds of the Existing Equity Interests); are being given in exchange for good and valuable consideration; and, as indicated by votes in favor of the proposed Plan from creditors *not* party to such agreements, are now additionally supported by Holders of approximately $49,261,902.73 of Term Loan Claims (meaning Holders of, in the aggregate, $578,172,303.89, or 87.9%, of Term Loan Claims affirmatively support the Plan and the releases contained therein), as well as all of the ABL Lenders and FILO Lenders.

## II.    THE SOLICITATION PROCESS

16.    On March 16, 2024, prior to filing the Chapter 11 Cases, and as more fully described in the Solicitation Procedures Motion,[6] the Debtors commenced solicitation of votes on the Plan from the Holders of Claims in Class 2 (ABL Claims), Class 3 (FILO Claims), and Class 4 (Term Loan Claims) (collectively, the "***Voting Classes***")—the only Classes of Claims or Interests entitled to vote on the Plan.  Specifically, the Debtors, through their noticing and solicitation agent, Kroll Restructuring Administration LLC (the "***Notice and Claims Agent***"), transmitted (or caused to be transmitted) copies of a solicitation package (the "***Solicitation Package***") to eligible Holders of Claims in the Voting Classes.  Each Solicitation Package included the following materials in hard copy or electronic format (*i.e.*, flash drive):

    a.    the Disclosure Statement;

    b.    the Plan;

    c.    the other exhibits to the Disclosure Statement, including:

        (i)  the Transaction Support Agreement;

        (ii) the Company's financial projections;

        (iii)the Company's liquidation analysis; and

---

[6]    The facts and the legal arguments set forth in the Solicitation Procedures Motion are incorporated by reference herein in their entirety.

(iv)   the ABL/FILO Exit Commitment Letters;

d.   the appropriate Ballot and Voting instructions, substantially in the forms attached to the Solicitation Procedures Order as Exhibits <u>3A</u>, <u>3B</u>, and <u>3C</u>; and

e.   a pre-addressed, postage pre-paid return envelope (if applicable for any hard copy mailings).

17.    The Notice and Claims Agent distributed the Solicitation Package to Holders of Claims in the Voting Classes on March 16, 2024.  The Disclosure Statement, among other case-related pleadings and information, was also made available on the Debtors' case website, https://cases.ra.kroll.com/JOANN (the "***Case Website***").

18.    Among other things, the Solicitation Package advised applicable recipients that (a) the date for determining which Holders of Claims in the Voting Classes were entitled to vote to accept or reject the Plan was February 28, 2024 (the "***Voting Record Date***"), and (b) the voting deadline for eligible Holders of Claims in the Voting Classes was April 8, 2024 at 4:00 p.m. (prevailing Eastern Time) (the "***Voting Deadline***").  The Voting Record Date and the Voting Deadline were clearly identified in the Disclosure Statement and each Ballot.  The Solicitation Package further advised recipients that each Ballot must be either (x) returned to the Notice and Claims Agent by first class mail, overnight courier, or hand delivery to an address specified on the Ballot, or (y) submitted through an online balloting portal on the Case Website.  Each Ballot also contained detailed instructions regarding how to complete the Ballot and how to make any applicable elections contained therein.

19.    In addition to permitting Holders of Claims in the Voting Classes to vote on the Plan, the Ballots also included a section to allow such Holders to affirmatively opt out of granting the Third-Party Release (as defined below) contained in Article IX.C of the Plan (the "***Opt-Out***

*Section*").  As detailed further below, the Ballots contained thorough instructions explaining to such Holders how to opt out of granting the Third-Party Release, should they so desire.

20.     Finally, the materials in the Solicitation Package also established and communicated the process by which the Notice and Claims Agent would tabulate the votes and elections contained in the Ballots.  The tabulation rules provided, among other things, that the following Ballots would not be counted in determining the acceptance or rejection of the Plan:

- any Ballot that was illegible or contained insufficient information to permit the identification of the Holder of the Claim;

- any Ballot that is not actually received by the Notice and Claims Agent by the Voting Deadline (unless the Debtors determined otherwise or as permitted by the Court);

- any Ballot that does not contain a signature; provided, that signatures contained in electronic Ballots submitted via the Notice and Claims Agent's online voting portal will be deemed to be immediately legally effective;

- any Ballot that partially rejected and partially accepted the Plan;

- any Ballot not marked to either accept or reject the Plan or marked to both accept and reject the Plan;

- any Ballot superseded by a later, timely submitted, valid, and properly executed Ballot; and

- any vote cast by a Person or entity that did not hold a Claim in a Voting Class as of the Voting Record Date.[7]

21.     The tabulation rules and procedures followed by the Debtors with respect to the Voting Classes were consistent with the requirements of Bankruptcy Rule 3018 and the rules and procedures approved in other cases filed in this District.

22.     As to other Classes of Claims against and Interests in the applicable Debtors, the Plan provides that such Classes are either deemed to accept or reject the Plan, which designations

---

[7]     *See* Solicitation Procedures Motion ¶ 21.

have certain ramifications under the Bankruptcy Code with respect to solicitation.  Specifically, the Plan provides that Claims in Class 1 (Other Secured Claims) and Class 5 (General Unsecured Claims) are Unimpaired.  Pursuant to section 1126(f) of the Bankruptcy Code, each holder of a claim or equity interest in an unimpaired class is "conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class . . . is not required."[8]  Accordingly, the Holders of Claims in Classes 1 and 5 are conclusively presumed to accept the Plan and their votes were not solicited (Classes 1 and 5 collectively with Classes 6, 7, 8, and 9, the "***Non-Voting Classes***").  Claims and Interests in Class 6 (Subordinated Claims) and Class 9 (Existing Equity Interests) are not expected to receive any recovery, and the Holders of such Claims and Interests are thus deemed to reject the Plan.  Pursuant to section 1126(g) of the Bankruptcy Code, each holder of a claim or equity interest "is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests."[9]  In addition, Claims and Interests in Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests) are either Unimpaired or Impaired, depending on the treatment of such Claims and Interests elected by the applicable Debtors with the consent of the Required DIP Lenders, and the Holders of such Claims or Interests are deemed to have accepted the Plan if Unimpaired or deemed to have rejected the Plan if Impaired.  Thus, the Holders of Claims and Interests in each of the aforementioned Non-Voting Classes are conclusively deemed to have either accepted or rejected the Plan, as applicable, and Debtors accordingly did not solicit votes from such Classes.

---

[8]    11 U.S.C. § 1126(f).

[9]    11 U.S.C. § 1126(g).

US-DOCS\149446656

23.     The Debtors sent to each of the Holders of Claims and Interests in Class 1 (Other Secured Claims), Class 5 (General Unsecured Claims), Class 6 (Subordinated Claims), and Class 9 (Existing Equity Interests) notices of non-voting status (each, a "***Notice of Non-Voting Status***"), with Holders of Claims in Classes 1 and 5 additionally provided with Release Opt-Out Forms in respect of the Third-Party Release contained in the Plan (as more fully described below).[10, 11]

## III.   THE CHAPTER 11 CASES

### A.   Commencement of the Chapter 11 Cases, Filing of the Disclosure Statement and the Plan, and Entry of the Solicitation Procedures Order

24.     On March 18, 2024 (the "***Petition Date***"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "***Court***"), thereby commencing the Chapter 11 Cases.  The Debtors contemporaneously filed, *inter alia*, the solicitation version of the Plan [Docket No. 15] (the "***Solicitation Plan***"), the Disclosure Statement, and the Solicitation Procedures Motion.

25.     On March 19, 2024, the Court entered an order granting the relief requested in the Solicitation Procedures Motion [Docket No. 103] (the "***Solicitation Procedures Order***").  Among other things, the Solicitation Procedures Order:   (a) scheduled the combined hearing (the "***Combined Hearing***") for April 25, 2024 to consider (i) final approval of the Disclosure Statement, (ii) final approval of Solicitation Procedures and forms of Ballots, and (iii) confirmation of the Plan; (b) established 4:00 p.m. (prevailing Eastern Time) on April 18, 2024 (the "***Objection Deadline***") as the deadline to object to the adequacy of the Disclosure Statement and/or confirmation of the Plan; (c) approved the form and manner of (i) the notice of the Combined

---

[10]   *See* Non-Voting Materials Affidavit of Service.

[11]   Because the Intercompany Claims and Intercompany Interests are all held by the Debtors or the Non-Debtor Affiliates, the Debtors did not provide the Holders in Class 7 (Intercompany Claims) or Class 8 (Intercompany Interests) with Notices of Non-Voting Status.

Hearing, the Objection Deadline, and the commencement of the Chapter 11 Cases (the "***Combined Notice***") and (ii) the notice to be published in one national newspaper and one regional newspaper (described below) regarding the Chapter 11 Cases (the "***Publication Notice***"); (d) approved the Solicitation Procedures with respect to the Plan; (e) approved the form and manner of the Notice of Non-Voting Status and the Release Opt-Out Form (as defined in the Plan) sent to certain Holders of Claims; (f) extended the deadline for the Debtors to file their schedules of assets and liabilities and statements of financial affairs ("***Schedules and Statements***") and initial reports of financial information in respect of entities in which the Debtors' estates hold a controlling interest as set forth in Bankruptcy Rule 2015.3 (the "***2015.3 Reports***"), in each case, through and including May 25, 2024, and conditionally waived the requirement that the Debtors file the Schedules and Statements and the 2015.3 Reports if the Plan is confirmed; (g) conditionally waived the requirement to convene the Section 341 Meeting; (h) approved notice and objection procedures in connection with the assumption or rejection of executory contracts and unexpired leases pursuant to the Plan; and (i) granted related relief.

### B.  The Plan and Plan Supplement

26.     As noted above, the Restructuring Transactions contemplated under the proposed Plan result in a significant deleveraging of the Debtors' capital structure through the reduction of total funded debt by approximately $504.7 million, from approximately $1.06 billion to approximately $555.5 million.  The classification and treatment of Claims and Interests, and the projected recoveries to Holders of Allowed Claims and Existing Equity Interests, are summarized in Article I.B of the Disclosure Statement and further described in Article III of the Plan.

27.     On April 11, 2024, the Debtors filed the Plan Supplement, which included drafts of the following exhibits:  (a) the New Governance Documents (Exhibits A-C and E); (b) the Exit Facilities Documents (Exhibit D); (c) the Restructuring Transaction Steps Memorandum

(Exhibit F); (d) the Schedule of Retained Causes of Action (Exhibit G); (e) the Members of the Reorganized Board (Exhibit H); and (f) the Rejected Executory Contract/Unexpired Lease List (Exhibit I). For the avoidance of doubt, the exhibits to the Plan Supplement may be further amended pursuant to an amended Plan Supplement pursuant to the terms set forth in the Plan and the Plan Supplement.

### C. Voting Results

28.    On April 16, 2024, the Notice and Claims Agent filed the Voting Certification [Docket No. 254], which reports the voting results for the Plan. As shown in the Voting Certification, all Holders of Claims in Voting Classes that submitted Ballots voted in favor of the Plan. Specifically:

| Class | % Members Accepted | % Members Rejected | Total Dollars Voted | Dollars Accepted | Dollars Rejected | % of Dollars Accepted | % of Dollars Rejected | Class Outcome |
|---|---|---|---|---|---|---|---|---|
| Class 2 – ABL Claims | 100% | 0% | $500,000,000.00 | $500,000,000.00 | $0 | 100% | 0% | ACCEPT |
| Class 3 – FILO Claims | 100% | 0% | $115,749,863.00 | $115,749,863.00 | $0 | 100% | 0% | ACCEPT |
| Class 4 – Term Loan Claims | 100% | 0% | $578,172,303.89 | $578,172,303.89 | $0 | 100% | 0% | ACCEPT |

## OBJECTIONS

29.    As set forth on **Exhibit A**, the Debtors received five (5) formal Objections (the parties thereto, the "***Objectors***") to the Plan. All of the formal Objections concerned cure issues in connection with executory contracts and unexpired leases that will be assumed pursuant to the Plan. None of the Objections concerned fundamental issues with the Plan. As of the date hereof, the Debtors have addressed (largely through the addition of revised language in the Proposed Combined Order that was filed at Docket No. 292) all formal objections and all informal comments received in a manner that is satisfactory to the Objectors.

## ARGUMENT

## I.   APPROVAL OF THE DISCLOSURE STATEMENT IS WARRANTED

30.     To determine whether a prepetition solicitation of votes to accept or reject a plan should be approved, the Court must determine whether the solicitation complied with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rules 2002, 3017(d), 3017(e), 3018(b), and 3018(c).

31.     Section 1125(g) of the Bankruptcy Code provides that:

> [A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law.[12]

32.     Section 1126(b) of the Bankruptcy Code provides that:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if— (1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.[13]

33.     Prepetition solicitations must, therefore, comply with applicable federal or state securities laws and regulations (including the registration and disclosure requirements thereof) or, if such laws and regulations do not apply, the solicited holders must receive "adequate information" as defined in section 1125(a) of the Bankruptcy Code.  As discussed below, the

---

[12]   11 U.S.C. § 1125(g).

[13]   11 U.S.C. § 1126(b).

US-DOCS\149446656

Debtors have satisfied the applicable Bankruptcy Rules and sections 1125(g) and 1126(b) of the Bankruptcy Code.

### A.      The Disclosure Statement Contains Adequate Information

34.      As noted above, the primary purpose of a disclosure statement is to provide "adequate information" to allow parties entitled to vote on a proposed plan to make an informed decision about whether to vote to accept or reject the plan.[14]  "Adequate information" is a flexible standard, based on the facts and circumstances of each case, and courts generally acknowledge that determination of what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code resides within the broad discretion of the court.[15] Section 1125 of the Bankruptcy Code also states that information must be adequate for a hypothetical typical investor who, among other things, is able to obtain relevant information on the debtor in addition to what the disclosure statement provides.[16]

35.      Here, the Disclosure Statement is extensive, comprehensive, and contains adequate information.  In fact, the Disclosure Statement contains numerous categories of information that courts consider to satisfy the "adequate information" requirement, including:

| CATEGORY | DESCRIPTION | LOCATION IN DISCLOSURE STATEMENT |
|---|---|---|
| Solicitation and Voting Procedures | A description of the procedures for soliciting votes to accept or reject the Plan. | Article I |
| Debtors' Corporate History, Business | An overview of the Debtors' corporate history, business operations, organizational structure, and capital structure. | Article II |

---

[14]   11 U.S.C. § 1125(a)(1).

[15]   *See* 11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records."); *see also Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 518 (5th Cir. 1998) ("The legislative history of § 1125 indicates that, in determining what constitutes adequate information with respect to a particular disclosure statement . . . the kind and form of information are left essentially to the judicial discretion of the court and that the information required will necessarily be governed by the circumstances of each case.") (internal citations omitted).

[16]   11 U.S.C. § 1125(a)(2)(C).

US-DOCS\149446656

| Operations, and Organizational and Capital Structure | | |
|---|---|---|
| Prepetition Restructuring Efforts | An overview of the Debtors' liquidity issues and their successive efforts to alleviate liquidity-related pressures and work constructively with their advisors and prepetition lenders to develop a long-term solution to deleverage the Debtors' capital structure and position them to have sufficient liquidity to withstand the challenges of their highly cyclical retail business while meeting their post-emergence funded debt obligations. | Article III |
| Summary of the Plan | An overview of the key provisions of the Plan. | Article V |
| Confirmation and Consummation of the Plan | A description of confirmation procedures and statutory requirements for confirmation and consummation of the Plan. | Article VII |
| Risk Factors | A description of certain risks associated with the Debtors' businesses, as well as certain risks associated with forward-looking statements, and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement. | Article IX |
| Certain Securities Laws Matters | A description of the applicability of section 1145 of the Bankruptcy Code and the issuance of New Common Equity under the Plan. | Article X |
| Certain U.S. Federal Income Tax Consequences of the Plan | A description of certain U.S. federal income tax law consequences of the Plan. | Article XI |
| Recommendation | A recommendation by the Debtors that the Holders of Claims in the Voting Classes should vote to accept the Plan. | Article XII |
| The Plan | A copy of the Plan. | Exhibit A |
| The Transaction Support Agreement | A copy of the Transaction Support Agreement. | Exhibit B |
| Financial Projections | An overview of the Debtors' financial projections for the fiscal year ending January 2025 through the fiscal year ending January 2029. | Exhibit C |
| Liquidation Analysis | An analysis of the liquidation value of the Debtors in a hypothetical conversion to chapter 7. | Exhibit D |
| ABL/FILO Commitment Letters | A copy of the ABL/FILO Commitment Letters. | Exhibit E |

36.     In addition, prior to commencement of solicitation, the Solicitation Procedures, the Disclosure Statement and the Plan were subject to review and comment by the Consenting Stakeholders, the Prepetition ABL Lenders, and the Prepetition FILO Lenders, and their respective advisors.  Given that each of the aforementioned parties had the opportunity to provide input on the Disclosure Statement and the Plan, it is unsurprising that no one has objected to the Disclosure

-18-

Statement.  Indeed, no party-in-interest has questioned whether the Disclosure Statement contains information sufficient for impaired claimants to be able to cast an informed vote on the Plan, or requested any modification to the Disclosure Statement.

37.     Accordingly, the Debtors submit that the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code and in satisfaction of section 1126(b) of the Bankruptcy Code, and should therefore be approved.

**B.     The Debtors' Solicitation of Votes on the Plan Complies with the Bankruptcy Code and the Bankruptcy Rules**

38.     As noted above, on March 19, 2024, the Court entered the Solicitation Procedures Order which, among other things, (a) scheduled the Combined Hearing, (b) established the Voting Record Date, Voting Deadline, deadline to return Release Opt-Out Forms, Objection Deadline, and deadline to file confirmation materials, and (c) conditionally approved the forms and manner of the Solicitation Procedures, the Ballots, and the Release Opt-Out Form.[17]  As set forth below, the Debtors have complied with the procedures approved by the Solicitation Procedures Order.

1.     The Debtors Complied with the Notice Requirements Set Forth in the Solicitation Procedures Order and Bankruptcy Rules 2002(b) and 3017(a)

39.     Unless otherwise indicated, the Debtors have satisfied the notice requirements set forth in the Solicitation Procedures Order as well as in Bankruptcy Rule 2002(b) (which requires a minimum of 28 days' notice prior to the deadline to object to a disclosure statement and plan), Bankruptcy Rule 3017 (which requires a minimum of 28 days' notice prior to a hearing on a disclosure statement), and Local Rule 3017-1(a) (which requires a minimum of 28 days' notice

---

[17]   *See* Solicitation Procedures Order.

US-DOCS\149446656

prior to the deadline to object to a disclosure statement and plan and 35 days' notice prior to a hearing on a disclosure statement).[18], [19]

40.    *First*, beginning on March 16, 2024, the Debtors caused their Notice and Claims Agent to mail or deliver (or caused to be mailed or delivered) electronically and via first class mail or overnight mail, where applicable, to each Holder of a Claim in Classes 2, 3, and 4, the Solicitation Package, comprising the Plan, the Disclosure Statement (and the exhibits thereto), the appropriate Ballot(s) and voting instructions, and a pre-addressed, postage pre-paid return envelope (as applicable for all hard copy mailings).  Further, beginning on March 19, 2024, the Debtors caused the Notice and Claims Agent to mail or deliver (or caused to be mailed or delivered) electronically and via first class mail or overnight mail, where applicable, (a) to each Holder of an Unimpaired Claim in Classes 1 and 5, a Release Opt-Out Form together with a Notice of Non-Voting Status and Combined Notice, (b) to each other Holder of a Claim or Interest in the Non-Voting Classes (other than Holders of Intercompany Claims and Intercompany Interests), a Notice of Non-Voting Status and Combined notice, and (c) to any other applicable party, a Combined Notice.  As approved by the Court, the Combined Notice (a) informed parties in interest of the commencement of the Chapter 11 Cases, (b) identified the anticipated date of the Combined Hearing, (c) set forth the proposed Objection Deadline and the procedures for filing objections as to the adequacy of the Disclosure Statement and/or the confirmation of the Plan, (d) set forth the name, telephone number, and email address of the Notice and Claims Agent, from whom copies of the Plan and Disclosure Statement could be obtained at the Debtors' expense, (e) set forth the manner in which the Disclosure Statement and the Plan could be obtained or viewed electronically,

---

[18]    Fed. R. Bankr. P. 2002(b) & 3017(a); Del. Bankr. L.R. 3017-1(a).

[19]    Certain of the Debtors' landlords were not served with a Notice of Non-Voting Status and Release Opt-Out Form until April 4, 2024.  The Debtors agreed to extend the Opt-Out Deadline for such parties through April 18, 2024.

US-DOCS\149446656

(f) provided a summary of the treatment of Claims and Interests of each Class under the Plan, and

(g) advised that a Section 341 Meeting would not be convened until further notice.

41.     *Second*, on March 22 and March 27, 2024, respectively, the Debtors caused the

Publication Notice (which was conditionally approved by the Solicitation Procedures Order) to be

published in the national edition of *The Wall Street Journal* and *The Plain Dealer*.[20]   The

Publication Notice informed recipients of, among other things:  (a) the commencement of the

Chapter 11 Cases; (b) the anticipated date and time set for the Combined Hearing; and (c) the

Objection Deadline.  The Publication Notice also included instructions regarding how to obtain

the Plan and the Disclosure Statement free of charge through the Case Website,

https://cases.ra.kroll.com/JOANN.

42.     The Objection Deadline was thirty-one (31) days after the Petition Date, and the

Combined Hearing is thirty-eight (38) days after the Petition Date.  Accordingly, the Debtors

submit that all parties in interest had notice of the proposed approval of the Disclosure Statement

at least twenty-eight (28) days prior to the Combined Hearing and the Objection Deadline, in

compliance with both Bankruptcy Rule 3017(a) and Bankruptcy Rule 2002(b) and Local

Rule 3017-1.  Based on the foregoing, the Debtors submit that all parties in interest received

sufficient notice of the Combined Hearing and the Objection Deadline in accordance with the

Solicitation Procedures Order, the Bankruptcy Rules, and the Local Rules.

2.      The Ballots Used to Solicit Holders of Claims Entitled to Vote on the Plan
         Complied with the Applicable Bankruptcy Rules

43.     Bankruptcy Rule 3017(d) requires the Debtors to transmit a form of ballot, which

substantially conforms to Official Form No. 314, only to "creditors and equity security holders

---

[20]     *See Certificate of Publication*, dated March 29, 2024 [Docket No. 171].

entitled to vote on the plan."[21]    Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity holder or an authorized agent, and conform to the appropriate Official Form."[22]

44.    Here, the forms of Ballots used to solicit votes on the Plan from the Voting Classes comply with the aforementioned Bankruptcy Rules and were conditionally approved by the Court pursuant to the Solicitation Procedures Order.[23]    No party has objected to the sufficiency of the Ballots (including the opt-out sections thereof).    Based on the foregoing, the Debtors submit that they have satisfied the requirements of Bankruptcy Rules 3017(d) and 3018(c).

### 3.    The Debtors' Solicitation Period Complied with Bankruptcy Rule 3018(b)

45.    The Debtors' solicitation period complied with Bankruptcy Rule 3018(b), as the time afforded to vote was not "an unreasonably short time."[24]    *First*, as detailed above and in the Solicitation Procedures Motion, the Plan and Disclosure Statement were transmitted to all eligible Holders of Claims entitled to vote on the Plan.[25]    *Second*, the solicitation period, which lasted from March 16, 2024, through April 8, 2024 (*i.e.*, 23 days from the commencement of solicitation), complied with Bankruptcy Rule 3018(b), and was adequate under the particular facts and circumstances of the Chapter 11 Cases.[26]    *Third*, there have been no objections to the length of the solicitation period.    Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 3018(b).

---

[21]    Fed. R. Bankr. P. 3017(d).

[22]    Fed. R. Bankr. P. 3018(c).

[23]    *See* Solicitation Procedures Order ¶ 12.

[24]    *See* Bankruptcy Rule 3018(b).

[25]    *See* Solicitation Affidavit of Service.

[26]    *See id.*

US-DOCS\149446656

4.    The Debtors' Vote Tabulation Was Appropriate

46.    The Debtors request that the Court find that the Debtors' tabulation of votes complied with the Solicitation Procedures Order.  As set forth in the Voting Certification, the Debtors' Notice and Claims Agent used standard tabulation procedures in tabulating votes from the Holders of Claims in the Voting Classes.  Specifically, the Notice and Claims Agent reviewed all Ballots received in accordance with the procedures described in the Solicitation Procedures Motion and the Disclosure Statement[27] and conditionally approved in the Solicitation Procedures Order, subject to entry of the Confirmation Order.[28]  Because (a) the Notice and Claims Agent complied with all of the Solicitation Procedures and (b) such procedures are consistent with procedures routinely approved by this Court in other prepackaged chapter 11 cases, the Debtors respectfully submit that the Court should approve the Debtors' tabulation of votes—which tabulation confirms that Classes 2, 3, and 4 voted to accept the Plan in the requisite number and amount set forth in section 1126(c) of the Bankruptcy Code.

5.    Waiver of Certain Solicitation Package Mailing Requirements Is Reasonable and Appropriate

47.    As further described in the Solicitation Procedures Motion, certain Holders of Claims and all Holders of Interests were not provided a Solicitation Package because either (a) such Holders are Unimpaired under, and conclusively deemed to accept, the Plan under section 1126(f) of the Bankruptcy Code, or (b) such Holders are not entitled to receive or retain any property under the Plan on account of such Claims or Interests and are, therefore, conclusively deemed to reject the Plan under section 1126(g) of the Bankruptcy Code.  In the Solicitation Procedures Order, the Court conditionally approved the Debtors' Solicitation Procedures, which

---

[27]    *See generally* Voting Certification.

[28]    *See* Solicitation Procedures Order ¶¶ 7 and 15-16.

provided that the Debtors would not mail a copy of the Solicitation Package to the Holders of Claims and Interests deemed to accept or reject the Plan.[29]    As set forth above, in lieu of Solicitation Packages, such Holders (other than Holders of Intercompany Claims and Intercompany Interests) received a Notice of Non-Voting Status and the Combined Notice, which, in turn, included (x) notice of the filing of the Plan, (y) instructions regarding the Combined Hearing and how to obtain a copy of the Solicitation Package (other than a Ballot) free of charge, and (z) detailed directions for filing objections to the Disclosure Statement or confirmation of the Plan.[30]

6.    Solicitation of the Plan Complied with the Bankruptcy Code and Was Conducted in Good Faith

48.    Section 1125(e) of the Bankruptcy Code provides that "[a] person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title . . . is not liable" on account of such solicitation for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan.[31]

49.    As set forth in the Confirmation Declarations, the First Day Declaration, and the Solicitation Procedures Motion, the Debtors at all times engaged in arm's-length, good-faith negotiations and took appropriate actions in connection with the solicitation of the Plan in compliance with section 1125 of the Bankruptcy Code.[32]    Therefore, the Debtors respectfully request that the Court grant the parties engaged in the solicitation all of the protections provided under section 1125(e) of the Bankruptcy Code.

---

[29]    *See id.* ¶ 6.

[30]    *See* Solicitation Affidavit of Service.

[31]    11 U.S.C. § 1125(e).

[32]    *See* Sekella Decl. ¶¶ 6, 33, and 35.

US-DOCS\149446656

50.     For the foregoing reasons, the Debtors respectfully request that the Court approve the Disclosure Statement on a final basis.

## II.    THE PLAN SATISFIES THE REQUIREMENTS FOR CONFIRMATION AND SHOULD BE CONFIRMED

51.     To obtain confirmation of the Plan, the Debtors must demonstrate that the Plan satisfies the applicable provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.[33]  Through filings with the Court, the Confirmation Declarations, and any evidence that may be adduced at the Combined Hearing, the Debtors will demonstrate that the Plan complies with all relevant sections of the Bankruptcy Code, the Bankruptcy Rules, and applicable non-bankruptcy law.  In particular, the Plan fully complies with the requirements of sections 1122, 1123, and 1129 of the Bankruptcy Code.  Each such requirement is addressed individually below.

### A.    Section 1129(a)(1):  The Plan Complies with All Applicable Provisions of the Bankruptcy Code

52.     Section 1129(a)(1) of the Bankruptcy Code provides that a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]."[34]  The legislative history of section 1129(a)(1) of the Bankruptcy Code explains that this provision encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code governing classification of claims and contents of a plan, respectively.[35]  As described below, the Plan fully complies with the

---

[33]    *See, e.g.*, *In re Armstrong World Indus., Inc.*, 348 B.R. 111, 120 (D. Del. 2006).  Preponderance of the evidence has been described as just enough evidence to make it more likely than not that the fact the claimant seeks to prove is true.  *See Grogan* v. *Garner*, 498 U.S. 279, 286 (1991) ("The preponderance-of-the-evidence standard results in roughly equal allocation of the risk of error between litigants.") (citations omitted).

[34]    11 U.S.C. § 1129(a)(1).

[35]    H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977); *see also In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 223 (Bankr. D.N.J. 2000) ("The legislative history reflects that 'the applicable provisions of chapter 11 [includes sections] such as section 1122 and 1123 governing classification and contents of plan.'") (alteration in original) (quoting H.R. Rep. 95-595, at 412).

requirements of sections 1122 and 1123 and all other applicable provisions of the Bankruptcy Code.[36]

**B.      Section 1122:  The Plan Satisfies the Confirmation Requirements**

53.      Section 1122(a) of the Bankruptcy Code provides, in pertinent part, as follows:

> Except as provided in subsection (b) of this Section, a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.[37]

54.      Additionally, section 1122(b) of the Bankruptcy Code expressly permits separate classification of certain claims for purposes of administrative convenience.[38]  For a classification structure to satisfy section 1122 of the Bankruptcy Code, it is not necessary that all substantially similar claims or interests be designated to the same class, but only that all claims or interests designated to a particular class be substantially similar to each other.[39]

55.      The Plan provides for the separate classification of Claims and Interests based upon differences in the legal nature and/or priority of such Claims and Interests.  As set forth in Article III thereof, the Plan designates the following nine Classes of Claims and Interests:[40] Class 1 (Other Secured Claims); Class 2 (ABL Claims); Class 3 (FILO Claims); Class 4 (Term Loan Claims); Class 5 (General Unsecured Claims); Class 6 (Subordinated Claims); Class 7

---

[36]   *See* Sekella Decl. ¶¶ 14-25.

[37]   11 U.S.C. § 1122(a).

[38]   *Id*. § 1122(b).

[39]   *See In re Coastal Broad. Sys., Inc.*, 570 F. App'x 188, 193 (3d Cir. 2014); *see also In re Idearc Inc.*, 423 B.R. 138, 160 (Bankr. N.D. Tex. 2009) ("[A] plan may provide for multiple classes of claims or interests so long as each claim or interest within a class is substantially similar to other claims or interests in that class."); *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 757 ("Courts have found that the Bankruptcy Code only prohibits the identical classification of dissimilar claims.  It does not require that similar classes be grouped together, but merely that any groups be homogenous or share some attributes.") (citations omitted).

[40]   As set forth in Article II of the Plan, General Administrative Claims, Professional Fee Claims, DIP Claims, Priority Tax Claims, Other Priority Claims, United States Trustee Statutory Fees, and Restructuring Fees and Expenses are not classified and are separately treated under the Plan.

(Intercompany Claims); Class 8 (Intercompany Interests); and Class 9 (Existing Equity Interests). The Plan contemplates there being a separate plan of reorganization for each Debtor entity; therefore, the Plan does not contemplate substantive consolidation of the Debtors.  Instead, each Class of creditors is being treated under the Plan on an individual Debtor basis.[41]

56.    A plan proponent is afforded significant flexibility in classifying claims and interests into different classes, provided that there is a rational legal or factual basis to do so and all claims or interests within a particular class are substantially similar.[42]  The classification structure of the Plan is rational and complies with the Bankruptcy Code.  All Claims or Interests within a given Class have the same or similar rights against the applicable Debtors.  The Plan provides for the separate classification of Claims against and Interests in each Debtor based upon the differences in legal nature and/or priority of such Claims and Interests.[43]  Moreover, the classification scheme generally tracks the Debtors' prepetition capital structure:  secured debt, unsecured debt, and equity are classified separately.[44]

57.    Accordingly, the classification scheme of the Plan complies with section 1122 of the Bankruptcy Code and, in any event, does not affect the outcome of the votes on the Plan.

---

[41] *See* Preamble to Plan ("Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the treatment and resolution of outstanding Claims and Interests therein pursuant to the Bankruptcy Code."); *see also* Plan Article IV.S.

[42] *See John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158–59 (3d Cir. 1993) (explaining that a classification is proper as long as each class represents a voting interest "sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed").

[43] *See* Plan Art. III.

[44] *See* Sekella Decl. ¶ 15.

C.     **Section 1123(a):  The Plan Satisfies the Seven Requirements for Contents of a Plan**

58.     Section 1123(a) of the Bankruptcy Code sets forth seven requirements that every chapter 11 plan must satisfy.[45]   As explained below, the Plan fully complies with each such requirement.

1.     Section 1123(a)(1):  Designation of Classes of Claims and Interests

59.     Section 1123(a)(1) of the Bankruptcy Code requires that a plan designate classes of claims and equity interests subject to section 1122 of the Bankruptcy Code.[46]   As discussed above, Article III of the Plan designates Classes of Claims and Interests as required under section 1123(a)(1) of the Bankruptcy Code.  Accordingly, the Plan satisfies the requirements of section 1123(a)(1) of the Bankruptcy Code.

2.     Section 1123(a)(2):  Specification of Unimpaired Classes of Claims and Interests

60.     Section 1123(a)(2) of the Bankruptcy Code requires that a plan specify which classes of claims or interests are unimpaired by the plan.[47]   Article III of the Plan specifies that Class 1 (Other Secured Claims) and Class 5 (General Unsecured Claims) are Unimpaired, and, to the extent applicable, Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests) are Unimpaired in the event that they are Reinstated at the option of the applicable Debtor in consultation with the Required DIP Lenders.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

---

[45]   *See* 11 U.S.C. § 1123(a).

[46]   *See* 11 U.S.C. § 1123(a)(1).

[47]   *See* 11 U.S.C. § 1123(a)(2).

US-DOCS\149446656

3.      Section 1123(a)(3):  Treatment of Impaired Classes of Claims and
        Interests

61.      Section 1123(a)(3) of the Bankruptcy Code requires that a plan specify how classes of claims or interests that are impaired by the plan will be treated.[48]  Article III of the Plan specifies that Class 2 (ABL Claims), Class 3 (FILO Claims), Class 4 (Term Loan Claims), Class 6 (Subordinated Claims), and Class 9 (Existing Equity Interests) are Impaired, and, to the extent applicable, Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests) are Impaired in the event that they are set off, settled, distributed, contributed, merged, canceled, or released at the option of the applicable Debtor in consultation with the Required DIP Lenders.  Article III of the Plan further specifies the treatment proposed to be afforded to each of the foregoing Classes. Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

4.      Section 1123(a)(4):  Equal Treatment Within Each Class of Claims or
        Interests

62.      Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the same treatment for each claim or interest within a particular class unless any claim or interest holder agrees to receive less favorable treatment than other class members.[49]  Pursuant to the Plan, the treatment of each Claim against or Interest in the Debtors is the same as the treatment of each other Claim or Interest in the same Class.[50]  More specifically, (a) all Claims in Class 1 (Other Secured Claims) and Class 5 (General Unsecured Claims) are Unimpaired; (b) all Claims and Interests in Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests) are Unimpaired or Impaired at the election of the Debtors in consultation with the Required DIP Lenders; (c) all Claims and Interests in each of Class 6 (Subordinated Claims) and Class 9 (Existing Equity Interests) are

---

[48]   *See* 11 U.S.C. § 1123(a)(3).

[49]   11 U.S.C. § 1123(a)(4).

[50]   Plan Art. III.B.

Impaired and will be cancelled, released, discharged, and extinguished as of the Effective Date; and (d) all Claims in Class 2 (ABL Claims), Class 3 (FILO Claims), and Class 4 (Term Loan Claims) are Impaired, but will each receive a distribution in accordance with the treatment ascribed to such Class in the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

5.    Section 1123(a)(5):  Adequate Means for Implementation of the Plan

63.    Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide "adequate means for the plan's implementation."[51]  Article IV of the Plan provides adequate and proper means for the implementation of the Plan including, among other things:  (a) the continued corporate existence of the Debtors and the vesting of assets in the Reorganized Debtors under Articles IV.C and IV.D of the Plan; (b) the cancellation and surrender of all notes, bonds, indentures, certificates, securities, purchase rights, options, warrants, collateral agreements, subordination agreements, or other instruments or documents directly or indirectly evidencing,

---

[51]    *See* 11 U.S.C. § 1123(a)(5). Section 1123(a)(5) of the Bankruptcy Code requires a plan to provide for "adequate means" for the plan's implementation, "such as—

(A) retention by the debtor of all or any part of the property of the estate;

(B) transfer of all or any part of the property of the estate to one or more entities, whether organized before or after confirmation of such plan;

(C) merger or consolidation of the debtor with one or more persons;

(D) sale of all or any part of property of the estate . . . among those having an interest in such property of the estate;

(E) satisfaction or modification of any lien;

(F) cancellation or modification of any indenture or similar instrument;

(G) curing or waiving of any default;

(H) extension of a maturity date or change in an interest rate or other term of outstanding securities;

(I) amendment of the debtor's charter; or

(J) issuance of securities of the debtor, or of any entity referred to in subparagraph (B) or (C) of this paragraph, for cash, for property, for existing securities, or in exchange for claims or interests, or for any other appropriate purpose."

creating, or relating to any existing indebtedness or obligations of the Debtors relating to Claims against or Interests in the Debtors, except with respect to the Exit ABL Loans, the Exit FILO Loans, the Exit ABL/FILO Facility Amendment, and/or as otherwise provided in the Plan, the Combined Order, or any other Definitive Document, as detailed in Article IV.E of the Plan; (c) the use of Cash on hand and the proceeds of the DIP Facility and the Exit Facilities to fund Cash distributions under the Plan, as detailed in Article IV.F of the Plan; (d) the Reorganized Debtors' entry into the Exit Facilities Documents, as detailed in Article IV.G of the Plan; (e) the issuance of New Equity Interests for distribution in accordance with the terms of the Plan and the New Organizational Documents, and the exemption of such New Equity Interests from certain registration requirements, as detailed in Articles IV.H and IV.I of the Plan; (f) the adoption of the New Organizational Documents (including certain amended subsidiary organizational documents) that will govern the Reorganized Debtors and the process for appointment of the initial board of directors of the Reorganized Debtors, as provided in Article IV.J of the Plan and the Plan Supplement; (g) the release and discharge on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan of all Liens, Claims, mortgages, deeds of trust, or other security interests against the assets or property of the Debtors or the Estates, except as otherwise provided in the Exit ABL/FILO Facility Amendment (including with respect to the ABL Facility, the FILO Facility, the ABL Loans, and the FILO Term Loans), the Plan, the Combined Order, or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with this Plan, as detailed in Article IV.K of the Plan; (h) the exemption of certain transfers of property by a Debtor under, in furtherance of, or in connection with the Plan from applicable taxes, as detailed in Article IV.L of the Plan; (i) the implementation of the Reorganized Board and Management Incentive Plan, as described in Article IV.P of the Plan;

(j) the preservation of certain Causes of Action and vesting of such Causes of Action in the Reorganized Debtors pursuant to Article IV.N of the Plan; (k) authorization of the Debtors and the Reorganized Debtors to take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the provisions of the Plan, as detailed in Articles IV.O, IV.Q, and IV.R of the Plan; and (l) the various discharges, releases, injunctions, indemnifications and exculpations provided in Article IX of the Plan.

64.    Accordingly, the Plan, together with the documents and agreements contemplated by the Plan and the Plan Supplement, provides the means for implementation of the Plan as required by and in satisfaction of section 1123(a)(5) of the Bankruptcy Code.

6.    Section 1123(a)(6):  Issuance of Non-Voting Securities

65.    Section 1123(a)(6) of the Bankruptcy Code prohibits the issuance of non-voting equity securities and requires that a debtor's corporate governance documents contain a provision prohibiting the issuance of non-voting equity securities.[52]  It also requires that a corporation's governance documents provide an appropriate distribution of voting power among the classes of securities possessing voting power.[53]  The Plan does not provide for the issuance of non-voting equity securities, and the form of amended and restated organizational documents for each Debtor other than the Parent (forms of which are attached as Exhibit C to the Plan Supplement), as well as the New Organizational Documents and the Governance Term Sheet for the Parent (forms of which are attached as Exhibits A and E, respectively, to the Plan Supplement), comply with section 1123(a)(6) of the Bankruptcy Code.[54]  Accordingly, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

---

[52]    *See* 11 U.S.C. § 1123(a)(6).

[53]    *Id.*

[54]    Plan Supplement [Docket No. 214], Exs. A, C, and E.

7.    Section 1123(a)(7):  Provisions Regarding Directors and Officers

66.    Section 1123(a)(7) of the Bankruptcy Code requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee."[55]  Article IV.M of the Plan provides that the Reorganized Board will initially consist of five (5) members, three (3) of whom are identified on Exhibit H of the Plan Supplement, with the identity of the other two (2) members of the Reorganized Board to be disclosed after such individual is selected.  Further, as set forth in Exhibit H to the Plan Supplement, the existing directors serving on the subsidiary Debtors' respective boards shall remain in their current positions from and after the Effective Date (subject to all rights with respect to the resignation, removal, and replacement of such directors).[56]

67.    Additionally, the Debtors have disclosed that the Debtors' existing officers will continue to serve the Reorganized Debtors after Confirmation subject to the terms of Article IV.P.2 of the Plan.[57]  All such directors and officers will be qualified for their respective positions and capable of carrying out their duties under applicable law.  The manner of selecting the officers and directors of the Reorganized Debtors is consistent with the Bankruptcy Code, the interests of creditors and equity security holders, and public policy.  Therefore, the Debtors respectfully submit that the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

D.    **Section 1123(b):  The Plan Incorporates Certain Permissive Provisions**

68.    Section 1123(b) of the Bankruptcy Code sets forth certain permissive provisions that may be incorporated into a chapter 11 plan.  Among other things, section 1123(b) of the

---

[55]    *See* 11 U.S.C. § 1123(a)(7).

[56]    Plan Supplement [Docket No. 214], Ex. H.

[57]    *Id.*

Bankruptcy Code provides that a plan may:  (a) impair or leave unimpaired any class of claims or interests; (b) provide for the assumption or rejection of executory contracts and unexpired leases; (c) provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estates; and (d) include any other appropriate provision not inconsistent with the applicable provisions of chapter 11.[58]  The contents of the Plan are consistent with these provisions.

    1.  Section 1123(b)(1):  Impairment/Unimpairment of Claims and Interests

   69. Section 1123(b)(1) of the Bankruptcy Code provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests."[59]  As noted above, Claims in Class 1 (Other Secured Claims) and Class 5 (General Unsecured Claims) are Unimpaired, and Claims and Interests in Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests) are Unimpaired in the event that they are Reinstated at the option of the applicable Debtor in consultation with the Required DIP Lenders or Impaired in the event that they are set off, settled, distributed, contributed, merged, canceled, or released at the option of the applicable Debtor in consultation with the Required DIP Lenders.[60]  Further, Claims and Interests in Class 2 (ABL Claims), Class 3 (FILO Claims), Class 4 (Term Loan Claims), Class 6 (Subordinated Claims), and Class 9 (Existing Equity Interests) are Impaired.[61]  Accordingly, the Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.

    2.  Section 1123(b)(2):  Assumption or Rejection of Executory Contracts and Unexpired Leases

   70. Section 1123(b)(2) of the Bankruptcy Code allows a plan to provide for assumption, assumption and assignment, or rejection of executory contracts and unexpired leases pursuant to

---

[58] *See* 11 U.S.C. § 1123(b)(1)–(3), (6).

[59] *See* 11 U.S.C. § 1123(b)(1).

[60] Plan Art. III.B.

[61] *Id.*

US-DOCS\149446656

section 365 of the Bankruptcy Code.[62]   Article V.A of the Plan provides, in part, that, on the Effective Date, except as otherwise provided in the Plan, each of the Executory Contracts and Unexpired Leases not previously rejected, assumed, or assumed and assigned pursuant to an order of the Court will be deemed assumed as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code *except* any Executory Contract or Unexpired Lease (i) identified on the Rejected Executory Contract/Unexpired Lease List filed with the Plan Supplement as an Executory Contract or Unexpired Lease to be rejected (if any), (ii) that is the subject of a separate motion or notice to reject pending as of the Effective Date, or (iii) that previously expired or terminated pursuant to its own terms (disregarding any terms the effect of which is invalidated by the Bankruptcy Code).   This provision of the Plan is permitted by section 1123(b)(2) of the Bankruptcy Code.

### 3.    Section 1123(b)(3):  Retention of Causes of Action by the Debtors

71.    Section 1123(b)(3)(A) of the Bankruptcy Code provides that a chapter 11 plan may "provide for . . . the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[63]  As discussed in greater detail below, Article IX.B of the Plan provides for a release of certain claims and Causes of Action owned by the Debtors.

72.    Section 1123(b)(3)(B) of the Bankruptcy Code provides that a plan may provide for "*the retention and enforcement by the debtor*, by the trustee, or by a representative of the estate appointed for such purpose" of any claim or interest.[64]   In this case, the Plan preserves the Reorganized Debtors' rights to enforce any claims, rights, or Causes of Action that the Debtors may hold against any person or entity, except those Causes of Action that are explicitly released

---

[62]   11 U.S.C. § 1123(b)(2).

[63]   11 U.S.C. § 1123(b)(3)(A).

[64]   11 U.S.C. § 1123(b)(3)(B) (emphasis added).

US-DOCS\149446656

under the Plan.[65]    A non-exclusive list of such preserved and retained Causes of Action was

included in Exhibit G to the Plan Supplement.[66]    These provisions of the Plan are expressly

permitted by section 1123(b)(3) of the Bankruptcy Code and, for the reasons discussed more fully

below, are appropriate in the Chapter 11 Cases.

4.    Section 1123(b)(5):  Modification of Rights of Holders

73.    Section 1123(b)(5) of the Bankruptcy Code provides that a plan may modify the

rights of holders of secured claims or holders of unsecured claims, or leave unaffected the rights

of holders of any class of claims.[67]    As permitted by section 1123(b)(5) of the Bankruptcy Code,

the Plan modifies the rights of Holders of Claims or Interests in the Impaired Classes, and leaves

unaffected the rights of Holders of Claims or Interests in the Unimpaired Classes.

5.    Section 1123(b)(6):  Other Plan Provisions Not Inconsistent with the
Bankruptcy Code

74.    Section 1123(b)(6) of the Bankruptcy Code permits a plan to "include . . . other

appropriate provisions not inconsistent with the applicable provisions of" the Bankruptcy Code.[68]

Here, all provisions of the Plan are consistent with the Bankruptcy Code, including, but not limited

to, (a) the provisions exempting securities to be issued under the Plan from securities law

registration requirements set forth in Article IV.I of the Plan and (b) the release, discharge,

exculpation, and injunction provisions set forth in Article IX of the Plan.  As described in more

detail below, the release, discharge, exculpation, and injunction provisions are essential to the

reorganization and consistent with the applicable provisions of the Bankruptcy Code and the law

in this circuit.

---

[65]    *See* Plan Art. IV.N.

[66]    *See* Plan Supplement [Docket No. 214], Ex. G.

[67]    11 U.S.C. § 1123(b)(5).

[68]    11 U.S.C. § 1123(b)(6).

(a)    *Article IV.I of the Plan – Exemption from Registration Requirements*

75.    Article IV.I of the Plan provides that no registration statement will be filed under the Securities Act as "[t]he offering, sale, issuance, and distribution of the New Equity Interests in exchange for Claims pursuant to <u>Article II</u> and <u>Article III</u> and pursuant to the Combined Order shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable United States, state, or local law requiring registration for the offer or sale of a security pursuant to section 1145 of the Bankruptcy Code[.]"  Article IV.I further provides that "[a]ny and all such New Equity Interests may be resold without registration under the Securities Act by the recipients thereof, pursuant to the exemption provided by Section 4(a)(1) of the Securities Act, subject to section 1145(b)(1) of the Bankruptcy Code (which limits resale by Persons who are "underwriters" as that term is defined in such section), restrictions under the Securities Act applicable to recipients who are an "affiliate" of the Reorganized Debtors as defined in Rule 144(a)(1) under the Securities Act, compliance with any applicable state or foreign securities laws, regulatory approvals, and any applicable rules and regulations of the SEC, issuer organizational documents, or other agreements or instruments applicable to holders of such securities.

76.    Section 1145(a)(1) of the Bankruptcy Code provides:

> Except with respect to an entity that is an underwriter as defined in subsection (b) of this section, section 5 of the Securities Act of 1933 and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security do not apply to (1) the offer or sale under a plan of a security of a debtor, of an affiliate participating in a joint plan with the debtor, or of a successor to the debtor under the plan (A) *in exchange for* a claim against, an interest in, or *a claim for an administrative expense in the case*

concerning, the debtor or such affiliate; or (B) principally in such exchange and partly for cash or property.[69]

77.     The Debtors respectfully submit that all of the New Equity Interests to be distributed pursuant to the Plan satisfy the requirements of section 1145(a) of the Bankruptcy Code and/or otherwise fall within the applicable exemptions from registration under the Securities Act, as set forth in Article IV.I of the Plan.

78.     Under the Plan, New Equity Interests will be distributed to:  (a) the Holders of Class 4 Term Loan Claims, in exchange for each Allowed Term Loan Claim or, to the extent such Holder is entitled, as part of the DIP Participation Fee and (b) certain Supporting Trade Creditors on account and in satisfaction of the Supporting Trade Creditor Fee.

79.     The Term Loan Claims constitute Allowed Term Loan Claims against the Debtors, and the fees payable on account of the DIP Participation Fee and the Supporting Trade Creditor Fee constitute Allowed DIP Claims against the Debtors and, accordingly, the distribution of New Equity Interests to the Holders of Term Loan Claims in exchange for their Allowed Term Loan Claims and the distribution of New Equity Interests in exchange for certain Allowed DIP Claims satisfies the requirements of section 1145(a)(1)(A) of the Bankruptcy Code.

   (b) *The Debtor Release Is Appropriate, Complies with Applicable Law, and Should Be Approved*

80.     When considering releases by a debtor of non-debtor third parties pursuant to section 1123(b)(3)(A), the appropriate standard is whether the release is a valid exercise of the debtor's business judgment and is fair, reasonable, and in the best interests of the estate.[70]  A

---

[69]   11 U.S.C. § 1145(a) (emphasis added).

[70]   *See In re Abeinsa Holding, Inc.*, 562 B.R. 265, 282 (Bankr. D. Del. 2016) ("A debtor may release claims under § 1123(b)(3)(A) if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."); *see also In re Aleris Int'l, Inc.*, No. 09-10478 (BLS), 2010 WL 3492664, at *20 (Bankr. D. Del. May 13, 2010) (finding that where a debtor release is "an active part of the plan negotiation and formulation process, it is a valid exercise of the debtor's business judgment to include a settlement of any claims

debtor's decision to release claims against third parties under a plan is afforded deference as a matter of business judgment.[71]

81.     Article IX.B of the Plan provides for a release by the Debtors, the Estates, and the Reorganized Debtors of each Released Party and its respective successors, assigns, and representatives with respect to any and all Claims or Causes of Action held by the Debtors (and any Claims that could be asserted derivatively through the Debtors, the Estates, or Reorganized Debtors) against such Released Parties (the "***Debtor Release***").  Notably, the Debtor Release expressly carves out claims or causes of action that are determined to arise from or relate to a Released Party's actual fraud, gross negligence or willful misconduct.

82.     In considering whether a debtor's release of claims is appropriate, some courts in this District have also examined the following list of non-exclusive and disjunctive factors (the "***Zenith Factors***"):[72]  (a) an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate; (b) substantial contribution by the non-debtor of assets to the reorganization; (c) the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success; (d) an agreement by a substantial majority of creditors to

---

a debtor might own against third parties as a discretionary provision of a plan"); *In re Motors Liquidation Co.*, 447 B.R. 198, 220 (Bankr. S.D.N.Y. 2011) ("Releases by estates involve a give-up of potential rights that are owned by the estate, and are perfectly permissible in a plan, either as parts of plan settlements or otherwise, though the court must satisfy itself (at least if anyone raises the issue) that the give-up is an appropriate exercise of business judgment, and, possibly, in the best interests of the estate.") (footnote omitted).

[71]  *See, e.g.*, *In re Hercules Offshore, Inc.*, 565 B.R. 732, 757 (Bankr. D. Del. 2016) ("The Court need only determine that the Debtors exercised sound business judgment in deciding to accept the settlement integral to the proposed plan."); *Marvel Ent. Grp., Inv. v. MAFCO Holdings, Inc. (In re Marvel Ent. Grp., Inc.)*, 273 B.R. 58, 78 (D. Del. 2002) ("[U]nder the business judgment rule . . . a court will not interfere with the judgment of a board of directors unless there is a showing of gross and palpable overreaching.  Thus, under the business judgment rule, a board's decisions will not be disturbed if they can be attributed to any rational purpose and a court will not substitute its own notions of what is or is not sound business judgment.") (second alteration in original) (internal quotation marks and citations omitted).

[72]  These factors were first articulated as the standard for approving a third-party release.  *See In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994).

US-DOCS\149446656

support the injunction, specifically if the impaired class or classes "overwhelmingly" votes to accept the plan; and (e) a provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction.[73]    As a disjunctive list, these factors provide a way of "weighing the equities of the particular case after a fact-specific review."[74]

83.    The Debtor Release represents a sound exercise of the Debtors' business judgment and is also appropriate under each of the *Zenith* Factors.    *First*, an identity of interest exists between the Debtors and the Released Parties, because each of the Released Parties shares the common goal of, and is an integral party to, confirming the Plan and implementing the transactions contemplated therein.    This unified interest in formulating and confirming the Plan establishes an identity of interest under applicable law.[75]    The indemnification rights of certain of the Released Parties, including directors and officers, pursuant to, among other things, the Debtors' existing corporate governance documents, also establishes an identity of interest between the Debtors and

---

[73]    *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999); *see also In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013) ("These factors are neither exclusive nor are they a list of conjunctive requirements.").

[74]    *Indianapolis Downs*, 486 B.R. at 303.    Not each factor is relevant in every case, and releases may be approved where only one or two factors are present.    *See, e.g.*, *In re Abeinsa Holding, Inc.*, 562 B.R. 265 (Bankr. D. Del. 2016) (approving release where the released parties were actively involved in negotiating the plan and four impaired creditor classes voted overwhelmingly in favor).

[75]    *See, e.g.*, *Zenith*, 241 B.R. at 110 (finding an identity of interest with debtor where certain released parties who "were instrumental in formulating the Plan" shared an identity of interest with debtor "in seeing that the Plan succeed and the company reorganize"); *In re 710 Long Ridge Rd. Operating Co., II, LLC*, No. 13-13653 (DHS), 2014 WL 886433, at *15 (Bankr. D.N.J. Mar. 5, 2014) (finding identity of interest where both debtor and non-debtor released parties shared a common goal of "confirming [a plan] and implementing the transactions contemplated thereunder").

such parties.[76]  Under the Plan, the Reorganized Debtors will assume all liability on account of

such indemnification rights, further strengthening this identity of interest.[77]

84.    *Second*, many of the Released Parties have made a substantial contribution to the

Chapter 11 Cases.  For example, the Released Parties include entities that, among other things,

were active in the complex negotiations resulting in the Transaction Support Agreement, the

ABL/FILO Exit Commitment Letters, and the Plan, and agreed to compromise or waive their own

rights and Claims.  Notably, while the Debtors' board and management worked tirelessly to

achieve a successful, value-maximizing reorganization in addition to fulfilling their regular duties,

the Released Parties made substantial and necessary contributions to the Debtors' restructuring,

which constitute valuable consideration in exchange for their respective releases under the Third-

Party Release, and a substantial identity of interest continues to exist among the Debtors, their

current and former directors and officers, and their lenders, all of whom are entitled to

indemnification by the Debtors (with all indemnification obligations to be assumed in full under

the proposed Plan).  Indeed, these contributions consist of, among other things:

- the DIP Lenders (in coordination with the DIP Agent) having provided DIP Term Loans in an aggregate principal amount of approximately $107 million under the DIP-to-Exit Facility;

- the Consenting Term Loan Lenders having agreed to (i) support the Plan and the confirmation thereof; (ii) convert their Term Loan Claims to New Equity Interests; and (iii) the impairment of their Claims so as to fund distributions to the Holders of General Unsecured Claims, leaving such Holders Unimpaired and thereby promoting continuation of the Debtors' good relationships with vendors, customers, and other stakeholders that are essential to the Reorganized Debtors' long-term success;

---

[76]    *See Master Mortg.*, 168 B.R. at 937 (noting that an indemnity relationship may satisfy the identity of interest factor); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 268 (Bankr. S.D.N.Y. 2007) (considering the "identity of interest" factor in the context of a third-party release and stating that "[t]o the extent that the third party releases are congruent with the indemnification obligations, and the [d]ebtor[] would be liable for any liability imposed on such person[]" an identity of interest is established).

[77]    *See* Plan Art. V.H.

- the Prepetition ABL Lenders and the Prepetition FILO Lenders having agreed to (i) support the Plan and the confirmation thereof and (ii) provide the Exit ABL Loans and the Exit FILO Loans, respectively, as contemplated in the Plan, subject to the terms and conditions of the ABL/FILO Exit Commitment Letters;

- the Consenting Stockholder Parties having agreed to become party to the Transaction Support Agreement; and

- the Additional Financing Parties having (i) provided funding under the DIP-to-Exit Facility as well as certain other financial accommodations and (ii) agreed support the Plan.[78]

Without these and other contributions from the Released Parties, the Debtors would not be poised to successfully reorganize and emerge from chapter 11.

85.     *Third*, the Debtor Release is essential to the success of the Plan.  Without providing the Debtor Release, the Debtors do not believe they would have been able to secure the substantial benefits provided by the Plan, as contemplated by the Transaction Support Agreement, including a deleveraged balance sheet, a meaningful opportunity to emerge from the Chapter 11 Cases with a more durable capital structure, and 100% recoveries for Holders of Allowed General Unsecured Claims, none of which otherwise would have been possible.[79]  In short, had the Debtor Release not been provided, the Debtors' chances of reorganizing and maximizing value for the benefit of all stakeholders would have been dramatically diminished.[80]

---

[78]  *See* Sekella Decl. ¶ 36.

[79]  *See id*.

[80]  Additionally, a majority of creditors support the Debtor Release.  The Debtor Release, as an important piece of the Plan, is supported by both Classes of Claims (Classes 2 and 3) entitled to vote on the Plan.  This reinforces and affirms the Debtors' determination that the Debtor Release is a valid exercise of their business judgment and is in the best interests of the Estates.  *See Master Mortg.*, 168 B.R. at 938 (stating that creditor approval of a release is "the single most important factor" to determine whether a release is appropriate); *see also Key3Media Grp., Inc. v. Pulver.Com, Inc. (In re Key3Media Grp., Inc.)*, 336 B.R. 87, 97–98 (Bankr. D. Del. 2005) (granting a settlement of estate causes of action over a creditor's objection because, among other things, a majority of creditors approved of the settlement), *aff'd*, No. 03-10323 (MFW), 2006 WL 2842462 (D. Del. Oct. 2, 2006).

86.     In addition to the reasons set forth above, the Debtor Release is also appropriate because, as stated in the Sekella Declaration, the Debtors believe that the released Claims and Causes of Action, including certain potential claims against directors and officers of the Debtors, have no material value to the Debtors and the Estates, and the *de minimis* value, if any, of such Claims is outweighed significantly by the value and benefits provided by the Plan and the transactions contemplated therein and the parties receiving the Debtor Release.[81]  This view is informed by the investigation conducted by Young Conaway under the direction of the Debtors' independent director, the results of which indicate that the Debtors do not hold colorable claims that are included within the Debtor Release or that would warrant not proceeding with confirmation and consummation of the Plan.  Therefore, the Debtors determined that:  (a) the Debtor Release would not extinguish any potential Claims with a sufficient likelihood of success and prospect of recovery to warrant the expense and litigation risk of pursuing such Claims; and (b) the Debtor Release is necessary to the Debtors' successful emergence from chapter 11.[82]

87.     Accordingly, for the reasons set forth above, the Debtors respectfully submit that the Debtor Release is a reasonable exercise of the Debtors' business judgment, satisfies the *Zenith* Factors, and should be approved under section 1123(b)(3)(A) of the Bankruptcy Code.

(c)     *The Third-Party Release Is Appropriate, Complies with Applicable Law, and Should Be Approved*

88.     Pursuant to Article IX.C of the Plan, the Debtors seek a consensual release (the "***Third-Party Release***") with respect to specified types of Claims or Causes of Action (including, but not limited to, Claims or Causes of Action related to (i) the management, ownership or operations of the Debtors or the Non-Debtor Affiliates, (ii) the purchase, sale, or rescission of any

---

[81]   *See* Sekella Decl. ¶ 66.

[82]   *See id.*

US-DOCS\149446656

security of the Debtors or the Non-Debtor Affiliates, (iii) the Restructuring Transactions, (iii) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, and (iv) the Transaction Support Agreement, the Definitive Documents, and certain related documents) from the following Persons (and any other Persons that might seek to claim under or through such Persons):

> (a) each Non-Debtor Affiliate; (b) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers, and proxyholders; (c) each Consenting Stakeholder; (d) each Prepetition Agent; (e) each ABL Lender; (f) each FILO Lender; (g) the DIP Agent; (h) each DIP Lender; (i) each Exit Facility Agent; (j) each lender under the Exit Facilities; (k) each Additional Financing Party; (l) each Holder of a Claim that is Unimpaired under the Plan that does not elect to opt out of the Releases contained in the Plan; (m) each Holder of a Claim that is entitled to vote on the Plan and either (i) votes to accept the Plan, (ii) abstains from voting on the Plan and does not elect to opt out of the Releases contained in the Plan, or (iii) votes to reject the Plan and does not elect to opt out of the Releases contained in the Plan; and (n) each Related Party of each Entity in clauses (a) through (m), but solely to the extent such Related Party would be obligated to grant a release under principles of agency if it were so directed by the Entity in the foregoing clauses (a) through (m) to whom they are related; *provided*, that, for the avoidance of doubt, any opt-out election made by a Consenting Stakeholder or an Additional Financing Party shall be void *ab initio*.

89.     Courts in the Third Circuit have stated that a third-party release may be approved with the ***consent*** of the affected party.[83] Courts generally agree that an affirmative vote to accept a plan that contains a third-party release constitutes an express consent to such release.[84] Courts

---

[83] *See, e.g., In re Mallinckrodt plc*, No. 23-11258 (JTD) (Bankr. D. Del. Oct. 10, 2023) (approving third-party releases); *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Feb. 8, 2022) (same); *In re Seventy Seven Fin. Inc.*, No. 16-11409 (LSS) (Bankr. D. Del. July 14, 2016) (same); *In re Quiksilver Inc.*, No. 15-11880 (Bankr. D. Del. Jan. 29, 2016) (same); *In re EveryWare Glob., Inc.*, No. 15-10743 (LSS) (Bankr. D. Del. May 22, 2015) (same); *In re Spansion, Inc.*, 426 B.R. 114, 144 (Bankr. D. Del. 2010) (stating that "a third party release may be included in a plan if the release is consensual"); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 305 (Bankr. D. Del. 2013) (collecting cases).

[84] *See, e.g., In re Akorn, Inc.*, Case No. 20-11177 (KBO) (Bankr. D. Del. Sept. 4, 2020) (confirming plan where non-debtor releasing parties included "all Holders of Claims or Interests who vote to accept the Plan"); *In re*

in this district have also approved third-party releases as consensual where a plan provided for a third-party release and the affected parties were afforded the opportunity to opt out of providing such release.[85]

90.    Here, each party that will be granting a release pursuant to the Third-Party Release was provided with the opportunity to manifest consent to or opt out of the Third-Party Release. To begin, each Ballot that was sent to the creditors in the Voting Classes advised such creditors that (a) a vote to accept the Plan would constitute such creditor's consent to the Third-Party Release and (b) any voting creditor that wanted to vote to reject the Plan or abstain from voting could opt of the Third-Party Release by simply checking a box on the Ballot (*i.e.*, the Opt-Out Section). This

_Coram Healthcare Corp._, 315 B.R. at 336 (holding that creditors who voted to accept the plan are bound by the releases); _In re Zenith Elecs. Corp._, 241 B.R. at 111 (same).

[85]    *See, e.g., In re Mallinckrodt plc*, No. 23-11258 (JTD) (Bankr. D. Del. Oct. 10, 2023) [Docket No. 522] (confirming plan where the definition of "Releasing Parties" included "each Holder of a Claim that is Unimpaired under the Plan that [] does not timely File … an objection to the Third-Party Release" and "each other Holder of Claims that is entitled to vote and … abstains from voting [] and does not elect to opt out of the Releases … [or] votes to reject this Plan and does not elect to opt out of the Releases"); _In re Emerge Energy Services LP_, No. 19-11563 (KBO) (Bankr. D. Del. Dec. 18, 2019) [Docket No. 721] (confirming plan where the non-debtor releasing parties included claimants "that submitted a Ballot to the Voting and Claims Agent, but did not affirmatively opt out of the Third Party Release as provided on their respective Ballots"); _Indianapolis Downs_, 486 B.R. at 306 ("As for those impaired creditors . . . who voted to reject the Plan and did not otherwise opt out of the releases, the record reflects these parties were provided detailed instructions on how to opt out, and had the opportunity to do so by marking their ballots.  Under these circumstances, the Third Party Releases may be properly characterized as consensual and will be approved."); _In re VER Techs. Holdco LLC_, No. 18-10834 (CSS) (Bankr. D. Del. July 26, 2018) [Docket No. 647] (overruling objection from the United States Trustee where defined term "Releasing Parties" included "all Holders of Claims or Interests that are deemed to reject the plan that do not affirmatively elect to 'opt out' of being a releasing party by timely objecting to the Plan's third-party release provisions"); _In re EV Energy Partners, L.P._, No. 18-10814 (CSS) (Bankr. D. Del. May 17, 2018) [Docket No. 238] (overruling objections of the United States Trustee, Securities Exchange Commission, and others where defined term "Releasing Parties" included "each holder of a Claim or Existing Equity Interest that is deemed to reject the Plan that does not affirmatively elect to 'opt out' of being a Releasing Party by timely objecting to the Plan's third-party release provision"); _In re Verso Corp._, No. 16-10163 (KG) (Bankr. D. Del. June 23, 2016) [Docket No. 1223] (confirming plan of reorganization in which the defined term "Releasing Parties" included "each holder of a Claim or Equity Interest deemed to have rejected the Plan but does not send a notice to the Debtors to opt out of the releases set forth in Article 12.4 of the Plan"); _In re JRV Grp. USA L.P._, Case No. 19-11095 (CSS) (Bankr. D. Del. June 19, 2020), Tr. from Confirmation Hr'g (June 19, 2020) (overruling objection from the United States Trustee and approving third-party release because "people have been given reasonable notice, consistent with due process; an opportunity to object or optout, they've chosen not to do so [and] I believe that's constructive consent"); _In re Insys Therapeutics, Inc._, Case No. 19-11292 (JTD) (Bankr. D. Del. Jan. 17, 2020) (KG) [Docket No. 1121] (approving shareholder release with opt-out option); _In re Gibson Brands_, Case No. 18-11025 (Bankr. D. Del.) (CSS), Tr. from Confirmation Hr'g (Oct. 2, 2018) (overruling objection from the United States Trustee and holding that "to consent to something, [ ] it's sufficient to say, Here's your notice, this is what's going to happen and if you don't object, you'll have been deemed to consent").

structure is appropriate and consistent with decisions in this jurisdiction and the Court's decision in *Emerge Energy Services* because such parties were clearly informed of the Third-Party Release and the consequences of choosing not to opt out.[86]   In this case, the Ballots provided clear notice to voting creditors of, among other things, the Third-Party Release and instructions for how eligible parties could opt out.   In particular, the Ballot distributed to Holders of Claims in the Voting Classes stated in bold text:  "**IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES BY CHECKING THE BOX BELOW, YOU WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE RELEASED PARTIES AS PROVIDED IN THE PLAN.**"[87]   As to Unimpaired Non-Voting Classes (which include Holders of Claims in Classes 1 and 5), each such Holder was provided with a Release Opt-Out Form with clear instructions on how to opt out of the Third-Party Release, in addition to which numerous notices (including the Notice of Non-Voting Status, the Combined Notice, and the Publication Notice) clearly and conspicuously disclosed the existence of the Third-Party Release.[88]   Finally, Holders of Impaired Claims and Interests that are deemed to reject the Plan and, accordingly, are not entitled to vote on the Plan (*i.e.*, Claims in Classes 6 and 7 and Interests in Classes 8 and 9) are not Releasing Parties.

91.     It is thus abundantly clear that the Opt-Out Section of the Ballots (with respect to the Voting Classes), the Release Opt-Out Form (with respect to certain Non-Voting Classes), and

---

[86]     *See In re Bluestem Brands Inc.,* Case No. 20-10566 (MFW) (Bankr. D. Del. Aug. 21, 2020), Conf. Hr'g Tr. at 25:13-26:9 (finding returning of a ballot without checking the opt-out does constitute consent to the releases where the ballot and notice was clear); *see also Indianapolis Downs*, 486 B.R. at 305-06 (approving ballots that had an opt-out mechanism).

[87]     *See* Exs. 3A, 3B & 3C of Solicitation Procedures Order.

[88]     *See* Exs. 4 & 5 of Solicitation Procedures Order.

-46-

the multiple notices that were sent to the Unimpaired Non-Voting Classes adequately informed the Holders of Claims and Interests of the Third-Party Release and the steps they should take, if so inclined, to opt out of the Third-Party Release either through checking the opt-out box on the Ballot or submitting the Release Opt-Out Form.

92.     All of the foregoing mechanics clearly demonstrate that the Third-Party Release was obtained consensually from impacted parties.  Further, numerous courts have recognized that a chapter 11 plan may include a release of non-debtors by other non-debtors when such release is consensual.[89]  Consensual releases are permissible on the basis of general principles of contract law.[90]  Here, all parties in interest had ample opportunity to evaluate and exercise their right to manifest consent to the Third-Party Release.  The Ballots quoted the entirety of the Third-Party Release provision in the Plan and clearly informed such of parties of the steps they should take if they disagreed with the scope of the Third-Party Release and wanted to opt out.  Indeed, the fact that 774 creditors did, in fact, opt out of the Third-Party Release illustrates that parties received adequate notice of their ability to opt out.  As such, the Third-Party Release is consensual as to all parties subject to the Third-Party Release who decided not to withhold their consent to the Third-Party Release by either opting out on the applicable Ballot or submitting a Release Opt-Out Form.

93.     Based on the foregoing, the Debtors have established that the Third-Party Release is consensual, and there is no need to consider the factors governing non-consensual third-party releases under *Continental*[91] and its progeny.[92]  Accordingly, the Debtors submit that the Third-Party Release should be approved.

---

[89]   *See, e.g.*, *Indianapolis Downs*, 486 B.R. at 305 (collecting cases).

[90]   *In Coram Healthcare Corp.*, 315 B.R. 321, 336 (Bankr. D. Del. 2004).

[91]   *See Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 213-14 (3d Cir. 2000).

[92]   Even if this Court were to deem the Third-Party Releases non-consensual, they also satisfy the "fairness and necessity" guidelines for approving non-consensual releases discussed by the Third Circuit in *In re Cont'l*

(d)     *The Exculpation Clause Is Appropriate, Complies with Applicable Law, and Should Be Approved*

94.     In addition to the releases discussed above, the exculpation in Article IX.D of the Plan (the "***Exculpation***")[93] exculpates the Exculpated Parties[94] for any liability that may otherwise arise out of or relate to, among other things, any postpetition act taken or omitted to be taken in connection with the restructuring of the Debtors, the approval of the Disclosure Statement, or the confirmation or consummation of the Plan.  The Exculpation is appropriately limited (including by applying only to estate fiduciaries) and does not waive or release any claims or Causes of Action arising from willful misconduct, actual fraud, or gross negligence as determined by Final Order.[95] The Debtors believe that the Exculpation is critical because the Exculpated Parties have participated in the Chapter 11 Cases in good faith, and such provision is necessary to protect them from collateral attacks related to any good-faith acts or omissions in connection with, or related to, among other things, acts in furtherance of the Transaction Support Agreement, the Chapter 11 Cases, and the Plan.[96]  Moreover, the Debtors are unaware of any claims against any Exculpated

---

*Airlines,* 203 F.3d 203 (3d Cir. 2000).  This Court has held that, under *Continental*, "to meet the burden of establishing that the third party releases are fair and necessary to the reorganization, . . . Plan proponents must establish by a preponderance of the evidence that, [1] there is material, specific and identifiable consideration flowing from the releasees to the releasors, either directly or through the Plan, that is a fair exchange for the releases being granted, and [2] that it is unlikely that the Debtor will be able to confirm a Plan, not necessarily the specific Plan before the Court, absent such releases."  *See* Tr. of Hr'g held on Apr. 20, 2006 at 114-15, *In re Freedom Rings, L.L.C.*, No. 05-14268 (CSS) (Bankr. D. Del. May 9, 2006) [Docket No. 385].  The Released Parties have provided significant value in connection with the Plan—including becoming party to the Transaction Support Agreement, agreeing to support the Plan and confirmation thereof, and waiving Claims that could have otherwise been asserted—and the Third-Party Releases are an essential and integral component of the Plan and such Released Parties' support thereof.

[93]   The Debtors revised Article IX.D of the Plan in response to informal comments from the United States Trustee, as evidenced in the Amended Plan.

[94]   "***Exculpated Party***" means, each in its capacity as such, each of the Debtors and, solely to the extent they are Estate fiduciaries, the Debtors' Related Parties.

[95]   *See* Sekella Decl. ¶ 70.

[96]   *See, e.g., In re PWS Holding Corp.*, 228 F.3d 224, 246–47 (3d Cir. 2000) (observing that the debtors and certain other parties, such as the unsecured creditors' committee members and the professionals retained by such committee, who provided services to assist in the reorganization, are entitled to a "limited grant of immunity . . . for actions within the scope of their duties").

US-DOCS\149446656

Party that would be subject to the Exculpation under the Plan.[97]  Accordingly, the Debtors believe

that the Exculpation is consistent with applicable law and should be approved.

        (e)     *The Injunction Clause Is Necessary and Narrowly Tailored, Complies with Applicable Law, and Should Be Approved*

95.    The injunction provision set forth in Article IX.E of the Plan (the "***Injunction***

***Provision***") implements the Plan's discharge, release, and exculpation provisions.  The Injunction

Provision permanently enjoins all Persons and Entities from commencing or continuing any action

or other proceeding against any Person or Entity released, discharged, or exculpated under the

Plan.  The Injunction Provision is thus a key provision of the Plan, because it is necessary to

preserve and enforce the discharge provisions in the Plan, the Debtor Release, the Third-Party

Release, and the Exculpation, all of which are also central to the Plan, and it is narrowly tailored

to achieve this purpose.[98]  As such, to the extent the Court finds that the Debtor Release, the Third-

Party Release, and the Exculpation are appropriate, the Court should approve the Injunction

Provision.

        **E.**    **Section 1123(d):  Curing of Defaults**

96.    Section 1123(d) of the Bankruptcy Code provides that "if it is proposed in a plan to

cure a default[,] the amount necessary to cure the default shall be determined in accordance with

the underlying agreement and applicable nonbankruptcy law."[99]  Article V.A of the Plan provides

for the assumption of all Executory Contracts and Unexpired Leases not previously rejected,

assumed, or assumed and assigned pursuant to an order of the Court, without the need for any

---

[97]    *See* Sekella Decl. ¶ 72.

[98]    *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285,  293 (2d. Cir. 1992) (holding that a court may approve injunction provision where such provision "plays an important part in the debtor's reorganization plan"); Sekella Decl. ¶ 68.

[99]    11 U.S.C. § 1123(d).

-49-

further notice to or action, order, or approval of the Court, as of the Effective Date, under sections 365 and 1123 of the Bankruptcy Code. Article V.B of the Plan further provides for the payment in Cash of any monetary default under an Executory Contract or Unexpired Lease to be assumed on the Effective Date or as soon as reasonably practicable, or as otherwise agreed by the parties to such Executory Contract or Unexpired Lease, such that the Debtors will satisfy all cure amounts in accordance with section 1123(d) of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1123(d) of the Bankruptcy Code.

**F.     Section 1129(a)(2):   The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code**

97.     Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent "compl[y] with the applicable provisions of [the Bankruptcy Code]."[100]  The legislative history of section 1129(a)(2) of the Bankruptcy Code reflects that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code.[101]  As discussed in greater detail below and in Part I of the argument section of this brief, the Debtors have complied with such provisions in all respects.

1.     <u>Section 1125:  The Debtors Have Provided Stakeholders with Adequate Information</u>

98.     Section 1125(b) of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan "unless, at the time of or before such solicitation, there is transmitted to such

---

[100]   11 U.S.C. § 1129(a)(2).

[101]   *See* H.R. Rep. No. 95-595, at 412 ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as Section 1125 regarding disclosure."); *see also In re Lapworth*, No. 97-34529 (DWS), 1998 WL 767456, at *3 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2)."); *In re Worldcom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928 at *49 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that section 1129(a)(2) of the Bankruptcy Code requires plan proponents to comply with applicable provisions of the Bankruptcy Code, including "disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code").

holder the plan or a summary of the plan, and a written disclosure statement approved, after notice

and a hearing, by the court as containing adequate information."[102]  It ensures that parties in interest

have sufficient information regarding the debtor and the plan to allow them to make an informed

decision whether to approve or reject the plan.[103]

99.     As discussed in Part I, the Debtors received approval of the Solicitation Procedures

and complied with the adequacy requirements of section 1125 of the Bankruptcy Code.

### 2.     Section 1126:  The Voting Classes Have Accepted the Plan

100.     Section 1126 of the Bankruptcy Code sets forth the procedures for soliciting votes

on a chapter 11 plan and determining acceptance thereof.  Pursuant to section 1126, only holders

of allowed claims or equity interests in impaired classes of claims or equity interests that will

receive or retain property under a given plan on account of such claims or equity interests may

vote to accept or reject such plan.[104]

101.     As set forth in Part I above, the Debtors solicited acceptances of the Plan only from

the Holders of Claims in the Voting Classes (Classes 2, 3, and 4).[105]  The Debtors did not solicit

votes to accept or reject the Plan from the Holders of Claims and Interests in the Non-Voting

Classes—all of which are either (a) Unimpaired and, therefore, deemed to have accepted the Plan

pursuant to section 1126(f) of the Bankruptcy Code, or (b) receiving nothing under the Plan and,

therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

---

[102]   11 U.S.C. § 1125(b).

[103]   *See In re Cajun Elec. Power Co-op., Inc.* 150 F.3d 503,518 (5th Cir. 1998) ("adequate information" includes "information of a kind, and in sufficient detail, as far as is reasonably practicable . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan."); *see also In re Applegate Prop., Ltd.*, 133 B.R. 827, 831 (W.D. Tex. 1991) ("A court's legitimate concern under Section 1125 is assuring that hypothetical reasonable investors receive such information as will enable them to evaluate for themselves what impact the information might have on their claims and on the outcome of the case . . . .").

[104]   11 U.S.C. § 1126(a), (f), (g).

[105]   *See* Voting Certification.

US-DOCS\149446656

102.     Section 1126(c) of the Bankruptcy Code specifies that holders of an impaired class of claims must vote in favor of a plan by "at least two-thirds in amount and more than one-half in number of the allowed claims of such class" to accept the plan.[106]  As described above, the Holders of Allowed Claims in the Voting Classes voted in favor of the Plan, giving the Debtors acceptances from an Impaired Class comprising Claims against all of the Debtors.[107]  Specifically, 100% in amount and 100% in number of Class 2 Claims, 100% in amount and 100% in number of Class 3 Claims, and 100% in amount and 100% in number of Class 4 Claims that submitted Ballots were voted in favor of the Plan.[108]  Accordingly, the Debtors submit that the requirements of sections 1125 and 1126 of the Bankruptcy Code have been satisfied and, thus, the Debtors have satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.

### G.     Section 1129(a)(3):  The Debtors Have Proposed the Plan in Good Faith and Not by Any Means Forbidden by Law

103.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law."[109]  The section requires that a plan be "proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code."[110] Courts generally view the good faith requirement in light of the totality of the circumstances surrounding the establishment of the chapter 11 plan.[111]  In assessing good faith, courts should look to a chapter 11 plan itself to determine whether it seeks relief in good faith and is otherwise

---

[106]   *See* 11 U.S.C. § 1126(c).

[107]   Voting Certification.

[108]   *Id.*

[109]   11 U.S.C. § 1129(a)(3).

[110]   *Zenith Elecs.*, 241 B.R. at 107 (internal quotation marks omitted).

[111]   *In re T-H New Orleans L.P.*, 116 F.3d 790, 802 (5th Cir. 1997).

consistent with the Bankruptcy Code.[112]   Accordingly, where the plan satisfies the purposes of the Code and has a good chance of succeeding, the good faith requirement of section 1129(a)(3) of the Bankruptcy Code is satisfied.[113]   Failure to satisfy the section, on the other hand, generally requires a finding of "misconduct in the bankruptcy proceedings, such as fraudulent misrepresentations or serious nondisclosures of material facts to the court."[114]

104.    Here, the Debtors have proposed the Plan in good faith and not by any means forbidden by law.  The Plan, the Plan Supplement, and all documents necessary to effect the Plan were developed through extensive negotiations between the Debtors and other key constituents and were proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and effectuating a successful reorganization of the Debtors.  By reducing the Debtors' secured funded debt obligations from approximately $1.06 billion to approximately $555.5 million, while improving liquidity across their entire enterprise, the Plan preserves the Debtors' value as a going concern, which will, in turn, inure to the benefit of all stakeholders and position the Debtors for long-term success.[115]

105.    Moreover, the Plan is the product of extensive arm's-length negotiations among the Debtors, the Term Loan Lenders (including the Ad Hoc Group), the Prepetition ABL Lenders, the Prepetition FILO Lenders, the Additional Financing Parties, and Holders of a majority of the existing interests in Debtor JOANN Inc. as of the Petition Date, and is overwhelmingly supported by such stakeholders.[116]   Acceptance of the Plan by 100% in number and 100% in amount of

---

[112]   *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984).

[113]   *In re Century Glove, Inc.*, 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993) (citing *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985)).

[114]   *In re River Vill. Assocs.*, 161 B.R. 127, 140 (Bankr. E.D. Pa. 1993), *aff'd*, 181 B.R. 795 (E.D. Pa. 1995).

[115]   *See* Sekella Decl. ¶ 37.

[116]   *See* Sekella Decl. ¶¶ 35 and 38.

Holders of Claims in Class 2, 100% in number and 100% in amount of Holders of Claims in Class 3, and 100% in number and 100% in amount of Holders of Claims in Class 4 (representing 100% in total outstanding amount of both Class 2 and Class 3 Claims and 87.9% in total outstanding amount of Class 4 Claims) not only evidences widespread belief in the Plan's likelihood of success, but also reflects the Plan's inherent fairness and the Debtors' good-faith efforts to achieve the objectives of chapter 11.[117]  Further, all Class 5 General Unsecured Claims are Unimpaired under the Plan, and the Debtors have determined in good faith such un-impairment will minimize disruptions to their businesses, as the Holders of such Claims include vendors, suppliers and customers who are necessary to the Debtors' ability to operate successfully on a go-forward basis.[118]

106.    Finally, the Plan has "not [been proposed] by any means forbidden by law," but rather has been proposed in full compliance with the Bankruptcy Code and applicable nonbankruptcy law.  Accordingly, the Debtors respectfully submit that they have complied with section 1129(a)(3) of the Bankruptcy Code.

**H.    Section 1129(a)(4):   The Plan Provides for the Payment of Certain Administrative Costs and Expenses**

107.    Section 1129(a)(4) of the Bankruptcy Code requires that certain fees and expenses paid by the plan proponent, by the debtor, or by a person receiving distributions of property under the plan be subject to approval by the bankruptcy court as reasonable.[119]  Courts have construed this section to require that all payments of claims to professionals paid out of estate assets, such as

---

[117]   *See* Voting Certification, Ex. A.

[118]   *See* Sekella Decl. ¶ 37.

[119]   11 U.S.C. § 1129(a)(4).

US-DOCS\149446656

the Professional Fee Claims in these Chapter 11 Cases, be subject to review and approval by the court as to their reasonableness.[120]

108.    Here, all payments made or to be made by the Debtors for professional services rendered and expenses incurred during the Chapter 11 Cases (*i.e.*, all Professional Fee Claims) are subject to approval by the Court as reasonable.  In addition, Article II.A.2 of the Plan provides that all final requests for payment of Professional Fee Claims shall be filed no later than thirty (30) days after the Effective Date.  Only following entry of a Final Order whereby such Claims are Allowed, in accordance with the procedures established by the Bankruptcy Code and prior Court orders, and subject to any applicable agreements by the Retained Professionals with respect to Professional Fee Claims, will Professional Fee Claims be paid.  Accordingly, the Debtors respectfully submit that the Plan fully complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.[121]

I.    **Section 1129(a)(5):  The Debtors Have Disclosed Necessary Information Regarding Directors and Officers of the Debtors**

109.    Section 1129(a)(5)(A)(i) of the Bankruptcy Code requires that the proponent of a plan disclose the identity and affiliations of the proposed officers and directors of the reorganized debtors.[122]  Section 1129(a)(5)(B) of the Bankruptcy Code requires a plan proponent to disclose the identity of any "insider" (as defined by section 101(31) of the Bankruptcy Code) to be employed or retained by the reorganized debtor and the nature of any compensation for such insider.[123]  Additionally, the Bankruptcy Code provides that the appointment or continuance of

---

[120]    *See, e.g.*, *In re Lisanti Foods, Inc.*, 329 B.R. 491, 503 (D.N.J. 2005); *In re Worldcom, Inc.*, No. 02-13522 (AJG), 2003 WL 23861928, at *54; *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. at 760.

[121]    *See* Sekella Decl. ¶¶ 39-41.

[122]    11 U.S.C. § 1129(a)(5)(A)(i).

[123]    11 U.S.C. § 1129(a)(5)(B).

such officers and directors be consistent with the interests of creditors and equity security holders and with public policy.[124]  Article IV.M of the Plan and the Plan Supplement provide information about the Reorganized Board.  Accordingly, the Debtors respectfully submit that the Plan satisfies section 1129(a)(5) of the Bankruptcy Code, and no party has asserted otherwise.[125]

**J.      Section 1129(a)(6):  Inapplicable**

110.    Section 1129(a)(6) of the Bankruptcy Code requires that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval."[126]    No such regulatory commission has jurisdiction over the Debtors.  Accordingly, the Debtors respectfully submit that the Plan satisfies section 1129(a)(6) of the Bankruptcy Code, and no party has asserted otherwise.

**K.      Section 1129(a)(7):  The Plan Satisfies the Best Interests Test**

111.    Section 1129(a)(7) of the Bankruptcy Code requires that each individual holder of an impaired claim or equity interest has either accepted the plan or will receive or retain property having, as of the effective date of the plan, a present value of not less than what such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code at that time.[127]  This is commonly known as the "best interests" test.  The best interests test is satisfied where the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation are less

---

[124]   11 U.S.C. § 1129(a)(5)(A)(ii).

[125]   *See* Sekella Decl. ¶¶ 42-43.

[126]   11 U.S.C. § 1129(a)(6).

[127]   11 U.S.C. § 1129(a)(7).

US-DOCS\149446656

than or equal to the estimated recoveries for a holder of an impaired claim or interest under the debtor's plan or reorganization that rejects the plan.[128]

112.    As section 1129(a)(7) makes clear, the best interests test applies only to non-accepting impaired claims or equity interests.    As described more fully in the Goulding Declaration, the Debtors completed their liquidation analysis (the "***Liquidation Analysis***") after extensive due diligence, and it includes a detailed description of the assumptions, analysis, and result of a hypothetical chapter 7 liquidation of the Debtors.[129]    The Liquidation Analysis, including a complete description of the process and the results of the Liquidation Analysis, is set forth in Exhibit E to the Disclosure Statement.

113.    As illustrated by the Liquidation Analysis and the Goulding Declaration, Impaired Classes under the Plan would receive less recovery in a chapter 7 liquidation than they would receive under the Plan.    Further, no Holder of a Claim or Interest would receive or retain property under the Plan of a value that is less than such Holder would receive in a chapter 7 liquidation.    As shown below, none of these estimated chapter 7 recoveries is more than the corresponding estimated recovery set forth in the Plan.

| Class | Claim | Low Estimated Chapter 7 Recovery | High Estimated Chapter 7 Recovery | Estimated Plan Recovery |
|-------|-------|----------------------------------|-----------------------------------|-------------------------|
| 1 | Other Secured Claims | 0% | 0% | 100% |
| 2 | ABL Claims | 100% | 100% | 100% |
| 3 | FILO Claims | 29% | 89% | 100% |

---

[128]  *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *see also In re Adelphia Commc'ns Corp.*, 368 B.R. at 252 ("In determining whether the best interests standard is met, the court must measure what is to be received by rejecting creditors in the impaired classes under the plan against what would be received by them in the event of liquidation under chapter 7.").

[129]  *See* Goulding Decl. ¶¶ 21-27.

| Class | Claim | Low Estimated Chapter 7 Recovery | High Estimated Chapter 7 Recovery | Estimated Plan Recovery |
|-------|-------|------------------|-------------------|-----------------|
| 4 | Term Loan Claims | 0% | 0% | 1.1% |
| 5 | General Unsecured Claims | 0% | 0% | 100% |
| 6 | Subordinated Claims | 0% | 0% | 0% |
| 7 | Intercompany Claims | N/A | N/A | N/A |
| 8 | Intercompany Interests | N/A | N/A | N/A |
| 9 | Existing Equity Interests | 0% | 0% | 0% |

114.    As demonstrated by the Liquidation Analysis, if the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code, the value that creditors would recover would significantly diminish (except, of course, for those Classes receiving no distribution under the Plan, who would also receive no recovery in that scenario).  All Holders of Claims entitled to vote on the Plan received a copy of the Liquidation Analysis, together with the Disclosure Statement, and were provided ample time to consider the contents thereof.  Accordingly, the Debtors submit that the best interests test established under section 1129(a)(7) of the Bankruptcy Code is satisfied.[130]

**L.     Section 1129(a)(8):  Acceptance of Impaired Voting Class**

115.    Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accept a plan or not be impaired by a plan.[131]  A class of claims or interests that is not impaired under a plan is "conclusively presumed" to have accepted the plan and need not be

---

[130]  *See* Goulding Decl. ¶¶ 28-29.

[131]  *See* 11 U.S.C. § 1126(a)(8).

further examined under section 1129(a)(8) of the Bankruptcy Code.[132]  A class of claims accepts

a plan if the holders of at least two-thirds in dollar amount and more than one-half in the number

of claims in the class vote to accept the plan, counting only those claims whose holders actually

vote to accept or reject the plan.[133]  As further discussed below, if any class of claims or interests

rejects a plan, such plan must satisfy the "cramdown" requirements of section 1129(b) of the

Bankruptcy Code with respect to such claims or interests.

116.    The Holders of Claims in the Voting Classes were eligible to vote and

overwhelmingly voted in favor of the Plan.  In particular, approximately 100% in dollar amount

and 100% in number of outstanding Class 2 Claims, approximately 100% in dollar amount and

100% in number of outstanding Class 3 Claims, and approximately 100% in dollar amount and

100% in number of outstanding Class 4 Claims that submitted Ballots were voted to accept the

Plan.[134]  However, Class 5 (Subordinated Claims) and Class 8 (Existing Equity Interests) were

deemed to reject the Plan, and Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests)

were deemed to accept or reject the Plan.  The Plan therefore does not satisfy section 1129(a)(8)

of the Bankruptcy Code with respect to Classes 5 and 8, and possibly with respect to Classes 6 and

7.  Yet, the Plan is nevertheless confirmable because, as discussed below, it satisfies section

1129(b) of the Bankruptcy Code with respect to these rejecting Classes.

**M.      Section 1129(a)(9):  The Plan Provides for Payment in Full of Allowed Administrative and Priority Claims**

117.    Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be

paid in full on the effective date of a plan and that the holders of certain other priority claims

---

[132]    *See* 11 U.S.C. § 1126(f).

[133]    11 U.S.C. § 1126(c).

[134]    *See* Voting Certification, Ex. A.

receive deferred cash payments unless such holders agree to different treatment for such claims.[135] In particular, pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy Code (*i.e.*, administrative claims allowed under section 503(b) of the Bankruptcy Code) must receive on the effective date cash equal to the allowed amount of such claims.[136]  Section 1129(a)(9)(B) of the Bankruptcy Code requires that each holder of a claim of a kind specified in section 507(a)(1) or (4) through (7) of the Bankruptcy Code—generally domestic support obligations, wage, employee benefit, and deposit claims entitled to priority—must receive deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim (if such class has accepted the plan) or cash of a value equal to the allowed amount of such claim on the effective date of the plan (if such class has not accepted the plan).[137]  Finally, section 1129(a)(9)(C) of the Bankruptcy Code provides that the holder of a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code (*i.e.*, priority tax claims) must receive cash payments over a period not to exceed five years from the petition date, the present value of which equals the allowed amount of the claim.[138]

118.    The Plan satisfies section 1129(a)(9) of the Bankruptcy Code. *First*, Article II.A of the Plan provides that each Holder of an Allowed General Administrative Claim will receive an amount in Cash equal to the unpaid amount of such Allowed General Administrative Claim in accordance with the following:  (a) if such General Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter or, if not then due, when such Allowed General Administrative Claim is due or as soon as reasonably

---

[135]   11 U.S.C. § 1129(a)(9).

[136]   11 U.S.C. § 1129(a)(9)(A).

[137]   11 U.S.C. § 1129(a)(9)(B).

[138]   11 U.S.C. § 1129(a)(9)(C).

US-DOCS\149446656

practicable thereafter; (b) if such General Administrative Claim is Allowed after the Effective Date, on the date such General Administrative Claim is Allowed or as soon as reasonably practicable thereafter or, if not then due, when such Allowed General Administrative Claim is due or as soon as reasonably practicable thereafter; (c) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as the case may be; or (d) at such time and upon such terms as set forth in an order of the Court; *provided*, that Allowed General Administrative Claims that arise in the ordinary course of the Debtors' businesses during the Chapter 11 Cases shall be paid by the applicable Debtor or Reorganized Debtor in full in Cash in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice. *Second*, the Plan satisfies section 1129(a)(9)(B) of the Bankruptcy Code because no Holders of the types of Claims specified by 1129(a)(9)(B) are Impaired under the Plan. *Finally*, the Plan satisfies section 1129(a)(9)(C) of the Bankruptcy Code because Article II.C specifically provides that the Holders of Allowed Priority Tax Claims shall be paid in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. Thus, the Debtors respectfully submit that the Plan satisfies each of the requirements set forth in section 1129(a)(9) of the Bankruptcy Code, and no party has asserted otherwise.[139]

### N.    Section 1129(a)(10):  At Least One Impaired Class of Claims or Interests Has Accepted the Plan

119.    Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan, excluding acceptance by any insider.[140]  Section 1129(a)(10) of the Bankruptcy Code is an alternative

---

[139]    *See* Sekella Decl. ¶ 47.

[140]    11 U.S.C. § 1129(a)(10).

requirement to section 1129(a)(8)'s requirement that each class of claims or interests must either accept the plan or be unimpaired under the plan.

120.    As set forth above, the Debtors have met this standard because the three Voting Classes overwhelmingly voted to accept the Plan, as determined without including any acceptance of the Plan by any insider holding a Claim in that Class.[141]  Based upon the foregoing, the Debtors respectfully submit that the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code, and no party has asserted otherwise.

**O.    Section 1129(a)(11):  The Plan Is Feasible**

121.    Section 1129(a)(11) of the Bankruptcy Code requires that the bankruptcy court find that a plan is feasible as a condition precedent to confirmation.   Specifically, the court must determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.[142]

122.    To demonstrate that a plan is feasible, it is not necessary that success be guaranteed; rather, a debtor must demonstrate a reasonable assurance that consummation of the plan will not likely be followed by a further need for financial reorganization.[143]  As explained below, the Plan is feasible within the meaning of section 1129(a)(11) of the Bankruptcy Code.

123.    A court may find that a plan is feasible if "the information in the [d]isclosure [s]tatement, the [s]upporting [d]eclaration, and the evidence proffered or adduced at the

---

[141]   *See* Voting Certification, Ex. A.

[142]   11 U.S.C. § 1129(a)(11).

[143]   *See U.S. v. Energy Res. Co., Inc.*, 495 U.S. 545, 549 (1990); *In re Kaplan*, 104 F.3d 589, 597 (3d Cir. 1997); *In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985) ("the feasibility test contemplates 'the probability of actual performance of the provisions of the plan. . . . The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts.'") (quoting *In re Bergman*, 585 F.2d 1171, 1179 (2d Cir. 1978)).

Confirmation Hearing (i) is persuasive and credible, (ii) has not be controverted by other evidence, and (iii) establishes that the…[p]lan is feasible and that there is a reasonable prospect of the [r]eorganized [d]ebtors" being able to meet their financial obligations.[144]

124.    As set forth in Article VII.B.1.c of the Disclosure Statement and in the Goulding Declaration, the Debtors thoroughly analyzed their post-confirmation ability to meet their obligations under the Plan and continue as a going concern without the need for further financial restructuring.[145]  To conduct this analysis, the Debtors prepared the Financial Projections attached as Exhibit C to the Disclosure Statement, projecting the consolidated financial position of the Debtors for the fiscal years ending January 2025 through January 2029 (the "***Projection Period***").[146]

125.    The Financial Projections and the Goulding Declaration demonstrate that, upon emergence, the Debtors will possess sufficient liquidity to meet the necessary distributions required under the Plan and to sustain viable business operations going forward.[147]  This is facilitated by the Plan's provision for a significant reduction in debt and interest expense, including through conversion of the Term Loan Claims into and payment of certain fees under the DIP-to-Exit Facility using New Equity Interests.[148]

126.    The Reorganized Debtors are anticipated to have sufficient operating cash to pay interest and scheduled amortization on all of their outstanding indebtedness and to fund capital expenditures and pay other expenses relating to ongoing business operations as contemplated

---

[144] *In re Elec. Components Int'l, Inc.*, No. 10-11054 (KJC), 2010 WL 3350305, at *9 (Bankr. D. Del. May 11, 2010).

[145] *See* Goulding Decl. ¶¶ 17-19.

[146] *Id.*

[147] *Id.* ¶ 18.

[148] *See* Plan Arts. II.B and III.B.4.

US-DOCS\149446656

through the Projection Period.[149]  Accordingly, confirmation of the Plan will not likely be followed by liquidation or the need for further financial reorganization of the Debtors and, therefore, the Debtors respectfully submit that the Plan is feasible and satisfies section 1129(a)(11) of the Bankruptcy Code.

P.      **Section 1129(a)(12):  The Plan Provides for Full Payment of Statutory Fees**

127.    Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under Section 1930 [of title 28 of the United States Code], as determined by the court at the hearing on confirmation of the plan."[150]  Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses.[151]  In accordance with these provisions, Articles II.E and XII.C of the Plan provide that all United States Trustee Statutory Fees (*i.e.*, fees payable pursuant to section 1930(a)(6) of title 28 of the United States Code) shall be paid.  All such fees due and payable before the Effective Date shall be paid by the Debtors on the Effective Date.  All such fees payable after the Effective Date shall be paid when due and payable for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.  Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

Q.      **Sections 1129(a)(13) Through 1129(a)(16):  Inapplicable**

128.    Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code.[152]  To the Debtors'

---

[149]   *See* Goulding Decl. ¶ 18.

[150]   11 U.S.C. § 1129(a)(12); *see also* 28 U.S.C. § 1930.

[151]   11 U.S.C. § 507(a)(1).

[152]   11 U.S.C. § 1129(a)(13).

knowledge and belief, they do not have any retiree benefit obligations of the sort described in section 1114 of the Bankruptcy Code.  However, out of an abundance of caution, Claims for costs and expenses of administration of the Chapter 11 Cases pursuant to section 1114(e)(2) of the Bankruptcy Code are included in the definition of Administrative Expenses, which are required to be paid under Article II.A.1 of the Plan.  Accordingly, the Debtors respectfully submit that the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code, to the extent applicable, and no party has asserted otherwise.[153]

129.    Section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support obligations.    The Debtors are not subject to any domestic support obligations.  Accordingly, the Debtors respectfully submit that this section of the Bankruptcy Code does not apply.

9.    Section 1129(a)(15) applies only in cases in which the debtor is an "individual" (as that term is defined in the Bankruptcy Code).  None of the Debtors is an individual.  Accordingly, the Debtors respectfully submit that this section of the Bankruptcy Code does not apply.

130.    Finally, Section 1129(a)(16) of the Bankruptcy Code provides that property transfers by a corporation or trust that is not a moneyed, business, or commercial corporation or trust be made in accordance with applicable provisions of non-bankruptcy law.  The Debtors are moneyed, business, or commercial corporations.  Accordingly, the Debtors respectfully submit that this section of the Bankruptcy Code does not apply.

### R.    Section 1129(b):  The Plan Satisfies the "Cramdown" Requirements

131.    Section 1129(b) of the Bankruptcy Code provides a mechanism for confirmation of a plan in circumstances where the plan is not accepted by all impaired classes of claims and equity

---

[153]    *See* Sekella Decl. ¶ 52.

interests.  This mechanism is known colloquially as "cram down."  Section 1129(b) provides in

pertinent part:

> [I]f all of the applicable requirements of [section 1129(a) of the Bankruptcy Code] other than [the requirement contained in section 1129(a)(8) that a plan must be accepted by all impaired classes] are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.[154]

132.    Thus, under section 1129(b) of the Bankruptcy Code, the Court may "cram down"

a plan over rejection by impaired classes of claims or equity interests as long as the plan does not

"discriminate unfairly" and is "fair and equitable" with respect to such classes.[155]

133.    Claims and Interests in Class 6 (Subordinated Claims) and Class 9 (Existing Equity

Interests) are Impaired under the Plan, and the Holders of such Claims and Interests have been

deemed to reject the Plan.  Additionally, Claims and Interests in Class 7 and Class 8 may be

Impaired, and the Holders of such Claims and Interests may be deemed to reject the Plan.  The

Debtors, however, respectfully submit that the Plan may nonetheless be confirmed over the

deemed rejection by such Classes pursuant to section 1129(b) of the Bankruptcy Code, because

the Plan does not discriminate unfairly and is fair and equitable with respect to all non-accepting

Impaired Classes.  Moreover, the Voting Classes voted in favor of the Plan, meaning the unfair

discrimination and fair and equitable analysis is inapplicable to such Classes (though the Plan

nonetheless would satisfy those requirements as to the Voting Classes if they were applicable).

---

[154]   11 U.S.C. § 1129(b)(1).

[155]   *See id.*; *John Hancock Mut. Life*, 987 F.2d at 157 n.5 ("Under [section 1129(b) of the Bankruptcy Code], the plan must also satisfy all of the requirements of [section 1129(a) of the Bankruptcy Code] except for subsection (a)(8) . . . and must not 'discriminate unfairly' against and must be 'fair and equitable' with respect to all impaired classes that do not approve the plan.").

1.     The Plan Does Not Discriminate Unfairly

134.    The Plan does not discriminate unfairly with respect to Impaired Classes that were

deemed to have rejected the Plan.   The Bankruptcy Code does not provide a standard for

determining when "unfair discrimination" exists.[156]  Rather, courts typically examine the facts and

circumstances of the particular case to determine whether unfair discrimination exists.[157]   At a

minimum, however, the unfair discrimination standard prevents creditors and interest holders with

similar legal rights from receiving materially different treatment under a proposed plan without

compelling justifications for doing so.[158]   In other words, section 1129(b)(1) of the Bankruptcy

Code does not prohibit discrimination between classes; it prohibits only discrimination that is

unfair.[159]  Accordingly, between two classes of claims or two classes of interests, there is no unfair

discrimination if (a) the claims or interests in each such class are dissimilar from those in the other

class,[160] or (b) taking into account the particular facts and circumstances of the case, there is a

reasonable basis for disparate treatment of otherwise similar claims or interests.[161]

135.    Here, the Plan's treatment of the Impaired Classes that have been deemed to reject

the Plan is proper because (a) all similarly situated Claims and Interests will receive substantially

---

[156]  *See In re 203 N. LaSalle St. Ltd. P'ship.*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established"), *rev'd on other grounds sub nom. Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999).

[157]  *See In re Bowles*, 48 B.R. 502, 507 (Bankr. E.D. Va. 1985) (explaining that "whether or not a particular plan does [unfairly] discriminate is to be determined on a case-by-case basis"); *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (finding that determination of unfair discrimination requires court to "consider all aspects of the case and the totality of all the circumstances").

[158]  *See In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 654-55 (9th Cir. 1997); *In re Aztec Co.*, 107 B.R. 585, 589-91 (Bankr. M.D. Tenn. 1989); *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986).

[159]  *In re 11,111, Inc.*, 117 B.R. 471, 478 (Bankr. D. Minn. 1990).

[160]  *See, e.g.*, *Johns-Manville Corp.*, 68 B.R. at 636.

[161]  *See, e.g.*, *In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990); *In re Rivera Echevarria*, 129 B.R. 11, 13 (Bankr. D.P.R. 1991).

similar treatment, (b) there is a reasonable basis for those Claims and Interests being classified separately from other Claims and Interests that remain Unimpaired, and (c) the Plan's classification scheme rests on a legally acceptable rationale.

136.    Claims and Interests in deemed rejecting Classes are not similarly situated to any other Classes, given their distinctly different legal character from all other Claims and Interests. The Plan does not discriminate unfairly against Class 6 (Subordinated Claims) or Class 9 (Existing Equity Interests) because there is no other class of Claims or Interests similarly situated to the Claims or Interests in Classes 6 or 9, respectively.

137.    Similarly, Claims and Interests in Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests) are entirely unique from any other Class of Claims or Interests and, therefore, appropriately placed in their own Classes.   The Debtors separately classified (a) Intercompany Claims from other Claims and (b) Intercompany Interests from other Interests to preserve the option to (x) reinstate or (y) set off, settle, distribute, contribute, merge, cancel, or release such Claims and Interests, respectively.   Such treatment allows the Debtors greater flexibility to determine whether it is more efficient to maintain their organizational structure and certain entity relationships when they are implementing the Restructuring Transactions rather than prior thereto.   Significantly, the optionality does not affect any stakeholders' recovery under the Plan and is intended for only administrative convenience in the restructuring process.

138.    Finally, Class 6 (Subordinated Claims) consists solely of Claims that may be subordinated pursuant to sections 509(c), 510(b), or 510(c) of the Bankruptcy Code.

139.    A higher recovery for the Holders of Claims in Class 5 (General Unsecured Claims) as compared to other unsecured Claims, to the extent there are any, is necessary in order for the Debtors to successfully reorganize.   The majority of the Holders of General Unsecured Claims are

US-DOCS\149446656

vendors, service providers, and customers that will have an ongoing relationship with the Reorganized Debtors. By leaving General Unsecured Claims Unimpaired, the Debtors are able to ensure payment for creditors that are crucial to the Reorganized Debtors' long-term success. Moreover, the payment in full of General Unsecured Claims is the result of an agreement by the Debtors and the Consenting Stakeholders to facilitate a prompt and smooth exit from chapter 11 and ensure a bright future for the Reorganized Debtors. Courts have held that there is no unfair discrimination where the variance in treatment is the result of an allocation of a secured creditor's collateral that would otherwise be absent from the pool of assets funding unsecured creditor recoveries.[162]

140.   Accordingly, because the Plan does not discriminate unfairly with respect to Classes that have been or may be deemed to reject the Plan, the Debtors respectfully submit that the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.

2.   The Plan Is Fair and Equitable

141.   Sections 1129(b)(2)(B)(ii) and (b)(2)(C)(ii) of the Bankruptcy Code provide that a plan is fair and equitable with respect to a class of impaired unsecured claims or interests if, under the plan, no holder of any junior claim or interest will receive or retain property under the plan on account of such junior claim or interest.[163] Generally, this requires that an impaired rejecting class of claims or interests either be paid in full or that a class junior to the impaired rejecting class not

---

[162]   *See, e.g., In re Nuverra Env't Sols., Inc.*, 590 B.R. 75, 91 (D. Del. 2018) (finding that plan distributions to unsecured creditors out of "gift" of the secured creditors collateral, resulting in differential distributions, did not amount to unfair discrimination); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 611 (Bankr. D. Del. 2001). In *Nuverra*, Judge Carey specifically noted that the "Third Circuit has allowed for the confirmation of [a] plan that enables secured creditors to gift distributions to unsecured creditors" and that "a number of courts have confirmed such plans finding that such sharing arrangements do not violate the prohibition against unfair discrimination." *See In re Nuverra Env't Sols., Inc.*, No. 17-10949 (KJC) (Bankr. D. Del. July 24, 2017) Hr'g Tr. 9:12-21 [Docket No. 363].

[163]   *See* 11 U.S.C. § 1129(b)(2)(B)(ii), (C)(ii).

receive any distribution under a plan on account of its junior claim or interest.[164]  Additionally, in order for a plan to be "fair and equitable," no creditor may be paid more than what it is owed (*i.e.*, no class of creditors may receive more than 100% of its claims).[165]

142.    With respect to the Classes that are deemed to reject the Plan (*i.e.*, Classes 6 and 9, and potentially Classes 7 and 8), no Claim or Interest junior to such Classes will receive a recovery under the Plan on account of such Claim or Interest.  Accordingly, the Plan is "fair and equitable" and, therefore, consistent with the requirements of section 1129(b) of the Bankruptcy Code.

**S.    Section 1129(c):  The Plan Is the Only Plan Currently on File**

143.    Section 1129(c) of the Bankruptcy Code provides, as applicable, that a bankruptcy court may only confirm one plan.  Here, the Plan is the only plan currently on file in the Chapter 11 Cases and, accordingly, section 1129(c) of the Bankruptcy Code permits confirmation of the Plan.

**T.    Section 1129(d):  The Purpose of the Plan Is Not the Avoidance of Taxes or the Avoidance of Securities Laws**

144.    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of Section 5 of the Securities Act, and no party has objected on any such grounds.  Article II.C of the Plan contemplates the payment of all Allowed Priority Tax Claims.  Moreover, no Governmental Unit or any other party has requested that the Court decline to confirm the Plan on such grounds.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.[166]

---

[164]    See 203 N. LaSalle P'ship, 526 U.S. at 459.

[165]    *See* 7 Collier on Bankruptcy ¶1129.03[4][a]; *see also In re Granite Broad. Corp.*, 369 B.R. 120, 140 (Bankr. S.D.N.Y. 2007) ("There is no dispute that a class of creditors cannot receive more than full consideration for its claims, and that excess value must be allocated to junior classes of debt or equity, as the case may be."); *In re Exide Techs.*, 303 B.R. 48, 61 (Bankr. D. Del. 2003) ("[A] corollary of the absolute priority rule is that a senior class cannot receive more than full compensation for its claims." (citation omitted)).

[166]    *See* Sekella Decl. ¶ 62.

U.      **Section 1129(e):  Inapplicable**

145.    The provisions of section 1129(e) of the Bankruptcy Code apply only to "small business cases" as defined therein.  The Chapter 11 Cases are not "small business cases." Accordingly, the Debtors respectfully submit that section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases, and no party has asserted otherwise.

V.      **The Modifications to the Plan Do Not Require Resolicitation and Should Be Approved**

146.    Section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation as long as such modified plan meets the requirements of sections 1122 and 1123 of the Bankruptcy Code.[167]  Further, section 1127(a) of the Bankruptcy Code provides that when the proponent of a plan files the plan with modifications with the court, the plan as modified becomes the plan.[168]  Bankruptcy Rule 3019 provides that modifications after a plan has been accepted will be deemed accepted by all creditors and equity security holders who have previously accepted the plan if the court finds that the proposed modifications do not adversely affect the treatment of the claim of any creditor or the interest of any equity security holder.[169]  Courts interpreting Bankruptcy Rule 3019 have consistently held that a proposed modification to a previously accepted plan will be deemed accepted where the proposed modification is not material or does not adversely affect the way creditors and stakeholders are treated.[170]

---

[167]  11 U.S.C. § 1127(a).

[168]  *Id.*

[169]  Fed. R. Bankr. P. 3019.

[170]  *See, e.g., In re Gen. Wireless Operations Inc.*, No. 17-10506 (BLS), 2017 WL 5461361, at *4 (Bankr. D. Del. Oct. 26, 2017) (finding that additional disclosure was not required where modifications did not "materially and adversely change the treatment of any Claims or Interests"); *see also In re Am. Solar King Corp.*, 90 B.R. 808, 823 (Bankr. W.D. Tex. 1988); *In re Nat'l Truck Funding LLC*, 588 B.R. 175, 178 (Bankr. S.D. Miss. 2018) ("The disclosure requirements under § 1125 apply to a modified plan only if the modification is material.").

-71-

147.    The Debtors filed the Amended Plan on April 23, 2024, to address certain, largely technical points raised by the United States Trustee and to incorporate comments from various constituents, including certain landlords, taxing authorities, and vendors.  The modifications to the Solicitation Plan are not material changes.   Rather, they are either modifications to resolve comments to the Solicitation Plan or technical modifications to the Solicitation Plan, which have not resulted in material differences to the recoveries of each affected Class—*i.e.*, no Holder of a Claim in the Voting Classes is "likely" to reconsider its acceptance.

148.    As indicated above, all modifications to the Solicitation Plan were non-material. Indeed, all of the Holders of Claims in the Voting Classes are receiving the same recovery under the Amended Plan.  Moreover, counsel to each of the Prepetition Agents, the Ad Hoc Group, and the DIP Agent had the opportunity to review and comment on the Amended Plan before it was filed.  Therefore, the modifications have been consented to after negotiations among sophisticated consenting parties and comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.   Accordingly, the Debtors submit that no additional solicitation or disclosure is required on account of the modifications, and that such modifications should be deemed accepted by all creditors that previously accepted the Solicitation Plan.

## III.    GOOD CAUSE EXISTS TO WAIVE THE STAY OF THE PROPOSED COMBINED ORDER

149.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the Court orders otherwise."[171] Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory

---

[171]    Fed. R. Bankr. P. 3020(e).

US-DOCS\149446656

contract or unexpired lease under section 365(f) of the Bankruptcy Code.[172]  Each rule also permits modification of the imposed stay upon court order.[173]

150.    The Debtors submit that good cause exists for waiving and eliminating any stay of the effectiveness of the Proposed Combined Order pursuant to Bankruptcy Rules 3020, 6004, and 6006 so that the Proposed Combined Order will be effective immediately upon its entry.[174]  The Restructuring Transactions contemplated by the Plan were vigorously negotiated among sophisticated parties, and the Plan has been overwhelmingly accepted by the Voting Classes. Further, each day the Debtors remain in chapter 11, they incur significant administrative and professional costs—expenses that are unnecessary in light of the overwhelming support for the Plan.  Accordingly, the Debtors request a waiver of any stay imposed by the Bankruptcy Rules so that the Proposed Combined Order may become effective immediately upon its entry.

## CONCLUSION

151.    For all of the reasons set forth herein and in the Confirmation Declarations, the Debtors respectfully submit that the Disclosure Statement and the Plan comply with all of the applicable requirements of the Bankruptcy Code and, therefore, request that this Court approve the Disclosure Statement and confirm the Plan by entering the Proposed Combined Order, and granting such other and further relief as the Court may deem just and proper.

---

[172]  Fed. R. Bankr. P. 6004(h), 6006(d).

[173]  *Id.*

[174]  *See, e.g.*, *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Sept. 30, 2022) (waiving stay of confirmation order and causing it to be effective and enforceable immediately upon its entry by the court); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 18, 2021) (waiving stay of confirmation order and causing it to be effective and enforceable immediately upon its entry by the court); *In re APC Auto. Techs. Intermediate Holdings, LLC*, No. 20-11466 (CSS) (Bankr. D. Del. July 10, 2020) (same); *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. May. 22, 2020) (same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Jan. 22, 2020) (same).  Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion.  Copies of these orders are available upon request to the Debtors' counsel.

*[Remainder of page intentionally left blank.]*

US-DOCS\149446656

Dated: April 23, 2024

*/s/ Shane M. Reil*

**YOUNG CONAWAY STARGATT**
**& TAYLOR, LLP**
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Shane M. Reil (No. 6195)
Rebecca L. Lamb (No. 7223)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600
Email:  mnestor@ycst.com
        kcoyle@ycst.com
        sreil@ycst.com
        rlamb@ycst.com

**LATHAM & WATKINS LLP**

George A. Davis (admitted *pro hac vice*)
Alexandra M. Zablocki (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
        alexandra.zablocki@lw.com

Ted A. Dillman (admitted *pro hac vice*)
Nicholas J. Messana (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone:  (213) 485-1234
Email:  ted.dillman@lw.com
        nicholas.messana@lw.com

Ebba Gebisa (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 27017
Telephone:  (312) 876-7700
Email:  ebba.gebisa@lw.com

*Counsel for Debtors and Debtors-in-Possession*

-75-

**Exhibit A**

**Objection Chart[1]**

The chart contained in this Exhibit summarizes all formal objections raised in connection with the Combined Hearing and the Debtors' responses to such objections.  All of the objections are resolved as set forth below.

---

[1]    Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to such terms in the Memorandum.  For the avoidance of doubt, the Debtors reserve the right to respond to any and all objections, whether or not argued in the Memorandum or listed in this summary chart.

76

| | | | |
|---|---|---|---|
| **Formal Objections** | | | |
| | **Party** | **Objection** | **Response/Status** |
| 1. | Oracle America, Inc. ("***Oracle***") [Docket No. 271] | Oracle objects to the Debtors' assumption of Oracle's contracts on the basis that:<br><br>1. the contracts may not be assumed absent Oracle's consent because they pertain to licenses of intellectual property;<br><br>2. there are outstanding amounts that must be cured; and<br><br>3. the Debtors must first provide adequate assurance of future performance. | **OBJECTION RESOLVED**<br><br>The objection has been resolved by:<br><br>1. the Debtors agreeing to promptly pay the undisputed portion of the amounts alleged to be outstanding under the Oracle contracts and to work with Oracle in good faith to reconcile the remaining amounts; and<br><br>2. through the inclusion of certain language in the Combined Order, including paragraph 57. |
| 2. | JJD-HOV Elk Grove, LLC ("***Elk Grove***") [Docket No. 274] | Elk Grove objects to the Debtors' assumption of Elk Grove's lease on the basis that:<br><br>1. there are outstanding amounts that must be cured; and<br><br>2. to the extent the Plan purports to impair Elk Grove's rights in respect of state court litigation pending with the Debtors. | **OBJECTION RESOLVED**<br><br>The objection has been resolved through the inclusion of certain language in the Combined Order, including paragraph 57. |
| 3. | Square One Partners, LLC ("***Square One***") [Docket No. 276] | Square One objects to the Debtors' assumption of Square One's lease on the basis that:<br><br>1. there are outstanding amounts that must be cured; and<br><br>2. the Debtors must first provide adequate assurance of future performance. | **OBJECTION RESOLVED**<br><br>The objection has been resolved through the inclusion of certain language in the Combined Order, including paragraph 57. |
| 4. | CRI Easton Square LLC ("***Easton Square***"), Taylor Square Owner LLC ("***Taylor Square***"), and | Easton Square, Taylor Square, and Arbor Square object to the Debtors' assumption of such parties' leases on the basis that: | **OBJECTION RESOLVED**<br><br>The objection has been resolved by: |

US-DOCS\149446656

| Formal Objections | | |
|---|---|---|
| | **Party** | **Objection** | **Response/Status** |

| | **Party** | **Objection** | **Response/Status** |
|---|---|---|---|
| | Abor Square II LLC ("***Arbor Square***") [Docket No. 277] | 1. there are outstanding amounts that must be cured; and<br><br>2. the Plan does not adequately address the determination of cure amounts. | 1. the Debtors agreeing to promptly pay the undisputed portion of the amounts alleged to be outstanding under the Easton Square and Taylor Square leases and to work with such parties in good faith to reconcile the remaining amounts; and<br><br>2. through the inclusion of certain language in the Combined Order, including paragraphs 54, 56, 57, and 58. |
| 5. | Bayshore Village (US), Inc. ("***Bayshore***") [Docket No. 278] | Bayshore objects to the Debtors' assumption of Bayshore's lease on the basis that:<br><br>1. there are outstanding amounts that must be cured; and<br><br>2. the Debtors must first provide adequate assurance of future performance. | **OBJECTION RESOLVED**<br><br>The objection has been resolved through the inclusion of certain language in the Combined Order, including paragraph 57. |