## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
                                                             :
In re:                                                       :    Chapter 11
                                                             :
JOANN INC., et al.,                                          :    Case No. 24-10418 (CTG)
                                                             :
            Debtors. [1]                                     :    (Jointly Administered)
                                                             :
------------------------------------------------------------ x
```

## ORDER (I) APPROVING THE DISCLOSURE STATEMENT AND (II) CONFIRMING THE FIRST AMENDED PREPACKAGED JOINT PLAN OF REORGANIZATION OF JOANN INC. AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***")

having:[2]

    i.       caused, on or about March 16, 2024 (and from time to time thereafter), the distribution of the following solicitation materials (the "***Solicitation Materials***") to each Holder (each, a "***Voting Creditor***") of a Claim in the Classes that were entitled to vote on the Plan (*i.e.*, Classes 2, 3, and 4): (a) the *Prepackaged Joint Plan of Reorganization of Joann Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 15] (together with all exhibits and supplements thereto, and as may be amended, modified, or supplemented from time to time, the "***Plan***"); (b) the *Disclosure Statement for Prepackaged Joint Plan of Reorganization of Joann Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* with all exhibits thereto [Docket No. 16] (together with all exhibits and supplements thereto, and as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"); and (c) ballots (including instructions for manual and electronic voting) to be submitted by the Voting Creditors in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***"), the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and the Local Rules of Bankruptcy Practice and

---

[1]    The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, OH 44236.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan (as defined below).

Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***");

ii.        commenced, on March 18, 2024 (the "***Petition Date***"), these chapter 11 cases (collectively, the "***Chapter 11 Cases***") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***") for relief under the Bankruptcy Code;

iii.      filed, on the Petition Date: (a) the *Motion of Debtors for Entry of Order (I) Scheduling Combined Hearing to Consider (A) Approval of Disclosure Statement, (B) Approval of Solicitation Procedures and Forms of Ballots, and (C) Confirmation of Plan; (II) Establishing an Objection Deadline to Object to Disclosure Statement and Plan; (III) Approving the Form and Manner of Notice of Combined Hearing, Objection Deadline, and Notice of Commencement; (IV) Approving Notice and Objection Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; (V) Conditionally Waiving Requirement of Filing Schedules of Assets and Liabilities, Statements of Financial Affairs, and 2015.3 Reports; (VI) Conditionally Waiving Requirement to Convene the Section 341 Meeting of Creditors; and (VII) Granting Related Relief* [Docket No. 17] (the "***Solicitation Procedures Motion***"); (b) the Plan; and (c) the Disclosure Statement;

iv.      obtained, on March 19, 2024, entry by the Bankruptcy Court of the order approving the relief sought in the Solicitation Procedures Motion [Docket No. 103] (the "***Solicitation Procedures Order***"), which, among other things, (a) conditionally approved the Disclosure Statement as containing "adequate information" as defined in section 1125 of the Bankruptcy Code, (b) conditionally approved procedures for soliciting and tabulating votes on the Plan; (c) approved or conditionally approved the form and manner of distribution of the Solicitation Materials and other notices, (d) scheduled a hearing to consider approval of the Disclosure Statement and Confirmation of the Plan (the "***Combined Hearing***"), (e) extended the deadline for the Debtors to file the Schedules and Statements and the 2015.3 Reports (each as defined in the Solicitation Procedures Order) through and including May 25, 2024, and conditionally waived such filing requirements if the Plan is confirmed by such date, and (f) conditionally waived the requirement to convene the Section 341 Meeting (as defined in the Solicitation Procedures Order);

v.        caused, on March 20, 2024, and from time to time thereafter, the distribution of the notice of non-voting status (the "***Notice of Non-Voting Status***"), and the form and manner of the release opt-out form (the "***Unimpaired Holder Opt-Out Form***") to parties in interest that held Unimpaired Claims and were not entitled to vote on the Plan, and the distribution of the *Notice of (I) Commencement of Chapter 11 Cases, (II) Combined Hearing on Disclosure Statement, Prepackaged Joint Chapter 11 Plan, and Related Matters, (III) Objection Deadlines, (IV) and Summary of Prepackaged Joint Chapter 11 Plan* (the "***Combined Notice***"), which provided a summary of the Plan, to parties in interest;

2

vi.     caused the publication of the Combined Notice in the national editions of *The Wall Street Journal,* on March 22, 2024,  and *The Plain Dealer*, on March 27, 2024, as evidenced by the *Certificate of Publication* [Docket No. 171] filed on March 29, 2024;

vii.    caused, (a) on April 5, 2024, the filing of the *Affidavit of Service of Solicitation Materials* [Docket No. 182], which evidenced the distribution of the Solicitation Materials to the Voting Creditors, and (b) on April 22, 2024, the filing of the *Affidavit of Service* [Docket No. 285], which evidenced the distribution of the Notice of Non-Voting Status, the Unimpaired Holder Opt-Out Form, and the Combined Notice to the applicable parties in interest;

viii.   timely and properly filed and served, (a) on April 11, 2024, the notices of filing of plan supplement documents [Docket Nos. 213 & 214] and (b) on April 23, 2024, the notices of filing of amended plan supplement documents [Docket Nos. 289 & 290] (such documents, collectively, as may be amended, modified, or supplemented from time to time in accordance with the Plan and this Combined Order, the "***Plan Supplement***");

ix.     caused, on April 16, 2024, the filing of the *Declaration of Alex Orchowski of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Prepackaged Joint Plan of Reorganization of Joann Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 254] (the "***Voting Report***"), which detailed the results of the Plan voting process;

x.      filed, on April 23, 2024, the first amended version of the Plan [Docket No. 288];

xi.     filed, on April 23, 2024, the (a) *Memorandum of Law in Support of (I) Approval of Debtors' Disclosure Statement and (II) Confirmation of First Amended Prepackaged Joint Plan of Reorganization of Joann Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (the "***Memorandum***"), (b) *Declaration of Scott Sekella, Chief Financial Officer and Executive Vice President, in Support of Confirmation of the First Amended Prepackaged Joint Plan of Reorganization of Joann Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 291] (the "***Sekella Declaration***"), and (c) *Declaration of Jonathan Goulding in Support of Confirmation of the First Amended Prepackaged Joint Plan of Reorganization of Joann Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (the "***Goulding Declaration***") and, together with the Sekella Declaration, the "***Confirmation Declarations***," which shall also include all previously filed affidavits and declarations); and

xii.    operated their businesses and managed their properties during the Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

US-DOCS\149454922.13

The Bankruptcy Court having:

a.    set April 25, 2024, at 2:00 p.m. (prevailing Eastern Time), as the date and time for the commencement of the Combined Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

b.    reviewed the solicitation procedures set forth in the Solicitation Procedures Order regarding votes to accept or reject the Plan (the "***Solicitation Procedures***");

c.    reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Memorandum, the Confirmation Declarations, the Voting Report, and all other filed pleadings, exhibits, statements, affidavits, declarations, and comments regarding confirmation of the Plan ("***Confirmation***"), including all objections, statements, and reservations of rights made with respect thereto;

d.    reviewed the discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Article IX of the Plan;

e.    held the Combined Hearing and heard the statements, arguments, and objections made by counsel in respect of Confirmation;

f.    overruled any and all objections to the Plan and Confirmation thereof and any and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

g.    taken judicial notice of the papers and pleadings filed, all orders entered, and all evidence proffered, presented, or adduced and all arguments presented at hearings in these Chapter 11 Cases.

**NOW, THEREFORE**, the Bankruptcy Court having found that notice of the Combined Hearing and the opportunity for any party in interest to object to Confirmation has been adequate and appropriate, in accordance with Bankruptcy Rules 2002(b) and 3017(d), Rules 2002-1 and 3017-2 of the Local Rules, as to all parties; and the record of the Chapter 11 Cases established through the testimony set forth at the Combined Hearing, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Combined Hearing including, but not limited to, the Memorandum, the Voting Report, and each of the Confirmation Declarations, each of which was admitted into evidence at the Combined Hearing, establish just cause for the relief granted in this order (this "***Combined Order***"); and after due deliberation

4

thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law, and order:

**IT IS DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT**:

I.    **Findings and Conclusions**

1.    The findings and conclusions set forth herein and on the record of the Combined Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent that any of the following findings of fact constitute conclusions of law, or vice versa, they are adopted as such.

II.    **Jurisdiction, Core Proceeding, and Venue**

2.    The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Bankruptcy Court may enter a final order in connection with this proceeding consistent with Article III of the United States Constitution.  The Debtors were and are qualified to be debtors in chapter 11 cases under sections 109(a) and (d) of the Bankruptcy Code and are proper plan proponents under section 109 of the Bankruptcy Code. Venue in the District of Delaware of the Chapter 11 Cases was proper as of the Petition Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409.

III.    **Burden of Proof**

3.    The Debtors, as proponents of the Plan, have met their burden of proving that the Plan complies with each element of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence.

US-DOCS\149454922.13

**IV.** **Notice of the Combined Hearing**

4.      Notice of the Combined Hearing was appropriate and satisfactory and is approved in all respects.

**V.** **Combined Hearing on the Disclosure Statement and Plan Confirmation**

5.      The fact that the Plan provides that all Allowed General Unsecured Claims are unimpaired under section 1124 of the Bankruptcy Code, that there is overwhelming support from the Holders of Claims in the voting Classes that cast Ballots (as defined in the Solicitation Procedures Order) on the Plan, and that the Debtors need to maintain customer relationships and will benefit from emerging from chapter 11 as expeditiously as possible, among other reasons, provides a basis for holding, and it was appropriate to hold, a Combined Hearing on the Debtors' request for approval of the Disclosure Statement and Confirmation under sections 105(d)(2)(B)(vi) and 1125(g) of the Bankruptcy Code and Bankruptcy Rule 3018(b).

**VI.** **Voting**

6.      As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Procedures Order, and applicable non-bankruptcy law.  As set forth in the Voting Report, of the Voting Creditors that submitted Ballots, 100% in number of Holders of Class 2 (ABL Claims) holding 100% in amount of ABL Claims, 100% in number of Holders of Class 3 (FILO Claims) holding 100% in amount of FILO Claims, and 100% in number of Holders of Class 4 (Term Loan Claims) holding 100% in amount of Term Loan Claims that submitted ballots voted to accept the Plan.

**VII.** **Approval of the Disclosure Statement**

7.      The Disclosure Statement is approved in all respects as containing adequate information under section 1125 of the Bankruptcy Code and complying with applicable

non-bankruptcy law under section 1125(g) of the Bankruptcy Code, and the solicitation of Ballots on the Plan and the distribution of Notices of Non-Voting Status, in addition to the other forms annexed as exhibits to the Solicitation Procedures Order, also comply with applicable non-bankruptcy law.  The materials used to solicit votes to accept or reject the Plan, the Ballots and associated voting instructions (including the terms and conditions therein), the Notices of Non-Voting Status, the Unimpaired Holder Opt-Out Form, and the Solicitation Procedures used for the tabulation of votes to accept or reject the Plan are hereby approved on a final basis.

8.     The Disclosure Statement (including all applicable exhibits thereto and the notices provided for therein) provided Holders of Claims and Interests with sufficient notice of the releases, exculpatory provisions, and injunctions set forth in Article IX of the Plan in satisfaction of the requirements of Bankruptcy Rule 3016(c).

9.     Any and all objections (if any) to approval of the Disclosure Statement that have not been withdrawn or resolved before the Combined Hearing are hereby overruled.

**VIII.  Confirmation of the Plan**

10.     The requirements for Confirmation set forth in sections 1129(a) and 1129(b) of the Bankruptcy Code, which include by reference sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, have been satisfied.  The Plan, a copy of which is attached as **Exhibit A** to this Combined Order, along with each of its provisions (whether or not specifically approved herein) and all operative exhibits and schedules thereto, as may be modified by this Combined Order, is confirmed pursuant to section 1129 of the Bankruptcy Code.  The terms of the Plan, the documents contained in the Plan Supplement, and any other documents filed in connection with the Plan and/or executed or to be executed to effectuate, implement, or consummate the transactions contemplated by the Plan (including the Restructuring Transactions), and all amendments and modifications thereof

7

made in accordance with the Plan and this Combined Order, are hereby approved by this Combined Order.

11.     The Plan Supplement complies and is consistent with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents were good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Procedures Order, and the facts and circumstances of the Chapter 11 Cases.  No other or further notice is or will be required with respect to the Plan Supplement.  The documents contained in the Plan Supplement are integral to the Plan and are approved by the Bankruptcy Court.  All Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified and supplemented by the Plan Supplement. The Debtors and the Reorganized Debtors (as applicable) are authorized to take all actions required under the Plan and the Plan Supplement documents to effectuate the Plan and the Restructuring Transactions, including, for the avoidance of doubt, the issuance, delivery, and registration, as applicable, of the New Equity Interests.  Subject to the terms of the Plan, the Debtors reserve the right, in accordance with the terms of the Transaction Support Agreement and subject to any applicable consent rights set forth in the Plan or the relevant Plan Supplement documents, to alter, amend, update, or modify the Plan Supplement before the Effective Date in accordance with section 1127(b) of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistency in the Plan or in such manner as may be necessary or appropriate to carry out the purpose and intent of the Plan.  In particular, the Exit Facilities Documents remain subject to ongoing negotiation, consistent with the terms of the Transaction Support Agreement, ABL/FILO Exit Commitment Letters, and other relevant Definitive Documents, and, notwithstanding

8

anything to the contrary in the Plan, final forms thereof may be filed as part of the Plan Supplement after the date of this Combined Order.

12.     The terms of the Plan, the Plan Supplement, and all exhibits thereto are incorporated herein by reference, and are an integral part of this Combined Order.  The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.  The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Combined Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

13.     To the fullest extent provided under section 1141(d)(1)(A) of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan, the Definitive Documents, this Combined Order, or in any contract, instrument, or other agreement or document created or entered into, and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests therein shall be in exchange for and in complete satisfaction, settlement, discharge and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property, or Estates; (b) the Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders abstained from voting to accept or reject the Plan or voted to reject the Plan; (c) subject to Article III.F of the Plan, all Claims and Interests shall be satisfied, discharged and released in full, and the Debtors' liability with respect thereto will be extinguished completely without further notice or action, including any liability of the kind specified under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (d) except as otherwise expressly provided for in the Plan, all Entities shall be precluded from

US-DOCS\149454922.13

asserting against, derivatively on behalf of, or through, the Debtors, the Debtors' Estates, the Reorganized Debtors, each of their successors and assigns, and each of their assets and properties, any other Claims or Interests based upon any documents, instruments or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or otherwise.

14.     This Combined Order shall constitute, to the greatest extent permissible, all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan, the Restructuring Transactions, and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan and the Restructuring Transactions.

15.     Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept for filing and/or recording any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Combined Order.

## IX.    Objections

16.     All parties have had a fair opportunity to litigate all issues raised by objections, or which might have been raised, and the objections have been fully and fairly litigated.   All objections, responses, statements, reservations of rights, and comments in opposition to the Plan have been withdrawn with prejudice in their entirety, waived, settled, resolved before the Combined Hearing, or otherwise resolved on the record of the Combined Hearing and/or herein. The record of the Combined Hearing is hereby closed.

## X.    Solicitation

17.     The Solicitation Procedures complied with sections 1125 and 1126 of the Bankruptcy Code, all other provisions of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018,

and all other applicable non-bankruptcy rules, laws, and regulations.  Any modifications to the

Plan as of the date of this Combined Order are not of the type to require additional disclosure or

solicitation of the Plan under Bankruptcy Rule 3019, and notice of the Modifications was adequate

and appropriate under the facts and circumstances of the Chapter 11 Cases.

**XI.     Good-Faith Solicitation**

18.     Based on the record before the Bankruptcy Court, the Debtors have solicited votes

on the Plan in good faith and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the

Local Rules, and the Solicitation Procedures Order.  Pursuant to section 1125(e) of the Bankruptcy

Code, the Debtors, the Released Parties, and each of their respective Affiliates, agents,

representatives, members, principals, equity holders (regardless of whether such interests are held

directly or indirectly), officers, directors, managers, employees, advisors, and attorneys have

participated in good faith and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the

Local Rules, and the Solicitation Procedures Order in the offer, issuance, sale, and purchase of

Securities offered and sold under the Plan, and, therefore, are entitled to the protections afforded

by section 1125(e) of the Bankruptcy Code.

**XII.    Acceptance of Plan as Modified**

19.     Any amendments and modifications to the Plan since the filing thereof, including

as reflected herein, and incorporated into and reflected in the Plan, are approved in accordance

with section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019(a), and do not require

additional disclosure or solicitation.

**XIII.   Discharge, Release, Injunction, and Related Provisions**

       a.     <u>Discharge of Claims and Termination of Interests</u>

20.     The provisions of Article IX.A of the Plan are hereby approved in their entirety.

This Combined Order shall be a judicial determination of the discharge of all Claims and Interests

subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.  The entry of this Combined Order shall constitute the Bankruptcy Court's approval of the compromise, resolution, or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, the Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. Notwithstanding the foregoing or similar provisions of the Plan or this Combined Order, with respect to settlements, such settlements are approved as among the parties to such settlement or similar agreements thereto, and the treatment of all Claims and Interests is approved pursuant to Confirmation by satisfying the requirement of section 1129 of the Bankruptcy Code.

       b.    <u>Debtor Release</u>

      21.    The Debtor Release, as set forth in Article IX.B of the Plan, and each of the related provisions and definitions contained therein, represents a valid exercise of the Debtors' business judgment and is therefore approved.  **Except as otherwise expressly set forth in the Plan or this Combined Order, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, is and is deemed to be, forever and unconditionally released, and absolved, by each Debtor, Reorganized Debtor, and the Estates from any and all claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, or the Reorganized Debtors that such entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other entity, based on**

or relating to, or in any manner arising from, in whole or in part, **(1)** the management, ownership, or operation of the Debtors or the Non-Debtor Affiliates, **(2)** the purchase, sale, or rescission of any security of the Debtors or the Non-Debtor Affiliates, **(3)** the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, **(4)** the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other entity, **(5)** the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, **(6)** intercompany transactions, **(7)** the Transaction Support Agreement, the Definitive Documents, the ABL Facility Documents, the Term Loan Documents, the DIP Facility Documents, the Exit Facilities Documents (and any financing permitted thereunder), the Chapter 11 Cases, or any Restructuring Transaction, **(8)** any contract, instrument, release, or other agreement or document created or entered into in connection with the Transaction Support Agreement, the Definitive Documents, or the Restructuring Transactions, including the issuance or distribution of securities pursuant to the Plan, **(9)** the distribution, including any disbursements made by a Distribution Agent, of property under the Plan or any other related agreement, or **(10)** any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; *provided*, that the Debtors do not release claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual

13

fraud, gross negligence, or willful misconduct).  **Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any post Effective Date obligations of any party or entity under the Plan, this Combined Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or any claim or obligation arising under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the schedule of retained Causes of Action.**

22.    **Entry of this Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any claim or Cause of Action released pursuant to the Debtor Release.**

    c.    <u>Releases by Holders of Claims and Interests</u>

23.    The Third-Party Release, as set forth in Article IX.C of the Plan, and each of the related provisions and definitions contained therein, is consensual and is therefore approved. **Except as otherwise expressly set forth in the Plan or this Combined Order, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is**

14

hereby confirmed, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, has and is deemed to have, forever and unconditionally, released, and absolved each Debtor, Reorganized Debtor, and Released Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, or the Reorganized Debtors that such entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, based on or relating to, or in any manner arising from, in whole or in part, (1) the management, ownership, or operation of the Debtors or the Non-Debtor Affiliates, (2) the purchase, sale, or rescission of any security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-debtor Affiliate and any other entity, (5) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (6) intercompany transactions, (7) the Transaction Support Agreement, the Definitive Documents, the ABL Facility Documents, the Term Loan Documents, the DIP Facility Documents, the Exit Facilities Documents (and any financing permitted thereunder), the Chapter 11 Cases, or any Restructuring Transaction, (8) any contract, instrument, release, or other agreement or document created or entered into in connection with the Transaction Support Agreement, the Definitive Documents, or the Restructuring Transactions, including

15

the issuance or distribution of securities pursuant to the Plan, (9) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan or any other related agreement, or (10) any other act, or omission, transaction, agreement, event, or other occurrence relating to any of the foregoing and taking place on or before the Effective Date; provided, that the Releasing Parties do not release claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud, gross negligence, or willful misconduct).  Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any post Effective Date obligations of any party or entity under the Plan, this Combined Order, any other Definitive Document, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or any claim or obligation arising under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the schedule of retained Causes of Action.

24.    Entry of this Combined Order shall constitute the Bankruptcy Court's approval of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) given and made after due notice and opportunity for hearing; and (3) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

US-DOCS\149454922.13

      d.    <u>Exculpation</u>

    25.    The Exculpation, as set forth in Article IX.D of the Plan, and each of the related provisions and definitions contained therein, meets the standard to which fiduciaries are held as reflected in *In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000) and is therefore approved. **Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action for any act taken or omitted to be taken between the Petition Date and the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the confirmation or consummation (as applicable) of the Plan, the Transaction Support Agreement, and the Disclosure Statement including any disbursements made by a Distribution Agent in connection with the Plan, the Disclosure Statement, the Definitive Documents, the Plan Supplement, the ABL Facility Documents, the Term Loan Documents, the DIP Facility Documents, the Exit Facilities Documents (and any financing permitted thereunder), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or confirmation or consummation of the Plan; provided, that the foregoing provisions of this Exculpation shall not operate to waive or release:  (1) any claims or Causes of action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (2) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed**

US-DOCS\149454922.13

**pursuant to the Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.**

26.    **The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

27.    **The foregoing Exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity.  For the avoidance of doubt and notwithstanding anything else herein, the foregoing Exculpation shall be limited to parties that served as Estate fiduciaries during the Chapter 11 Cases.**

e.    <u>Permanent Injunction</u>

28.    The permanent injunction set forth in Article IX.E of the Plan, and each of the related provisions and definitions contained therein, serves to effectuate the foregoing release and exculpation provisions and is therefore approved.  **Except as otherwise expressly provided in the Plan or this Combined Order, from and after the Effective Date, all persons and entities are, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (1) commencing or continuing, in any manner or in any place, any suit, action or other proceeding of any kind; (2) enforcing, attaching,**

18

**collecting, or recovering in any manner or means any judgment, award, decree, or order; (3)**
**creating, perfecting, or enforcing any lien or encumbrance; (4) asserting a right of setoff or**
**subrogation of any kind; or (5) commencing or continuing in any manner any action or other**
**proceeding of any kind, in each case on account of or with respect to any claim, demand,**
**liability, obligation, debt, right, Cause of Action, interest, or remedy released or to be**
**released, exculpated or to be exculpated, settled or to be settled, or discharged or to be**
**discharged pursuant to the Plan or this Combined Order against any Person or Entity so**
**released, discharged, or exculpated (or the property or estate of any Person or Entity so**
**released, discharged, or exculpated). All injunctions or stays provided for in the Chapter 11**
**Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence**
**on the Confirmation Date, shall remain in full force and effect until the Effective Date.**

## XIV. Immediate Binding Effect

29.      Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 6006(d), 6006(g), or 7062, or
otherwise, this Combined Order is a Final Order and the period in which an appeal must be filed
shall commence upon the entry hereof. The terms of this Combined Order and the Plan shall be
immediately effective and enforceable and shall not be stayed pursuant to Bankruptcy Rules
3020(e), 6004(h), 6006(d), 6006(g), or 7062, and shall be and deemed binding upon the Debtors,
the Reorganized Debtors, and any and all Holders of Claims and Interests (irrespective of whether
Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are
parties to or are subject to the settlements, compromises, releases, discharges, and injunctions
described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor
parties to Executory Contracts and Unexpired Leases, and notwithstanding whether or not such
Person or Entity (a) will receive or retain any property, or interest in property, under the Plan,

(b) has filed a Proof of Claim in the Chapter 11 Cases or (c) failed to vote to accept or reject the Plan, affirmatively voted to reject the Plan, or is conclusively presumed to reject the Plan.

## XV.    Post-Confirmation Notice and Notice of Effective Date

30.    The Debtors shall cause to be served a notice of the entry of this Combined Order and the occurrence of the Effective Date, substantially in form attached hereto as **Exhibit B** (the "***Confirmation Notice***"), upon (a) all parties listed in the creditor matrix maintained by the Notice and Claims Agent and (b) such additional persons and entities as deemed appropriate by the Debtors, no later than five (5) Business Days following the occurrence of the Effective Date. Service of the Confirmation Notice in the time and manner set forth in this paragraph shall be deemed good and sufficient notice of entry of this Combined Order and occurrence of the Effective Date and no further notice is or will be necessary.

## XVI.   Exit Facilities

31.    The Exit Facilities and the Exit Facilities Documents are, individually and collectively, essential elements of the Plan, and entry into the Exit Facilities and Exit Facilities Documents is in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests.  The Exit Facilities Documents are necessary and appropriate for Confirmation and consummation of the Plan and the operations of the Reorganized Debtors and are key to the overall success and feasibility of the Plan.  The Exit Facilities Documents set forth the best financing alternative available to the Debtors, and the Debtors have exercised sound business judgment in determining to enter into the Exit Facilities Documents and have provided adequate notice thereof. The terms and conditions of the Exit Facilities Documents are set forth in the Plan Supplement and have been negotiated in good faith and at arm's length among the Debtors and the applicable agents, lenders, holders, and/or arrangers, without the intent to hinder, delay, or defraud any creditor of the Debtors, and any credit extended, notes purchased, and loans made or deemed made

20

to the Reorganized Debtors by the aforementioned applicable agents, lenders, and/or arrangers, pursuant to the Exit Facilities Documents, and the creation and perfection of the liens in connection therewith, and any amounts (including, without limitation, any fees, interest, premiums, and expenses) paid thereunder, are deemed to have been extended, issued, made or deemed made, created, and perfected in good faith and for legitimate business purposes.  The Reorganized Debtors' entry into, and the terms of, the Exit Facilities Documents and the payment of any amounts (including, without limitation, any fees, interest, premiums, and expenses) in connection therewith are fair and reasonable, reflect the Debtors' and Reorganized Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The terms and conditions of the Exit Facilities Documents are fair and reasonable and are approved.

32.    Entry of this Combined Order shall be deemed to constitute approval by the Bankruptcy Court of the Exit Facilities Documents (including all transactions contemplated thereby, such as any supplementation or syndication of the Exit Term Loans, the incurrence of any incremental term loans pursuant to the Exit Term Loan Documents, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the incurrence of Liens securing the Exit Facilities and the payment of all fees, payments, indemnities, and expenses associated therewith) and, subject to the occurrence of the Effective Date, authorization for the applicable Reorganized Debtors to enter into and perform their obligations under the Exit Facilities Documents and such other documents as may be reasonably required or appropriate, subject to any consent or approval rights under the Definitive Documents.  On or around the Effective Date (and in accordance with the Plan), the Reorganized

US-DOCS\149454922.13

Debtors shall execute and deliver the Exit ABL/FILO Facility Amendment,[3] the Exit Term Loan Credit Agreement, the Exit Intercreditor Agreement, and any other Exit Facilities Documents, and shall execute, deliver, file, record, and issue any other related notes, guarantees, security documents, instruments, or agreements in connection therewith, in each case, without (a) further notice to the Bankruptcy Court, or (b) further act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity.  The Exit Facilities shall be subject to the Exit Intercreditor Agreement and the Amended & Restated Agreement Among Lenders, as applicable.

33.     On the Effective Date, the Exit Facilities Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.   The financial accommodations to be extended pursuant to the Exit Facilities Documents are being extended, and shall be deemed to have been extended, and all related payments made in connection therewith shall have been made, in each case, in good faith, for legitimate business purposes, for reasonably equivalent value, as an inducement to the applicable lenders to extend credit under the applicable Exit Facilities, are reasonable, shall not be subject to avoidance, recovery, turnover, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.  On the Effective Date, all of the Liens and security interests to be

---

[3]     For the avoidance of doubt, the "Exit ABL/FILO Facility Amendment" refers to that certain Second Amended & Restated Credit Agreement to be executed by and among Jo-Ann Stores, LLC, an Ohio limited liability company, Joann Holdings 2, LLC, a Delaware corporation, Needle Holdings LLC, a Delaware limited liability company, Bank of America, N.A., as administrative agent (in such capacity, including any successor thereto) and as collateral agent (in such capacity, including any successor thereto) under the Loan Documents (as defined in the ABL Credit Agreement), 1903P Loan Agent, LLC, as documentation agent for the FILO Facility (as defined in the ABL Credit Agreement) (in such capacity, including any successor thereto), and each lender from time to time party thereto (as amended, restated, amended and restated, modified, or supplemented from time to time in accordance with its terms).

22

granted, carried forward, continued, amended, extended, and/or reaffirmed (including in connection with any ABL Claims and FILO Claims that are refinanced by the Exit ABL/FILO Facility Amendment) under the Exit Facilities Documents shall:  (a) be continuing legal, binding, and enforceable Liens on, and security interests in, the collateral granted in accordance with the terms of the applicable Exit Facilities Documents; (b) be granted, carried forward, continued, amended, extended, reaffirmed, and deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted thereunder; and (c) not be subject to avoidance, recovery, turnover, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.

34.    The Reorganized Debtors and the Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Combined Order (it being understood that perfection shall occur automatically by virtue of the entry of this Combined Order, and any such filings, recordings, approvals, and consents shall not be required), and shall thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

## XVII.  Issuance of New Equity Interests and Deregistration

35.    On the Effective Date, Reorganized Parent shall issue or reserve for issuance all of the New Equity Interests in accordance with the terms of the Plan and the New Organizational Documents.  The issuance of the New Equity Interests is authorized without the need for further

23

corporate or other action or any consent or approval.  All of the New Equity Interests issuable under the Plan and this Combined Order shall, when so issued be duly authorized, validly issued, fully paid, and non-assessable.

36.     Reorganized Parent intends to exist and operate as a private company after the Effective Date.  Reorganized Parent is authorized to take all necessary steps to terminate the registration of all Securities under the Exchange Act and Securities Act, including to de-register its Existing Equity Interests, and to terminate its reporting obligations under sections 12, 13, and 15(d) of the Exchange Act, including by filing a Form 15 with the SEC under the Exchange Act.[4]

37.     On the Effective Date, Reorganized Parent shall issue the New Equity Interests pursuant to the Plan and the New Organizational Documents.  Reorganized Parent shall not be obligated to effect or maintain any listing of the New Equity Interests for trading on any national securities exchange (within the meaning of the Exchange Act).  On and after the Effective Date, transfers of New Equity Interests shall be made in accordance with United States securities laws and the New Stockholders Agreement.

38.     On the Effective Date, the Reorganized Parent shall enter into the New Stockholders Agreement with the Holders of the New Equity Interests, which shall become effective and binding in accordance with its terms and conditions upon the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity (other than as expressly required by the New Stockholders Agreement).  Any Person or Entity's acceptance of the Plan and the New Equity Interests shall be deemed to constitute its agreement to be bound by the New Organizational Documents, including but not limited to the New

---

[4]     A Form 25 was filed with the SEC on April 9, 2024, in accordance with the requirements of the Exchange Act.

US-DOCS\149454922.13

Stockholders Agreement as the same may be amended from time to time in accordance with their terms.  On and as of the Effective Date, the New Organizational Documents and the New Stockholders Agreement shall be binding on all Persons and Entities receiving, and all Holders of, the New Equity Interests (and their respective successors and assigns), whether such New Equity Interests are received or to be received on or after the Effective Date and regardless of whether such Person or Entity executes or delivers a signature page to the New Stockholders' Agreement or similar agreement constituting a New Organizational Document.

## XVIII. Release of Liens and Claims

39.    The cancellation of existing agreements, notes, and equity interests described in Article IV.E of the Plan (subject to the limitations set forth therein) and the release, cancellation, termination, extinguishment, and discharge of all Liens, Claims, mortgages, deeds of trust, or other security interests against the assets or property of the Debtors or the Estates described in Article IV.K of the Plan are necessary to implement the Plan and are hereby approved.  Such provisions are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

40.    To the fullest extent provided under section 1141(c) of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code, except as otherwise provided in the Exit ABL/FILO Facility Amendment (including with respect to the ABL Facility, the FILO Facility, the ABL Loans, and the FILO Term Loans), the Plan, this Combined Order, or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article VI of the Plan, all Liens, Claims, mortgages, deeds of trust, or other security interests against the assets or property of the Debtors or the Estates shall be fully released, canceled, terminated, extinguished, and discharged, in each case without further notice to or order of the

Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity; *provided*, that (i) the Liens granted to the Prepetition Agents and the DIP Agent pursuant to the ABL Credit Agreement, Term Loan Credit Agreement, and DIP Credit Agreement and (ii) any and all Liens or security securing the Debtor's obligations under the Insurance Contracts, which, for avoidance of doubt, includes grants of security interests in, without limitation, escrow accounts, deposit accounts, cash collateral, and letters of credit issued for the benefit of insurers, shall remain in full force and effect solely to the extent provided for in the Plan.

41.     The filing of this Combined Order with any federal, state, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens, Claims, and other interests to the extent provided in the immediately preceding sentence.  Any Person or Entity holding such Liens, Claims, or interests shall, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction, and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors.

## XIX.    Exemption from Certain Taxes and Fees

42.     To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under, pursuant to, in contemplation of, or in connection with the Plan (including the Restructuring Transactions) pursuant to (a) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors, (b) the creation, modification, consolidation, termination, refinancing, or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means, (c) the making, assignment, or recording of any lease or sublease, (d) the grant of collateral security for

US-DOCS\149454922.13

any or all of the Exit Facilities or other indebtedness, or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan (including the Restructuring Transactions), shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials, agents, or filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, and shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee or governmental assessment.

## XX.    Exemption from Registration Requirements

43.    No registration statement shall be filed under the Securities Act, or pursuant to any state securities laws, with respect to the offer and distribution of the New Equity Interests under the Plan. The offering, sale, issuance, and distribution of the New Equity Interests in exchange for Claims pursuant to Article II and Article III of the Plan and pursuant to this Combined Order shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable United States, state, or local law requiring registration for the offer or sale of a security pursuant to section 1145 of the Bankruptcy Code. Any and all such New Equity Interests may be resold without registration under the Securities Act by the recipients thereof pursuant to the exemption provided by Section 4(a)(1) of the Securities Act, subject to:

(a) the provisions of section 1145(b)(1) of the Bankruptcy Code, which limits resale by Persons who are "underwriters" as that term is defined in such section; (b) restrictions under the Securities Act applicable to recipients who are an "affiliate" of the Reorganized Debtors as defined in Rule 144(a)(1) under the Securities Act, (c) compliance with any applicable state or foreign securities laws, if any, and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such Securities; (d) the restrictions, if any, on the transferability of such Securities in the organizational documents of the issuer of, or in agreements or instruments applicable to holders of, such Securities; and (e) any other applicable regulatory approval.

44.    The Reorganized Debtors need not provide any further evidence other than the Plan and this Combined Order with respect to the treatment of the New Equity Interests under applicable securities laws.

45.    Notwithstanding anything to the contrary in the Plan, no Person or Entity (including, for the avoidance of doubt, DTC) shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Equity Interests are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.  All such Persons and Entities including DTC shall be required to accept and conclusively rely upon the Plan or this Combined Order in lieu of a legal opinion regarding whether the New Equity Interests are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.  Notwithstanding any policies, practices, or procedures of DTC, DTC and any participants and intermediaries shall fully cooperate and take all actions to facilitate any and all transactions necessary or appropriate for implementation of the Plan or other contemplated thereby, including without limitation any and all distributions pursuant to the Plan.

**XXI.   Corporate Action**

46.     Each of the Debtors and the Reorganized Debtors are authorized to take any and all actions to execute, deliver, File, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the provisions of the Plan, and without further notice to or order of the Bankruptcy Court, any act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers, or directors of the Debtors or the Reorganized Debtors or by any other Person (except for those expressly required pursuant hereto or by the Definitive Documents).

47.     Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtors, the Reorganized Debtors, or any other Entity, including, without limitation: (a) assumption and rejection (as applicable) of Executory Contracts and Unexpired Leases; (b) selection of the directors, managers, and officers for the Reorganized Debtors; (c) the execution of the New Organizational Documents and the Exit Facilities Documents; (d) the issuance and delivery of the New Equity Interests and the Exit Facilities; (e) implementation of the Restructuring Transactions, and (f) all other acts or actions contemplated, or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Debtors, and any company action required by the Debtors in connection therewith, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtors.

US-DOCS\149454922.13

48.    Prior to, on, and after the Effective Date, the appropriate officers, directors, managers, or authorized persons of the Debtors, the Reorganized Parent, or any direct or indirect subsidiaries of the Reorganized Parent (including any president, vice-president, chief executive officer, treasurer, general counsel, secretary, or chief financial officer thereof) shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, memoranda and articles of association, certificates of incorporation, certificates of formation, bylaws, operating agreements, other organization documents, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the applicable Debtors or applicable Reorganized Debtors, including the (a) New Organizational Documents, (b) Exit Facilities Documents, and (c) any and all other agreements, documents, securities, and instruments relating to or contemplated by the foregoing.  Prior to or on the Effective Date, each of the Debtors is authorized, in its sole discretion, to change its name or corporate form and to take such other action as required to effectuate a change of name or corporate form in the jurisdiction of incorporation of the applicable Debtor or Reorganized Debtor. To the extent the Debtors change their names or corporate form before the closing of the Chapter 11 Cases, the Debtors shall change the case captions accordingly.

49.    Subject to the rights of any affected Governmental Unit to seek relief from this provision, this Combined Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations, of all States and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, agreements, any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, Securities, agreements, and any amendments or modifications thereto.

US-DOCS\149454922.13

**XXII.  Treatment of Executory Contracts and Unexpired Leases**

50.    The Debtors have exercised sound business judgment in determining whether to reject or assume each of their Executory Contracts and Unexpired Leases and the Transaction Support Agreement pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, Article V of the Plan, and as set forth in the Plan Supplement.

51.    The Executory Contract and Unexpired Lease provisions of Article V of the Plan, and the assumptions, assumptions and assignments, or rejections described in Article V of the Plan, are approved in all respects.  The Debtors are authorized to assume or reject Executory Contracts or Unexpired Leases in accordance with Article V of the Plan.

52.    Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and payment of any applicable Cure Cost and satisfaction of any nonmonetary defaults, as applicable, pursuant to Article V of the Plan shall result in the full release and satisfaction of any Cure Costs, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption.

53.    On the Effective Date, the Transaction Support Agreement shall be assumed pursuant to sections 365 and 1123 of the Bankruptcy Code and shall be binding and enforceable against the applicable parties thereto in accordance with its terms.  For the avoidance of doubt, the assumption of the Transaction Support Agreement shall not otherwise modify, alter, amend, or supersede any of the terms or conditions thereof including, without limitation, any termination events or provisions thereunder.

54.    Notwithstanding anything to the contrary in the Plan, including, without limitation, Article IX.C thereof, or this Combined Order, with respect to any assumed Unexpired Lease of

nonresidential real property, subject to any agreements between the parties with respect thereto, the Debtors shall remain liable for all obligations arising under the Unexpired Lease of nonresidential real property, including:  (a) for amounts accrued or accruing under such Unexpired Lease of nonresidential real property in connection with a Debtor's use and occupancy of the premises thereunder, that are unbilled or not yet due as of the Effective Date regardless of when such amounts or obligations accrued, including on account of common area maintenance, insurance, taxes, utilities, repair, and maintenance and similar charges; (b) any regular or periodic adjustment or reconciliation of charges accrued or accruing under such Unexpired Lease of nonresidential real property that are not yet due or have not been determined or billed as of the Effective Date; (c) any percentage rent that comes due after the Effective Date under such Unexpired Lease of nonresidential real property; (d) post-assumption obligations under such Unexpired Lease of nonresidential real property; and (e) obligations, if any, to indemnify the non-Debtor counterparty under such Unexpired Lease of nonresidential real property arising from a Debtor's use and occupancy of the premises in accordance with the terms of the Unexpired Lease of nonresidential real property.  In addition, for the avoidance of doubt, all post-petition obligations (monetary and nonmonetary) arising under each Unexpired Lease shall be performed timely and in full by the Debtors pursuant to this Combined Order, the Plan, and the terms of such assumed Unexpired Lease.  All rights of the parties, including the Debtors or Reorganized Debtors, to any assumed Unexpired Lease of nonresidential real property to dispute amounts due thereunder, other than amounts asserted as, or required to be asserted as, Cure Costs, are preserved.

55.     Notwithstanding anything else herein, in the Plan, or in the Exit Facilities Documents, nothing herein, in the Plan, or in the Exit Facilities Documents shall authorize the Debtors to violate the terms of Unexpired Leases assumed pursuant to the Plan; provided that the

32

transactions contemplated by the Plan shall not constitute a "change of control" or "assignment" (or terms with similar effect) under any Executory Contract or Unexpired Lease assumed pursuant to the Plan, or any other transaction, event, or matter that would (1) result in a violation, breach, or default under such Executory Contract or Unexpired Lease, (2) increase, accelerate, or otherwise alter any obligations, rights, or liabilities of the Debtors or the Reorganized Debtors under such Executory Contract or Unexpired Lease, or (3) result in the creation or imposition of a Lien upon any property or asset of the Debtors or the Reorganized Debtors subject to the applicable Executory Contract or Unexpired Lease, or (4) provide for the Agents to access any leased premises of the Debtors or Reorganized Debtors other than in accordance with applicable non-bankruptcy law or with the consent of the applicable landlord.

56.    Notwithstanding anything in the Plan or this Combined Order to the contrary, upon assumption of an Unexpired Lease or any related storage agreement, the Debtors or the Reorganized Debtors, as applicable, shall be obligated to pay or perform, unless waived or otherwise modified by any amendment to such Unexpired Lease or related storage agreement mutually agreed to by the applicable landlord and Debtor(s), any and all obligations arising under such Unexpired Lease or related storage agreement, including, but not limited to, any accrued, but unbilled and not yet due to be paid or performed, obligations as of the Effective Date, including, but not limited to, to the extent required under such Unexpired Lease, common area maintenance charges, taxes, year-end adjustments, indemnity obligations, and repair and maintenance obligations, under the Unexpired Lease, when such obligations become due in the ordinary course.

57.    Parties to Executory Contracts and Unexpired Leases assumed by the Debtors pursuant to the Plan shall not be required to File a Proof of Claim or objection in order to assert or preserve any Cure Cost.  Notwithstanding anything to the contrary in the Plan or this Combined

US-DOCS\149454922.13

Order, all Cure Cost shall be Unimpaired by the Plan and this Combined Order and all Cure Cost outstanding as of the Effective Date shall remain continuing obligations of the Reorganized Debtors following the Effective Date subject to all parties' rights and defenses with respect thereto.

## XXIII. Resolution of Objection filed by CRI Easton Square LLC, Taylor Square Owner LLC and Arbor Square II LLC at [Docket No. 277]

58.     CRI Easton Square LLC ("*CRI Easton*") has asserted that it is owed Cure Costs in the amount of $96,542.94 to cure all defaults under the CRI Easton Lease (the "*CRI Easton Cure Costs*") and Taylor Square Owner LLC ("*Taylor Square*") has asserted that it is owed Cure Costs in the amount of $8,539.77 to cure all defaults under the Taylor Square Lease (the "*Taylor Square Cure Costs*").  Within three (3) Business Days of the entry of this Combined Order on the Bankruptcy Court's docket, the Debtors shall (i) pay to CRI Easton the undisputed portion of the CRI Easton Cure Costs in the amount of $96,215.72 and (ii) pay to Taylor Square the undisputed portion of the Taylor Square Cure Costs in the amount of $1,362.77.  The disputed portions of the CRI Easton Cure Costs and the Taylor Square Cure Costs shall be resolved by agreements between the parties or further order of the Bankruptcy Court consistent with the terms of the Plan and this Combined Order.  The objection as it pertains to Arbor Square II LLC has been resolved by paragraphs 54 and 56 of this Combined Order.

## XXIV. Provisions Governing Distributions

59.     The provisions governing distributions in Article VI of the Plan shall be, and hereby are, approved in their entirety.

## XXV.  Procedures for Resolving Claims and Disputes

60.     The procedures for resolving contingent, unliquidated, and Disputed Claims contained in Article VII of the Plan shall be, and hereby are, approved in their entirety.

**XXVI. Professional Fee Claims**

61.     All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred before the Effective Date must be Filed no later than thirty (30) days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders. Subject to any applicable agreements by the Retained Professionals with respect to Professional Fee Claims, the Reorganized Debtors shall pay Professional Fee Claims owing to the Retained Professionals in Cash in the amount the Bankruptcy Court Allows from funds held in the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court; *provided, however*, that the Debtors' and the Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow Account.  To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the Allowed amount of Professional Fee Claims owing to the Retained Professionals, the Reorganized Debtors shall pay such amounts within ten (10) Business Days of entry of the order approving such Professional Fee Claims.

62.     No later than five (5) days before the anticipated Effective Date, the Retained Professionals shall deliver to the Debtors a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date projected to be outstanding as of the anticipated Effective Date.  For the avoidance of doubt, no such estimate shall be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of a Retained Professional's final request for payment of Professional Fee Claims Filed with the Bankruptcy Court, and such Retained Professionals are

not bound to any extent by the estimates.  If a Retained Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Retained Professional. The total aggregate amount so estimated to be outstanding as of the anticipated Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account; provided, that the Reorganized Debtors shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.  For the avoidance of doubt, the terms of this paragraph shall not apply to the parties entitled to receive the Restructuring Fees and Expenses, which are authorized to be paid in accordance with this Combined Order, Article II.F of the Plan, engagement and/or fee letters with the Debtors, the Transaction Support Agreement, the DIP Facility Documents, and the ABL/FILO Exit Commitment Letter (as applicable).

## XXVII.        Restructuring Fees and Expenses

63.     The Restructuring Fees and Expenses incurred, or estimated to be incurred, up to and including the Effective Date (or, with respect to necessary post-Effective Date activities, after the Effective Date), shall be paid in full in Cash on the Effective Date in accordance with, and subject to, the terms of the Transaction Support Agreement or the DIP/Cash Collateral Orders, as applicable, (unless otherwise provided in any other order of the Bankruptcy Court), without any requirement to file a fee application with the Bankruptcy Court or without any requirement for Bankruptcy Court or United States Trustee review or approval (unless otherwise provided in any other order of the Bankruptcy Court), or without notice and a hearing pursuant to section 1129(a)(4) of the Bankruptcy Code or otherwise.  All Restructuring Fees and Expenses to be paid on the Effective Date shall be estimated before and as of the Effective Date and such estimates shall be delivered to the Debtors at least five (5) Business Days before the anticipated Effective

US-DOCS\149454922.13

Date; provided, however, that such estimates shall not be considered an admission or limitation with respect to such Restructuring Fees and Expenses. On the Effective Date, or as soon as practicable thereafter, final invoices for all Restructuring Fees and Expenses incurred before and as of the Effective Date shall be submitted to the Debtors. In addition, the Debtors and the Reorganized Debtors, as applicable, shall continue to pay, when due and payable in the ordinary course, pre-Effective Date Restructuring Fees and Expenses related to the Plan and the implementation, consummation, and defense of the Plan and the Restructuring Transactions, incurred before the Effective Date, in accordance with any engagement and/or fee letters with the Debtors, the Transaction Support Agreement, the DIP Facility Documents, and the ABL/FILO Exit Commitment Letter (as applicable).

## XXVIII.        Occurrence of Effective Date

64.    The Effective Date shall occur on the date determined by the Debtors and the Required DIP Lenders, the ABL Facility Agent, the FILO Term Loan Agent, and the FILO Lenders (such consent from each of the foregoing parties not to be unreasonably withheld) when the conditions set forth in Article VIII.A of the Plan have been satisfied or, if applicable, waived pursuant to Article VIII.B of the Plan.

## XXIX. Effect of Non-Occurrence of Conditions to the Effective Date

65.    If the Effective Date does not occur with respect to one or more of the Debtors on or before the termination of the Transaction Support Agreement, then the Plan shall, with respect to such applicable Debtor or Debtors, be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any claims by or Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders, or any other Person or Entity; (c) constitute an allowance of any Claim or Interest; or (d) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders,

or any other Person or Entity in any respect; <u>provided</u>, that any Restructuring Fees and Expenses that have been paid as of the date of the termination of the Transaction Support Agreement and/or revocation or withdrawal of the Plan shall remain paid and shall not be subject to disgorgement or repayment and any unpaid Restructuring Fees and Expenses as of the date of the termination of the Transaction Support Agreement shall be subject to the terms and obligations further set forth in the Transaction Support Agreement.

## XXX.  Service of Documents

66.     After the Effective Date, the Debtors and the Reorganized Debtors, as applicable, are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed a renewed request after the Combined Hearing to receive documents pursuant to Bankruptcy Rule 2002.

## XXXI. Disclosure of Facts

67.     The Debtors have disclosed all material facts regarding the Plan, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving action to be taken by or required of the Debtors.

## XXXII.        Substantial Consummation

68.     "Substantial consummation" of the Plan, as defined in section 1102(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

## XXXIII.        Terms of Injunctions or Stays

69.     Unless otherwise provided in the Plan or in this Combined Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the date hereof (excluding any injunctions or stays contained in the Plan or this Combined Order) shall remain in full force and effect until the

38

Effective Date.  All injunctions or stays contained in the Plan or this Combined Order shall remain in full force and effect in accordance with their terms.

## XXXIV.    Nonseverability of Plan Provisions Upon Confirmation

70.    The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference, and are an integral part of this Combined Order.  The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.  The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Combined Order does not diminish or impair the effectiveness of enforceability of such article, section, or provision.  Moreover, the provisions of the Plan are nonseverable and mutually dependent.

## XXXV.    Waiver of Section 341(a) Meeting and Requirement to File Statements of Assets and Liabilities

71.    Subject to the occurrence of the Effective Date on or before May 25, 2024, upon the entry of this Combined Order, and in accordance with the Scheduling Order, the requirement that the United States Trustee convene a 341 Meeting pursuant to section 341(a) of the Bankruptcy Code is hereby waived and the requirement that the Debtors file the Schedules and Statements and the 2015.3 Reports is permanently waived as to any such filing that has not yet been filed as of the Confirmation Date.

## XXXVI.    Provisions Regarding the United States

72.    Notwithstanding any provision in the Plan, the Plan Supplement, this Combined Order or other Definitive Documents (collectively, "***Plan Documents***"): nothing discharges or releases the Debtors, the Reorganized Debtors, or any non-debtor from any right, claim, liability, defense or cause of action of the United States or any State or impairs the ability of the United

US-DOCS\149454922.13

States or any State to pursue any right, claim, liability, defense, or cause of action against any Debtor, Reorganized Debtor or non-debtor. Contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests of or with the United States or any State shall be, subject to any applicable legal or equitable rights or defenses of the Debtors or Reorganized Debtors under applicable non-bankruptcy law, paid, treated, determined and administered in the ordinary course of business as if the Debtors' Chapter 11 Cases were never filed and the Debtors and Reorganized Debtors shall comply with all applicable non-bankruptcy law with respect thereto.  All rights, claims, liabilities, defenses or causes of action, of or to the United States or any State shall survive the Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights, claims, liabilities, defenses or causes of action would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced; *provided*, that nothing in the Plan Documents shall alter any legal or equitable rights or defenses of the Debtors or the Reorganized Debtors and/or any non-debtor under non-bankruptcy law with respect to any such claim, liability, or cause of action.  Without limiting the foregoing, for the avoidance of doubt, nothing shall:  (a) require the United States or any State to file any Proofs of Claim or administrative expense claims in the Chapter 11 Cases for any right, claim, liability, defense, or cause of action; (b) affect or impair the exercise of the United States' or any State's police and regulatory powers against the Debtors, the Reorganized Debtors or any non-debtor; (c) be interpreted to set cure amounts or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests; (d) affect or impair the United States' or any State's rights and defenses of setoff

US-DOCS\149454922.13

and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized

Debtors and such rights and defenses are expressly preserved; (e) constitute an approval or consent

by the United States or any State without compliance with all applicable legal requirements and

approvals under non-bankruptcy law; or (f) relieve any party from compliance with all licenses

and permits issued by governmental units in accordance with non-bankruptcy law.

**XXXVII.      Provisions Regarding Compensation and Benefits Programs**

73.      Notwithstanding any provision in the Plan Documents, the Debtors or Reorganized

Debtors, as applicable, are hereby authorized in their discretion, pursuant to section 503(b)(1)(A)

of the Bankruptcy Code, to terminate, liquidate, and make payments to covered employees (current

and former) under the Deferred Compensation Plan in accordance with section 409A of the United

States Internal Revenue Code.

**XXXVIII.      Provisions Regarding the Texas Comptroller**

74.      Notwithstanding anything else to the contrary in the Plan or this Combined Order,

the Texas Comptroller of Public Accounts (the "***Texas Comptroller***") reserves the following

rights: (1) any statutory or common law setoff rights in accordance with 11 U.S.C. § 553; (2) any

rights to pursue any non-debtor third parties for tax debts or claims, provided that nothing herein

shall diminish the effect of sections 1123(a)(5) and 1141(c) of the Bankruptcy Code; (3) the

payment of interest on the Texas Comptroller's administrative expense tax claims, if any; (4) to

the extent that interest is payable with respect to any administrative expense, priority, or secured

tax claim of the Texas Comptroller, the statutory rate of interest pursuant to Texas Tax Code §

111.060; and (5) the Texas Comptroller is not required to file a motion or application for payment

of undisputed administrative expense claims pursuant to 11 U.S.C. § 503(b)(1)(D).  In connection

with the foregoing, any defenses, claims, counterclaims, affirmative defenses, and other rights that

41

US-DOCS\149454922.13

exist under applicable law in favor of the Debtors, the Reorganized Debtors, and/or any non-debtor third parties, as applicable, are preserved.

## XXXIX.      Provisions Regarding Texas Tax Authorities

75.      Notwithstanding anything to the contrary in the Plan or this Combined Order, the Allowed Claims of any Texas ad valorem tax authority (any such authority, a "*Texas Tax Authority*")[5] with respect to ad valorem property taxes for tax years 2023 and 2024 secured by valid, senior, perfected, enforceable, and nonavoidable liens as of the Petition Date (the "*Texas Tax Authority Claims*")*,* if any, shall be classified as "Class 1 - Other Secured Claims." The Debtors or Reorganized Debtors, as applicable, shall pay all Allowed Texas Tax Authority Claims for tax year 2023 in full on the Effective Date. The Allowed Texas Tax Authority Claims for tax year 2024 will be paid on the later of the Effective Date or when due pursuant to applicable non-bankruptcy law.  The Texas Tax Authority Claims shall include all accrued interest properly charged under applicable non-bankruptcy law and required to be paid under section 506(b) of the Bankruptcy Code through the date of payment.  With respect to the Texas Tax Authority Claims, the prepetition tax liens, to the extent valid, senior, perfected, enforceable, and nonavoidable as of the Petition Date, of the Texas Tax Authorities shall be expressly retained in accordance with applicable non-bankruptcy law until the applicable Texas Tax Authority Claim is paid in full. The

---

[5]      Such Texas Tax Authorities are as follows: Bexar County, Cypress-Fairbanks Independent School District, Dallas County, Ector CAD, City of El Paso, Ellis County, Fort Bend County, City of Frisco, Grayson County, Harris County Emergency Service District #09, Harris County Emergency Service District #47, Hidalgo County, City of Houston (portion of the city collected by Linebarger), Houston Community College System, Houston Independent School District, City of Humble, Jefferson County, Katy Independent School District, Lewisville Independent School District, Lone Star College System, McLennan County, City of McAllen, Montgomery County, Nueces County, Rockwall CAD, Smith County, Tarrant County, Brazos County, Comal County, Denton County, City of Waco and Waco ISD, Taylor County CAD, Williamson County, Randall County Tax Office, Lubbock Central Appraisal District, City of Grapevine, Grapevine-Colleyville Independent School District, Crowley Independent School District, Frisco Independent School District, Plano Independent School District, Fort Bend Independent School District, Fort Bend County Levee Improvement District # 2, Humble Independent School District, Harris County Municipal Utility District # 186, Harris County Water Control And Improvement District # 145, Clear Creek Independent School District, Baybrook Municipal Utility District # 1, Spring Branch Independent School District and City of Houston (portion of the city collected by Perdue).

Texas Tax Authorities' lien priority shall not be primed or subordinated by any exit financing approved by the Bankruptcy Court in conjunction with the confirmation of the Plan or otherwise; *provided* that the Texas Tax Authorities' liens that are junior in priority, if any, shall remain junior in priority.  In the event that collateral that secures the Texas Tax Authority Claim of one or more of the Texas Tax Authorities is returned to a creditor holding a Lien that is junior to that of the Texas Tax Authorities, the Debtors shall first pay all ad valorem property taxes that are secured by such collateral, to the extent that the Debtors are liable for such ad valorem property taxes under applicable non-bankruptcy law.  All rights and defenses of the Debtors and Reorganized Debtors under applicable law are reserved and preserved with respect to such Texas Tax Authority Claims.

**XL.     Provisions Regarding Liberty Mutual Insurance Company**

76.     Notwithstanding any other provisions of the Plan, the Plan Supplement, this Combined Order, the Transaction Support Agreement, or any other order of this Bankruptcy Court, on the Effective Date, all rights and obligations that may arise at law or related to (a) the Debtors' current surety bonds issued by Liberty Mutual Insurance Company (the "***Surety***", and such surety bonds, the "***Surety Bonds***") maintained in the ordinary course of business; (b) any surety payment and indemnity agreements, if any, setting forth the parties' respective rights and obligations, including the Debtors' obligations, if any, to pay, indemnify and hold the Surety harmless from any loss, cost, or expense that the Surety may incur, in each case, on account of the issuance of any Surety Bonds on behalf of the Debtors; (c) any Surety collateral; (d) Surety collateral agreements governing collateral, if any, in connection with the Debtors' Surety Bonds; and/or (e) ordinary course premium payments to the Surety for the Debtors' Surety Bonds (collectively, the "***Surety Bond Program***" and the Debtors' obligations arising therefrom, the "***Surety Bond Obligations***") shall continue in full force and effect in accordance with the terms thereof and applicable non-bankruptcy law and are not discharged, enjoined, impaired or released

US-DOCS\149454922.13

by the Plan in any way.  For the avoidance of doubt, nothing in the Plan or this Combined Order, including, without limitation, any exculpation, release, injunction, exclusions, and discharge provision of the Plan, including, without limitation, any of those provisions contained in Article IX of the Plan, shall bar, alter, limit, impair, release, modify, enlarge, or enjoin any Surety Bond Obligations. The Surety Bond Program and all Surety Bond Obligations related thereto shall be treated by the Reorganized Debtors and the Surety in the ordinary course of business as if the Chapter 11 Cases had not been commenced.  Nothing in the Plan or this paragraph shall affect in any way the Surety's rights against any non-Debtor, or any non-Debtor's rights against the Surety, including under the Surety Bond Program or with regard to the Surety Bond Obligations.

### XLI.    Inconsistency

77.    In the event of any inconsistency between the Plan (including the Plan Supplement) and this Combined Order, this Combined Order shall govern.  In the event of an inconsistency between the Plan (without reference to the Plan Supplement) and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in this Combined Order).

### XLII.  Stay of Confirmation

78.    This Combined Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), 6006(g), or 7062.

### XLIII. Miscellaneous

79.    Except as otherwise provided in this Combined Order, if any or all of the provisions of this Combined Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Bankruptcy Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or Reorganized Debtors, as applicable, before the effective

44

date of any such reversal, stay, modification, or vacatur of this Combined Order. Any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Combined Order before the effective date of any such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Combined Order, the Plan, the Plan Supplement, or any amendments or modifications to the foregoing.

## XLIV. Retention of Jurisdiction

80.    The Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under or related to the Chapter 11 Cases and the Plan to the fullest extent legally permissible.

## XLV.  Final Order

81.    This Combined Order is intended to be a Final Order, such that the period within which an appeal must be filed commences upon the entry hereof.

**Dated: April 25th, 2024**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**