## EXHIBIT A

**Retention Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
                                                        :
In re:                                                  :   Chapter 11
                                                        :
JOANN INC., et al.,¹                                    :   Case No. 24-10418 (CTG)
                                                        :
             Debtors.                                   :   (Jointly Administered)
                                                        :
                                                        :   Related Dkt. No.:  156
------------------------------------------------------- x
```

## ORDER (I) AUTHORIZING RETENTION AND EMPLOYMENT OF HOULIHAN LOKEY CAPITAL, INC., AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE, (II) WAIVING CERTAIN REPORTING REQUIREMENTS PURSUANT TO LOCAL RULE 2016-2, <u>AND (III) GRANTING RELATED RELIEF</u>

Upon the application (the "*Application*")² of the Debtors for entry of an order (this "*Order*") authorizing the employment and retention of Houlihan Lokey Capital, Inc. ("*Houlihan Lokey*"), as financial advisor and investment banker for the Debtors, pursuant to the terms of the Engagement Agreement, dated as of December 13, 2022 (the "*Engagement Agreement*"), a copy of which is attached hereto as **<u>Exhibit 1</u>**, effective as of the Petition Date, all as more fully described in the Application; and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with

---

[1]   The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); and Jo-Ann Stores Support Center, Inc. (5027).  The Debtors' mailing address is 5555 Darrow Road, Hudson, OH 44236.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having considered the Application and the Salemi Declaration and having considered the statements of counsel and the evidence adduced with respect to the Application at a hearing before the Court, if necessary (the "*Hearing*"); and the Court finding that (a) the terms and conditions of Houlihan Lokey's employment set forth in the Engagement Agreement (including the Fee and Expense Structure) as modified by this Order, are reasonable as required by section 328(a) of the Bankruptcy Code; (b) Houlihan Lokey (i) does not hold or represent an interest adverse to the interests of the estates; and (ii) is a "disinterested person" as that term is defined under section 101(14) of the Bankruptcy Code; and (c) the Application and the Salemi Declaration comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; and it appearing that proper and adequate notice of the Application has been given and that no other or further notice is necessary, except as set forth in the Application with respect to entry of this Order; and upon the record herein; and after due deliberation thereon; and the Court having determined that the relief requested in the Application is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Application is APPROVED as set forth herein.

2.      The Debtors are authorized to retain and employ Houlihan Lokey as their financial advisor and investment banker pursuant to sections 327 and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014, 2016, and 5002, and Local Rules 2014-1 and 2016-2, effective as of the Petition Date, on the terms and conditions set forth in the Engagement Agreement and the Application, except as expressly modified herein.

3.      None of the fees payable to Houlihan Lokey shall constitute a "bonus" or fee enhancement under applicable law.

4.      The compensation, fees, and expenses payable to Houlihan Lokey pursuant to the Engagement Agreement, together with the indemnification, reimbursement of expenses, and contribution obligations owed to Houlihan Lokey and any other HL Party under the Engagement Agreement, shall be subject to review only pursuant to the standard of review set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code or any other standard of review.

5.      Notwithstanding the preceding paragraph, the U.S. Trustee shall retain the right to object to the compensation, fees, and expenses to be paid to Houlihan Lokey pursuant to the Application and the Engagement Agreement based on the reasonableness standard provided for in section 330 of the Bankruptcy Code, and the Court shall consider any such objection by the U.S. Trustee under section 330 of the Bankruptcy Code.  This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Houlihan Lokey's compensation, fees, and expenses under the standard set forth in the preceding sentence.  Accordingly, nothing in this Order or such record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Houlihan Lokey's fees.

6.      The Debtors are authorized to compensate and reimburse Houlihan Lokey pursuant to the terms of the Engagement Agreement, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders of this Court.

7.      In light of the services to be provided by Houlihan Lokey and the compensation structure in the Engagement Agreement, Houlihan Lokey and its professionals shall be excused

from: (i) any requirement to maintain or provide detailed time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-2, and the United States Trustee Fee Guidelines; and (ii) conforming with a schedule of hourly rates for its professionals. Instead, notwithstanding that Houlihan Lokey does not charge for its services on an hourly basis, Houlihan Lokey will nonetheless maintain reasonably detailed time records in 0.5 hour increments containing descriptions of those services rendered for the Debtors, and the individuals who provided those services, and will present such records together with its fee applications filed with the Court.

8.     In the event that, during the pendency of these cases, Houlihan Lokey seeks reimbursement for any attorneys' fees and/or expenses pursuant to the Application and the Engagement Agreement, the invoices and reasonably detailed supporting time records from such attorneys shall be included in Houlihan Lokey's own fee applications and such invoices and time records shall be subject to the U.S. Trustee Guidelines and approval of this Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

9.     Houlihan Lokey shall only be reimbursed for any legal fees incurred in defending its fee applications in connection with these Chapter 11 Cases to the extent permitted under applicable law and decisions of this Court.

10.     To the extent requested in the Application, Houlihan Lokey is granted a waiver with respect to the information requirements contained in Local Rule 2016-2(d).

11.     The Debtors shall be bound by the indemnification, contribution, reimbursement and exculpation provisions set forth in the Engagement Agreement, subject during the pendency of these cases to the following:

(a)     Subject to the provisions of subparagraphs (b) and (c) below, the Debtors are authorized to indemnify, and shall indemnify, the HL Parties for any claims arising from, related to, or in connection with the services to be provided by Houlihan Lokey as specified in the Application, but not for any claim arising from, related to, or in connection with Houlihan Lokey's post-petition performance of any other services (other than those in connection with the engagement), unless such post-petition services and indemnification therefor are approved by this Court;

(b)     The Debtors shall have no obligation to indemnify any HL Party, or provide contribution or reimbursement to any HL Party, for any claim or expense to the extent that it is either (i) judicially determined (the determination having become final) to have arisen from such HL Party's bad faith, gross negligence or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of such HL Party's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) infra, to be a claim or expense for which such HL Party is not entitled to receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order; and

(c)     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these Chapter 11 Cases, any HL Party believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including, without limitation, the advancement of defense costs, such HL Party must file an application therefor in this Court, and the Debtors may not pay any such amounts to such HL Party before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period during which the Court shall have jurisdiction over any request for fees and expenses by HL Parties for indemnification, contribution, or reimbursement, and not as a provision limiting the duration of the Debtors' obligation to indemnify the HL Parties. All parties in interest shall retain the right to object to any request by any HL Party for indemnification, contribution, or reimbursement.

12.     Notwithstanding any provision in the Engagement Agreement to the contrary, the contribution obligations of the HL Parties shall not be limited to the aggregate amount of fees actually received by Houlihan Lokey from the Debtors pursuant to the Engagement Agreement.

13.     Any limitation of liability pursuant to the terms and conditions set forth in the Application, the Engagement Agreement, or any ancillary documents thereto shall not apply as to any losses, claims, damages, or liabilities for which the HL Parties would not be entitled to indemnification under the provisions of this Order.

14.     Notwithstanding anything to the contrary in this Order, the Application, or the Engagement Agreement, no compensation shall be paid to Houlihan Lokey absent an order of this Court approving a fee application, except that the Debtors are authorized to pay the Monthly Fee to Houlihan Lokey each month when required under the Engagement Agreement without a prior fee application.

15.     Notwithstanding anything to the contrary in the Application or the Engagement Agreement, if any services are to be performed by any affiliate of Houlihan Lokey, that affiliate shall promptly file appropriate disclosures regarding any connections they may have with parties in interest in these cases, as well as disclosure regarding their disinterestedness. To the extent that Houlihan Lokey uses the services of independent contractors or subcontractors (collectively, the "*Contractors*") in these cases, Houlihan Lokey shall (i) pass through the cost of such Contractors to the Debtors at the same rate that Houlihan Lokey pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflicts checks as required for Houlihan Lokey; and (iv) file with this Court such disclosures required by Bankruptcy Rule 2014(a) with respect to such Contractors.

16.     Notwithstanding anything to the contrary herein, the U.S. Trustee shall retain all rights to object to the Monthly Fee crediting provisions contained in section 3(i) of the Engagement Agreement to the extent an order confirming a plan of reorganization is not entered within fifty

(50) days of the Petition Date, solely with respect to any Monthly Fees earned subsequent to that period.

17.     The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted pursuant to this Order.

18.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding the possible applicability of Bankruptcy Rule 6004, 7062, or 9014.

19.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in these Chapter 11 Cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these Chapter 11 Cases to cases under chapter 7.

20.     To the extent that this Order is inconsistent with the Engagement Agreement, the terms of this Order shall govern.

21.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

22.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

23.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application

24.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation or enforcement of this Order.

**Dated: April 15th, 2024**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**

# EXHIBIT 1

**Engagement Agreement**

# Houlihan Lokey

***Personal and Confidential***

December 13, 2022 (effective as of October 12, 2022)

Jo-Ann Stores, LLC
5555 Darrow Road
Hudson, OH 44236
Attn: Wade Miquelon, Chief Executive Officer

Dear Ladies and Gentlemen:

     This letter agreement (this "Agreement") confirms the terms under which Jo-Ann Stores, LLC ("JOANN" and collectively with JOANN Inc., Needle Holdings LLC, and JOANN's direct and indirect subsidiaries, the "Company") and Latham & Watkins LLP, in its capacity as counsel to JOANN ("Counsel", and together with the Company, the "Client Group") have engaged Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), effective as of the date indicated above (the "Effective Date"), as exclusive financial advisor to provide financial advisory and investment banking services in connection with one or more Transactions (as defined below) for the Company and with respect to such other financial matters as to which JOANN and Houlihan Lokey may agree in writing during the term of this Agreement.

     Notwithstanding anything to the contrary in this Agreement, Houlihan Lokey and the Company each acknowledge and agree that Counsel shall not be responsible for any fees, expenses, indemnification obligations or other amounts or payments that may be owed by the Company directly or indirectly under this Agreement to Houlihan Lokey.  It is the parties' intent that the financial advisory services described herein, including communications between Houlihan Lokey and the Client Group, and work product and analyses prepared by Houlihan Lokey for the Client Group, are provided at the direction of Counsel, and accordingly are confidential and protected by applicable privilege, including, but not limited to, the attorney-client privilege, the common interest privilege and the work product doctrine.

1.    **Services**.  Houlihan Lokey's services in connection with each potential Transaction (as defined below) will consist of, if appropriate and if requested by the Client Group, (i) assisting the Client Group in the development and distribution of selected information, documents and other materials (it being expressly understood that the Company will remain solely responsible for such materials and all of the information contained therein), (ii) assisting the Client Group in evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders, equity investors, and/or strategic partners, except to the extent provided below, (iii) assisting the Client Group with the negotiation of any Transaction(s), including participating in negotiations with creditors and other parties involved in any Transaction(s), except to the extent provided below,  (iv) attending meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Client Group and

Jo-Ann Stores, LLC
Page 2

Houlihan Lokey mutually agree, except to the extent provided below, and (v) providing such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and the Client Group. In the event that, in order to accomplish a Transaction, the Company undertakes an "exchange offer" pursuant to Section 3(a)(9) of the Securities Act of 1933, as amended (a "3(a)(9) Offer") it is agreed and understood that Houlihan Lokey shall not (a) engage, directly or indirectly, in the solicitation of the exchange or any consent, or (b) make recommendations regarding the exchange to security holders or their advisors.

2.  **Exclusivity.**  The Company agrees that neither it nor its management will initiate any discussions regarding a Transaction during the term of this Agreement, except with prior consultation with Houlihan Lokey.  In the event the Company or its management receives any inquiry regarding a Transaction from any party, the Company shall promptly inform Houlihan Lokey of such inquiry so that Houlihan Lokey can assist the Client Group in evaluating such party and its interest in a Transaction and in any resulting negotiations.

3.  **Fees.**  In consideration of Houlihan Lokey's acceptance of this engagement, the Company shall pay the following:

(i)  *Monthly Fees:* In addition to the other fees provided for herein, on November 16, 2022 and on every monthly anniversary of such date during the term of this Agreement until termination in accordance with Section 4, the Company shall pay Houlihan Lokey in advance, without notice or invoice, a nonrefundable cash fee of $100,000 ("Monthly Fee"). Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. Starting after the third Monthly Fee, fifty (50%) of the Monthly Fees previously paid on a timely basis to Houlihan Lokey shall be credited against the next Transaction Fee (as defined below) to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall such Transaction Fee be reduced below zero. Notwithstanding the foregoing, in the event that Houlihan Lokey is requested by the Company to begin preparation or provide other services in connection with the pursuit of a potential in-court Restructuring Transaction (as defined below), the Monthly Fee shall increase to $150,000 and none of the Monthly Fees subsequently earned by and payable to Houlihan Lokey shall be subject to the crediting provision described in the foregoing sentence; and

(ii)  *Transaction Fee(s):* In addition to the other fees provided for herein, the Company shall pay Houlihan Lokey the following transaction fee(s):

a.  *Financing Transaction Fee.* Upon the closing of each Financing Transaction (as defined below), Houlihan Lokey shall earn, and the Company shall thereupon pay to Houlihan Lokey immediately and directly from the gross proceeds of such Financing Transaction, as a cost of such Financing Transaction, a cash fee ("Financing Transaction Fee") equal to the sum of: (I) 2.5% of the aggregate principal amount of any indebtedness raised or committed that is secured by a lien, including, without limitation, first lien debt, second lien debt, and debtor-in-possession financing, (II) 3.5% of the aggregate principal amount of any indebtedness raised or committed that is unsecured and/or is subordinated, (III) 6.0% of the aggregate amount of all equity or equity-linked securities (including, without limitation, convertible securities and preferred stock) placed or committed, and (IV) 1.0% of the aggregate principal amount of any indebtedness repurchased, repaid, exchanged, tendered, or modified in priority (whether contractual or structural) in connection with a Financing Transaction.  Any warrants issued in connection with the raising of debt or equity capital shall, upon the exercise thereof, be considered equity for the purpose of calculating the Financing Transaction Fee, and such portion of the Financing Transaction Fee shall be paid

upon such exercise and from the gross proceeds thereof, regardless of any prior termination or expiration of this Agreement.  It is understood and agreed that if the proceeds of any such Financing Transaction are to be funded in more than one stage, Houlihan Lokey shall be entitled to its applicable compensation hereunder upon the closing date of each stage (but without duplication of compensation earned in any previous stage).  The Financing Transaction Fee(s) shall be payable in respect of any sale of securities whether such sale has been arranged by Houlihan Lokey, by another agent or directly by the Company or any of its affiliates.  The fees set forth herein shall be in addition to any other fees that the Company may be required to pay to any investor or other purchaser of Securities to secure its financing commitment.  Notwithstanding anything to the contrary contained herein, any amount invested or contributed in connection with any Financing Transaction by any fund or investment vehicle controlled or advised by Leonard Green & Partners, L.P. (an "LGP Entity") shall be disregarded for purposes of calculating any Financing Transaction Fee hereunder;

b.  *Amendment Transaction Fee.* Upon the closing of an Amendment Transaction (as defined below), Houlihan shall earn, and the Company shall thereupon pay immediately, a cash fee ("Amendment Transaction Fee") of $500,000; and

c.  *Restructuring Transaction Fee.* Upon the earlier to occur of: (I) in the case of an out-of-court Restructuring Transaction (as defined below), the closing of such Restructuring Transaction, and (II) in the case of an in-court Restructuring Transaction, the date of effectiveness of a plan of reorganization or liquidation under Chapter 11 or Chapter 7 of the Bankruptcy Code (as defined below), Houlihan Lokey shall earn, and the Company shall promptly pay to Houlihan Lokey, a cash fee ("Restructuring Transaction Fee") of $4,500,000; provided that, in the event the Restructuring Transaction is undertaken as a 3(a)(9) Offer, the Restructuring Transaction Fee, whether or not as a part of a plan, shall be earned and payable immediately upon the first mailing, delivery or other dissemination of offering documents pursuant to the 3(a)(9) Offer.

Notwithstanding the foregoing, the principal amount (i.e. the face amount) of indebtedness agreed to be repurchased (per market trades on agreed upon trade terms) by the Company and sourced by the Company or an LGP Entity (as defined below) without any involvement, assistance or advice from Houlihan Lokey after the Effective Date for which the purchase price paid by the Company in cash is equal to or less than $50,000,000 (a "Company Repurchase") shall not be deemed to be a Financing Transaction or a Restructuring Transaction, and such Company Repurchase will be disregarded for purposes of calculating any Financing Transaction Fee or any Restructuring Transaction Fee.

Any Financing Transaction Fee, Amendment Transaction Fee, and Restructuring Transaction Fee is each referred to herein as a "Transaction Fee" and are collectively referred to herein as "Transaction Fees." All payments received by Houlihan Lokey pursuant to this Agreement at any time shall become the property of Houlihan Lokey without restriction.  No payments received by Houlihan Lokey pursuant to this Agreement will be put into a trust or other segregated account.

4.    **Term and Termination.**  This Agreement will commence as of the Effective Date and will continue thereafter (and not terminate or expire) until terminated by Houlihan Lokey or the Company upon fifteen days' prior written notice of termination to the other party.  The expiration or termination of this Agreement shall not affect (i) any provision of this Agreement other than Sections 1 through 3 and (ii) Houlihan Lokey's right to receive, and the Company's obligation to pay, any and all fees, expenses and other amounts due, whether or not any Transaction shall be consummated prior to or subsequent to the effective date of expiration or termination, as more fully set forth in this Agreement. Notwithstanding

Jo-Ann Stores, LLC
Page 4

anything to the contrary contained herein, the Monthly Fee owed by the Company will cease to accrue upon receipt of a termination notice provided by the Company.

In addition, notwithstanding the expiration or termination of this Agreement (other than the termination of this Agreement by Houlihan Lokey for any reason other than the breach by the Company of its obligations hereunder), Houlihan Lokey shall be entitled to full payment by the Company of the Transaction Fees described in this Agreement: (i) so long as a Transaction is consummated during the term of this Agreement, or within 12 months after the date of expiration or termination of this Agreement ("Tail Period"), and/or (ii) if an agreement in principle to consummate a Transaction is executed by any entity comprising the Company during the term of this Agreement, or within the Tail Period, and such Transaction is consummated at any time following such execution with the counterparty named in such agreement, or with any affiliate or employee of, or investor in, such counterparty, or any affiliate of any of the foregoing; provided, however, that no fee shall be payable to Houlihan Lokey under this Section 4 in respect of any Transaction occurring during the Tail Period if, prior to the date of any such Transaction, Houlihan Lokey has already been paid a Restructuring Transaction Fee.

5.      **Transaction.**  As used in this Agreement, the term "Transaction" shall mean any of the following:

(i)   *Financing Transaction.*  (a) Any transaction or series of related transactions that constitutes any refinancing of all or any portion of the existing obligations of any entity comprising the Company and/or (b) the placement, raising or issuance of any form of equity, equity-linked or debt securities (including, without limitation, any convertible securities, preferred stock, unsecured, non-senior or subordinated debt securities, and/or senior notes or bank debt) or any loan or other financing, including any "debtor in possession financing" or "exit financing" in connection with a case under the Bankruptcy Code by any entity comprising the Company (any or all of which being "Securities"), from any source including, without limitation, any of the existing owners, shareholders, employees, or creditors of any entity comprising the Company (whether or not such transaction is effectuated in-court, out-of-court, through the confirmation of a plan of reorganization or otherwise under the Bankruptcy Code, or whether the requisite consents to such transaction(s) are obtained in-court or out-of-court) (each a "Financing Transaction");

(ii)  *Amendment Transaction.* Any transaction or series of related transactions that constitutes  a modification, waiver, or amendment (other than a modification or amendment that is administrative or immaterial in nature) to (a) the Amended and Restated Credit Agreement dated as of October 21, 2016 (as amended, supplemented or otherwise modified from time to time) that governs the Company's existing asset backed loan (the "Existing ABL") under which Bank of America, N.A. is the Administrative Agent, and/or (b) the Company's first lien term loan facility due July 2028 (the "Existing Term Loan"). For the avoidance of doubt, any amendment to increase total committed borrowing capacity under the Existing ABL obtained through the syndication efforts of the Administrative Agent (other than a first-in-last out ("FILO") facility or other second tranche financing facility) shall constitute an Amendment Transaction (but not a Financing Transaction).  Furthermore, any amendment obtained for the sole purpose of allowing the Company to effectuate a Financing Transaction shall not constitute an Amendment Transaction; or

(iii) *Restructuring Transaction.*  Any transaction or series of transactions that constitute a sale transaction under Sections 363, 1129 or any other provision of Title 11, United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code") or a recapitalization or restructuring of the equity and/or debt securities and/or other indebtedness, obligations or liabilities (including, without limitation, preferred stock, partnership interests, lease obligations, trade credit facilities, collective bargaining agreements and other contract or tort obligations) of any entity

Jo-Ann Stores, LLC
Page 5

comprising the Company, including accrued and/or accreted interest thereon, which are outstanding as of the Effective Date, including, without limitation, interest bearing trade debt, the Existing Term Loan, and the Existing ABL, which recapitalization or restructuring is effected pursuant to an exchange transaction, tender offer, a sale order or plan of reorganization or liquidation under the Bankruptcy Code, any change of control transaction, any sale, acquisition, merger, repurchase, exchange, conversion to equity, cancellation, forgiveness, retirement and/or, in connection with a de-leveraging transaction, a modification or amendment (other than an Amendment Transaction or an amendment to the Existing ABL necessary solely to facilitate a Financing Transaction) to the terms, conditions, or covenants (including without limitation, the principal balance, accrued or accreted interest, payment term, other debt service requirement and/or financial or operating covenant) of any agreements or instruments governing any of the equity and/or debt securities and/or other indebtedness of any entity comprising the Company or any combination of the foregoing transactions (each a "Restructuring Transaction"). For the avoidance of doubt, (x) a regular way refinancing of indebtedness of the Company out-of-court shall constitute a Financing Transaction (as contemplated by Section 5(i)(a)) and shall not constitute a Restructuring Transaction and (y) any indebtedness repurchased, repaid, exchanged, tendered, or modified in connection with a Financing Transaction shall be deemed to be a part of such Financing Transaction (and shall not constitute a Restructuring Transaction), and Houlihan Lokey shall be paid 1.0% of the aggregate principal amount of indebtedness repurchased or repaid, exchanged, tendered, or modified, in addition to any other fees earned in connection with such Financing Transaction, as set forth in the definition of "Financing Transaction Fee" in section 3(ii)(a) of this Agreement (but subject to the penultimate paragraph of Section 3); provided, that, a sale of the Company or a regular way sale of equity securities or any similar transaction during the Tail Period which, in each case, is out-of-court and results in a change of control in the Company (provided that it does not result in the recapitalization or restructuring of any debt securities and/or other indebtedness, obligations or liabilities of any entity comprising the Company) and without any involvement, assistance or advice from Houlihan Lokey, shall not constitute a Restructuring Transaction.

6.      **Characterization of Multiple and/or Complex Transactions.**  In the event the Company and Houlihan Lokey are unable to agree in good faith upon the classification of any single Transaction as a Financing Transaction, an Amendment Transaction, or a Restructuring Transaction, or if a single Transaction with only one third party shall consist of two, or more, of the foregoing types of Transactions, or elements thereof, Houlihan Lokey shall receive only one Transaction Fee in respect of such Transaction, which shall be equal to the greater of the Financing Transaction Fee, the Amendment Transaction Fee, or the Restructuring Transaction Fee, as applicable, as calculated in accordance with the terms of this Agreement.  For the avoidance of doubt, if two or more single Transactions occur simultaneously or at different times, whether or not they are connected with or related to one another, the Company shall pay Houlihan Lokey the Transaction Fee for each such Transaction in addition to, and not in lieu of, each other.

7.      **Reasonableness of Fees.**  The Company acknowledges that it believes that Houlihan Lokey's general restructuring experience and expertise, its knowledge of the capital markets and of the industry in which the Company operates, financing skills and merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Transaction, that the value to the Company of Houlihan Lokey's services derives in substantial part from that experience, expertise, knowledge, skills and capabilities and that, accordingly, the structure and amount of the contingent Transaction Fee(s) is reasonable, regardless of the number of hours to be expended by Houlihan Lokey's professionals in the performance of the services to be provided hereunder.

The parties also acknowledge that this engagement will require a substantial professional commitment of time and effort by Houlihan Lokey.  Moreover, the amount of time and effort may vary

Jo-Ann Stores, LLC
Page 6

substantially during different periods of the engagement, thereby creating potential "peak load" issues. As a result, in order to ensure the availability of all necessary professional resources, whenever required, Houlihan Lokey may be foreclosed from pursuing other alternative engagement opportunities. In light of the foregoing, and given: (i) the numerous issues which can currently be anticipated in engagements such as this, (ii) Houlihan Lokey's commitment to the variable level of time and effort necessary to address such issues, (iii) the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and (iv) the market rate for professionals of Houlihan Lokey's stature and reputation for services of this nature, whether in-court or out-of-court, the parties agree that (x) the fee and expense reimbursement arrangement provided for herein is reasonable, fairly compensates Houlihan Lokey, and provides the requisite certainty to the Company and (y) none of the fees hereunder shall be considered to be "bonuses" or fee enhancements under applicable law. The parties further agree and acknowledge that: (a) additional issues and developments, not currently anticipated, may arise and have an impact upon the services to be rendered by Houlihan Lokey hereunder, and may result in substantially more work and/or services being performed by Houlihan Lokey than is anticipated at this time, and (b) as a result of such unanticipated issues and/or developments, the results of Houlihan Lokey's services under this Agreement may also be substantially more beneficial than anticipated at this time. Accordingly, in the event of the occurrence of (a) and/or (b), in the prior sentence, each of the parties to this Agreement may, at the conclusion of the services rendered by Houlihan Lokey pursuant hereto, agree to a modification of the Transaction Fees described herein to more appropriately reflect the actual work performed, services rendered and/or any extraordinary results achieved by Houlihan Lokey pursuant to its engagement hereunder.

8.    **Expenses.**  In addition to all of the other fees and expenses described in this Agreement, and regardless of whether any Transaction is consummated, the Company shall, upon Houlihan Lokey's request, reimburse Houlihan Lokey for its reasonable out-of-pocket expenses incurred from time to time, but in no event greater than $50,000 without the Company's prior approval, which approval shall not be unreasonably withheld (provided that such limitation shall not affect the Company's obligations to otherwise pay any such expenses under this Agreement).  Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed-fee arrangements made with, travel agents, airlines or other vendors, and (ii) research, database and similar information charges paid to third party vendors, and reprographics expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.

Houlihan Lokey shall, in addition, be reimbursed by the Company for the fees and expenses of Houlihan Lokey's legal counsel incurred in connection with the negotiation and performance of this Agreement and the matters contemplated hereby, but in no event greater than $50,000 without the Company's prior approval, which approval shall not be unreasonably withheld (provided that such limitation shall not affect the Company's obligations to otherwise pay any such legal fees and other expenses under this Agreement).

9.    **Invoicing and Payment.**  All amounts payable to Houlihan Lokey shall be made in lawful money of the United States in accordance with the payment instructions set forth on the invoice provided with this Agreement, or to such accounts as Houlihan Lokey shall direct, and the Company shall provide contemporaneous written notice of each such payment to Houlihan Lokey.  All amounts invoiced by Houlihan Lokey shall be exclusive of value added tax, withholding tax, sales tax and any other similar taxes ("Taxes").  All amounts charged by Houlihan Lokey will be invoiced together with Taxes where appropriate.

10.    **Information.**  The Company will provide Houlihan Lokey with access to management and other representatives of the Company and other participants in any Transaction, as reasonably requested by

Jo-Ann Stores, LLC
Page 7

Houlihan Lokey. The Company will furnish Houlihan Lokey with such information as Houlihan Lokey may reasonably request for the purpose of carrying out its engagement hereunder, all of which will be, to the Company's best knowledge, accurate and complete at the time furnished. In addition, with respect to financial forecasts and projections that may be furnished to or discussed with Houlihan Lokey by the Company or any other entity, Houlihan Lokey will be entitled to assume that such financial forecasts and projections have been or will be reasonably prepared in good faith on bases reflecting the best currently available estimates and judgments of the Company's or such other entity's management, as the case may be, as to the matters covered thereby. The Client Group will promptly notify Houlihan Lokey in writing of any material inaccuracy or misstatement in, or material omission from, any information previously delivered to, or discussed with, Houlihan Lokey, or any materials provided to any interested party. Houlihan Lokey shall rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information furnished by or on behalf of the Company or any other potential party to any Transaction or otherwise reviewed by, or discussed with, Houlihan Lokey. The Client Group understands and agrees that Houlihan Lokey will not be responsible for the accuracy or completeness of such information, and shall not be liable for any inaccuracies or omissions therein.  The Client Group acknowledges that Houlihan Lokey has no obligation to conduct any appraisal of any assets or liabilities of the Company or any other party or to evaluate the solvency of any party under any applicable laws relating to bankruptcy, insolvency or similar matters. Houlihan Lokey's role in reviewing any information is limited solely to performing such a review as it shall deem necessary to support its own advice and analysis and shall not be on behalf of any other party. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Board of Directors of JOANN (solely in its capacity as such) and Counsel (in its capacity as counsel to JOANN) in evaluating a Transaction, and such advice may not be relied upon by any other person or entity or used for any other purpose. Any advice rendered by, or other materials prepared by, or any communication from, Houlihan Lokey may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner without the prior written consent of Houlihan Lokey. In addition, neither Houlihan Lokey nor the terms of this Agreement may otherwise be referred to without our prior written consent.

11.    **Confidential Information.**  Houlihan Lokey acknowledges that, in connection with the services to be provided pursuant to this Agreement, certain confidential, non-public and proprietary information concerning the Company and the Transaction ("Confidential Information") has been or may be disclosed by the Company to Houlihan Lokey, any of its affiliates, or any of their respective agents, advisors, accountants, attorneys, employees, subcontractors, officers, directors and other representatives (collectively, "Representatives"). Houlihan Lokey agrees that, without the Company's prior consent, no Confidential Information will be disclosed, in whole or in part, to any other party (other than to any potential party to a Transaction under appropriate assurances of confidentiality, to those Representatives who need access to any Confidential Information for purposes of performing the services to be provided hereunder, or as may be required by law or regulatory authority). The term "Confidential Information" does not include any information: (a) that was already in the possession of Houlihan Lokey or any of its Representatives, or that was available to Houlihan Lokey or any of its Representatives on a non-confidential basis, prior to the time of disclosure to Houlihan Lokey or such Representatives, (b) obtained by Houlihan Lokey or any of its Representatives from a third party which, insofar as is known to Houlihan Lokey or such Representatives, is not subject to any prohibition against disclosure, (c) which was or is independently developed by Houlihan Lokey or any of its Representatives without violating any confidentiality obligations under this paragraph, or (d) which was or becomes generally available to the public through no fault of Houlihan Lokey. If Houlihan Lokey becomes required by legal process or requested by regulatory authority to disclose any Confidential Information, prompt notice thereof (to the extent legally permissible) shall be given to the Company (provided that no notification shall be required in respect of any disclosure to regulatory authorities having jurisdiction over Houlihan Lokey), and Houlihan Lokey may disclose only that information which its counsel advises it is compelled to disclose. The obligations set forth in this paragraph shall remain in effect for a period of one year after the Effective Date.

Jo-Ann Stores, LLC
Page 8

12.    **Additional Provisions Regarding Financing Transaction.**  The Company authorizes Houlihan Lokey to provide an information memorandum (or similar document) (as such document may be amended or supplemented and including any information incorporated therein by reference, the "Information Memorandum") and other pertinent information to prospective investors and other purchasers and agrees not to transmit the Information Memorandum to prospective investors or other purchasers without Houlihan Lokey's prior approval.  The Company will be solely responsible for the contents of the Information Memorandum and any and all other written or oral communications provided by or on behalf of the Company to any actual or prospective investor or other purchaser.  The Company represents and warrants that the Information Memorandum and such other communications will not contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading.  If an event occurs as a result of which the Information Memorandum (as then supplemented or amended) would include any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading, the Company will promptly notify Houlihan Lokey of such event and Houlihan Lokey will suspend solicitations of prospective investors and other purchasers until such time as the Company prepares (and the Company agrees that, if the solicitation of prospective investors and other purchasers has been so suspended after the Company has accepted orders from prospective investors or other purchasers, the Company will promptly prepare) a supplement or amendment to the Information Memorandum which corrects such statement(s) or omission(s). The Company will (i) make available to each bona fide offeree of the Securities such information (in addition to that contained in the Information Memorandum) concerning the offering of the Securities, the Company and any other relevant matters, and (ii) provide each bona fide offeree the opportunity to ask questions of, and receive answers from, the officers and employees of the Company concerning the terms and conditions of the offering of the Securities.

        The Company acknowledges that closing of a Transaction is subject, among other factors, to acceptable documentation, market conditions, and satisfaction of the conditions set forth in one or more agreements to be entered into with any financier, lender, investor or other purchaser of Securities.  It is expressly understood that this engagement does not constitute any commitment, express or implied, on the part of Houlihan Lokey to (a) acquire, and does not ensure the successful placement of, any portion of the Securities, (b) secure any other financing on behalf of any person or entity, or (c) ensure that any agreements are executed by any financier, lender, investor or other prospective purchaser of Securities or guarantee the obligations of any such party. The Company further acknowledges and agrees that Houlihan Lokey is not acting as an underwriter of the Securities and shall have no responsibility or obligation to underwrite the Securities, and that Houlihan Lokey's undertaking is subject to our continued satisfaction with the results of our ongoing review of the Company's business and affairs.

        In connection with all offers and sales of the Securities, the Company will cause to be addressed and delivered to Houlihan Lokey a copy of any opinions of counsel that have been provided to investors or other purchasers of the Securities or which Houlihan Lokey may reasonably request.  The Company also will cause to be furnished to Houlihan Lokey at or after each closing of a sale of Securities copies (addressed to Houlihan Lokey, if requested and as appropriate) of such agreements, opinions, certificates and other documents (including, without limitation, accountant's letters) as Houlihan Lokey may reasonably request. The Company hereby acknowledges and agrees that Houlihan Lokey shall be entitled to rely upon the representations and warranties made (whether pursuant to a subscription agreement or in any other format) to investors or other purchasers of Securities and the Company shall be deemed to have made such representations and warranties to and for the benefit of Houlihan Lokey.

        It is understood that the offer and sale of the Securities in a Financing Transaction will be exempt from the registration requirements of the Securities Act of 1933, as amended (the "Act"), pursuant to Section 4(a)(2) thereof.  The Company has not taken, and will not take, any action, directly or indirectly, so as to cause the transactions contemplated by this Agreement to fail to be entitled to exemption under

Jo-Ann Stores, LLC
Page 9

Section 4(a)(2) of the Act. The Company will promptly from time to time take such reasonable action as necessary to qualify the Securities as a private placement under the securities laws of such States and foreign jurisdictions as any prospective investor or other purchaser may reasonably request and will comply with applicable laws. The Company shall cause the issuer of the Securities to offer and sell the Securities only to investors and other purchasers of the Securities that they reasonably believe to be "accredited investors", as defined in Rule 501 of Regulation D under the Act. The Company will cause the issuer of the Securities to file in a timely manner with the Securities and Exchange Commission (the "SEC") and/or each other regulatory authority any notices or other filings with respect to the Securities required by Rule 503 of Regulation D under the Act and/or other applicable law or regulation and will upon request furnish to Houlihan Lokey a signed copy of each such notice or filing promptly after its submission.

The Company represents and warrants that it has filed all reports, schedules, forms, statements and other documents required to be filed by it with the SEC pursuant to the reporting requirements of the Securities Exchange Act of 1934, as amended ("1934 Act") (all of the foregoing filed prior to the Effective Date and all exhibits included therein and financial statements, notes and schedules thereto and documents incorporated by reference therein being hereinafter referred to as the "SEC Documents"). As of their respective dates, all SEC Documents complied in all material respects with the requirements of the 1934 Act and the rules and regulations of the SEC promulgated thereunder applicable to the SEC Documents, and none of the SEC Documents, at the time they were filed with the SEC contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading. As of their respective dates, the financial statements of the Company included in the SEC Documents complied as to form in all material respects with applicable accounting requirements and the published rules and regulations of the SEC with respect thereto.

13.    **Limitations on Services as Advisor.**  Houlihan Lokey's services are limited to those specifically provided in this Agreement, or subsequently agreed upon in writing by the parties hereto. Houlihan Lokey shall have no obligation or responsibility for any other services including, without limitation, any crisis management or business consulting services related to, among other things, the implementation of any operational, organizational, administrative, cash management, profitability or liquidity improvements or similar activities. Houlihan Lokey makes no representation or warranty about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Transaction. The parties understand that Houlihan Lokey is being engaged hereunder as an independent contractor to provide the services hereunder solely to JOANN and Counsel (solely in its capacity as counsel to JOANN), and that Houlihan Lokey is not acting as an agent or fiduciary of any entity comprising the Company, its security holders or creditors, or Counsel or any other person or entity in connection with this engagement, and the Company and Counsel each agrees that it shall not make, and hereby waives, any claim based on an agency or fiduciary relationship or the assertion thereof. In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for the Client Group's decision on whether to pursue, endorse or support any business strategy, or to effect, or not to effect, any Transaction(s), which decision shall be made by the Company in its sole discretion. Any duties of Houlihan Lokey arising by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder will be owed solely to JOANN. In connection with any Transaction purported by the Company to be made pursuant to a 3(a)(9) Offer, the Company has not paid any commission or other remuneration, directly or indirectly, for soliciting or recommending such 3(a)(9) Offer to any soliciting broker, dealer, salesman, agent, employee or director of the Company, or any other person involved in any way on behalf of the Company in conflict with such Section 3(a)(9).

14.    **Bankruptcy Court Approval.**  In the event that the Company is or becomes a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall seek an order authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Sections 327(a) and 328(a) of the Bankruptcy

Jo-Ann Stores, LLC
Page 10

Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders, and Houlihan Lokey's employment hereunder shall not be subject to any other standard of review, including under Section 330 of the Bankruptcy Code. In so agreeing to seek Houlihan Lokey's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges the reasonableness of Houlihan Lokey's fee and expense reimbursement arrangement (as set forth more fully in Section 10 hereof). The Company shall submit Houlihan Lokey's employment application as soon as practicable following the Company's filing of a voluntary Chapter 11 case, or the entry of an order for relief in any involuntary case filed against the Company, and use its best efforts to cause such application to be considered on the most expedited basis. The employment application and the proposed order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey as much in advance of any Chapter 11 filing as is practicable, and must be acceptable to Houlihan Lokey in its sole discretion. Following entry of the order authorizing the employment of Houlihan Lokey, the Company shall pay all fees and expenses due pursuant to this Agreement, as approved by the court having jurisdiction of the bankruptcy case involving the Company (the "Bankruptcy Court"), as promptly as possible in accordance with the terms of this Agreement and applicable orders of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses (including, without limitation, interim fees and final fees) with the Bankruptcy Court.

The Company agrees that Houlihan Lokey's post-petition compensation as set forth herein and payments made pursuant to the expense reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under sections 503(b)(l)(A), 503(b)(2) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Company to pay Houlihan Lokey's fees and expenses, fully and promptly) in effect pursuant to one or more financing or cash collateral orders entered by the Bankruptcy Court in accordance with the terms thereof, provided, however, that the form of documentation to be used to satisfy the foregoing obligations of the Company shall be acceptable to Houlihan Lokey in its sole discretion. The Company will use its best efforts to ensure that any sale order, debtor-in-possession financing order, cash collateral order, adequate protection order and/or similar order entered in any bankruptcy case involving the Company (i) permits the use of sale, financing and cash collateral proceeds for the full and prompt payment of all of Houlihan Lokey's fees and expenses contemplated hereby (including, without limitation, all fees contingent upon the occurrence of any Transaction) and (ii) contains the agreements by the Company's lenders (or parties whose cash collateral is being used) that Houlihan Lokey's fees and expenses will be paid at the times and from the sources specified herein. If such orders and carve-outs are or become insufficient to provide the foregoing assurances, Houlihan Lokey shall then have no obligation to provide further services under this Agreement. In no event shall the Company move to reject this Agreement during any bankruptcy case involving the Company.

Houlihan Lokey shall have no obligation to provide services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless the foregoing authorizations, including authorization to employ Houlihan Lokey under Section 328(a) of the Bankruptcy Code, are granted by final order of the Bankruptcy Court that is no longer subject to appeal, rehearing, reconsideration or petition for certiorari and is acceptable to Houlihan Lokey in all respects. If such an order is not obtained, or is later reversed, vacated, stayed or set aside for any reason, Houlihan Lokey may terminate this Agreement, and the Company shall reimburse Houlihan Lokey for all fees and reasonable expenses incurred prior to the date of such termination, subject to any requirements of the Bankruptcy Code, the Bankruptcy Rules, applicable orders of such Bankruptcy Court and applicable local rules and orders. Prior to commencing a Chapter 11 case, the Company shall pay all amounts due and payable to Houlihan Lokey in cash. No fee payable to any other person, by the Company or any other party, shall reduce or otherwise affect any fee payable hereunder to Houlihan Lokey.

Jo-Ann Stores, LLC
Page 11

The Company will use its best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan in any bankruptcy case involving the Company contains typical and customary release provisions (both from the Company and from third parties) and exculpation provisions releasing, waiving and forever discharging the HL Parties (as defined below) from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities related to the Company or the engagement described in this Agreement. The terms of this Section are solely for the benefit of Houlihan Lokey, and may be waived, in whole or in part, only by Houlihan Lokey.

15.    **Additional Services.**  To the extent Houlihan Lokey is requested to perform any financial advisory or investment banking services which are not within the scope of this engagement, the Company shall pay Houlihan Lokey such fees as shall be mutually agreed upon by the parties hereto in writing, in advance, depending on the level and type of services required, and such fees shall be in addition to the fees and expenses described hereinabove. If Houlihan Lokey agrees to act in any such capacity, the Company and Houlihan Lokey will enter into an appropriate form of agreement (or amendment hereto) relating to the type of transaction involved and containing customary terms and conditions, including fees to be negotiated in good faith and agreed upon between the parties (based on fees customarily payable to nationally recognized investment banks performing such roles in connection with comparable transactions). The Company acknowledges that this Agreement is neither an express nor an implied commitment by Houlihan Lokey to act in any such capacity, which commitment shall only be set forth in a separate agreement.

16.    **Required Services.**  If Houlihan Lokey is required to render services not described herein, but which relate directly or indirectly to the subject matter of this Agreement (including, but not limited to, producing documents, answering interrogatories, attending depositions, giving expert or other testimony, whether by subpoena, court process or order, or otherwise), the Company shall pay Houlihan Lokey additional fees to be mutually agreed upon for such services, plus reasonable related out-of-pocket costs and expenses, including, among other things, the reasonable legal fees and expenses of Houlihan Lokey's counsel in connection therewith.

17.    **Credit.**  After the announcement or closing of any Transaction, Houlihan Lokey may, at its own expense, place announcements on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Company's logo or other identifying marks) describing its services in connection therewith.  The content of any such announcement shall be subject to the Company's prior approval, which approval shall not be unreasonably withheld. Furthermore, if requested by Houlihan Lokey, the Company agrees that in any press release announcing any Transaction, the Company will include in such press release a mutually acceptable reference to Houlihan Lokey's role as financial advisor with respect to such Transaction.

18.    **Choice of Law; Jury Trial Waiver; Jurisdiction.**  **THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK. THIS AGREEMENT AND ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS. EACH OF HOULIHAN LOKEY AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS EQUITY HOLDERS) IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT.  REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF**

Jo-Ann Stores, LLC
Page 12

**OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE BROUGHT AND MAINTAINED IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION SITTING IN THE COUNTY OF NEW YORK IN THE STATE OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS, AND AGREES TO VENUE IN SUCH COURTS; PROVIDED THAT SUCH CONSENT AND AGREEMENT SHALL NOT BE DEEMED TO REQUIRE ANY BANKRUPTCY CASE INVOLVING THE COMPANY TO BE FILED IN SUCH COURTS, AND IF THE COMPANY BECOMES A DEBTOR UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, DURING ANY SUCH CASE, ANY CLAIMS MAY ALSO BE HEARD AND DETERMINED BEFORE THE BANKRUPTCY COURT. EACH PARTY FURTHER IRREVOCABLY SUBMITS AND CONSENTS IN ADVANCE EXCLUSIVELY TO SUCH JURISDICTION AND VENUE IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURTS, AND HEREBY WAIVES IN ALL RESPECTS ANY CLAIM OR OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS. THE COMPANY AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION, SUIT OR CLAIM BROUGHT IN ANY OF THE COURTS REFERRED TO ABOVE SHALL BE CONCLUSIVE AND BINDING UPON IT AND MAY BE ENFORCED IN ANY OTHER COURTS HAVING JURISDICTION OVER IT BY SUIT UPON SUCH JUDGMENT. THE COMPANY IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN ALL SUCH DISPUTES BY THE MAILING OF COPIES OF SUCH PROCESS TO THE COMPANY AT 5555 DARROW ROAD, HUDSON, OH 44236.**

19.   **Indemnification and Exculpation.**   As a material part of the consideration for the agreement of Houlihan Lokey to furnish its services under this Agreement, the Company agrees (i) to indemnify and hold harmless each HL Party, to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, and (ii) to reimburse each HL Party for all reasonable and reasonably documented expenses (including, without limitation, the fees and reasonable and reasonably documented expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling, compromising or otherwise becoming involved in any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (including, without limitation, any shareholder or derivative action or any claim to enforce this Agreement), arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement.  However, the Company shall not be liable under the foregoing indemnification provision for any loss, claim, damage or liability to the extent it both arises out of any action or failure to act by such HL Party (other than an action or failure to act undertaken at the request or with the consent of the Company) and is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such HL Party.

If for any reason the foregoing indemnification or reimbursement is unavailable to any HL Party or insufficient to fully indemnify any HL Party or hold it harmless in respect of any losses, claims, damages, liabilities or expenses referred to in subsections (i) or (ii) of such indemnification or reimbursement provisions, then the Company shall contribute to the amount paid or payable by such HL Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received by the Company, on the one hand, and Houlihan Lokey, on the other hand, in connection with the matters contemplated by this Agreement.  If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Company shall contribute to such amount paid or payable by such HL Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Company (and its affiliates, and their respective directors, employees, agents and other advisors), on the one hand, and such HL Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations.  Notwithstanding the foregoing, in no

Jo-Ann Stores, LLC
Page 13

event shall the HL Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Houlihan Lokey from the Company pursuant to this Agreement, except, with respect to an HL Party, for any losses, claims, damages, liabilities or expenses to the extent they both arise out of any action or failure to act by such HL Party (other than an action or failure to act undertaken at the request or with the consent of the Company) and are finally judicially determined by a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of such HL Party. Relative benefits received by the Company, on the one hand, and Houlihan Lokey, on the other hand, shall be deemed to be in the same proportion as (i) the total value paid or received or contemplated to be paid or received by the Company, and its security holders, creditors, and other affiliates, as the case may be, pursuant to the transaction(s) (whether or not consummated) contemplated by the engagement hereunder, bears to (ii) the fees received by Houlihan Lokey under this Agreement. The Company shall not settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement (whether or not an HL Party is an actual or potential party thereto), or participate in or otherwise facilitate any such settlement, compromise, consent or termination by or on behalf of any person or entity, unless such settlement, compromise, consent or termination contains a release of the HL Parties reasonably satisfactory in form and substance to Houlihan Lokey.

The Company further agrees that neither Houlihan Lokey nor any other HL Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Company or any person or entity asserting claims on behalf of or in right of the Company arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, except for losses, claims, damages or liabilities incurred by JOANN to the extent they both arise out of any action or failure to act by such HL Party (other than an action or failure to act undertaken at the request or with the consent of the Company) and are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such HL Party, and no HL Party shall have any liability whatsoever to Counsel or any other person or entity.

The Company shall cause any new company or entity that may be formed by the Company, for any purpose, to agree to all of the obligations in this Section to Houlihan Lokey in accordance with the foregoing provisions. Prior to entering into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in this Agreement, the Company will notify Houlihan Lokey in writing thereof (if not previously so notified) and, if requested by Houlihan Lokey, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in this Agreement, including the assumption of such obligations by another party, insurance, surety bonds, the creation of an escrow, or other credit support arrangements, in each case in an amount and upon terms and conditions satisfactory to Houlihan Lokey.

The indemnity, reimbursement, and other obligations and agreements of the Company set forth herein (i) shall, for the avoidance of doubt, apply to any activities or actions arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, prior to the Effective Date, and to any modifications of this Agreement, and (ii) shall be in addition to any obligation or liability which the Company may otherwise have to any HL Party. The Company agrees that Houlihan Lokey would be irreparably injured by any breach of any such obligations or agreements, that money damages alone would not be an adequate remedy for any such breach and that, in the event of any such breach, Houlihan Lokey shall be entitled, in addition to any other remedies, to injunctive relief and specific performance.

Jo-Ann Stores, LLC
Page 14

Notwithstanding anything in the Agreement to the contrary, in no event shall Counsel or any affiliate, attorney, partner, member, or employee thereof be liable in any capacity for any amounts or other obligations owed by the Company to Houlihan Lokey in connection with this engagement and this Agreement, including, without limitation, any of Houlihan Lokey's retainer, invoices, expenses, costs, or indemnities under this engagement and this Agreement.

For purposes of this Agreement, the term "HL Parties" shall mean Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (each, an "HL Party").

20.    **Miscellaneous.**  This Agreement shall be binding upon the parties hereto and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets, including any Chapter 11 or Chapter 7 trustee appointed on behalf of the Company.

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than JOANN, the HL Parties and each of their respective successors, heirs and assigns, any rights or remedies (directly or indirectly as a third party beneficiary or otherwise) under or by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder.

This Agreement is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral.  This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by the parties hereto.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business as a condition to doing business with that person. Accordingly, the Company will provide Houlihan Lokey upon request (i) certain information regarding the identities of all individuals who, directly or indirectly, own 25% or more of the Company's equity interests as well as the Company's executive officers and other control persons, and (ii) certain identifying information necessary to verify the Company's identity, such as a government-issued identification number (e.g., a U.S. taxpayer identification number), certified articles of incorporation, a government-issued business license, partnership agreement, or trust instrument.  By executing this Agreement, the Company confirms that all such information provided to Houlihan Lokey is accurate and complete.

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

JOANN represents and warrants that (a) it has all requisite power and authority to enter into this Agreement on behalf of itself and each of its direct and indirect subsidiaries, and (b) this Agreement has been duly and validly authorized by all necessary action on the part of each such party and has been duly executed and delivered by or on behalf of each such party and constitutes a legal, valid and binding agreement of each such party, enforceable in accordance with its terms.  This Agreement has been reviewed by the signatories hereto and their counsel.  There shall be no construction of any provision against Houlihan

Jo-Ann Stores, LLC
Page 15

Lokey because this Agreement was drafted by Houlihan Lokey, and the parties waive any statute or rule of law to such effect.

The Company agrees that it will be solely responsible for ensuring that any Transaction complies with applicable law.  The Client Group understands that Houlihan Lokey is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Client Group confirms that it is relying on its own counsel, accountants and similar advisors for such advice.

To the extent that the Company hereunder is comprised of more than one entity or company, the obligations of the Company under this Agreement are joint and several, and any consent, direction, approval, demand, notice or the like given by any one of such entities or companies shall be deemed given by all of them and, as such, shall be binding on the Company.

The Client Group understands and acknowledges that Houlihan Lokey and its affiliates (collectively, the "Houlihan Lokey Group") engage in providing investment banking, securities trading, financing, financial advisory, and consulting services and other commercial and investment banking products and services to a wide range of institutions and individuals. In the ordinary course of business, the Houlihan Lokey Group and certain of its employees, as well as investment funds in which they may have financial interests or with which they may co-invest, may acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, the Company or any other party that may be involved in the matters contemplated by this Agreement or have other relationships with such parties. With respect to any such securities, financial instruments and/or investments, all rights in respect of such securities, financial instruments and investments, including any voting rights, will be exercised by the holder of the rights, in its sole discretion. In addition, the Houlihan Lokey Group may in the past have had, and may currently or in the future have, financial advisory or other investment banking or consulting relationships with parties involved in the matters contemplated by this Agreement, including parties that may have interests with respect to the Company, a Transaction or other parties involved in a Transaction, from which conflicting interests or duties may arise. Although the Houlihan Lokey Group in the course of such other activities and relationships or otherwise may have acquired, or may in the future acquire, information about the Company, a Transaction or such other parties, or that otherwise may be of interest to the Client Group, the Houlihan Lokey Group shall have no obligation to, and may not be contractually permitted to, disclose such information, or the fact that the Houlihan Lokey Group is in possession of such information, to the Client Group or to use such information on the Client Group's behalf.

In order to enable Houlihan Lokey to bring relevant resources to bear on its engagement hereunder from among its global affiliates, the Client Group agrees that Houlihan Lokey may share information obtained from the Client Group and other parties hereunder with other members of the Houlihan Lokey Group, and may perform the services contemplated hereby in conjunction with such other members.

Jo-Ann Stores, LLC
Page 16

If the foregoing correctly sets forth our agreement, please sign and return to us a copy of this Agreement along with a check (or wire transfer confirmation) for $100,000.00 on account of the first Monthly Fee.

Very truly yours,

HOULIHAN LOKEY CAPITAL, INC.

By: _____
Saul Burian
Managing Director

Accepted and agreed to as of the Effective Date:

JO-ANN STORES, LLC, on its own behalf, and on behalf of its direct and indirect subsidiaries

By: _____
Wade Miquelon
Chief Executive Officer

LATHAM & WATKINS LLP

By: *Mark Morris*
Mark Morris
Partner

## **EXHIBIT B**

**Summary of Hours Expended and Services Performed during Compensation Period**

Summary of Hours Expended during Compensation Period

| Name | Title | 03/18/24 – 4/30/24 Hours |
|---|---|---|
| Saul Burian | Managing Director | 7.5 |
| David R. Salemi | Managing Director | 50.0 |
| Matt Ender | Associate | 81.5 |
| Alex Krakovsky | Financial Analyst | 54.0 |
| Charlie Vrattos | Financial Analyst | 65.5 |
| **TOTALS:** | | **258.5** |

Summary of Services Performed by Project Category

| Project Category | 03/18/24 – 04/30/24 Hours |
|---|---|
| General Case Administration | 111.5 |
| Analysis, Presentations, and Due Diligence | 67.5 |
| Correspondence with Debtor and Other Advisors | 55.5 |
| Correspondence with Non-Debtor Stakeholders and Advisors | 24.0 |
| **TOTAL** | **258.5** |

**Houlihan Lokey - JOANN Inc. Work Hours Summary**
**(Mar. 18, 2024 - Apr. 30, 2024)**

| Employee | A | B | C | D | Total |
|----------|-----|-----|-----|-----|-------|
| Saul Burian | 3.5 | 1.5 | 0.0 | 2.5 | 7.5 |
| David Salemi | 19.0 | 10.0 | 12.5 | 8.5 | 50.0 |
| Matt Ender | 36.0 | 18.0 | 20.5 | 7.0 | 81.5 |
| Alex Krakovsky | 21.0 | 18.5 | 11.5 | 3.0 | 54.0 |
| Charlie Vrattos | 32.0 | 19.5 | 11.0 | 3.0 | 65.5 |
| **Total** | **111.5** | **67.5** | **55.5** | **24.0** | **258.5** |

**Legend**

| | | |
|---|---|---|
| **A** | | General Case Administration |
| **B** | | Analysis, Presentations, and Due Diligence |
| **C** | | Correspondence with Debtor and Other Advisors |
| **D** | | Correspondence with Non-Debtor Stakeholders and Advisors |

**Hours for:** **Saul Burian**
**Months of:** **March and April 2024**
**Total Hours: 7.5**

### Task Reference Table

| | |
|---|---|
| A | General Case Administration |
| B | Analysis, Presentations, and Due Diligence |
| C | Correspondence with Debtor and Other Advisors |
| D | Correspondence with Non-Debtor Stakeholders and Advisors |

| Date | Task | Task Code | Hours | Description of Activities |
|---|---|---|---|---|
| Monday, March 18, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Research and analysis related to precedent DIP fees |
| Monday, March 18, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Review of docket filings |
| Tuesday, March 19, 2024 | A | General Case Administration | 2.0 | Attendance of first day hearing |
| Wednesday, March 20, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 1.5 | Correspondence with potential financing parties |
| Thursday, March 21, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Tuesday, March 26, 2024 | A | General Case Administration | 0.5 | Review of fees incurred to date |
| Wednesday, March 27, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Sunday, April 21, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Correspondence with prospective benefits advisory firm |
| Friday, April 26, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Correspondence with prospective benefits advisory firm |

**Hours for: David Salemi**
**Months of: March and April 2024**
**Total Hours: 50.0**

### Task Reference Table

| | |
|---|---|
| **A** | General Case Administration |
| **B** | Analysis, Presentations, and Due Diligence |
| **C** | Correspondence with Debtor and Other Advisors |
| **D** | Correspondence with Non-Debtor Stakeholders and Advisors |

| Date | Task | Task Code | Hours | Description of Activities |
|------|------|-----------|-------|--------------------------|
| Monday, March 18, 2024 | C | Correspondence with Debtor and Other Advisors | 1.0 | Meeting with Advisors related to DIP Declaration of David Salemi |
| Monday, March 18, 2024 | B | Analysis, Presentations, and Due Diligence | 2.0 | Research and analysis related to precedent DIP fees |
| Monday, March 18, 2024 | B | Analysis, Presentations, and Due Diligence | 2.0 | Review of docket filings |
| Monday, March 18, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of first day hearing presentation |
| Tuesday, March 19, 2024 | A | General Case Administration | 2.0 | Attendance of first day hearing |
| Tuesday, March 19, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Meeting with Advisors related to DIP Declaration of David Salemi |
| Tuesday, March 19, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Research and analysis related to precedent DIP fees |
| Tuesday, March 19, 2024 | B | Analysis, Presentations, and Due Diligence | 2.0 | Review of supplemental proffer related to DIP Declaration of David Salemi |
| Wednesday, March 20, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Correspondence with potential financing parties |
| Thursday, March 21, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Correspondence with DIP lender |
| Thursday, March 21, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Friday, March 22, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Friday, March 22, 2024 | A | General Case Administration | 1.0 | Review of draft retention application |
| Sunday, March 24, 2024 | A | General Case Administration | 1.0 | Review of draft retention application |
| Monday, March 25, 2024 | A | General Case Administration | 0.5 | Administrative tasks |
| Monday, March 25, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with Other Advisors regarding retention application |
| Monday, March 25, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Correspondence with potential financing parties |
| Monday, March 25, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Monday, March 25, 2024 | A | General Case Administration | 0.5 | Review of draft retention application |
| Tuesday, March 26, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Analysis of pro forma equity splits |
| Tuesday, March 26, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Call with potential financing parties |
| Tuesday, March 26, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Wednesday, March 27, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Wednesday, March 27, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Review and analysis of DIP financing proposal |
| Wednesday, March 27, 2024 | A | General Case Administration | 0.5 | Review of draft retention application |
| Thursday, March 28, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with board of directors and Advisors |
| Thursday, March 28, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 1.0 | Call with potential financing parties |
| Friday, March 29, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 1.0 | A&M and HL call with potential financing party |
| Monday, April 1, 2024 | C | Correspondence with Debtor and Other Advisors | 1.5 | Call with potential financing party |
| Monday, April 1, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Tuesday, April 2, 2024 | C | Correspondence with Debtor and Other Advisors | 1.5 | Call with potential financing party |
| Wednesday, April 3, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with other Debtor Advisors |
| Wednesday, April 3, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with other Debtor and other Debtor Advisors |
| Wednesday, April 3, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Wednesday, April 3, 2024 | A | General Case Administration | 1.0 | Review of and response to questions from UST |
| Thursday, April 4, 2024 | A | General Case Administration | 0.5 | Administrative tasks |
| Thursday, April 4, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 1.0 | Call with AHG Advisors |
| Thursday, April 4, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Thursday, April 4, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | JOANN board meeting |
| Thursday, April 4, 2024 | A | General Case Administration | 0.5 | Review of and response to questions from UST |

**Hours for:** David Salemi
**Months of:** March and April 2024
**Total Hours:** 50.0

### Task Reference Table

| | |
|---|---|
| **A** | General Case Administration |
| **B** | Analysis, Presentations, and Due Diligence |
| **C** | Correspondence with Debtor and Other Advisors |
| **D** | Correspondence with Non-Debtor Stakeholders and Advisors |

| Date | Task | Task Code | Hours | Description of Activities |
|---|---|---|---|---|
| Monday, April 8, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Call with potential financing party |
| Tuesday, April 9, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Call with AHG Advisors |
| Tuesday, April 9, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with Debtor and other Debtor Advisors |
| Tuesday, April 9, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Call with potential financing party |
| Tuesday, April 9, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Wednesday, April 10, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Call with potential financing party |
| Wednesday, April 10, 2024 | A | General Case Administration | 1.0 | Review of UST comments on retention application |
| Thursday, April 11, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Thursday, April 11, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | JOANN board meeting |
| Thursday, April 11, 2024 | A | General Case Administration | 1.0 | Review of revised draft retention application |
| Friday, April 12, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Tuesday, April 16, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with Debtor and other Debtor Advisors |
| Tuesday, April 16, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Calls with potential financing party |
| Tuesday, April 16, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Tuesday, April 16, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of court filings |
| Tuesday, April 16, 2024 | A | General Case Administration | 1.0 | Review of draft supplemental declaration |
| Wednesday, April 17, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 1.0 | Call with potential financing parties |
| Wednesday, April 17, 2024 | A | General Case Administration | 0.5 | Review of draft supplemental declaration |
| Thursday, April 18, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Coordination with other Debtor Advisors |
| Thursday, April 18, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | JOANN board meeting |
| Thursday, April 18, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of draft exit credit agreement |
| Monday, April 22, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Calls with other Debtor Advisors |
| Tuesday, April 23, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Board meeting |
| Tuesday, April 23, 2024 | C | Correspondence with Debtor and Other Advisors | 1.5 | Calls with other Debtor Advisors |
| Tuesday, April 23, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Tuesday, April 23, 2024 | A | General Case Administration | 0.5 | Review of draft supplemental declaration |
| Thursday, April 25, 2024 | A | General Case Administration | 0.5 | Attendance of confirmation hearing |
| Thursday, April 25, 2024 | A | General Case Administration | 0.5 | Review of draft supplemental declaration |
| Tuesday, April 30, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Attendance of closing call |

JOANN Inc.
*Houlihan Lokey Time Sheet*                                                                                      *(Mar. 18, 2024 - Apr. 30, 2024)*

**Hours for:** Matt Ender
**Months of:** March and April 2024
**Total Hours:** 81.5

### Task Reference Table

| | |
|---|---|
| A | General Case Administration |
| B | Analysis, Presentations, and Due Diligence |
| C | Correspondence with Debtor and Other Advisors |
| D | Correspondence with Non-Debtor Stakeholders and Advisors |

| Date | Task | Task Code | Hours | Description of Activities |
|---|---|---|---|---|
| Monday, March 18, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Coordination of funds flow for DIP financing |
| Monday, March 18, 2024 | C | Correspondence with Debtor and Other Advisors | 1.0 | Meeting with Advisors related to DIP Declaration of David Salemi |
| Monday, March 18, 2024 | B | Analysis, Presentations, and Due Diligence | 2.0 | Research and analysis related to precedent DIP fees |
| Monday, March 18, 2024 | B | Analysis, Presentations, and Due Diligence | 2.0 | Review of docket filings |
| Monday, March 18, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of first day hearing presentation |
| Tuesday, March 19, 2024 | A | General Case Administration | 2.0 | Attendance of first day hearing |
| Tuesday, March 19, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Coordination of funds flow for DIP financing |
| Tuesday, March 19, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Meeting with Advisors related to DIP Declaration of David Salemi |
| Tuesday, March 19, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Research and analysis related to precedent DIP fees |
| Tuesday, March 19, 2024 | B | Analysis, Presentations, and Due Diligence | 2.0 | Review of supplemental proffer related to DIP Declaration of David Salemi |
| Wednesday, March 20, 2024 | A | General Case Administration | 1.0 | Administrative tasks |
| Wednesday, March 20, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Coordination with Debtor Advisors |
| Wednesday, March 20, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Correspondence with potential financing parties |
| Wednesday, March 20, 2024 | A | General Case Administration | 3.0 | Preparation of retention application |
| Thursday, March 21, 2024 | A | General Case Administration | 0.5 | Administrative tasks |
| Thursday, March 21, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Coordination with Debtor Advisors regarding retention application |
| Thursday, March 21, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Correspondence with DIP lender |
| Thursday, March 21, 2024 | A | General Case Administration | 1.0 | Preparation of retention application |
| Friday, March 22, 2024 | A | General Case Administration | 1.0 | Preparation of retention application |
| Monday, March 25, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with Other Advisors regarding retention application |
| Monday, March 25, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Coordination with other Company Advisors |
| Monday, March 25, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Correspondence with potential financing parties |
| Monday, March 25, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Tuesday, March 26, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Analysis of pro forma equity splits |
| Tuesday, March 26, 2024 | A | General Case Administration | 1.0 | Internal team coordination |
| Tuesday, March 26, 2024 | A | General Case Administration | 1.0 | Preparation of retention application |
| Wednesday, March 27, 2024 | A | General Case Administration | 1.0 | Internal team coordination |
| Wednesday, March 27, 2024 | A | General Case Administration | 2.0 | Preparation of retention application |
| Wednesday, March 27, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Review and analysis of DIP financing proposal |
| Thursday, March 28, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Analysis of DIP financing proposal |
| Thursday, March 28, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with board of directors and Advisors |
| Thursday, March 28, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 1.0 | Call with potential financing parties |
| Thursday, March 28, 2024 | A | General Case Administration | 1.0 | Internal team coordination |
| Friday, March 29, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 1.0 | A&M and HL call with potential financing party |
| Friday, March 29, 2024 | A | General Case Administration | 0.5 | Administrative tasks |
| Friday, March 29, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Coordination with Debtor and other Debtor Advisors |
| Friday, March 29, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Saturday, March 30, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Coordination with Debtor and other Debtor Advisors |
| Monday, April 1, 2024 | C | Correspondence with Debtor and Other Advisors | 1.5 | Call with potential financing party |
| Monday, April 1, 2024 | C | Correspondence with Debtor and Other Advisors | 1.0 | Coordination with Debtor and other Debtor Advisors |

JOANN Inc.
*Houlihan Lokey Time Sheet*
*(Mar. 18, 2024 - Apr. 30, 2024)*

**Hours for:** Matt Ender
**Months of:** March and April 2024
**Total Hours:** 81.5

<table>
<tr><td colspan="4" align="center"><b>Task Reference Table</b></td></tr>
<tr><td>A</td><td colspan="3">General Case Administration</td></tr>
<tr><td>B</td><td colspan="3">Analysis, Presentations, and Due Diligence</td></tr>
<tr><td>C</td><td colspan="3">Correspondence with Debtor and Other Advisors</td></tr>
<tr><td>D</td><td colspan="3">Correspondence with Non-Debtor Stakeholders and Advisors</td></tr>
</table>

| Date | Task | Task Code | Hours | Description of Activities |
|---|---|---|---|---|
| Monday, April 1, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Correspondence with potential financing parties |
| Monday, April 1, 2024 | A | General Case Administration | 0.5 | Discussions related to post emergence securities |
| Monday, April 1, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Tuesday, April 2, 2024 | C | Correspondence with Debtor and Other Advisors | 1.0 | Call with potential financing party |
| Tuesday, April 2, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Coordination with Debtor and other Debtor Advisors |
| Tuesday, April 2, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Wednesday, April 3, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Analysis of Plan distributions |
| Wednesday, April 3, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with other Debtor Advisors |
| Wednesday, April 3, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with other Debtor and other Debtor Advisors |
| Wednesday, April 3, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Coordination with other Debtor Advisors |
| Wednesday, April 3, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Wednesday, April 3, 2024 | A | General Case Administration | 1.0 | Review of and response to questions from UST |
| Wednesday, April 3, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of financing proposal |
| Thursday, April 4, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 1.0 | Call with AHG Advisors |
| Thursday, April 4, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Coordination with other Debtor Advisors |
| Thursday, April 4, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Thursday, April 4, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | JOANN board meeting |
| Thursday, April 4, 2024 | A | General Case Administration | 1.0 | Review of and response to questions from UST |
| Friday, April 5, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with other Debtor Advisors |
| Friday, April 5, 2024 | A | General Case Administration | 1.0 | Draft revised proposed retention order |
| Friday, April 5, 2024 | A | General Case Administration | 1.0 | Review of and response to questions from UST |
| Monday, April 8, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Coordination with AHG Advisors |
| Tuesday, April 9, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Call with AHG Advisors |
| Tuesday, April 9, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with Debtor and other Debtor Advisors |
| Tuesday, April 9, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Coordination with AHG Advisors |
| Tuesday, April 9, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Wednesday, April 10, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Wednesday, April 10, 2024 | A | General Case Administration | 0.5 | Review of UST comments on retention application |
| Thursday, April 11, 2024 | A | General Case Administration | 0.5 | Draft revised proposed retention order |
| Thursday, April 11, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Thursday, April 11, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | JOANN board meeting |
| Thursday, April 11, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of draft exit credit agreement |
| Friday, April 12, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Monday, April 15, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with A&M |
| Monday, April 15, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Coordination with AHG Advisors |
| Monday, April 15, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Coordination with other Debtor Advisors |
| Monday, April 15, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Monday, April 15, 2024 | A | General Case Administration | 0.5 | Supplemental declaration prep |
| Tuesday, April 16, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with Debtor and other Debtor Advisors |

**Hours for:** Matt Ender
**Months of:** March and April 2024
**Total Hours:** 81.5

## Task Reference Table

| | |
|---|---|
| **A** | General Case Administration |
| **B** | Analysis, Presentations, and Due Diligence |
| **C** | Correspondence with Debtor and Other Advisors |
| **D** | Correspondence with Non-Debtor Stakeholders and Advisors |

| Date | Task | Task Code | Hours | Description of Activities |
|---|---|---|---|---|
| Tuesday, April 16, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Tuesday, April 16, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of court filings |
| Tuesday, April 16, 2024 | A | General Case Administration | 0.5 | Supplemental declaration prep |
| Wednesday, April 17, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with other Debtor Advisors |
| Wednesday, April 17, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Wednesday, April 17, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of draft exit credit agreement |
| Wednesday, April 17, 2024 | A | General Case Administration | 1.0 | Supplemental declaration prep |
| Thursday, April 18, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Coordination with other Debtor Advisors |
| Thursday, April 18, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Thursday, April 18, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | JOANN board meeting |
| Thursday, April 18, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of docket filings |
| Thursday, April 18, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of draft exit credit agreement |
| Thursday, April 18, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of potential financing parties |
| Thursday, April 18, 2024 | A | General Case Administration | 0.5 | Supplemental declaration prep |
| Friday, April 19, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Monday, April 22, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Calls with other Debtor Advisors |
| Monday, April 22, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Coordination with other Debtor Advisors |
| Monday, April 22, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Monday, April 22, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of draft board slides |
| Monday, April 22, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Review of draft confirmation brief and other draft filings |
| Monday, April 22, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of draft press release |
| Monday, April 22, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of Plan allocations |
| Monday, April 22, 2024 | A | General Case Administration | 1.0 | Supplemental declaration prep |
| Tuesday, April 23, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Board meeting |
| Tuesday, April 23, 2024 | C | Correspondence with Debtor and Other Advisors | 1.5 | Calls with other Debtor Advisors |
| Tuesday, April 23, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Tuesday, April 23, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of draft confirmation brief and other draft filings |
| Tuesday, April 23, 2024 | A | General Case Administration | 0.5 | Supplemental declaration prep |
| Wednesday, April 24, 2024 | A | General Case Administration | 0.5 | Coordination on data room logistics |
| Wednesday, April 24, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Coordination with other Debtor Advisors |
| Wednesday, April 24, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Wednesday, April 24, 2024 | A | General Case Administration | 0.5 | Professional fee estimates |
| Wednesday, April 24, 2024 | A | General Case Administration | 0.5 | Supplemental declaration prep |
| Thursday, April 25, 2024 | A | General Case Administration | 0.5 | Attendance of confirmation hearing |
| Thursday, April 25, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Correspondence with DIP lender |
| Thursday, April 25, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Tuesday, April 30, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Attendance of closing call |

**Hours for:** Alex Krakovsky
**Months of:** March and April 2024
**Total Hours:** 54.0

### Task Reference Table

| | |
|---|---|
| **A** | General Case Administration |
| **B** | Analysis, Presentations, and Due Diligence |
| **C** | Correspondence with Debtor and Other Advisors |
| **D** | Correspondence with Non-Debtor Stakeholders and Advisors |

| Date | Task | Task Code | Hours | Description of Activities |
|---|---|---|---|---|
| Monday, March 18, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Coordination of funds flow for DIP financing |
| Monday, March 18, 2024 | C | Correspondence with Debtor and Other Advisors | 1.0 | Meeting with Advisors related to DIP Declaration of David Salemi |
| Monday, March 18, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Review of docket filings |
| Monday, March 18, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Review of first day hearing presentation |
| Tuesday, March 19, 2024 | A | General Case Administration | 2.0 | Attendance of first day hearing |
| Tuesday, March 19, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Meeting with Advisors related to DIP Declaration of David Salemi |
| Tuesday, March 19, 2024 | A | General Case Administration | 1.5 | Preparation of retention application |
| Tuesday, March 19, 2024 | B | Analysis, Presentations, and Due Diligence | 2.0 | Review of supplemental proffer related to DIP Declaration of David Salemi |
| Wednesday, March 20, 2024 | A | General Case Administration | 1.0 | Administrative tasks |
| Thursday, March 21, 2024 | A | General Case Administration | 0.5 | Administrative tasks |
| Thursday, March 21, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Business update call with Debtor and Advisors |
| Thursday, March 21, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Update of analysis for DIP lender |
| Friday, March 22, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Update of analysis for DIP lender |
| Monday, March 25, 2024 | A | General Case Administration | 1.0 | Administrative tasks |
| Monday, March 25, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with Other Advisors regarding retention application |
| Monday, March 25, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Reviewing docket filings |
| Tuesday, March 26, 2024 | A | General Case Administration | 1.0 | Preparation of retention application |
| Tuesday, March 26, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Reviewing docket filings |
| Wednesday, March 27, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Wednesday, March 27, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Review and analysis of DIP financing proposal |
| Thursday, March 28, 2024 | B | Analysis, Presentations, and Due Diligence | 3.0 | Analysis of DIP financing proposal |
| Thursday, March 28, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with board of directors and Advisors |
| Thursday, March 28, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 1.0 | Call with potential financing parties |
| Friday, March 29, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 1.0 | A&M and HL call with potential financing party |
| Monday, April 1, 2024 | A | General Case Administration | 1.0 | Administrative tasks |
| Monday, April 1, 2024 | C | Correspondence with Debtor and Other Advisors | 1.5 | Call with potential financing party |
| Monday, April 1, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Reviewing docket filings |
| Wednesday, April 3, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Analysis of Plan distributions |
| Wednesday, April 3, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with other Debtor Advisors |
| Wednesday, April 3, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with other Debtor and other Debtor Advisors |
| Wednesday, April 3, 2024 | A | General Case Administration | 1.0 | Review of and response to questions from UST |
| Wednesday, April 3, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of financing proposal |
| Wednesday, April 3, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Reviewing docket filings |
| Thursday, April 4, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Call with AHG Advisors |
| Friday, April 5, 2024 | A | General Case Administration | 1.0 | Administrative tasks |
| Monday, April 8, 2024 | A | General Case Administration | 1.0 | Administrative tasks |
| Tuesday, April 9, 2024 | A | General Case Administration | 2.0 | Administrative tasks |
| Tuesday, April 9, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Call with AHG Advisors |
| Tuesday, April 9, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with Debtor and other Debtor Advisors |
| Tuesday, April 9, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Thursday, April 11, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | JOANN board meeting |
| Friday, April 12, 2024 | A | General Case Administration | 4.0 | Administrative tasks |

**JOANN Inc.**
*Houlihan Lokey Time Sheet*                                                                 *(Mar. 18, 2024 - Apr. 30, 2024)*

**Hours for:** Alex Krakovsky
**Months of:** March and April 2024
**Total Hours:** 54.0

**Task Reference Table**

| | |
|---|---|
| **A** | General Case Administration |
| **B** | Analysis, Presentations, and Due Diligence |
| **C** | Correspondence with Debtor and Other Advisors |
| **D** | Correspondence with Non-Debtor Stakeholders and Advisors |

| Date | Task | Task Code | Hours | Description of Activities |
|---|---|---|---|---|
| Tuesday, April 16, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with Debtor and other Debtor Advisors |
| Tuesday, April 16, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of court filings |
| Wednesday, April 17, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of draft exit credit agreement |
| Thursday, April 18, 2024 | C | Correspondence with Debtor and Other Advisors | 1.0 | Coordination with other Debtor Advisors |
| Thursday, April 18, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | JOANN board meeting |
| Thursday, April 18, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Review of docket filings |
| Friday, April 19, 2024 | A | General Case Administration | 1.0 | Administrative tasks |
| Monday, April 22, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Monday, April 22, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of draft board slides |
| Monday, April 22, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Review of draft confirmation brief and other draft filings |
| Tuesday, April 23, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Board meeting |
| Tuesday, April 23, 2024 | C | Correspondence with Debtor and Other Advisors | 1.5 | Calls with other Debtor Advisors |
| Tuesday, April 23, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Tuesday, April 23, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of draft confirmation brief and other draft filings |
| Thursday, April 25, 2024 | A | General Case Administration | 0.5 | Attendance of confirmation hearing |
| Thursday, April 25, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Friday, April 26, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Coordination with other Debtor Advisors |
| Tuesday, April 30, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Attendance of closing call |

**Hours for:** Charlie Vrattos
**Months of:** March and April 2024
**Total Hours:** 65.5

**Task Reference Table**

| | |
|---|---|
| **A** | General Case Administration |
| **B** | Analysis, Presentations, and Due Diligence |
| **C** | Correspondence with Debtor and Other Advisors |
| **D** | Correspondence with Non-Debtor Stakeholders and Advisors |

| Date | Task | Task Code | Hours | Description of Activities |
|---|---|---|---|---|
| Monday, March 18, 2024 | C | Correspondence with Debtor and Other Advisors | 1.0 | Meeting with Advisors related to DIP Declaration of David Salemi |
| Monday, March 18, 2024 | B | Analysis, Presentations, and Due Diligence | 6.0 | Research and analysis related to precedent DIP fees |
| Monday, March 18, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Review of docket filings |
| Tuesday, March 19, 2024 | A | General Case Administration | 2.0 | Attendance of first day hearing |
| Tuesday, March 19, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Meeting with Advisors related to DIP Declaration of David Salemi |
| Tuesday, March 19, 2024 | A | General Case Administration | 4.0 | Preparation of retention application |
| Tuesday, March 19, 2024 | B | Analysis, Presentations, and Due Diligence | 2.0 | Research and analysis related to precedent DIP fees |
| Tuesday, March 19, 2024 | B | Analysis, Presentations, and Due Diligence | 2.0 | Review of supplemental proffer related to DIP Declaration of David Salemi |
| Wednesday, March 20, 2024 | A | General Case Administration | 0.5 | Administrative tasks |
| Wednesday, March 20, 2024 | A | General Case Administration | 4.0 | Preparation of retention application |
| Thursday, March 21, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Business update call with Debtor and Advisors |
| Thursday, March 21, 2024 | A | General Case Administration | 3.0 | Preparation of retention application |
| Monday, March 25, 2024 | A | General Case Administration | 0.5 | Administrative tasks |
| Monday, March 25, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with Other Advisors regarding retention application |
| Tuesday, March 26, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Analysis of pro forma equity splits |
| Tuesday, March 26, 2024 | A | General Case Administration | 2.5 | Preparation of retention application |
| Wednesday, March 27, 2024 | A | General Case Administration | 3.0 | Preparation of retention application |
| Wednesday, March 27, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Review and analysis of DIP financing proposal |
| Thursday, March 28, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with board of directors and Advisors |
| Thursday, March 28, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 1.0 | Call with potential financing parties |
| Friday, March 29, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 1.0 | A&M and HL call with potential financing party |
| Monday, April 1, 2024 | A | General Case Administration | 1.0 | Administrative tasks |
| Monday, April 1, 2024 | C | Correspondence with Debtor and Other Advisors | 1.5 | Call with potential financing party |
| Monday, April 1, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Reviewing docket filings |
| Tuesday, April 2, 2024 | A | General Case Administration | 1.0 | Administrative tasks |
| Tuesday, April 2, 2024 | C | Correspondence with Debtor and Other Advisors | 1.0 | Call with potential financing party |
| Wednesday, April 3, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Analysis of Plan distributions |
| Wednesday, April 3, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with other Debtor Advisors |
| Wednesday, April 3, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with other Debtor and other Debtor Advisors |
| Wednesday, April 3, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of financing proposal |
| Wednesday, April 3, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Reviewing docket filings |
| Thursday, April 4, 2024 | A | General Case Administration | 1.0 | Administrative tasks |
| Thursday, April 4, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Call with AHG Advisors |
| Thursday, April 4, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | JOANN board meeting |
| Monday, April 8, 2024 | A | General Case Administration | 1.0 | Administrative tasks |
| Tuesday, April 9, 2024 | D | Correspondence with Non-Debtor Stakeholders and Advisors | 0.5 | Call with AHG Advisors |
| Tuesday, April 9, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with Debtor and other Debtor Advisors |
| Tuesday, April 9, 2024 | A | General Case Administration | 0.5 | Internal team coordination |
| Monday, April 15, 2024 | A | General Case Administration | 0.5 | Supplemental declaration prep |
| Tuesday, April 16, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Call with Debtor and other Debtor Advisors |
| Tuesday, April 16, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of court filings |

**JOANN Inc.**
*Houlihan Lokey Time Sheet*                                                                          *(Mar. 18, 2024 - Apr. 30, 2024)*

**Hours for:** Charlie Vrattos
**Months of:** March and April 2024
**Total Hours:** 65.5

### Task Reference Table

| | |
|---|---|
| **A** | General Case Administration |
| **B** | Analysis, Presentations, and Due Diligence |
| **C** | Correspondence with Debtor and Other Advisors |
| **D** | Correspondence with Non-Debtor Stakeholders and Advisors |

| Date | Task | Task Code | Hours | Description of Activities |
|---|---|---|---|---|
| Tuesday, April 16, 2024 | A | General Case Administration | 0.5 | Supplemental declaration prep |
| Wednesday, April 17, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of draft exit credit agreement |
| Wednesday, April 17, 2024 | A | General Case Administration | 1.0 | Supplemental declaration prep |
| Thursday, April 18, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | JOANN board meeting |
| Thursday, April 18, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Review of docket filings |
| Thursday, April 18, 2024 | A | General Case Administration | 0.5 | Supplemental declaration prep |
| Monday, April 22, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of draft board slides |
| Monday, April 22, 2024 | B | Analysis, Presentations, and Due Diligence | 1.0 | Review of draft confirmation brief and other draft filings |
| Monday, April 22, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of draft press release |
| Monday, April 22, 2024 | A | General Case Administration | 0.5 | Supplemental declaration prep |
| Tuesday, April 23, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Board meeting |
| Tuesday, April 23, 2024 | C | Correspondence with Debtor and Other Advisors | 1.5 | Calls with other Debtor Advisors |
| Tuesday, April 23, 2024 | B | Analysis, Presentations, and Due Diligence | 0.5 | Review of draft confirmation brief and other draft filings |
| Tuesday, April 23, 2024 | A | General Case Administration | 0.5 | Supplemental declaration prep |
| Wednesday, April 24, 2024 | A | General Case Administration | 0.5 | Supplemental declaration prep |
| Thursday, April 25, 2024 | A | General Case Administration | 0.5 | Attendance of confirmation hearing |
| Monday, April 29, 2024 | A | General Case Administration | 0.5 | Administrative tasks |
| Tuesday, April 30, 2024 | A | General Case Administration | 3.0 | Administrative tasks |
| Tuesday, April 30, 2024 | C | Correspondence with Debtor and Other Advisors | 0.5 | Attendance of closing call |

**<u>EXHIBIT C</u>**

**Expense Summary for the Compensation Period from March 18, 2024 through and including April 30, 2024**

Summary of Expense Reimbursement Requested by Category

| Category | 03/18/24 – 04/30/24 Amount |
|---|---|
| Overtime Meals | $1,287.67 |
| Telephone and Data | $376.03 |
| Ground Transportation | $185.21 |
| **TOTAL** | **$1,848.91** |

| Expense Date | Expenditure Type | Invoice Number | Amount | Employee | Explanation |
|---|---|---|---|---|---|
| 3/18/24 | Overtime Meals | CR00388808 | $18.40 | Krakovsky, Alex | Overtime Dinner |
| 3/18/24 | Overtime Meals | CR00388808 | 20.41 | Krakovsky, Alex | Overtime Dinner |
| 3/18/24 | Overtime Meals | CR00388714 | 28.59 | Vrattos, Charles | Overtime Dinner |
| 3/19/24 | Overtime Meals | CR00388714 | 20.66 | Vrattos, Charles | Overtime Dinner |
| 3/19/24 | Overtime Meals | CR00388808 | 20.47 | Krakovsky, Alex | Overtime Dinner |
| 3/20/24 | Overtime Meals | CR00388714 | 26.35 | Vrattos, Charles | Overtime Dinner |
| 3/20/24 | Overtime Meals | CR00388808 | 16.60 | Krakovsky, Alex | Overtime Dinner |
| 3/21/24 | Overtime Meals | CR00388714 | 24.83 | Vrattos, Charles | Overtime Dinner |
| 3/21/24 | Overtime Meals | CR00388808 | 20.41 | Krakovsky, Alex | Overtime Dinner |
| 3/22/24 | Overtime Meals | CR00388714 | 40.00 | Vrattos, Charles | Overtime Dinner |
| 3/25/24 | Overtime Meals | CR00388714 | 40.00 | Vrattos, Charles | Overtime Dinner |
| 3/25/24 | Overtime Meals | CR00388714 | 15.00 | Vrattos, Charles | Overtime Dinner |
| 3/25/24 | Overtime Meals | CR00388808 | 19.71 | Krakovsky, Alex | Overtime Dinner |
| 3/25/24 | Overtime Meals | CR00388808 | 17.96 | Krakovsky, Alex | Overtime Dinner |
| 3/26/24 | Overtime Meals | CR00388714 | 24.03 | Vrattos, Charles | Overtime Dinner |
| 3/26/24 | Overtime Meals | CR00388808 | 20.41 | Krakovsky, Alex | Overtime Dinner |
| 3/27/24 | Overtime Meals | CR00388714 | 31.57 | Vrattos, Charles | Overtime Dinner |
| 3/27/24 | Overtime Meals | CR00388808 | 19.16 | Krakovsky, Alex | Overtime Dinner |
| 3/28/24 | Overtime Meals | CR00388808 | 20.47 | Krakovsky, Alex | Overtime Dinner |
| 3/29/24 | Overtime Meals | CR00388714 | 20.00 | Vrattos, Charles | Overtime Dinner |
| 4/1/24 | Overtime Meals | CR00388808 | 17.96 | Krakovsky, Alex | Overtime Dinner |
| 4/1/24 | Overtime Meals | CR00388808 | 20.80 | Krakovsky, Alex | Overtime Dinner |
| 4/1/24 | Overtime Meals | CR00389476 | 17.94 | Ender, Matthew Karol | Overtime Dinner |
| 4/4/24 | Overtime Meals | CR00389476 | 17.56 | Ender, Matthew Karol | Overtime Dinner |
| 4/1/24 | Overtime Meals | CR00392088 | 15.00 | Vrattos, Charles | Overtime Dinner |
| 4/1/24 | Overtime Meals | CR00392088 | 40.00 | Vrattos, Charles | Overtime Dinner |
| 4/2/24 | Overtime Meals | CR00392088 | 35.50 | Vrattos, Charles | Overtime Dinner |
| 4/5/24 | Overtime Meals | CR00392088 | 18.72 | Vrattos, Charles | Overtime Dinner |
| 4/8/24 | Overtime Meals | CR00392088 | 14.14 | Vrattos, Charles | Overtime Dinner |
| 4/8/24 | Overtime Meals | CR00392082 | 17.96 | Krakovsky, Alex | Overtime Dinner |
| 4/8/24 | Overtime Meals | CR00392082 | 20.80 | Krakovsky, Alex | Overtime Dinner |
| 4/9/24 | Overtime Meals | CR00392082 | 20.41 | Krakovsky, Alex | Overtime Dinner |
| 4/10/24 | Overtime Meals | CR00392082 | 19.71 | Krakovsky, Alex | Overtime Dinner |
| 4/11/24 | Overtime Meals | CR00392068 | 21.12 | Ender, Matthew Karol | Overtime Dinner |
| 4/15/24 | Overtime Meals | CR00392082 | 15.00 | Krakovsky, Alex | Overtime Dinner |
| 4/15/24 | Overtime Meals | CR00392088 | 15.00 | Vrattos, Charles | Overtime Dinner |
| 4/15/24 | Overtime Meals | CR00392082 | 17.96 | Krakovsky, Alex | Overtime Dinner |
| 4/15/24 | Overtime Meals | CR00392088 | 29.79 | Vrattos, Charles | Overtime Dinner |
| 4/15/24 | Overtime Meals | CR00392088 | 40.00 | Vrattos, Charles | Overtime Dinner |
| 4/16/24 | Overtime Meals | CR00392088 | 22.86 | Vrattos, Charles | Overtime Dinner |
| 4/16/24 | Overtime Meals | CR00392082 | 32.66 | Krakovsky, Alex | Overtime Dinner |
| 4/17/24 | Overtime Meals | CR00392082 | 19.64 | Krakovsky, Alex | Overtime Dinner |
| 4/17/24 | Overtime Meals | CR00392088 | 39.51 | Vrattos, Charles | Overtime Dinner |
| 4/18/24 | Overtime Meals | CR00392082 | 20.41 | Krakovsky, Alex | Overtime Dinner |
| 4/22/24 | Overtime Meals | CR00392082 | 11.92 | Krakovsky, Alex | Overtime Dinner |
| 4/22/24 | Overtime Meals | CR00392088 | 15.00 | Vrattos, Charles | Overtime Dinner |
| 4/22/24 | Overtime Meals | CR00392082 | 20.00 | Krakovsky, Alex | Overtime Dinner |
| 4/22/24 | Overtime Meals | CR00392068 | 20.00 | Ender, Matthew Karol | Overtime Dinner |
| 4/22/24 | Overtime Meals | CR00392088 | 37.78 | Vrattos, Charles | Overtime Dinner |
| 4/23/24 | Overtime Meals | CR00392082 | 17.96 | Krakovsky, Alex | Overtime Dinner |
| 4/24/24 | Overtime Meals | CR00392082 | 16.28 | Krakovsky, Alex | Overtime Dinner |
| 4/24/24 | Overtime Meals | CR00392082 | 20.00 | Krakovsky, Alex | Overtime Dinner |
| 4/24/24 | Overtime Meals | CR00392088 | 32.65 | Vrattos, Charles | Overtime Dinner |
| 4/26/24 | Overtime Meals | CR00392088 | 21.26 | Vrattos, Charles | Overtime Dinner |
| 4/29/24 | Overtime Meals | CR00392088 | 15.00 | Vrattos, Charles | Overtime Dinner |
| 4/29/24 | Overtime Meals | CR00392088 | 23.54 | Vrattos, Charles | Overtime Dinner |
| 4/30/24 | Overtime Meals | CR00392082 | 20.80 | Krakovsky, Alex | Overtime Dinner |
| | **Overtime Meals** | | **$1,287.67** | | |

| Expense Date | Expenditure Type | Invoice Number | Amount | Employee | Explanation |
|---|---|---|---|---|---|
| 3/18/24 | Ground Transportation | CR00388808 | $20.97 | Krakovsky, Alex | Overtime Taxi |
| 3/18/24 | Ground Transportation | CR00388714 | 23.91 | Vrattos, Charles | Overtime Taxi |
| 3/23/24 | Ground Transportation | CR00388714 | 20.74 | Vrattos, Charles | Overtime Taxi |
| 4/3/24 | Ground Transportation | CR00392088 | 23.88 | Vrattos, Charles | Overtime Taxi |
| 4/3/24 | Ground Transportation | CR00392088 | 38.29 | Vrattos, Charles | Overtime Taxi |
| 4/9/24 | Ground Transportation | CR00392082 | 33.09 | Krakovsky, Alex | Overtime Taxi |
| 4/30/24 | Ground Transportation | CR00392088 | 24.33 | Vrattos, Charles | Overtime Taxi |
| | **Ground Transportation** | | **$185.21** | | |
| 3/26/24 | Telephone and Data | CR00388714 | $95.00 | Vrattos, Charles | Telecommunication Services |
| 4/4/24 | Telephone and Data | CR00388808 | 50.53 | Krakovsky, Alex | Telecommunication Services |
| 3/18/24 | Telephone and Data | CR00388960 | 41.67 | Salemi, David R. | Telecommunication Services |
| 3/18/24 | Telephone and Data | CR00388960 | 93.83 | Salemi, David R. | Telecommunication Services |
| 4/26/24 | Telephone and Data | CR00392088 | 95.00 | Vrattos, Charles | Telecommunication Services |
| | **Telephone and Data** | | **$376.03** | | |
| | **Grand Total** | | **$1,848.91** | | |

## **EXHIBIT D**

**Salemi Certification**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------------- x
                                                         :
In re:                                                   :   Chapter 11
                                                         :
JOANN INC.,                                              :   Case No. 24-10418 (CTG)
                                                         :
            Reorganized Debtor.¹                         :   Hearing Date: June 28, 2024 at 3:00 p.m. (ET)
                                                         :   Obj. Deadline: June 20, 2024 at 4:00 p.m. (ET)
                                                         :
-------------------------------------------------------- x
```

## CERTIFICATION OF DAVID R. SALEMI

**DAVID R. SALEMI**, certifies pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a managing director of Houlihan Lokey Capital, Inc. ("***Houlihan Lokey***"),

financial advisor and investment banker to the above captioned debtors and debtors in possession

(collectively, the "***Debtors***").  I submit this Certification in connection with the *First and Final*

*Fee Application of Houlihan Lokey Capital, Inc. as Financial Advisor and Investment Banker to*

*the Debtors for Allowance and Final Approval of Compensation for Services Rendered and for*

*Reimbursement of Expenses for the Period of March 18, 2024 through April 30, 2024* (the

"***Application***").²

---

¹       The Reorganized Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is JOANN, Inc. (5540).  The Reorganized Debtor's mailing address is 5555 Darrow Road, Hudson, OH 44236.  In addition to JOANN, Inc., the "*Reorganized Debtors*" include the following debtors whose bankruptcy cases have been closed prior to the date hereof, along with the last four digits of their respective federal tax identification numbers and chapter 11 case numbers:  Needle Holdings LLC (3814) (Case No. 24-10419); Jo-Ann Stores, LLC (0629) (Case No. 24-10420); Creative Tech Solutions LLC (6734) (Case No. 24-10421); Creativebug, LLC (3208) (Case No. 24-10422); WeaveUp, Inc. (5633) (Case No. 24-10423); JAS Aviation, LLC (9570) (Case No. 24-10424); joann.com, LLC (1594) (Case No. 24-10425); JOANN Ditto Holdings Inc. (9652) (Case No. 24-10426); and Jo-Ann Stores Support Center, Inc. (5027) (Case No. 24-10427).  All motions, contested matters, and adversary proceedings (if any) that remained open as of the closing of such cases, or that are opened after the date thereof, with respect to such closed-case debtors, are administered in this remaining chapter 11 case.

²       Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Application.

2.      No agreement or understanding exists between me, my firm or any member thereof, on the one hand, and any other person, on the other hand, for the division of such compensation as my firm may receive from the Court herein.

3.      I have reviewed the requirements of Local Rule 2016-2 and certify to the best of my knowledge and belief that this Application substantially complies therewith.

I certify, under penalty of perjury, that the foregoing statements made by me are true and correct, to the best of my knowledge, information, and belief.

Dated:  May 30, 2024

By:      */s/ David R. Salemi*
         _____
         David R. Salemi
         Managing Director
         Houlihan Lokey Capital, Inc.

# EXHIBIT E

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------- x
                                                            :
In re:                                                      :    Chapter 11
                                                            :
JOANN INC.,                                                 :    Case No. 24-10418 (CTG)
                                                            :
                    Reorganized Debtor.¹                    :    **Related Dkt. No: __**
                                                            :
----------------------------------------------------------- x
```

## ORDER GRANTING FINAL ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES TO HOULIHAN LOKEY CAPITAL, INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS

Upon the final fee application in these cases (the "***Fee Application***")[2] of Houlihan Lokey Capital, Inc. ("***Houlihan Lokey***"), for the final allowance of certain fees and expenses incurred, for the period covered by the dates referenced in the Fee Application; and the Court having reviewed the Fee Application; and the Court having jurisdiction to consider the Fee Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Fee

---

[1]    The Reorganized Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is JOANN, Inc. (5540).  The Reorganized Debtor's mailing address is 5555 Darrow Road, Hudson, OH 44236.  In addition to JOANN, Inc., the "*Reorganized Debtors*" include the following debtors whose bankruptcy cases have been closed prior to the date hereof, along with the last four digits of their respective federal tax identification numbers and chapter 11 case numbers:  Needle Holdings LLC (3814) (Case No. 24-10419); Jo-Ann Stores, LLC (0629) (Case No. 24-10420); Creative Tech Solutions LLC (6734) (Case No. 24-10421); Creativebug, LLC (3208) (Case No. 24-10422); WeaveUp, Inc. (5633) (Case No. 24-10423); JAS Aviation, LLC (9570) (Case No. 24-10424); joann.com, LLC (1594) (Case No. 24-10425); JOANN Ditto Holdings Inc. (9652) (Case No. 24-10426); and Jo-Ann Stores Support Center, Inc. (5027) (Case No. 24-10427).  All motions, contested matters, and adversary proceedings (if any) that remained open as of the closing of such cases, or that are opened after the date thereof, with respect to such closed-case debtors, are administered in this remaining chapter 11 case.

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Fee Application.

Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing

that proper and adequate notice of the Fee Application has been given and that no other or

further notice is necessary, except as set forth in the Fee Application with respect to entry of this

Order; and upon the record herein; and after due deliberation thereon; and the Court having

determined that the relief requested in the Fee Application is in the best interests of the Debtors,

their estates, their creditors, and other parties in interest, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.  The Fee Application is GRANTED to the extent set forth herein.

2.  Houlihan Lokey's compensation and expenses are allowed as follows:

| APPLICANT | COMMISSION/FEES | EXPENSES |
|---|---|---|
| Houlihan Lokey Capital, Inc. | $7,450,000.00 | $1,848.91 |

3.  The Debtors are authorized to pay Houlihan Lokey's fees and expenses that are
    authorized in this Order.

4.  This Court shall retain jurisdiction with respect to all matters arising from or
    related to the implementation, interpretation or enforcement of this Order.